```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
----------------------------:

JOHN DOE,                           : Civil Action No.:

                                    : 25-cv-2132

              Plaintiff,            :

         v.                         :

COLUMBIA UNIVERSITY,                : New York, New York

                                    : April 22, 2025

              Defendant.            :

----------------------------:



        TRANSCRIPT AND STATUS CONFERENCE HEARING

      BEFORE THE HONORABLE ROBYN F. TARNOFSKY

          UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:        JOHN DOE, PRO SE
                      P.O. Box 250050
                      New York, New York 10025

For Defendant:        HECKER FINK LLP
                      BY:  Anna Collins Peterson, Esq.
                           Gabrielle Tenzer, Esq.
                      350 Fifth Avenue
                      New York, New York 10118
```

```
Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

    AMM TRANSCRIPTION SERVICE - 631.334.1445
```

1                    THE DEPUTY CLERK:   Judge Robyn Tarnofsky is

2      now presiding over 25-cv-2132; John Doe vs. Columbia

3      University.

4                    Please state your name for the record,

5      starting with the plaintiff.

6                    MR. DOE:   Good afternoon.  Plaintiff, John

7      Doe, appearing pro se.

8                    THE COURT:   Good afternoon.

9                    MS. COLLINS PETERSON:   And this is Anna

10     Collins Peterson for Columbia University, and I'm

11     joined by my colleague, Gabrielle Tenzer.

12                    THE COURT:   Good afternoon.  Thanks for

13     being here.

14                    I guess there are a couple things to talk

15     about.  One is the request for some Court assistance

16     in connection with settlement.  And on that, I can

17     make myself available for a settlement conference on

18     May 6th or May 7th, if those dates work for the

19     parties.

20                    MR. DOE:   Good afternoon, your Honor,

21     Plaintiff --

22                    THE COURT:   Ms. Peterson or Mr. Doe?

23                    Yes?

24                    MR. DOE:   Plaintiff, John Doe, here.

25                    May -- looks like May 6 and May 7 would

             AMM TRANSCRIPTION SERVICE - 631.334.1445

1    work for me.  Either/or.

2            THE COURT:  Okay.

3            Ms. Peterson?

4            MS. COLLINS PETERSON:  Either of those

5    dates work for us, but we would need to confirm with

6    our client that they'll be able to have somebody

7    attend as well.

8            THE COURT:  Okay.  If you could, let me

9    know.

10           I guess another day I could make would be

11   April 29th.  So why don't you get back to my

12   courtroom deputy to let me know if the May dates

13   work.  If not, if you could speak to Mr. Doe and let

14   me know if the 29th would work.  But I think it

15   would be a good thing to get something on the

16   calendar sooner rather than later.

17           Being an eternal optimist, I will wait

18   until after the settlement conference to make a

19   determination about whether we're going to proceed

20   with respect to the initial pretrial conference

21   that's scheduled for, I guess, the week after.

22           I believe that that, then, leaves the issue

23   of litigation holds.  And I would like to hear

24   since -- I've read the letters.  I understand the

25   proposal from Columbia.  I would appreciate hearing

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    from Ms. Collins what the objection would be to

2    having Mr. Joe send his own litigation request --

3    hold request.

4         MS. COLLINS PETERSON:  Thank you, your

5    Honor.

6         As plaintiff described in his letter, he

7    contacted us saying that he intended to issue

8    preservation notices to these non-party students.

9    But, as commonly occurs in campus disciplinary

10   proceedings, Columbia had issued these no-contact

11   directives.  They're mutual, meaning they restrict

12   plaintiff's contact with the nonparties, but the

13   nonparties also can't contact plaintiff.

14        And we think, in this case in particular,

15   as is clear from plaintiff's allegations in his

16   complaint, contact between plaintiff and those

17   non-party students was a source of conflict

18   throughout the underlying disciplinary proceedings.

19   And plaintiff acknowledges, again, in his complaint

20   that he was found responsible in a separate

21   disciplinary proceeding for violating --

22        THE COURT:  Ms. Peterson?

23        MS. COLLINS PETERSON:  Yes?

24        THE COURT:  Sorry.  I just didn't hear the

25   last -- I couldn't hear you for a bit.

1          MS. COLLINS PETERSON:  So I just mentioned

2     that, as plaintiff acknowledges in his complaint, he

3     was found responsible in a separate disciplinary

4     process for violating the no-contact directive.  And

5     this is just a source of conflict between the

6     students and the proceeding.

7          And so it's our view that those no-contact

8     directives are appropriate and should continue to

9     remain in place, but we're willing to work with

10    plaintiff on the issue.  We're willing to work with

11    plaintiff both on the substance of the language of

12    the preservation notice, and we're also open to

13    talking about an appropriate intermediary.

14         Our proposal was to have Columbia's Office

15    of General Counsel deliver the notice.  And, you

16    know, we're open to discussing with plaintiff and

17    with your Honor other options.  But it's Columbia's

18    view that the no-contact directives are continuing

19    to serve an important purpose in reducing conflict

20    between the students and that they would like those

21    to remain in place.

22         THE COURT:  Thank you.

23         So, look, I have no doubt that it would be

24    a good idea for the no-contact to remain in place,

25    but it's unclear to me that if Mr. Doe insists on,

1    for litigation purposes only, sending litigation

2    related communications -- it's not clear to me that

3    the school's interest in keeping the no-contact

4    order in place overrides his right to prosecute the

5    litigation the way he sees fit.  I haven't seen any

6    case law on this.  There may be, but I haven't seen

7    it.

8            So, again, while I -- I have no doubt that

9    it would be in everyone's interest, including

10   Mr. Doe's, for the no-contact order to remain in

11   place.

12           I guess my question to you, Ms. Peterson,

13   is, if this is what he wants, how can the school's

14   interest in the no-contact order supersede his right

15   to prosecute his case?

16           MS. COLLINS PETERSON:  Thank you, your

17   Honor.

18           We obviously don't want to impede on his

19   right to prosecute his case.  And in part, plaintiff

20   reached out to us, and we responded with a proposal

21   suggesting the Office of General Counsel as the

22   intermediary and proposing some language in the

23   hopes that if plaintiff had concerns, he would raise

24   those to us.

25           And so if plaintiff is open to discussing

1    options, either about the particular language that
2    he had concerns with or with any other sort of
3    option as an intermediary, we'd be happy to discuss
4    those.  But to the extent that this is his -- his
5    only position is that he himself wants to deliver
6    those, we obviously don't want to impede on his
7    right to litigate his case.
8            THE COURT:  Thank you, Ms. Peterson.
9            So, Mr. Doe, you know, Columbia's made a
10   proposal.  They seem open to negotiating it.  I
11   think at the end of the day it's your decision, but
12   I think the proposal they've made is not
13   unreasonable and that everyone's interests,
14   including yours, would be served by not having you
15   personally send communications to the non-party
16   witnesses.  So I'll give you an opportunity to be
17   heard on that.
18           MR. DOE:  Thank you, your Honor.
19           I just want to, first, respond to one point
20   that Ms. Peterson made.  So she says, you know,
21   plaintiff alleges in the complaint that he was found
22   responsible for, I guess, retaliation against Mac
23   Roe in the underlying disciplinary proceeding.
24           However, what the complaint actually
25   alleges is that that retaliation, that finding, was

```
 1    erroneous, it was arbitrary, and it was capricious.
 2    There was no retaliation.  And the complaint alleges
 3    that that charge of retaliation was part of the
 4    bigger issue of retaliation of which the institution
 5    retaliated against me for making reports in good
 6    faith of retaliation.  So I just wanted to put that
 7    on the record.  I think it's disingenuous --
 8            THE COURT:  Okay.  We're not getting to the
 9    merits of the case on either side.
10            MR. DOE:  Correct.  I just wanted --
11            THE COURT:  Really, I just want to --
12            MR. DOE:  I just wanted to inform you that
13    there was -- look, there was no retaliation here.
14            The second issue, as it pertains to
15    Columbia's proposal, as I stated in my letter, this
16    is -- it is my belief that Columbia serving as an
17    intermediary would be inappropriate.  Reason being
18    is because, in order for Columbia to serve as an
19    intermediary, they would need to be a neutral
20    intermediary.  And I respectfully submit that
21    Columbia is unable to be a neutral intermediary in
22    this context because they weren't in the underlying
23    disciplinary proceeding.  And that's exactly and
24    precisely what the complaint alleges.
25            The complaint alleges that Columbia has
```

1    been representing, inappropriately, Mac Rowe's
2    interest throughout the two-year-and-one-month-long
3    underlying disciplinary proceeding that gave rise to
4    this action.
5            I personally have no trust or faith in
6    Columbia's ability to do the right thing.  They
7    didn't do the right thing for two years and one
8    month.  Why would they do the right thing now?  It
9    is my right under the Federal Rules of Civil
10   Procedure to be able to prosecute my case as I best
11   see fit.
12           In addition, I don't want to send these
13   letters to Mac Roe and Jane Roe.  I would rather
14   not.  However, as you're aware, Columbia has
15   indicated that they plan to seek expeditious
16   disposition of the complaint.  They haven't done so
17   yet, but they intend to if, in fact, the settlement
18   is not reached.
19           To the extent that the University relies on
20   evidence, testimony, and on information to support
21   their dispositive motion, it becomes even more
22   imperative that the evidence that I seek to preserve
23   in the hands of Mac Roe and Jane Roe -- that that
24   evidence is preserved, right.
25           I haven't seen Columbia's motion to dismiss

```
 1    yet.  I have no idea what their position is on this
 2    case.  They haven't apprised me.  They haven't
 3    informed me.  And so that's precisely my concern.
 4    My concern is that, first of all --
 5            THE COURT:  Okay.  Well, Mr. Doe, if I
 6    could just pause for a minute.  I don't know that a
 7    neutral -- an intermediary needs to be neutral if,
 8    you know, there's an agreement that they're just
 9    going to pass along letters that you've drafted.
10    But if you're opposed, we don't need to go down that
11    road.  If the answer is a hard no, then the answer
12    is a hard no.  That's fine.  And Columbia will have
13    to make an exception to the no-contact proviso for
14    the limited purpose of sending litigation holds and
15    other litigation-related materials.  So that's fine.
16            With respect to the motion to dismiss, the
17    motion to dismiss is going to be a motion directed
18    at the pleadings.  Evidence outside the pleadings is
19    not considered at this stage of the case, and so it
20    will just be a question of whether, as a Macer of
21    law, your pleading is sufficient to state a claim
22    against them.  And that's a Macer where I'll write a
23    recommendation after I've read the motion and the
24    response to the motion.  And, actually, I'm -- maybe
25    it will just go directly to Judge Ho.  It may be --
```

1    I forget if I have this case for dispositive motion

2    recommendations or not.  But, in any event, the only

3    Macers that can be considered are Macers within the

4    pleadings.

5         With respect to the possibility that

6    Mr. Roe is going to be deported -- look, I obviously

7    have no insight into what's going to happen.  And

8    certainly you're well within your rights to send him

9    a document preservation notice.  I just will note

10    that if he is deported from the country, then your

11    ability to get discovery from him becomes more

12    limited because you'll need to follow different

13    procedures than you could follow if he remained in

14    the U.S., and that's just a fact of life and

15    something that -- not you, not Columbia, not me --

16    none of us is able to affect.

17         Yeah, I'm just looking at the referral.

18    It's for general pretrial supervision only.  So

19    there will be a motion to dismiss and Judge Ho will

20    make a decision.  So, you know, that's sort of where

21    we are.

22         MS. COLLINS PETERSON:  Your Honor, there

23    was --

24         THE COURT:  Yes?

25         MS. COLLINS PETERSON:  There was one other

1    consideration that we just wanted to note with

2    respect to the preservation notices, and that's just

3    that this other student, the complainant, and the

4    witness in the underlying proceedings, they also

5    have some interest and some rights that the

6    university has to protect in terms of the no-contact

7    directive.  That was a measure taken, sort of, in

8    the interest of all of those parties.

9         And so to the extent that there is any

10   intermediary that the plaintiff would see as an

11   appropriate intermediary, or if your Honor has any

12   suggestions as for any other intermediary -- again,

13   understanding that we don't want to impede on his

14   rights to litigate his case, but just to the extent

15   that anyone has any thoughts on an intermediary who

16   might be acceptable, we just think the other

17   students have some interest in the no-contact

18   directive as well.

19        THE COURT:  So, Mr. Doe, is there anyone

20   who you'd be comfortable having as an intermediary

21   so that the letters didn't come directly from you?

22        MR. DOE:  Well, your Honor, that is

23   certainly something that I would have to consider.

24   As I'm sure you may understand, I have a lot of

25   trust issues with the university and its partners or

1  affiliates or associates or whatnot.

2          At this point, I don't have any ideas;

3  however, I will certainly think about it.  I don't

4  know exactly who would be that.  Obviously, I don't

5  know if there is any, I guess, Federal Rules that

6  would stipulate or regulate who could serve as an

7  intermediary.

8          I know that I am not willing to assume the

9  cost of a process server to serve the litigation.

10 I've incurred significant costs related to this

11 litigation, even litigating this case on my own

12 behalf, pro se, and so I certainly would not want to

13 incur any cost.

14          To the extent that I would make a

15 determination that a neutral process server -- a

16 professional process server would be appropriate, I

17 would certainly be requesting that any cost incurred

18 would be borne by Columbia.  So that's my position

19 with respect to that.

20          Furthermore, as I mentioned before, there

21 is certainly a level of comfortability that I have

22 here with serving these notices, but I understand

23 that I have to be able to protect my position,

24 right, in the event of, obviously, a motion to

25 dismiss or summary judgment motion or discovery

1    disputes or anything like that, or maybe even trial

2    if the case gets that far.  So that's really my

3    interest here, making sure that that information is

4    preserved.

5            But in answer to your question, at this

6    time, I haven't really thought about that, other

7    than a professional process server, which are very

8    expensive, and I would not be willing to incur the

9    cost of that.  And I would just -- if I made the

10   decision that a professional process server was

11   appropriate, I would just request that any costs

12   incurred would be borne by Columbia.

13           THE COURT:  So I guess there are two

14   separate questions for you, Ms. Peterson.

15           One is if there were a letter directing

16   preservation that were drafted by Mr. Doe, but it

17   was delivered by, instead of Mr. Doe sending it

18   directly, an intermediary, would that be sufficient?

19           Or, in your view, Ms. Peterson, do you

20   think the letter itself should be coming from

21   someone other than Mr. Doe?

22           MS. COLLINS PETERSON:  Your Honor, I think,

23   you know, we're willing to work with plaintiff on a

24   solution that, sort of, works for everybody.  And so

25   we recognize the letter, you know, would come from

1  Mr. Doe.  I think we've made an offer to try to talk

2  about the language.  So assuming that, you know, the

3  language is a standard, sort of, preservation notice

4  or, you know, some variation on some standard

5  language or what we've proposed, I think we -- you

6  know, we would certainly talk to our client about,

7  you know, the possibility of bearing the cost of a

8  process server.

9          We're not aware of, you know, whether the

10  pro se office at the court has any resources that

11  could help with something like this.  And so I think

12  we would certainly be open to bringing it back to

13  our client to talk about whether a letter from

14  Mr. Doe but delivered through an intermediary would

15  be a good option that people feel comfortable with.

16          THE COURT:  Okay.  Well, I would encourage

17  you to do that.

18          In terms of the resources for pro se

19  litigants, most of those resources are developed,

20  maintained for pro se litigants who are in forma

21  pauperis and for service of formal process, so I

22  don't think that there's something that the Court

23  could assist with in that regard.  Even if it could,

24  the delays, even in serving complaints, take months,

25  just given the volume and the resource constraints.

```
1   So, unfortunately, I don't think court assistance is
2   going to be a fruitful route of dealing with this
3   issue.
4           You know, if --
5           MR. DOE:  Your --
6           THE COURT:  Yes?
7           MR. DOE:  Sorry.  I didn't mean to
8   interrupt, your Honor.  I --
9           THE COURT:  No.  Go ahead.
10          MR. DOE:  Yeah, I just wanted to add one
11  point there with respect to the -- with the pro se.
12  I agree with you.  You hit the nail right on the
13  head there.
14          In addition, there's one other just small
15  point which would create an issue with a process
16  server, is that if I do serve preservation letters
17  or preservation demands to Mac Roe or Jane Roe, I
18  would also be requesting a time-sensitive response
19  from the individuals as well, with a -- requesting a
20  written attestation that they have, in fact,
21  preserved the evidence that has been requested.  I
22  don't know how, through a process server for
23  process -- if the process server just drops off an
24  envelope, who are they supposed to respond to,
25  right?  Like --
```

```
 1              THE COURT:  Well, I mean, that's the thing,
 2    Mr. Doe.  I don't know that you're entitled to a
 3    response on any particular time frame.
 4              MR. DOE:  No.  I understand that, but --
 5              THE COURT:  So, you know --
 6              MR. DOE:  I understand that, but to the
 7    extent -- yeah.
 8              THE COURT:  I'm not sure -- look, at some
 9    point, there will likely need to be communication
10    between you and witnesses who have evidence.  If
11    Mr. Mac is --
12              MR. DOE:  Correct.
13              THE COURT:  -- Mr. Roe is still in the
14    country, that would involve him.  If Ms. Roe -- if
15    he's not, you know, it probably wouldn't.  But if
16    Ms. Roe is around, then at some point, you'll
17    presumably want to propound document requests, and
18    she's going to have a response.
19              Now, it may be that Columbia will get a
20    lawyer for her, and you can communicate with her
21    lawyer, but we're not at that phase yet.  We're at
22    the phase where you want to send a document
23    preservation notice, and that's a one-way -- that
24    goes in one direction.
25              If Ms. Roe or Mr. Roe subsequently, you
```

1    know, deletes documents after getting the

2    preservation letter, that's at their peril and the

3    Court has to deal with it, but it's not really for

4    you to say that I want you to tell me that you're

5    going to do what I'm saying.  That's not really how

6    it works.

7             MR. DOE:  No.  I understand, your Honor.

8    It's just that I would certainly request that.

9    Obviously, that's not enforceable, but I would

10   certainly request that.  And to the extent that

11   either individual would send me a response, right,

12   the question is who would that response then go to

13   if it was dropped off by a process server?

14            So, again, it would be simply just a

15   respectful, with a requested response, a written

16   attestation.  And then to the extent that they

17   wanted to -- or they did respond and reply, I would

18   want to make sure that I am getting that response so

19   I can document it for my records.

20            But, again, I would just respectfully

21   request that I have the ability to serve this

22   litigation correspondence without facing, you know,

23   sanctions and yet another investigation or

24   allegations from Columbia for retaliation and

25   violation of no-contact directives.

```
 1              I will say this as a final point to this:
 2    I would be amenable -- and to the extent that
 3    Columbia is willing to engage in a good-faith
 4    settlement conference in front of your Honor on any
 5    of the dates that were mentioned, which obviously
 6    would be prior to their deadline for their
 7    responsive pleading in their anticipated motion to
 8    dismiss, I would be amendable to holding off on
 9    sending any litigation letters until after the
10    settlement conference.  We can see how the
11    settlement conference goes and see if an agreement
12    is able to be reached by the parties.  And if it is,
13    obviously, then the whole preservation issue becomes
14    moot.  So I would be willing to do that.
15              So to the extent that your Honor issues an
16    order granting my request to modify Columbia's
17    no-contact directives, I would be amenable for
18    holding off until after the settlement conference in
19    front of your Honor.
20              THE COURT:  Well, I mean, certainly, I'm
21    happy to defer it if you're willing, Mr. Doe.
22              I guess -- is there anything further that
23    you'd like to say on this issue, Ms. Peterson?
24              MS. COLLINS PETERSON:  No.  I think we
25    appreciate the offer from the plaintiff to defer.
```

1    We'll confirm with our client on those settlement

2    dates.  And we would intend to discuss settlement in

3    good faith, as the plaintiff has addressed, and so

4    deferring the issue, we don't think an order

5    amending the no-contact directives is necessary, and

6    we think that this is a good solution for now.

7              THE COURT:  Okay.  That's fine.

8              Then, I guess, the one other thing I wanted

9    to talk about was Document 21, which is the

10   plaintiff's motion for miscellaneous relief and

11   notice of errata.

12             Is there any objection on defendant's part

13   to my granting the request to deem a typo corrected

14   and treat the complaint as --

15             MS. COLLINS PETERSON:  No objection.

16             THE COURT:  Okay.  That's great.

17             MS. COLLINS PETERSON:  No objections, your

18   Honor.

19             THE COURT:  Okay.  So then that's taken

20   care of.

21             Is there anything further that we can

22   accomplish this afternoon?

23             MR. DOE:  I do have something else that I

24   would like to -- that I would like to bring up, your

25   Honor, and for the purposes of the record.

```
 1              THE COURT:  Okay.
 2              MR. DOE:  So that is, I have been notified
 3    that Columbia University has opened up an
 4    investigation, a discrimination investigation, into
 5    Investigator Jamie Clydeman (phonetic), who was the
 6    head investigator in the underlying disciplinary
 7    proceeding giving rise to this action.  And they
 8    have requested to meet with me, obviously, to
 9    discuss my concerns and, I would assume, the facts.
10              I responded with some questions as to
11    whether or not any information that I would share or
12    disclose would be discoverable in this current
13    litigation, whether or not it would be discoverable.
14    The notice was pretty vague, and so I requested some
15    additional information.  And the senior director, or
16    senior vice president of student life, who has, kind
17    of, ran point on this, responded letting me know
18    that he was unable to answer my questions.
19              In addition, the investigator who opened
20    the investigation just completely ghosted me.  And
21    so we have this open investigation here with
22    Investigator Jamie Clydeman.  The university has
23    been sending me e-mails wanting to meet with me, but
24    they're refusing to respond to my request for
25    additional information.
```

1        And that adds to the other issue of --

2    counsel for Columbia -- the only thing that I know,

3    or understand from counsel for Columbia, is that

4    their client's view of the case differs greatly from

5    mine, period.  And that's it.  That's all I know.  I

6    haven't been given any other information.

7        And so I'm in a situation now where the

8    university is asking me to meet with me, saying,

9    hey, right, we've got -- obviously, they determined

10   that the allegations -- that there was some type of

11   merit there; otherwise, they wouldn't have opened up

12   an investigation.  But yet, on the other hand,

13   counsel for Columbia is saying that their client has

14   a largely different view of the case.

15       So I'm getting mixed signals here.  And I

16   am concerned because if the university has an open

17   investigation into the head investigator that

18   handled this, but is completely unwilling to give me

19   any information -- I don't know.  Is this an actual

20   legitimate inquiry, or is this simply a fishing

21   expedition to inform their position as it pertains

22   to this litigation?

23       Columbia has ghosted me in that regard.

24   And so I'm now at an impasse, I feel like, and I

25   just don't know which way to proceed.  And so this

1    is directly tied to this overall investigation.  And

2    so I would like to hear from counsel as it pertains

3    to this specific investigation and how specifically,

4    in their view, it's related or not related to this

5    litigation.

6            THE COURT:  So, you know, there isn't

7    really a procedure at this stage of the case for you

8    to get that information.  I can't tell you whether

9    you should talk to them or not.  Maybe this is

10   something we can address in connection with the

11   settlement talk.  But other than that, I don't know

12   that there's any recourse that you have right now.

13           MR. DOE:  Well, you pretty much answered my

14   question.  I would like to discuss this at the

15   settlement conference to the extent that your Honor

16   would be willing to discuss this issue.  I just

17   wasn't sure the appropriateness of bringing this up

18   in the settlement.  But to the extent that your

19   Honor is willing to discuss this issue at

20   settlement, that's all I need from your Honor.

21   That's it.  That's all I need.  That's what I was

22   looking for.

23           THE COURT:  That's fine.  But just to be

24   clear, you know, I can encourage folks to talk about

25   things, which would then only be used for settlement

1    purposes and can't be used for any litigation

2    related purposes, but I can't force.

3            I would hope that if, you know, both

4    parties truly wish to move past this litigation,

5    they would be open to addressing each other's

6    concerns to make it more likely that you'll be able

7    to reach a negotiated solution.  But in my role as a

8    settlement judge, my ability to compel is

9    nonexistent.

10            MR. DOE:  And that's not what I'm asking

11   for.  That's not what I meant, your Honor.

12            THE COURT:  Okay.  Well, just to make sure

13   everyone has, you know, the same expectations about

14   what is and isn't possible.

15            Why don't you get back to me and Mr. Doe,

16   Ms. Peterson, to my courtroom deputy, to let me know

17   if the dates I've proposed will work, and we'll see

18   what we can accomplish.

19            Is there anything further?

20            MS. COLLINS PETERSON:  Nothing from --

21            MR. DOE:  That's all I have, your Honor.

22   Thank you.

23            THE COURT:  Thanks very much, everyone.

24   Have a nice rest of the day.

25            MS. COLLINS PETERSON:  Thank you.

1            MR. DOE:  Thank you, your Honor.

2

3                        0o0

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T E

3

4          I, Adrienne M. Mignano, certify that the

5     foregoing transcript of proceedings in the case of

6     John Doe vs. Columbia University; Docket #25CV2132

7     was prepared using digital transcription software

8     and is a true and accurate record of the proceedings.

9

10

11    Signature   _Adrienne M. Mignano_____

12                    ADRIENNE M. MIGNANO, RPR

13

14    Date:       April 24, 2025

15

16

17

18

19

20

21

22

23

24

25

                AMM TRANSCRIPTION SERVICE - 631.334.1445