# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

*Plaintiff*,

v.

COLUMBIA UNIVERSITY,

*Defendant*.

No. 1:25-cv-02132-DEH-RFT

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

May 16, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 2

    A.   Columbia's Gender-Based Misconduct Policy ............................................. 2

    B.   Jane Roe's Report of Sexual Exploitation .................................................... 4

    C.   The Disciplinary Proceedings ...................................................................... 5

    D.   This Action ................................................................................................... 8

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT ..................................................................................................................... 9

I.      Plaintiff Fails to State a Title IX Claim ................................................................ 9

    A.   Plaintiff's Title IX Erroneous Outcome Claim Fails ................................... 9

    B.   Plaintiff's Title IX Selective Enforcement Claim Fails ............................. 21

II.    Plaintiff Fails to State an ADA Claim ................................................................. 22

III.   Plaintiff Fails to State a Title VI Claim ............................................................... 23

IV.   Plaintiff's NYCHRL Claim Should Be Dismissed ............................................. 24

CONCLUSION ................................................................................................................. 25

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 8

*B.B. v. New Sch.*,
    No. 17 Civ. 8347, 2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018).............................. 9, 10, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 8

*Brock v. Zuckerberg*,
    No. 21-1796, 2022 WL 1231044 (2d Cir. Apr. 27, 2022) ...................................... 9

*Cain v. Mercy Coll.*,
    No. 21-824, 2022 WL 779311 (2d Cir. Mar. 15, 2022)........................................ 24

*Carabello v. N.Y.C. Dep't of Educ.*,
    928 F. Supp. 2d 627 (E.D.N.Y. 2013) ............................................................. 24

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)............................................................................... 2

*Cummings v. Premier Rehab Keller, PLLC*,
    596 U.S. 212 (2022)............................................................................................ 8

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*,
    804 F.3d 178 (2d Cir. 2015)............................................................................. 22

*Doe v. Colgate Univ.*,
    760 F. App'x 30 (2nd Cir. 2019) ...................................................................... 11

*Doe v. Columbia Coll. Chi.*,
    299 F. Supp. 3d 939 (N.D. Ill. 2017) ............................................................... 11

*Doe v. Columbia Coll. Chi.*,
    933 F.3d 849 (7th Cir. 2019) ...................................................................... 10, 11

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)......................................................................... 2, 9, 12

*Doe v. Columbia Univ.*,
    551 F. Supp. 3d 433 (S.D.N.Y. 2021).............................................................. 21

*Doe v. NYU*,
    438 F. Supp. 3d 182 (S.D.N.Y. 2020)........................................................................ 11, 12, 22

*Doe v. Trs. of Columbia Univ. in City of N.Y.*,
    No. 29-960, 2024 WL 2013717 (2d Cir. May 7, 2024) ....................................... 20

*Doe v. Trs. of Columbia Univ. in the City of N.Y.*,
    No. 21 Civ. 5839, 2022 WL 3666997 (S.D.N.Y. Aug. 25, 2022) .......................... 10, 18, 25

*Doe v. Univ. of Denver*,
    952 F.3d 1182 (10th Cir. 2020) ......................................................................... 10

*Doe v. Vassar Coll.*,
    No. 19 Civ. 9601, 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) ...................................... 15

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014)................................................................................ 2

*Furnco Const. Corp. v. Waters*,
    438 U.S. 567 (1978)............................................................................................. 17

*Kolari v. N.Y. Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006).............................................................................. 25

*Manolov v. Borough of Manhattan Cmty. Coll.*,
    952 F. Supp. 2d 522 (S.D.N.Y. 2013).............................................................. 16

*McCrudden v. E-Trade Fin. Corp.*,
    No. 13 Civ. 8837, 2014 WL 3952903 (S.D.N.Y. Aug. 12, 2014) ...................... 24

*McCullough v. Graves*,
    No. 24-506, 2024 WL 4615821 (2d Cir. Oct. 30, 2024)................................... 9, 15

*Menaker v. Hofstra Univ.*,
    935 F.3d 20 (2d Cir. 2019)................................................................. 2, 10, 12, 13

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013).............................................................................. 25

*Missick v. City of New York*,
    707 F. Supp. 2d 336 (E.D.N.Y. 2010) .............................................................. 25

*Mitchell v. Planned Parenthood of Greater N.Y., Inc.*,
    No. 23 Civ. 1932, 2024 WL 3849192 (S.D.N.Y. Aug. 16, 2024) ....................... 25

*Ortiz v. Pace Univ.*,
    761 F. Supp. 3d 695 (S.D.N.Y. 2025)..........................................................19, 23

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007)........................................................................17

*Powell v. Nat'l Bd. of Med. Examiners*,
    364 F.3d 79 (2d Cir. 2004).........................................................................23

*Prasad v. Cornell Univ.*,
    No. 15 Civ. 322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ........................21

*Roe v. St. John's Univ.*,
    91 F.4th 643 (2d Cir. 2024) ..............................................................9, 10, 12, 13

*Ruston v. Town Bd. for Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010)...........................................................................9

*Schiebel v. Schoharie Cent. Sch. Dist.*,
    120 F.4th 1082 (2d Cir. 2024) .....................................................................13

*Schwartz v. Comex*,
    No. 96 Civ. 3386, 1997 WL 187353 (S.D.N.Y. Apr. 15, 1997).........................23

*Sutton v. Stony Brook Univ.*,
    No. 18 Civ. 7434, 2021 WL 3667013 (E.D.N.Y. Aug. 18, 2021) ......................24

*Sutton v. Stony Brook Univ.*,
    No. 21-2055, 2022 WL 4479509 (2d Cir. Sept. 27, 2022) ..........................16, 24

*Tew v. Town of Stony Point*,
    No. 22 Civ. 6148, 2023 WL 6146651 (S.D.N.Y. Sept. 20, 2023)......................22

*Yu v. Vassar Coll.*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015).............................................................20

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994)................................................................. *passim*

*Zeno v. Pine Plains Cent. Sch. Dist.*,
    702 F.3d 655 (2d Cir. 2012).....................................................................23, 24

## STATUTES

20 U.S.C. § 1681 ...........................................................................................8

28 U.S.C. § 1367(c)(3)................................................................................................ 24

42 U.S.C. § 12101 ..................................................................................................... 8

42 U.S.C. § 2000d.................................................................................................. 8, 23

N.Y.C. Admin. Code § 8-101 ................................................................................... 8

**FEDERAL RULES**

Fed. R. Civ. P. 12 ..................................................................................................... 8

Defendant The Trustees of Columbia University in the City of New York ("Columbia" or the "University") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

In April 2022, Jane Roe, a Columbia graduate student, reported that during a party at her apartment, Plaintiff John Doe, another Columbia student, accessed her phone and—without her consent—sent himself sexually explicit nude videos and a nude photograph of Jane Roe from her phone. Columbia conducted an investigation of Jane Roe's complaint, as well as Plaintiff's related complaints of retaliation against Jane Roe and another student at the party, Mack Roe, and Mack Roe's eventual retaliation complaint against Plaintiff. The evidence in the investigation included multiple interviews with Plaintiff, Jane Roe, and Mack Roe, interviews with several other witnesses, recorded phone conversations among the parties, and Plaintiff's own admissions in text messages and a draft apology letter. The investigation culminated in a one-hundred-and-fifty-page investigative report and several hundred pages of exhibits. Consistent with its Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students, Columbia conducted a hearing and adjudicated Plaintiff's appeal, ultimately finding Plaintiff responsible for Sexual Exploitation and Retaliation. The Dean who imposed Plaintiff's three-semester suspension noted that rather than take responsibility for his actions when confronted with his misconduct, Plaintiff constructed a "web of lies," fabricated allegations against Jane Roe and Mack Roe, and persisted in relitigating the facts.

Dissatisfied with the outcome of his proceeding but unable to identify evidence of discriminatory bias, Plaintiff takes a similar approach here—filing a nearly two-hundred-page Complaint replete with allegations that are irrelevant, conclusory, internally inconsistent, or flatly contradicted by the very documents of which Plaintiff complains. None of Plaintiff's more than

1,000 paragraphs of allegations—in isolation or in combination—make out a legal claim. Instead, Plaintiff's allegations demonstrate that, throughout his disciplinary process, Columbia adhered to its policies and uncovered overwhelming evidence of Plaintiff's misconduct. Plaintiff may have preferred a different process or hoped for a different outcome. But Plaintiff does not, and cannot, plead that Columbia discriminated against him because of his gender, was deliberately indifferent to racial harassment, or denied him a reasonable accommodation.

## BACKGROUND[1]

### A.  Columbia's Gender-Based Misconduct Policy

Columbia's Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students ("GBM Policy") prohibits non-consensual sexual conduct, including Sexual Exploitation, and establishes the process for reporting and adjudicating violations. GBM Policy at 10-11.[2] When Columbia's Gender-Based Misconduct Office ("GBM Office") receives a report of a violation, it conducts an initial assessment and, assuming the reported conduct would constitute a Policy violation, notifies the complainant and the respondent that an investigation will proceed. *Id.* at 42, 50. The GBM Office then designates a team of investigators with extensive training and experience (the "Investigative Team"). *Id.* at 51. The Investigative Team meets with each party and asks them to provide evidence and identify witnesses. *Id.* at 52. Parties are entitled to attorney-advisors

---

[1] As is customary on a motion to dismiss, the factual allegations in the Complaint are accepted as true only for purposes of this motion and only where they are not contradicted by other, more specific allegations in the Complaint. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014). Additional facts are drawn from Columbia's Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students, *see* Exhibit A to the Declaration of Anna Collins Peterson, which the Court may consider because it is integral to the complaint. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); Compl. ¶¶ 472, 703, 726, 856, 863, 875-876, 915, 978-979. Indeed, courts routinely consider such policies on motions to dismiss Title IX claims. *See, e.g.*, *Menaker v. Hofstra Univ.*, 935 F.3d 20, 28-29, 34-35 (2d Cir. 2019); *Doe v. Columbia Univ.*, 831 F.3d 46, 51-54 (2d Cir. 2016).

[2] As explained in the Policy, Columbia maintains two policies to address gender-based misconduct—one to address certain forms of misconduct that fall within the Department of Education's Title IX regulations promulgated in May 2020, and one to address other forms of misconduct not covered by those regulations. *See* GBM Policy at 1. Plaintiff's disciplinary proceeding was adjudicated pursuant to Columbia's "Gender-Based Misconduct Policy," which covers conduct, like Sexual Exploitation, that is not covered by the 2020 Title IX regulations. *Id.* at 11. A definition of Sexual Exploitation and the other charges relevant to this litigation may be found in the GBM Policy. *See id.* at 11-14.

throughout the investigation process. *Id.* at 35.

The Investigative Team prepares a report based on the evidence gathered during the investigation, and the parties are given an opportunity to review the factual summary of that report and the relevant evidence. *Id.* at 55-56. Then, at a "Pre-Determination Conference," the parties may respond to the report's factual summary, provide additional information, and challenge the report's factual accuracy. *Id.* at 56-57. The Pre-Determination Conference is also the parties' final opportunity to provide questions to the Investigative Team to ask of the other parties or witnesses. *Id.* at 57. After any additional review following the Pre-Determination Conference, the investigation is closed. *Id.*

Once the investigation is closed, the Investigative Team conducts a "Pre-Hearing Conference" with each party, in which the investigators "discuss the analysis and recommendation of responsibility for each alleged charge," based on the preponderance of the evidence standard, and provide each party with the portion of the Investigative Report that contains a "credibility assessment and analysis of the charges." *Id.* at 54, 57. The Investigative Team also asks whether the respondent accepts responsibility for or contests the charges, and each party has the right to request that the matter go to a Hearing Panel. *Id.* at 57.

A Hearing Panel is composed of three members, usually specially trained Columbia administrators. *Id.* at 58. Each party is informed of the Panel's membership before the hearing process begins and may raise objections related to conflicts of interest. *Id.* During the hearing, each party is permitted to present an opening statement, and the Hearing Panel may pose questions to either party or to the Investigative Team. *Id.* at 60-61. Each party is also permitted to make a closing statement. *Id.* at 61. The Hearing Panel then determines, based on a preponderance of the evidence, whether a GBM Policy violation occurred. *Id.* at 58, 62. If the Hearing Panel finds a

student responsible for a Policy violation based on a majority vote, the matter proceeds to sanctioning. *Id.* at 62. Sanctions for any Policy violation may include, among other things, suspension or expulsion. *Id.* at 81.

Either party may appeal the Hearing Panel decision, the sanction, or both. *Id.* at 62. Appeals are decided by a majority vote of a three-Dean Appellate Panel. *Id.* at 83. There are four possible grounds for appeal: procedural irregularity, new information, conflict of interest/bias, or an excessive/insufficient sanction. *Id.* at 83-84. The Appellate Panel may either affirm, revise, or reverse and send the matter back to the Hearing Panel or Investigative Team. *Id.* at 85. If the matter is affirmed, the GBM Policy offers no other level of review. *Id.*

### B.    Jane Roe's Report of Sexual Exploitation

On April 27, 2022, the GBM Office received a report from Jane Roe that Plaintiff, a student at Columbia's School of General Studies,[3] had (1) gained unauthorized access to Jane Roe's phone and sent sexually explicit images of Jane Roe from her phone to Plaintiff's phone without her consent, and (2) stalked her. ¶¶ 311, 337.[4] Specifically, on the evening of April 23, 2022, Plaintiff attended a party at Jane Roe's apartment. ¶ 158. Mack Roe, a mutual friend of Plaintiff and Jane Roe, also attended the party. ¶¶ 161-163. During the party, around 1 AM on April 24, 2022, three videos and one photograph (collectively, the "Explicit Images") were sent from Jane Roe's phone to Plaintiff's phone. One of the videos showed feces in a toilet. The other videos and the photograph showed Jane Roe's naked body, including her buttocks and genitalia. ¶¶ 216, 221.

Shortly after 1 AM on April 24, 2022, the other party guests left Jane Roe's apartment and

---

[3] The School of General Studies is an undergraduate branch of Columbia "created specifically for returning and nontraditional students seeking a rigorous, traditional, Ivy League undergraduate degree full or part time." *Columbia School of General Studies*, Columbia University in the City of New York, https://www.gs.columbia.edu/ (last visited May 12, 2025).

[4] Citations to "¶ _" refer to paragraphs of the Complaint, ECF 11.

Plaintiff remained. ¶¶ 232-233. Shortly after 2 AM, Jane Roe called Mack Roe in Plaintiff's presence and told Mack Roe that Plaintiff had accessed her phone during the party and texted himself the Explicit Images without her knowledge or consent. ¶ 242. A few moments later, Mack Roe called Plaintiff, and the conversation between the three of them continued. ¶ 244. Mack Roe began recording the phone call without Plaintiff's or Jane Roe's knowledge. ¶ 243. Jane Roe took Plaintiff's phone from him, took a screen recording of the text messages between them, and texted herself the screen recording. ¶ 244. Jane Roe then told Plaintiff to leave her apartment. ¶ 248.

Plaintiff left Jane Roe's apartment and continued talking with Mack Roe on his phone about the incident. ¶ 254. Plaintiff told Mack Roe that he sent the Explicit Images from Jane Roe's phone, which Plaintiff alleges he did out of fear of "retribution from Jane Roe." ¶ 251. Shortly thereafter, Plaintiff sent Jane Roe a text apologizing for "breaking her trust," which Plaintiff alleges was "demanded by Jane Roe." ¶¶ 269-270. On April 25, 2022, Plaintiff prepared a handwritten apology letter addressed to Jane Roe—allegedly "demanded by Mack Roe and Jane Roe"—that he sent to Mack Roe for review. ¶¶ 303-304. Plaintiff ultimately asked Mack Roe not to share the letter with Jane Roe. ¶ 305.

### C.    The Disciplinary Proceedings

Columbia's GBM Office notified Plaintiff about Jane Roe's report and investigated that report in accordance with its Policy. ¶¶ 313, 335, 339. During the investigation, Plaintiff denied the allegations against him. He claimed that Jane Roe texted him the Explicit Images herself, because Plaintiff has "amazing photography skills" and she wanted to convince him "to take 'sexy photos' of her using his professional camera." ¶¶ 186, 221. Confronted with the evidence of his apology texts and letter, Plaintiff claimed that he had been pressured into writing them by Jane Roe and Mack Roe. *See* ¶¶ 269, 292-293.

Many months later, on February 8, 2023, Plaintiff filed a formal complaint with the GBM

Office asserting Retaliation claims against Jane Roe and Mack Roe. ¶ 575. He alleged, among other things, that they had threatened to file GBM complaints against Plaintiff unless he met their demands, and that Mack Roe had threatened to file a Retaliation claim against Plaintiff if Plaintiff told anyone that Mack Roe had (allegedly) confessed to recording a video of another student's breasts without her knowledge. *See* ¶¶ 262-271, 281-294, 300-309, 486-509, 538-552, 583-592. On February 27, 2023, Mack Roe in turn filed a Retaliation complaint against Plaintiff, alleging that Plaintiff's Retaliation claims were in retaliation for Mack Roe participating as a witness and providing evidence to the GBM Office in Plaintiff's GBM proceeding. ¶ 604. Plaintiff denied those allegations. *Id.* All of these Retaliation complaints were consolidated with Jane Roe's Sexual Exploitation and Stalking complaints as part of the ongoing GBM proceeding. *See, e.g.*, ¶ 788; GBM Policy at 46 (allowing for consolidation).[5]

The consolidated investigation included multiple interviews with John Doe, Jane Roe, and Mack Roe, ¶¶ 377, 396, 421, 458, 521, and interviews with several other witnesses from the party, ¶ 351. Throughout the investigation, Plaintiff had an attorney-advisor. *See, e.g.*, ¶ 461. Plaintiff submitted a 45-page response to the factual summary and evidence gathered in the investigation. ¶¶ 618, 636. The Investigative Team conducted a Pre-Determination Conference and a Pre-Hearing Conference, ¶¶ 652, 669, and on September 15, 2023, the final Investigative Report, spanning over 1,000 pages with exhibits and addenda, was sent to the parties, ¶¶ 669, 685-686.

In the Report, the Investigative Team found Jane Roe and Mack Roe, as well as each of the other witnesses interviewed, to be credible. ¶¶ 352, 395, 676. By contrast, the investigators found Plaintiff not to be credible with respect to "any allegation he had made." ¶ 674. In the Investigative

---

[5] In a separate disciplinary proceeding under the University's Dean's Discipline process, Columbia's Center for Student Success and Intervention found Plaintiff responsible for retaliating against Mack Roe by violating the GBM Office's No Contact Directive and Confidentiality Agreement. ¶¶ 743-747, 758, 765.

Report, the investigators concluded that the evidence supported Jane Roe's allegation of Sexual Exploitation and recommended that Plaintiff be found responsible for that conduct. ¶¶ 723-724. The investigators recommended that Plaintiff also be found responsible for two counts of Retaliation against Mack Roe, ¶¶ 671, 788, 813, and that Plaintiff's Retaliation allegations, as well as Jane Roe's Stalking allegation, be dismissed, ¶¶ 338, 672-673.

Consistent with Columbia's GBM Policy, a hearing was held on March 21, 2024, before a three-person panel, which posed questions to the parties involved in the consolidated proceeding— Plaintiff, Jane Roe, and Mack Roe. ¶¶ 789, 792. Prior to the hearing, Plaintiff submitted a 13,000-word response to the Investigative Report. ¶¶ 781, 864. The Hearing Panel rendered a decision on April 2, 2024, adopting the investigators' recommended findings of Plaintiff's responsibility for Sexual Exploitation and Retaliation. ¶¶ 809-810, 814.

On April 11, 2024, Plaintiff received the sanction of a three-semester suspension. ¶¶ 818, 820. The sanctioning Dean noted that following his actions at the party, Plaintiff "made up his retaliation allegations against Jane Roe and Mack Roe out of whole cloth." ¶ 831. The Dean further observed that Plaintiff "utterly failed throughout the investigation, hearing, and impact statement to accept responsibility for his actions or demonstrate any remorse for the impact his behavior had on the other Parties." ¶ 834. Plaintiff was notified that he also would be ineligible for student housing as a result of his suspension, ¶ 824, be restricted from his University employment, ¶¶ 916-917, that his scholarship would be revoked, ¶¶ 920-924, and that he was prohibited "from participating in non-official peer to peer group chats and discussion groups meant for Columbia Students," ¶¶ 926-927.

In a 15-page submission, Plaintiff appealed the Hearing Panel's decision and his suspension, claiming procedural errors, bias, and an excessive sanction, ¶¶ 858-859. On June 5,

2024, the Appellate Panel affirmed both the decision and sanction, finding among other things that there were no procedural irregularities. ¶¶ 901, 910. The panel stated that "[c]haracterizing these conclusions as 'procedural errors' is an attempt to ask us to re-characterize the facts in [Plaintiff's] favor." ¶ 910. The Appellate Panel further observed that Plaintiff's "stated procedural irregularities [did not] affect[] the investigation and sanction in the case." ¶ 908. If anything, the Appellate Panel stated, the sanction was "too lenient." ¶ 912.

### D.    This Action

Plaintiff has now brought this lawsuit, asserting five causes of action: (1) erroneous outcome in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), *see* ¶¶ 957-1020; (2) selective enforcement in violation of Title IX, *see* ¶¶ 1021-1038; (3) failure to provide reasonable accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), *see* ¶¶ 1039-1051; (4) deliberate indifference in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"), *see* ¶¶ 1052-1068; and (5) gender, disability, and race discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), *see* ¶¶ 1069-1075. Plaintiff seeks monetary damages as well as injunctive relief.[6]

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts construe "pro se complaints liberally, legal conclusions 'must

---

[6] Emotional distress damages are unavailable for Plaintiff's Title IX and Title VI claims. *See Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022).

be supported by factual allegations.'" *Brock v. Zuckerberg*, No. 21-1796, 2022 WL 1231044, at *1 (2d Cir. Apr. 27, 2022) (quoting *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)); *see also McCullough v. Graves*, No. 24-506, 2024 WL 4615821, at *1 (2d Cir. Oct. 30, 2024).

## ARGUMENT

### I.     Plaintiff Fails to State a Title IX Claim

"Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). "Claims that challenge university disciplinary proceedings under Title IX generally fall within two categories: 'erroneous outcome' or 'selective enforcement' claims." *B.B. v. New Sch.*, No. 17 Civ. 8347, 2018 WL 2316342, at *4 (S.D.N.Y. Apr. 30, 2018) (quoting *Yusuf*, 35 F.3d at 715). Under either theory, a plaintiff must plead "specific facts that support a minimal plausible inference" of gender discrimination. *Doe v. Columbia*, 831 F.3d 46, 56 (2d Cir. 2016). Yet here, Plaintiff fails to plead gender discrimination—the *sine qua non* of a Title IX claim. Nor does Plaintiff plausibly allege the other required elements of a Title IX erroneous outcome or selective enforcement claim.

### A.     Plaintiff's Title IX Erroneous Outcome Claim Fails

To challenge the outcome of his disciplinary proceeding under an "erroneous outcome" theory, Plaintiff must cast doubt on the outcome and allege "specific facts that support a minimal plausible inference" of gender discrimination. *Doe v. Columbia Univ.*, 831 F.3d at 56; *see also Roe v. St. John's Univ.*, 91 F.4th 643, 652 (2d Cir. 2024). A plaintiff can establish a minimal plausible inference of gender bias through "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that [] tend to show the influence of gender." *Yusuf*, 35 F.3d at 715. In the absence of such direct evidence, public pressure on a university sufficient to provide a motive to discriminate, "*combined* with *clear* procedural

irregularities in a university's response to allegations of sexual misconduct," can create a minimal plausible inference of gender bias. *St. John's Univ.*, 91 F.4th at 657 (quoting *Menaker*, 935 F.3d at 33); *see also Doe v. Trs. of Columbia Univ. in the City of N.Y.*, No. 21 Civ. 5839, 2022 WL 3666997, at *16 (S.D.N.Y. Aug. 25, 2022).

Here, Plaintiff fails to satisfy this element of his Title IX claim through any means. Plaintiff has not alleged any direct evidence of gender bias. Indeed, the facts of Plaintiff's disciplinary proceeding—that it involved claims brought by a male complainant (Mack Roe) and that Plaintiff was found *not* responsible for some of the complaints against him (Stalking)—undermine his claim that gender bias influenced his disciplinary proceeding. Moreover, the Complaint lacks allegations of statements made during his disciplinary proceeding that would "tend to show the influence of gender." *B.B.*, 2018 WL 2316342, at *5 (quoting *Yusuf*, 35 F.3d at 715). Rather, Plaintiff relies on allegations of procedural irregularities, which Plaintiff claims support a plausible inference of gender bias when combined with the University's alleged motive to discriminate in light of the "gender biased campus culture" and "campus pressures." ¶¶ 89, 1016. However, Plaintiff's allegations of gender-based pressure are far too attenuated. And his effort to recast Columbia's thorough proceeding under the GBM Policy as procedurally irregular likewise falls short.

### 1. Plaintiff Has Not Plausibly Alleged That the University Had a Motive to Discriminate Based on Gender

Despite dedicating more than one hundred paragraphs of his Complaint, Plaintiff fails to plausibly allege any pressure that would have motivated Columbia to discriminate against him in his disciplinary proceeding based on his gender.

***Pressure from the Government.*** Plaintiff's claim that the University was pressured by the federal government to discriminate against men is meritless. As many other Title IX plaintiffs have done, *see, e.g.*, *Doe v. Univ. of Denver*, 952 F.3d 1182, 1192-93 (10th Cir. 2020); *Doe v. Columbia*

*Coll. Chi.*, 933 F.3d 849, 855 (7th Cir. 2019), Plaintiff cites the long-rescinded 2011 Dear Colleague Letter and other Obama-era federal guidance as placing gender-based pressure on Columbia, *see* ¶¶ 31-82. But the 2011 Dear Colleague Letter was withdrawn five years prior to Plaintiff's disciplinary proceeding, and new Title IX regulations were promulgated in the intervening years. *See* ¶¶ 97, 101-103. Courts have rejected similar reliance on the 2011 Dear Colleague Letter to establish a motive to discriminate based on gender. *See, e.g.*, *Doe v. Colgate Univ.*, 760 F. App'x 22, 30 (2d Cir. 2019); *Doe v. NYU*, 438 F. Supp. 3d 172, 186 (S.D.N.Y. 2020).

**Pressure from Columbia's "Political Climate."** Plaintiff also alleges, implausibly, that campus protests in 2014, news stories about a 1994 sexual assault, and abuses by a former Columbia physician pressured the University to discriminate against Plaintiff based on his gender. Plaintiff cannot show the requisite pressure through campus activism that occurred eight years before Jane Roe filed her complaint in 2022. *See* ¶¶ 83-92 (describing campus activism beginning in 2014); *Doe v. NYU*, 438 F. Supp. 3d at 186 ("#MeToo movement on NYU's campus" did not show NYU had a discriminatory motive where the movement "took place several months before Jane Roe even filed her complaint"). And Plaintiff does not allege that Columbia faced any public scrutiny related to its handling of the 1994 alleged rape, let alone pressure to begin discriminating against men in current GBM proceedings. ¶¶ 134-135.[7]

Plaintiff additionally attempts to rely on public scrutiny concerning a former Columbia physician's sexual abuse of patients. *See* ¶¶ 118-119, 122-133, 136-140.[8] But scrutiny pertaining

---

[7] Nor does Columbia's gender-neutral recognition of Sexual Assault Awareness Month, *see* ¶¶ 120-121, give rise to an inference that Columbia was motivated to discriminate against male respondents. *See, e.g., Doe v. Colgate Univ.*, 760 F. App'x at 30 (finding no gender bias when university president gave general statement on responding to sexual harassment); *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 955 (N.D. Ill. 2017) (concluding sexual assault "public awareness events . . . are not gender-biased"), *aff'd*, 933 F.3d 849 (7th Cir. 2019).

[8] Although Plaintiff alleges that in October 2023, Columbia students "demanded greater accountability from the university when dealing with student allegations of sexual misconduct and assault by male perpetrators," ¶ 127, the photographs of the October 2023 protest that Plaintiff includes in his Complaint illustrate that the protest was in fact related to the former Columbia physician, not student complaints of sexual misconduct on campus, *see* Compl. at 42.

to patient abuse and the University's related settlement fund provide no support for Plaintiff's allegation that the University was motivated to discriminate against male student respondents in campus disciplinary proceedings between students. *See, e.g.*, *Doe v. NYU*, 438 F. Supp. 3d at 185 ("Press coverage of sexual assault at a university does not automatically give rise to an inference that a male who is terminated because of allegations of inappropriate or unprofessional conduct is the victim of sex discrimination." (quoting *Menaker*, 935 F.3d at 33 (cleaned up))); *cf. Doe v. Columbia Univ.*, 831 F.3d at 57 (plausible inference of gender bias established by alleging university was motivated by gender-based criticisms about the same type of disciplinary proceeding the plaintiff faced).

**Pressure from Jane Roe.** Plaintiff's attempt to establish a discriminatory motive due to purported pressure from Jane Roe fares no better. Plaintiff alleges that around the time Jane Roe made her report to the GBM Office, Jane Roe texted her cousin that she "fe[lt] like this will start a movement" and had "been journaling so much in order to process that [she was] sure [she had] written enough to give speeches." ¶¶ 149-152, 322. Plaintiff alleges that these text messages "put additional pressure on Columbia to take biased action against John Doe." ¶ 334. Notably, however, he does not allege that any "movement" or "speeches" by Jane Roe ever materialized.

### 2.    Plaintiff Does Not Allege Any Clear Procedural Irregularity

Without pleading a minimal plausible inference of gender bias or any motive to discriminate, Plaintiff's erroneous outcome claim fails. *See, e.g.*, *St. John's Univ.*, 91 F.4th at 656-57. But even setting that fatal defect aside, Plaintiff has failed to allege the type of clear procedural irregularity that, when combined with a concrete motive to discriminate based on gender, could support a plausible inference of gender bias.

The Second Circuit has been explicit that establishing procedural irregularities sufficient to create an inference of bias is a high bar: "[W]e emphasize that our standard requires *clear*

irregularities to raise an inference of bias." *Menaker*, 935 F.3d at 34 n.50; *see also St. John's Univ.*, 91 F.4th at 660 (concluding "alleged procedural irregularities are not serious enough to support a claim of sex-based discrimination"). For example, in *Menaker*, the defendant allegedly "completely disregarded the process provided for in its written 'Harassment Policy,'" including allegedly failing to "interview potential witnesses, provide [the plaintiff] the opportunity to submit a written response, and produce a written determination of reasonable cause," and it terminated the plaintiff even though a top-level university administrator "*knew* that at least one of the accusations against [the plaintiff] was false." 935 F.3d at 34-35; *see also Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1098 (2d Cir. 2024) (finding plaintiff alleged clear procedural irregularities where school "did not provide [the plaintiff] with even the rudiments of due process").

Here, in contrast, Plaintiff's disciplinary proceeding followed the process outlined in the GBM Policy. *See supra* at pp.2-4. Plaintiff was notified of Jane Roe's complaint, ¶ 335, and had an attorney-advisor throughout the proceeding, *see, e.g.*, ¶ 461. The Investigative Team interviewed at least five witnesses, interviewed Jane Roe at least three times, interviewed Mack Roe, and interviewed Plaintiff on several occasions. ¶¶ 351, 377, 396, 458, 476, 521, 565. Plaintiff received the factual summary and evidence gathered in the investigation, to which he submitted a 45-page response. ¶¶ 618, 636. Plaintiff also received the Investigative Report and submitted a 13,000-word response prior to the hearing. ¶¶ 685, 781, 864. The Hearing Panel rendered a decision and a sanction was imposed. ¶¶ 809, 818. Plaintiff submitted a 15-page appeal, which was ultimately denied. ¶¶ 858, 901.

Despite all of these procedural protections (and more), Plaintiff seems to allege that his disciplinary process was irregular with respect to: (1) his sanction, *see, e.g.*, ¶ 980; (2) the

weighing of evidence and credibility determinations, *see, e.g.*, ¶ 982; and (3) what he refers to as "evidentiary and procedural missteps," ¶ 971. None of Plaintiff's allegations, however, amount to "clear irregularities" giving rise to an inference of bias.

**The Sanction.** Plaintiff alleges that the sanction—a three-semester suspension after being found responsible for Sexual Exploitation and Retaliation—was unduly harsh. *See, e.g.*, ¶ 980. The sanction, however, was entirely within the bounds of the GBM Policy, which permits (among other sanctions) suspensions, restrictions on access to Columbia facilities or activities, and removal from student housing. GBM Policy at 81. Indeed, as Plaintiff seems to acknowledge when he alleges that he "was facing potential expulsion," ¶ 1045, the Policy permits even harsher sanctions. GBM Policy at 81. Other consequences of Plaintiff's sanction, including the restriction on his University employment, ¶¶ 916-917, the revocation of his scholarship, ¶¶ 920-924, and his prohibition "from participating in non-official peer to peer group chats and discussion groups meant for Columbia Students," ¶¶ 926-927, are all within the sanctions contemplated by the GBM Policy and do not suggest a clearly irregular process. GBM Policy at 81 (possible sanctions include "[d]ismissal or restriction from University employment," revocation of awards, and "[r]emoval from . . . academic or extracurricular activities and/or University organizations").

Plaintiff additionally asserts that in imposing his sanction, the Dean impermissibly "assumed [his] guilt," considered Plaintiff's failure to take responsibility for his misconduct, and also considered the result of Plaintiff's prior Dean's Discipline proceeding. ¶¶ 829-839. At the time of the sanction, however, Plaintiff had already been found responsible for misconduct by a Hearing Panel. ¶¶ 809-810, 814. Moreover, Plaintiff does not, and cannot, identify any provision of the GBM Policy that prohibits sanctioning officers from considering acceptance of responsibility or (as here) the lack thereof. *Cf.* GBM Policy at 14 ("Reports that are intentionally

14

false or found to have been made in bad faith . . . may be considered by the Sanctioning Officer if an individual is otherwise found responsible for a violation of the Policy."). Further, nothing about the Dean's consideration of Plaintiff's other disciplinary matters was irregular. In fact, the GBM Policy lists "sanctions imposed on the Respondent in other matters involving similar conduct" and "the Respondent's prior disciplinary history" as relevant factors for consideration in imposing a sanction. *Id.* at 80.

*The Weighing of Evidence and Credibility Determinations.* Many of Plaintiff's allegations of procedural defects relate to the weighing of evidence and credibility determinations by the Investigative Team, the Hearing Panel, and the Appellate Panel. *See* ¶¶ 618-626, 630, 676-679, 683, 690-696, 938, 972-977. As an initial matter, a federal court's role is not to "second-guess a university's credibility determinations and overall evaluation of the evidence." *Doe v. Vassar Coll.*, No. 19 Civ. 9601, 2019 WL 6222918, at *8 (S.D.N.Y. Nov. 21, 2019) (denying plaintiff's preliminary injunction motion); *see also Yusuf*, 35 F.3d at 715 ("We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming . . . .").

Moreover, Plaintiff's allegations on this point are conclusory and entirely lacking the sort of detailed or specific allegations required to make out his claim. *See, e.g.*, *McCullough*, 2024 WL 4615821, at *2. For example, Plaintiff alleges:

- that he put forth "relevant, objective, and uncontroverted evidence that directly contradicted Columbia's factual findings," ¶ 974, but does not specify what that evidence was;

- that "Columbia ignored evidence that established that [Plaintiff] was not in possession of Jane Roe's phone when the transfer of the explicit images and videos took place," ¶ 977, but does not identify what that purportedly ignored evidence was;

- that Jane Roe provided inconsistent statements to the investigators, ¶¶ 383-391, but fails to identify or describe those statements;

15

- that the Investigator "omitted critical portions of . . . eyewitness statements from the Investigative Report," ¶ 365, but does not offer any details about those alleged omissions; and

- that the Investigative Report "included numerous misquotations and mischaracterizations of [Plaintiff's] statements," ¶ 695, but does not explain what those purported misquotations and mischaracterizations were.

Such conclusory assertions are insufficient to support Plaintiff's claim, even granting him the leniency afforded to pro se plaintiffs. *See, e.g.*, *Sutton v. Stony Brook Univ.*, No. 21-2055, 2022 WL 4479509, at *3 (2d Cir. Sept. 27, 2022) (affirming dismissal of pro se Title IX claims that "fail[ed] to rise above conclusory allegations of sexual behavior"); *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (dismissing pro se plaintiff's Title IX claim when "the vast majority of the statements in both his Complaint and his Memorandum of Law [we]re conclusory, rather than factual, allegations").[9]

With a marginally increased level of specificity, Plaintiff alleges that Jane Roe took photos on her phone nine minutes before the Explicit Images were sent to Plaintiff's phone, ¶¶ 210-216, and that eyewitnesses corroborated his "narrative and version of events" regarding his possession of Jane Roe's phone during the party, ¶ 358. But evidence that Jane Roe took photographs on her phone obviously does not "establish" whether Plaintiff or Jane Roe was in possession of her phone nine minutes later.

Plaintiff also contends that the investigators failed to satisfy the preponderance-of-the-evidence standard when they relied on the lack of legitimate explanations for Plaintiff's conduct. ¶¶ 724-742. The content of the Explicit Images alone—videos and imagery of Jane Roe's naked body, including her buttocks and genitalia—combined with their transfer to Plaintiff's phone without Jane Roe's consent, ¶¶ 221, 242, 723-724, suggest an illicit purpose. And contrary to

---

[9] The Complaint is replete with such conclusory allegations. *See, e.g.*, ¶¶ 689, 692-694, 696, 700, 707, 775, 783-787, 798, 801-802, 804, 815, 860, 862.

Plaintiff's assertion, the fact that there was no evidence of a legitimate reason for Plaintiff to text himself the Explicit Images *does* support the conclusion that it was more likely than not for an illicit purpose. Indeed, courts commonly use comparable reasoning in a variety of circumstances. *See, e.g.*, *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (in the employment discrimination context, "when all legitimate reasons . . . have been eliminated as possible reasons" for an employer's decision, "it is more likely than not" that the decision was "based . . . on an impermissible consideration"); *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 126 (2d Cir. 2007) (in the antitrust context, the "absence of a legitimate business reason for the refusal to deal suggested that the reason for the defendant's action was intent to monopolize").

       ***The Investigative, Hearing, and Appeal Processes.*** Plaintiff's remaining allegations relate to procedural aspects of the investigative, hearing, and appeal processes, but none come close to a clear irregularity suggestive of bias.

- *Interviews.* Plaintiff alleges that the investigators required him to report to his attorney-advisor's office for his investigative interviews, during which he was "prohibited [] from accessing his personal electronic devices," ¶¶ 461, 466, 469, whereas Jane Roe was permitted "to participate virtually from the privacy and comfort of her home," ¶ 460. But Plaintiff does not, and cannot, point to a provision of the GBM Policy stating that all party interviews must be conducted under identical circumstances, or otherwise show why this was clearly irregular. Indeed, such procedures were entirely reasonable given that the relevant evidence included videos and a photograph of Jane Roe's naked body and that Plaintiff was alleged to have distributed these Explicit Images, from one phone to another, without Jane Roe's consent. Plaintiff also alleges—with few factual details—that in his interviews, the investigator was "hostile" and "fired rapid fire questions at [him] designed to elicit a confession," ¶ 530; *see also* ¶¶ 531-532. Yet Plaintiff's suggestion that

he was somehow unable to offer a clear narrative to the Investigative Team is belied by his allegations. *See* ¶ 476 (alleging that, in his first interview, Plaintiff "provided a detailed account of what occurred").

- *Requests for Extensions.* Plaintiff alleges that his request for a medical extension to respond to the Investigative Report was denied but Jane Roe's medical extension request elsewhere in the process was granted. ¶¶ 774-780. The GBM Policy provides that "[t]ime frames may be extended for good cause as necessary to ensure the integrity and completeness of the process." GBM Policy at 37. As Plaintiff concedes, due to her inability to make a determination on the basis of the redacted information Plaintiff provided, Columbia's Title IX Coordinator could not find "good cause" for Plaintiff's requested extension. ¶ 778.

- *Hearing Participation.* Plaintiff alleges that it was improper to allow Mack Roe to participate in the hearing because "Mack Roe was not a complainant in the underlying sexual exploitation investigation" and under the GBM Policy, "[w]itnesses are not involved in the hearing process." ¶ 793. But as the Complaint acknowledges, Mack Roe was not only a witness, but also a complainant and a respondent with respect to the Retaliation claims. ¶¶ 576, 604. To the extent Plaintiff claims that the GBM Policy "prohibits witness participation" even where the witness is himself the complainant or respondent for some of the claims, ¶ 793, Plaintiff offers no support, and there is none in the GBM Policy.[10] Moreover, the GBM Policy expressly permits the

---

[10] For many other allegations, Plaintiff similarly fails to cite any provision of the GBM Policy to support his conclusory claims of irregularity, nor could he. *See, e.g.*, ¶¶ 327–328 (Columbia redacted portions it deemed irrelevant of an email from Jane Roe to a faculty member that also included her allegations against Plaintiff); ¶¶ 474-475 (investigator did not specifically inform Plaintiff of certain resources, including "that he was entitled to seek the support of the Dean of his school"); ¶¶ 511-517 (administrators, including the Title IX Coordinator, concluded that certain correspondence with Mack Roe was not relevant to the issues in the proceeding); ¶¶ 522, 527, 534 (investigator asked Plaintiff about evidence during an interview without giving him an opportunity to review the evidence in advance); ¶ 803 (ex parte conference was held with the Hearing Chair during the questioning of Jane Roe); ¶ 992 (Plaintiff was not specifically questioned at the hearing about his Retaliation allegations against Jane Roe); ¶¶ 993, 995 (investigators did not attend, and were not questioned at, the hearing). Plaintiff's naked assertions of "entitle[ment]" to certain processes, *see, e.g.*,

18

consolidation of complaints by multiple parties "where the allegations arise out of the same facts or circumstances." GBM Policy at 46.

- *Cross Examination.* Plaintiff complains that he and his attorney-advisor were not permitted to cross-examine Jane Roe at the hearing. ¶¶ 805, 940. But the GBM Policy is clear that "[o]nly the Hearing Panel may ask questions" at the hearing. GBM Policy at 61.

- *Mental Health Evidence.* Plaintiff alleges that "[t]he Hearing Chair questioned John Doe about his mental health and mental health treatment at the hearing despite the [GBM] Policy prohibiting questions regarding mental health treatment to be asked." ¶ 802. The GBM Policy does not prohibit such questions. Rather, parties have "the right to request that evidence regarding their mental health diagnosis and/or treatment be excluded from consideration when responsibility is being determined." GBM Policy at 54. Plaintiff does not allege that he requested that evidence regarding his mental health be excluded.

- *"New" Evidence.* While Plaintiff alleges that Jane Roe was permitted to present "new" evidence at the hearing, ¶ 801, he fails to describe the evidence or offer any allegations about the significance or impact of that alleged "new" evidence. *Cf. Ortiz v. Pace Univ.*, 761 F. Supp. 3d 695, 701 (S.D.N.Y. 2025) ("While the Court will interpret a pro se complaint liberally, the plaintiff is required to provide factual allegations supporting her claim.").

- *Alleged Conflict of Interest.* Plaintiff alleges that one of the Appellate Panel deans, "had a conflict of interest" that he was required to raise because he "had previously discussed Jane Roe's allegations against John Doe with her [sic] April 27, 2022, shortly after she made her complaint." ¶¶ 843-847. Under the GBM Policy, conflicts of interest arise when an individual is a "Party's family member, close friend, current or former faculty member, advisor or has other similar

---

¶ 513, do not establish that any procedural defect occurred, and certainly not a clearly irregular one. *See Doe v. Columbia*, 2022 WL 3666997, at *14.

relationships with a Party." GBM Policy at 38. Plaintiff has made no allegation here of such a relationship.

- *Delay.* Plaintiff alleges that "Columbia impermissibly delayed completing the disciplinary process." ¶ 989. While the GBM Office "strives to complete the investigation and adjudication of allegations within 120 days after the notice of an investigation," it makes no promise to do so. GBM Policy at 37. Moreover, as Plaintiff's allegations illustrate, the disciplinary process here involved not only the original allegations of Sexual Exploitation and Stalking against Plaintiff, but also his later complaints of Retaliation against Jane Roe and Mack Roe, ¶¶ 574-576, and Mack Roe's even later complaint of Retaliation against Plaintiff, ¶¶ 604-605.

At bottom, Plaintiff may have "wanted different procedures to be put in place," but "it was not clearly unreasonable for Columbia to abide by its internal procedures." *Doe v. Trs. of Columbia Univ. in City of N.Y.*, No. 29-960, 2024 WL 2013717, at *2 (2d Cir. May 7, 2024); *see also Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015) (granting summary judgment for defendant when plaintiff "simply disagree[d] with the [college's] decision" but could not show flawed process). Columbia conducted a thorough investigation into the charges against Plaintiff. And Plaintiff, with the assistance of an attorney-advisor, was afforded the opportunity to present and review evidence and to be heard at every step of the process. *See supra* at pp.5-8. His dissatisfaction with the outcome and conclusory allegations about the process are plainly insufficient to demonstrate the kinds of clear irregularities suggestive of bias.

* * *

For all of the above reasons, Plaintiff's erroneous outcome claim should also be dismissed on the ground that his allegations do not "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 35 F.3d at 715; *see also B.B.*, 2018 WL 2316342,

at *5-7; *Doe v. Columbia Univ.,* 551 F. Supp. 3d 433, 468-69 (S.D.N.Y. 2021) (relying on same procedural irregularities analysis for both Title IX erroneous outcome elements).

### B.    Plaintiff's Title IX Selective Enforcement Claim Fails

To succeed on his "selective enforcement" claim, Plaintiff must show that "regardless of [his] guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by [his] gender." *Yusuf*, 35 F.3d at 715. Plaintiff's claim fails on two independent grounds. *First*, like his erroneous outcome claim, this claim requires a showing of gender bias—which, as explained above, Plaintiff has failed to allege. That defect alone defeats his claim.

*Second*, in addition to gender bias, a selective enforcement claim requires "allegations that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing comparable disciplinary charges—differently." *Prasad v. Cornell Univ.*, No. 15 Civ. 322, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24, 2016) (collecting cases) (citation and alteration omitted); *see also Yusuf*, 35 F.3d at 716 (affirming dismissal of selective enforcement claim where male plaintiff failed to allege that any similarly accused woman was treated differently).

Plaintiff claims that "[he] and Jane Roe were similarly situated male and female students" who were both "reported to have committed sexual misconduct violations against each other." ¶¶ 1022, 1024. But Plaintiff does not allege that he reported a sexual misconduct charge against Jane Roe. Jane Roe, in contrast, reported to a member of Columbia's faculty and to the GBM Office directly that Plaintiff had "gain[ed] unauthorized access to [her] cell phone and sent himself sexually explicit images from Jane Roe's phone to [Plaintiff's] without her knowledge and affirmative consent." ¶ 311. Plaintiff's vague claim that he "gave detailed descriptions and actual evidence of multiple instances of sexual misconduct," ¶ 1031, appears to refer to his contention—made for the first time in response to Jane Roe's report of Sexual Exploitation—that Jane Roe "harass[ed]" him at her party by pleading with him to "take sexy photos of [her]" and purportedly

sending him the Explicit Images, ¶¶ 185-189. Plaintiff does not allege that he ever formally reported those allegations or otherwise expressed a desire to bring a complaint on that basis against Jane Roe—something he clearly knew how to do, as evidenced by his Retaliation complaints against both Jane and Mack Roe. *See* ¶¶ 574-576. Accordingly, Plaintiff and Jane Roe were not similarly situated. This failure to "identify a single instance in which [the University] treated a similarly situated female" student differently is fatal to Plaintiff's selective enforcement claim. *Doe v. NYU*, 438 F. Supp. 3d at 182.

## II.    Plaintiff Fails to State an ADA Claim

The ADA "require[s] a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an undue hardship on the operation of its program, or fundamentally alter the nature of the service, program, or activity." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186-87 (2d Cir. 2015) (citations and quotation marks omitted). To establish a *prima facie* ADA violation, Plaintiff must allege "(1) that []he is a qualified individual with a disability; (2) that [Columbia is] subject to [the ADA]; and (3) that []he was denied the opportunity to participate in or benefit from [Columbia's] services, programs, or activities, or was otherwise discriminated against by [Columbia], by reason of [his] disability." *Id.* (citations and quotation marks omitted).

Plaintiff's allegations here again fall short. First, Plaintiff fails to allege that he is a qualified individual with a disability. "In order to show that he has a disability, Plaintiff must demonstrate that he (1) has a physical or mental impairment that substantially limits his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Tew v. Town of Stony Point*, No. 22 Civ. 6148, 2023 WL 6146651, at *8 (S.D.N.Y. Sept. 20, 2023). Plaintiff's conclusory allegation that "[he] is a qualified individual with a disability within the meaning of the ADA," ¶ 1041, does not suffice. *See, e.g.*, *Tew*, 2023 WL 6146651, at *8 ("Because

Plaintiff has failed to allege what disability he suffers from, . . . Plaintiff has not sufficiently alleged a claim under the ADA."); *Schwartz v. Comex*, No. 96 Civ. 3386, 1997 WL 187353, at *2 (S.D.N.Y. Apr. 15, 1997) (dismissing ADA claim where plaintiff alleged that he suffered from "paranoid thought disorder," but failed to describe how that limited him). This deficiency alone is fatal to his ADA claim.

Additionally, Plaintiff fails to plausibly allege that he was denied any opportunity or benefit by reason of his disability, including by not alleging that he was denied any reasonable accommodation. *See Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 88 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (noting that under the ADA, an institution "is only required to make a reasonable accommodation"). Here, Plaintiff does not identify what accommodation he requested, reasonable or otherwise. He vaguely alleges only that he made a request that was not provided. ¶¶ 1044, 1046; *see Ortiz*, 761 F. Supp. 3d at 701 (dismissing pro se ADA claim that failed to "provide factual allegations supporting [the] claim").

## III.    Plaintiff Fails to State a Title VI Claim

Title VI prohibits racial discrimination in programs receiving federal funds. 42 U.S.C. § 2000d. In certain circumstances, a federally funded educational institution may be liable for discrimination under Title VI "when it has been 'deliberately indifferent' to teacher or peer harassment of a student." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664-65 (2d Cir. 2012). To plead a Title VI deliberate indifference claim, a plaintiff must plausibly allege (1) "substantial control [by the school] over both the harasser and the context in which the known harassment occurs"; (2) "harassment [that is] severe, pervasive, and objectively offensive and discriminatory in effect," such that the plaintiff was "depriv[ed] of educational benefits or opportunities"; (3) "actual knowledge" of the harassment; and (4) "deliberate indifference" to the harassment. *Id.* at 665-67 (citation and quotation marks omitted).

Plaintiff's Title VI claim fails in multiple respects. As an initial matter, Plaintiff has not alleged that he was "depriv[ed] of educational benefits or opportunities" due to the purported harassment. *Zeno*, 702 F.3d at 665-67. Plaintiff's conclusory claim that Mack Roe's comment "adversely affected [his] enjoyment of educational opportunities at Columbia," ¶ 1058, is insufficient to plead a deprivation of educational benefits or opportunities. *See, e.g.*, *Cain v. Mercy Coll.*, No. 21-824, 2022 WL 779311, at *1 (2d Cir. Mar. 15, 2022) (pro se plaintiff's conclusory allegations did not "state a plausible claim of discrimination" under Title VI); *McCrudden v. E-Trade Fin. Corp.*, No. 13 Civ. 8837, 2014 WL 3952903, at *3 (S.D.N.Y. Aug. 12, 2014) ("A plaintiff alleging discrimination [under Title VI] 'must do more than recite conclusory assertions.'" (quoting *Yusuf*, 35 F.3d at 713)).

Plaintiff also fails to allege actual knowledge of any purported harassment. It is axiomatic that to bring a deliberate indifference claim, the school "must know of the harassment." *Zeno*, 702 F.3d at 666. Specifically, "the plaintiff must establish that a school official with authority to address the alleged discrimination had actual knowledge . . . of the discrimination," *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 638 (E.D.N.Y. 2013), and the "complaint to school officials must be specific regarding the nature of the harassment," *Sutton v. Stony Brook Univ.*, No. 18 Civ. 7434, 2021 WL 3667013, at *8 (E.D.N.Y. Aug. 18, 2021), *aff'd*, No. 21-2055, 2022 WL 4479509 (2d Cir. Sept. 27, 2022). Although Plaintiff offers the general allegation that he "reported the racial coercion and harassment by Mack Roe to Columbia," ¶ 1060, he does not allege when or how such a report was made, or to whom, and therefore fails to establish actual knowledge on the part of Columbia.

## IV.    Plaintiff's NYCHRL Claim Should Be Dismissed

If the Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over Plaintiff's remaining NYCHRL claim. *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*,

*Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). In any case, Plaintiff's claim that "Columbia's actions were based upon impermissible discrimination based on [Plaintiff's] gender, disability, and race and therefore violated the [NYCHRL]," ¶ 1070, fails as a matter of law, for substantially the same reasons as his other claims.

To plead a claim under the NYCHRL, a plaintiff must allege facts giving rise to an inference of discrimination on the basis of a protected characteristic. *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 23 Civ. 01932, 2024 WL 3849192, at *19 (S.D.N.Y. Aug. 16, 2024). Here, for the reasons discussed in Section I.A above, Plaintiff fails to allege discriminatory intent on the basis of gender, so his NYCHRL gender discrimination claim fails. Plaintiff also fails to allege direct racial discrimination by Columbia, or that Columbia had knowledge of the alleged harassment by another student and yet refused to act, so his NYCHRL race discrimination claim fails as well. *See* Section III; *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Doe v. Columbia*, 2022 WL 3666997, at *12. Finally, Plaintiff fails to allege that he has a disability or that he was denied a reasonable accommodation, so his NYCHRL disability discrimination claim fails too. *See* Section II; *Missick v. City of New York*, 707 F. Supp. 2d 336, 354 (E.D.N.Y. 2010).

## CONCLUSION

For the foregoing reasons, Columbia respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety and with prejudice.

Respectfully submitted,

Dated:   May 16, 2025                By: _____

New York, New York

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

*Counsel for Defendant The Trustees of Columbia University in the City of New York*

26

## CERTIFICATE OF COMPLIANCE

I, Anna Collins Peterson, hereby certify that this memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and Rule 4(c)(ii) of Your Honor's Individual Rules and Practices in Civil Cases because it contains 8,466 words and 25 pages, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

Dated: May 16, 2025            */s/ Anna Collins Peterson*
       New York, New York          Anna Collins Peterson

                                      *Counsel for Defendant The Trustees of*
                                      *Columbia University in the City of New York*