# EXHIBIT A

# Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students

## STUDENT CONDUCT AND COMMUNITY STANDARDS



## COLUMBIA UNIVERSITY
### IN THE CITY OF NEW YORK

# GENDER-BASED MISCONDUCT AND
# INTERIM TITLE IX POLICIES AND PROCEDURES FOR STUDENTS
# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

SCOPE OF THE POLICY AND PROCEDURES.........................................................5

GENDER-BASED MISCONDUCT POLICY AND INTERIM TITLE IX POLICY FOR
STUDENTS ("POLICIES") ........................................................................................9

IMPORTANT INFORMATION FOR BOTH POLICIES ..............................................9

DEFINITIONS OF MISCONDUCT UNDER EACH POLICY .........................................9

PROHIBITED CONDUCT UNDER THE GENDER-BASED MISCONDUCT POLICY .................10

PROHIBITED CONDUCT UNDER THE INTERIM TITLE IX POLICY...........................15

IMPORTANT POLICY-RELATED CONCEPTS ........................................................17

SCENARIOS.........................................................................................................22

RESOURCES FOR STUDENTS (Confidential and Non-Confidential) ....................................25

PROCEDURES FOR RESPONDING TO STUDENT MISCONDUCT UNDER THE
GENDER-BASED MISCONDUCT AND INTERIM TITLE IX POLICIES
("PROCEDURES") ................................................................................................29

REPORTING MISCONDUCT .................................................................................29

RIGHTS AND RESPONSIBILITIES DURING THE GENDER-BASED MISCONDUCT AND
TITLE IX DISCIPLINARY PROCESS .......................................................................33

WHEN A REPORT IS MADE: CASE MANAGEMENT; SUPPORTING AND INTERIM MEASURES;

AND INITIAL ASSESSMENT ..................................................................................38

AVAILABLE OPTIONS FOR THE RESOLUTION OF REPORTS UNDER THE GENDER-BASED

MISCONDUCT POLICY AND INTERIM TITLE IX POLICY.........................................46

SANCTIONS AND OTHER REMEDIES ...................................................................79

APPEAL PROCESS ...............................................................................................82

UNIVERSITY RECORDS ......................................................................................84

UNIVERSITY AUTHORITY/AMENDMENTS ..........................................................87

APPENDICES.......................................................................................................87

Revised September 30, 2021

# I.    INTRODUCTION

Columbia University, Barnard College, and Teachers College[1] are committed to fostering an environment that is free from gender-based discrimination and harassment, including sexual assault and all other forms of gender-based misconduct. The University recognizes its responsibility to increase awareness of such misconduct, prevent its occurrence, diligently investigate reports of misconduct, support students and others who experience gender-based misconduct, and respond fairly and firmly when students violate University policy. The University is also committed to supporting students accused of gender-based misconduct who go through the disciplinary process. In addressing issues of gender-based misconduct, all members of the University must respect and care for one another in a manner consistent with our deeply held academic and community values.

The Policies[2] set out here reflect the University's commitment to a safe and non-discriminatory educational environment, consistent with Title IX, the Violence Against Women Act ("VAWA"), and New York State Education Law 129-B. They define gender-based misconduct and explain Title IX,

highlight available resources for students, and set procedures for addressing gender-based misconduct involving students.

***

In May 2020, the U.S. Department of Education issued new regulations for colleges and universities that address sexual assault and other gender-based misconduct. These regulations cover certain specific forms of gender-based misconduct.

To comply with these regulations, the University has revised its existing policy for those types of misconduct (the "Title IX Policy"). In addition, the University maintains the "Gender-Based Misconduct Policy" for other types of gender-based misconduct that are not covered by the new regulations. Both policies are important to creating and supporting a University community that rejects all forms of gender-based misconduct.

***

Under both the Gender-Based Misconduct Policy and the Interim Title IX Policy, the University remains committed to diligently investigating reports of misconduct, supporting students and others who experience gender-based misconduct, and responding

---

[1] For the purposes of this Policy and Procedures, the term "University" includes Columbia University and Teachers College. Barnard College has its own Policies and Procedures, available at: https://barnard.edu/cares/nondiscrimination-and-title-ix/respond that apply when a Barnard student is a Respondent. In cases where a Barnard student is the Complainant and a Columbia or Teachers College student is

the Respondent, Columbia's Gender-Based Misconduct Policy and Procedures apply. When these Policies and Procedures refer to just one of the institutions, the names Columbia, Barnard, and/or Teachers College are used. See "Scope of the Policy and Procedures" on page three for more information.
[2] References to "Policy" throughout this document encompass the policy and the procedures associated with that policy.

fairly and firmly when students violate University policy.

The University's Gender-Based Misconduct Policy and the Interim Title IX Policy and Procedures are administered by Student Conduct and Community Standards ("SCCS" or the "Office") under the leadership of the Vice President of Student Affairs and the Title IX Coordinator.

## A. An Orientation to Title IX and the Two University Policies: The Gender-Based Misconduct Policy and the Interim Title IX Policy

This section provides information about Title IX and an orientation to the University's two policies: the Gender-Based Misconduct Policy and the Interim Title IX Policy. Students and others who file a report or complaint of gender-based misconduct need not designate which Policy applies to their case. Student Conduct and Community Standards as well as the Title IX Coordinator[3] are available to assist with any questions and are responsible for determining which policy *applies*.

## B. Title IX and the new Federal regulations

Title IX of the Educational Amendments Act of 1972 ("Title IX") is the federal law that prohibits sex discrimination by any educational institution that receives federal funding. This law has been interpreted by courts and the U.S. Department of Education to require colleges and universities to take certainly steps to prevent and respond to sexual harassment, sexual assault and other gender-based misconduct.

On May 19, 2020, the U.S. Department of Education issued an updated set of regulations under Title IX that:

- Defines "sexual harassment" to include certain forms of sexual assault and other sex-based misconduct. This definition limits Title IX's coverage in sexual harassment cases (hostile work or educational environment) to those involving misconduct that is "severe, pervasive and objectively offensive,"

- Addresses how higher education institutions that receive federal funding (including Columbia University) **must** respond to reports of misconduct falling within that definition of sexual harassment, and including certain forms of sexual assault and other sex-based misconduct occurring in specified locations and falling within the educational program and activities of the University, and sets out a detailed grievance process that higher education institutions (including Columbia University) must follow when investigating, adjudicating and imposing sanctions in such cases. These new regulations cover some occurrences of sexual assault and other gender-based

---

[3] Any references to the Title IX Coordinator may also include a Designee.

misconduct. They do not cover all of the types of misconduct or places in which misconduct occurs that Columbia believes must be addressed in keeping with our own non-discrimination commitment and our obligations under state and local law.

For this reason, the University now has two policies: the Interim Title IX Policy that addresses cases covered by the new regulations, and the Gender-Based Misconduct Policy that addresses gender-based misconduct not covered by the new regulations.

***

If you have experienced, witnessed, or become aware of conduct that may violate the University's Gender-Based Misconduct Policy or the Interim Title IX Policy, the University encourages you to report those allegations promptly. Although the University does not limit the time for submitting a report, prompt reporting increases the University's ability to investigate and respond effectively to complaints of misconduct.

Students and others who file a report or complaint need not designate which set of policies applies to their case. Student Conduct and Community Standards as well as the Title IX Coordinator are available to assist with questions and are responsible for determining which policy applies.

## C. Important Principles about Gender-Based Misconduct
**(These apply to both the Gender-Based Misconduct Policy and the Interim Title IX Policy.)**

Here are several important principles to note about gender-based misconduct:

- Sexual harassment, sexual assault, sexual exploitation, gender-based harassment, stalking, domestic violence, and dating violence are all forms of gender-based misconduct. In some instances, behavior that is not sexual in nature can be considered gender-based misconduct.

- Gender-based misconduct can occur between strangers or acquaintances, or people who know each other well, including between people involved in an intimate or sexual relationship.

- Gender-based misconduct can be committed by anyone regardless of gender identity, and it can occur between people of the same or a different sex or gender.

Most fundamentally, the University does not tolerate any form of gender-based misconduct. Students who experience gender-based misconduct are encouraged to seek assistance, report the incident, and engage the University processes set out in this document. Those found responsible will be sanctioned in accordance with these Policies. Students who experience gender-based misconduct can also

pursue criminal and civil processes, in addition to or instead of the University's process.

These Policies are part of the University's multifaceted approach toward eliminating gender-based misconduct in our community, which includes: (1) educational programs; (2) services and resources for those affected by gender-based misconduct; (3) accessible, prompt, and fair methods of resolution of reports of misconduct, including investigations; and (4) protections designed to prevent recurrence.

## D. Overview of Contents

This document first specifies prohibited conduct under each of the Policies, the Gender-Based Misconduct Policy and the Interim Title IX Policy, and then provides illustrative scenarios, which may be helpful in understanding the range of gender-based misconduct addressed by the Policies. It then describes available resources for students.

The section on Procedures discusses reporting options, rights and responsibilities of students engaged in the disciplinary process, campus resources, and the measures and accommodations that may be available in particular cases to support and assist students. The Procedures also spell out available options for resolving reports of gender-based misconduct under each of the Policies, as well as students' rights throughout the processes set out here.

The last section includes the New York State Students' Bill of Rights and a comprehensive listing of resources available to students affected by gender-based misconduct, including phone numbers, campus locations and websites.

\*\*\*

Please note: If alleged misconduct meets the definition of prohibited conduct under the Interim Title IX Policy, the University must apply that Policy and related Procedures (known formally as the Interim Title IX Investigation and Hearing) when investigating and adjudicating a complaint that could potentially result in a disciplinary sanction. If the alleged misconduct does not meet that definition, it will be investigated and adjudicated, with sanctions imposed if necessary, under the University's Gender-Based Misconduct Policy and related Procedures. More information on both policies and procedures can be found in the definitions and resolutions sections of this document.

**Nothing in the Policies or Procedures set out here shall be construed to interfere with protected rights, including First Amendment and Due Process rights, as well as any other rights guaranteed against government action by the U.S. Constitution.**

**In addition, nothing in the Policies or the Procedures shall be construed to abridge academic freedom and inquiry, principles of**

free speech, or the University's educational mission.

## II. SCOPE OF THE POLICIES AND PROCEDURES

This section describes the two policies and the circumstances in which each applies, and the scope of the procedures that accompany each Policy. (Information related specifically to the Interim Title IX Policy is contained within the blue boxes.) Here, you can also find information about how to report gender-based misconduct. The following section provides definitions of gender-based misconduct.

### A. Interim Title IX Policy

The Interim Title IX Policy ("Title IX") applies to gender-based misconduct that meets all the following criteria:

- Affects a current University student or active alum[4] and involves an allegation of misconduct by a current student or active alum

- Occurs: (1) on any University-owned property in the United States; (2) in connection with any University program, activity, or recognized student organization (including fraternities and sororities); or (3) in a location, at an

event, or under circumstances over which the University exercises substantial control over the accused student or alum and the surrounding context (including field placements).

- Involves allegations of sexual harassment (hostile work or educational environment) that would be considered "severe, pervasive and objectively offensive" under the Title IX regulations adopted in May 2020.

---

[4] For the purposes of this Policy, an active alum is defined as a graduate of Columbia's undergraduate or graduate degree-granting programs (non-certificate programs) with an intent to participate in one or more of Columbia's alumni-specific groups or associations, or a person who graduated from a Columbia's undergraduate or graduate degree-granting program within the six months prior to reporting an allegation of misconduct to the University through the procedures outlined in this policy. This definition applies to references to "alum" or "active alum" throughout this document.

## B. Gender-Based Misconduct Policy

The Gender-Based Misconduct Policy governs certain gender-based misconduct involving University students[5] that:

- occurs on or off any University campus or in connection with University programs or activities;

- creates a hostile environment for University students; or

- involves an accused person who is a current undergraduate, graduate, or professional school student at the University.

Distinct from the Interim Title IX Policy, the Gender-Based Misconduct Policy applies to alleged misconduct that occurs off campus, including outside of the United States; involves Complainants who are unaffiliated with the University; or misconduct that is unwanted, even if the conduct would not be considered "severe, pervasive and objectively offensive" under the May 2020 Title IX regulations.

\*\*\*

Both of the Policies apply regardless of a person's gender, gender identity, gender expression, sex, sexual orientation, age, race, nationality, class status, religion, disability, pregnancy, predisposing genetic characteristics, military status, criminal convictions, domestic violence status, familial status, or other protected status.[6]

## C. Procedures

The Procedures that accompany these Policies describe how to report any incident of gender-based misconduct, whether the prohibited behavior falls under the Gender-Based Misconduct Policy or the Interim Title IX Policy. These Procedures also include the potential resolution option(s) that are available when the person accused of misconduct is a current undergraduate, graduate, or professional school student at the University, including students on leave of absence and those actively pursuing degree requirements regardless of current registration status.[7]

---

[5] For the purposes of this Policy, a student is defined as any person pursuing a degree from the University, or who has an academic relationship with the University starting from the time of application and including those who are not officially enrolled for a particular semester.

For information about policies applicable to elementary and secondary school students enrolled in University programs, and other information regarding minors on Columbia's campus please visit: http://policylibrary.columbia.edu/protection-minors-columbia-reporting-suspected-abuse-and-maltreatment-minors.

For information regarding minors on Teachers College's campus please visit: http://www.tc.columbia.edu/policylibrary/public-

safety/minors---policies-and-guidelines-for-the-supervision-of-minor-children-on-campus.

[6] For the purposes of this Policy, references to he/she also include they and any other preferred pronouns.

[7] Consistent with the "Questions and Answers on the Title IX Regulations on Sexual Harassment" released by the U.S. Department of Education's Office for Civil Rights on July 20, 2021, generally, we will seek to apply the definition of prohibited conduct in place at the time of the alleged conduct, but will apply the current procedures (i.e. the processes set forth in the current Gender Based Misconduct Policy or the Interim Title IX Policy). The University does reserve the right to make appropriate adjustments to promote fairness and consistency. The parties will be notified in advance of any proceedings which definition(s) and procedures apply.

## D. How to Report Prohibited Title IX Conduct

<u>If you believe you have been subjected to, witnessed, or have otherwise learned of sexual harassment or other gender-based misconduct, including conduct that may be prohibited by the Gender-Based Misconduct Policy or the Interim Title IX Policy, you can make a report online, in person, by mail, e-mail, or phone. All reports filed online will be automatically forwarded to the Title IX Coordinator or a designee for review.</u>

Online reporting:

https://studentconduct.columbia.edu/, or https://sexualrespect.columbia.edu/

e-mail, phone and postal information for Title IX Coordinators and Deputy Title IX Coordinators:

Title IX Coordinators at Columbia University, Barnard College, and Teacher's College:

- **Marjory Fisher**, Title IX Coordinator
  Columbia University
  e-mail: titleix@columbia.edu
  Phone: 212-843-1276
  Mailing Address: Kent Hall

- **Dr. Elizabeth Scott-Francis**, Director of Nondiscrimination and Title IX, Barnard College
  e-mail: escottfrancis@barnard.edu
  Phone: 212-854-0037
  Address: Elliott Hall, First Floor (Barnard)

- **Janice S. Robinson**, Title IX Coordinator and Vice President for Diversity and Community Affairs
  Teachers College
  e-mail: jsr167@tc.columbia.edu
  Phone: 212-678-3391
  Address: 128C Zankel Hall

Deputy Title IX Coordinators

- **Colleen Walsh**, Senior Director of Investigations, Student Conduct and Community Standards
  Columbia University
  e-mail: studentconduct@columbia.edu
  Phone: 212-854-6872
  Address: 612 West 115th Street, 8th floor

- **Jazmin Taylor**, Director of Investigations and Deputy Title IX Coordinator, Faculty and Staff Concerns
  Columbia University
  e-mail: eoaa@columbia.edu
  Phone: 212-854-5511
  Address: 103 Low Library, MC 4333

If the accused person is affiliated with the University, but is not a student or active alum for the purposes of these Policies, different procedures may apply as described here:

If the accused person is a Columbia employee (including faculty and staff) or other person doing business with Columbia, please see Columbia's Equal Opportunity and Affirmative Action website: https://eoaa.columbia.edu/ for applicable policies and procedures addressing gender-

based misconduct and romantic and sexual relationships with undergraduate and graduate students. Alternatively, please contact the Director of Investigations and Deputy Title IX Coordinator, Faculty and Staff Concerns (see above for contact information).

If the accused person is a Barnard student, Barnard employee, or other person doing business with Barnard College, the processes described by the Barnard College Nondiscrimination & Title IX Office apply.

If the accused person is a Teachers College employee or other person doing business with Teachers College, the processes described in the Teachers College Policy and Procedures on Protection from Discrimination and Harassment apply.

*Note:* *While these Policies and the Procedures identify the University office or employee who will typically perform certain roles or duties, the University may designate other University offices or employees to perform any roles or duties described in the Policies or Procedures. The University may also, in its sole discretion, assign appropriate non-employees to perform any roles or duties described in the Policies or Procedures.*

*Nothing in any of the Policies and Procedures described throughout this document prevents a Complainant from seeking the assistance of state or local law enforcement in addition to or instead of any on-campus process.*

# III. GENDER-BASED MISCONDUCT POLICY AND INTERIM TITLE IX POLICY FOR STUDENTS ("THE POLICIES")

## A. Important Information about Prohibited Conduct and Affirmative Consent for both Policies

### Introduction

Gender-based misconduct includes a broad range of behaviors focused on sex and/or gender that may or may not be sexual in nature.

Misconduct under the Gender-Based Misconduct Policy and the Interim Title IX Policy can occur between strangers, acquaintances, or people who know each other well, including people involved in a romantic relationship. It can be committed by anyone regardless of gender identity, and can occur between people of the same or a different sex or gender. One form of prohibited conduct can occur separately from or simultaneously with another form of prohibited conduct.

Before defining specific forms of prohibited conduct, this section provides important basic information about consent, non-consensual conduct, and gender-based misconduct. Behaviors prohibited by any University policy may be reviewed through this process when the conduct is sufficiently linked to prohibited conduct under the Gender-Based Misconduct Policy or the Interim Title IX Policy.

As detailed below, consensual sexual conduct requires affirmative consent. New York State law defines affirmative consent as a knowing, voluntary and mutual decision among all participants involved. Any non-consensual sexual conduct is gender-based misconduct.

More specifically:

- Sexual conduct that is coerced or forced is not consensual.

- A person cannot give consent if they lack the ability to make or understand the decision because of disability, as a result of the level of consumption of alcohol or drugs, or if they are unwillingly restrained.

- A sleeping or unconscious person cannot give consent.

- The use of alcohol or drugs does not justify or excuse gender-based misconduct and never makes someone at fault for experiencing gender-based misconduct.

## B. Definitions of Misconduct under each Policy

This section sets out definitions of misconduct under the Gender-Based Misconduct Policy and then under the Interim Title IX Policy. To determine whether alleged conduct is prohibited under any of the definitions below, the standard applied is whether a reasonable person would consider the alleged conduct to

fall within that definition. Please see Section C below for definitions of additional policy-related concepts.

## C. Prohibited Conduct Under the Gender-Based Misconduct Policy

It is a violation of the University's Gender-Based Misconduct Policy to commit the following acts:

### Sexual Assault: Penetration

Any form of vaginal, anal, or oral penetration, however slight, by a penis, object, tongue, or finger without a person's affirmative consent.

### Sexual Assault: Contact[8]

Any sexual contact, including sexual touching for the purpose of sexual gratification of either Party, without a person's affirmative consent. Sexual touching includes contact under or over clothing with the breasts, buttocks, genitals, groin or inner thigh, or touching another with any of these body parts; making another person touch any of these body parts under or over clothing; or the emission of ejaculate on the clothing or body of another person without that person's consent.

### Domestic Violence

The use of physical violence, coercion, threats, isolation, stalking, or other forms of emotional, psychological, sexual, technological, or economic abuse directed toward (1) a current or former spouse or intimate partner; (2) a person with whom one shares a child; or (3) anyone who is protected from the Respondent's acts under the domestic or family violence laws of New York. Domestic violence can be a single act or a pattern of behavior, depending on the frequency, nature, and severity of the conduct.

*Examples of this type of violence include hitting, kicking, punching, strangling, or other violent acts, including violence or threats of violence to oneself under certain circumstances, violence or threats of violence to one's partner, or the family members, friends, pets, or personal property of the partner.*

### Dating Violence

The use of physical violence, coercion, threats, isolation, stalking, or other forms of serious emotional, psychological, sexual, technological, or economic abuse directed toward a person who is or has been in a social relationship of a romantic or sexually intimate nature with the victim. Dating violence can be a single act or a pattern of behavior in relationships.

*Examples of this type of violence include hitting, kicking, punching, strangling, or other violent acts, including violence or threats of violence to oneself under certain circumstances, violence or threats of violence to one's partner, or the family*

---

[8] This definition encompasses a range of sexual conduct that could also fit within the Policy definition of Sexual Harassment. The Gender-Based Misconduct Office, in consultation with the appropriate Title IX Coordinator(s), will determine whether the allegation(s) should be treated as Sexual Assault: Contact or Sexual Harassment, depending on the specific conduct and surrounding circumstances of the allegation(s).

*members, friends, pets, or personal property of the partner.*

## Sexual Exploitation

Non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage, or any other illicit purpose. Acts of sexual exploitation include, but are not limited to:

- Non-consensual streaming, sharing, or distribution of images, photography, video, or audio recording of sexual conduct, nudity, or state of undress when and where there is a reasonable expectation of privacy, without the knowledge and affirmative consent of all participants;

- Explicitly threatening to stream, share, or distribute images, photography, video or audio recording of sexual conduct, nudity, or state of undress when and where there is a reasonable expectation of privacy, without the affirmative consent of all participants, for the purpose of inducing or compelling someone to engage in sexual conduct against their will;

- Observing, photographing, videotaping, or making any other visual or audio recording of sexual conduct or nudity or state of undress when and where there is a reasonable expectation of privacy, without the knowledge and affirmative consent of all participants;

- Exposing one's genitals in non-consensual circumstances; or

- Inducing incapacitation for the purpose of making another person vulnerable to gender-based misconduct.

## Stalking

A course of unwanted attention that is repeated or obsessive, directed toward an individual or a group and that is reasonably likely to cause alarm, fear or substantial emotional distress. Stalking may take many forms, including but not limited to lying in wait for, monitoring, or pursuing contact. Stalking may occur in person or through telephone calls, text messages, unwanted gifts, letters, e-mails, surveillance, or other types of observation and communication.

## Gender-Based Harassment

Gender-based harassment can occur if a person is harassed either for exhibiting what is perceived as a stereotypical characteristic of their gender or for failing to conform to stereotypical notions of masculinity or femininity, and that harassing conduct unreasonably interferes with a person's education or participation in educational programs or activities, or creates an intimidating, hostile, demeaning, or offensive academic, campus, or living environment.

The following describes some conduct that may be gender-based harassment:

- Acts of aggression, intimidation, stalking, or hostility based on gender or gender stereotyping; or

- Threats or non-consensual disclosure of a person's gender identity (i.e. "outing").

For more information regarding "hostile environment," see the next page.

### Sexual Harassment

Unwelcome sexual advances, requests for sexual contact, and other verbal, physical, or visual conduct of a sexual nature constitute sexual harassment when:

- Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's academic, co-curricular, or student life activities;

- Submission to or rejection of such conduct by an individual is used as the basis for academic evaluation, grades, advancement or participation/status in student life activities (i.e. "quid pro quo"). Quid pro quo sexual harassment can occur whether a person resists and suffers the threatened harm, or a person submits and avoids the threatened harm, and can occur even if the person delays in reporting the harm;

- Such unwelcome conduct is intentional, serves no legitimate purpose, and involves contact with parts of another individual's body that may cause that person to feel degraded or abused;

- Such unwelcome conduct is for the purpose of gratifying the actor's sexual desire; or

- Such unwelcome conduct has the effect of unreasonably interfering with a student's education or participation in educational programs or activities or such conduct creates an intimidating, hostile, demeaning, or offensive academic, campus, work or living environment.

The following describes some of the acts that may be sexual harassment:

- Unwelcome conduct of a sexual nature, such as intentional and non-consensual physical contact which is sexual in nature, including touching, pinching, patting, grabbing, poking, or brushing against another person's intimate body parts;

- Unwanted sexual advances, propositions or other sexual comments, such as: (1) subtle or obvious pressure for unwelcome sexual activities; or (2) sexually oriented gestures, noises, remarks, jokes or comments or questions about a person's sexuality or sexual experience which are sufficient to create a hostile environment;

- Threats or non-consensual disclosure of a person's sexual orientation (i.e. "outing"); or

- Displaying pictures, posters, calendars, graffiti, objects, promotional material, reading materials, or other materials that are sexually demeaning or pornographic in nature and which are sufficient to create a hostile environment.

## "Hostile Environment" in the Context of Sexual and Gender-Based Harassment

A hostile environment may arise when unwelcome conduct of a sexual or gender-based nature unreasonably interferes with a student's ability to participate in or benefit from an education program or activity, or creates an intimidating, threatening, demeaning, or offensive academic, campus, work or living environment.

In evaluating whether there is evidence of a hostile environment, the University will consider the totality of the known circumstances from the point of view of a reasonable person, including but not limited to:

- The frequency, nature and severity of the conduct;

- Whether the conduct was physically threatening;

- The effect of the conduct on the Complainant's mental or emotional state;

- Whether the conduct was directed at more than one person;

- Whether the conduct arose in the context of other discriminatory conduct; and

- Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities.

- Whether the unwelcome conduct constituted more than "petty slights or trivial inconveniences."

A single, isolated incident of sexual or gender-based harassment may, based on the facts and circumstances, create a hostile environment. The more serious the conduct, the less need there is to show a repetitive series of incidents to demonstrate a hostile environment.

## Retaliation

Any adverse action or threatened action, taken or made, personally or through a third-party, against someone who has reported a gender-based misconduct complaint (a Complainant) or has been the subject of a gender-based misconduct complaint (a Respondent) or any other individual (a witness, third-party Reporter or advisor, etc.) because the individual engages with the Office and/or the disciplinary process.

- All individuals and groups of individuals, not just a Respondent or Complainant, are prohibited from engaging in retaliation. Retaliation can refer to actions or threatened actions by any individual, including students and others who are not engaged with the Office.

- Retaliation includes threatening, intimidating, coercing, discriminating, harassing, or any other conduct that would discourage a reasonable person from seeking services; receiving measures and

- 13 -

accommodations; reporting gender-based misconduct; or participating in the disciplinary process as a Complainant, Respondent, witness, third-party reporter or advisor.

- Retaliation includes maliciously or purposefully interfering with, threatening, or damaging the academic or professional career of another individual, before, during or after the resolution of a report of gender-based misconduct under this Policy.

- Nothing in the Policy prevents an individual from discussing their experience from their perspective.

- Reports of gender-based misconduct made in good faith, even if the allegations are ultimately determined to be inaccurate, are not considered retaliation.

Reports that are intentionally false or found to have been made in bad faith may constitute retaliation and/or may be considered by the Sanctioning Officer if an individual is otherwise found responsible for a violation of the Policy. For example, retaliation could include a threat of falsely reporting the Complainant or witnesses of gender-based misconduct to deter them from participating in an imminent or pending gender-based misconduct process.

Retaliation may also include violations of a no-contact directive and/or other supportive measures, in conjunction with any of the behavior described above, during the course of an investigation.

- If the alleged retaliation occurs between the Complainant and the Respondent while a matter is pending, these allegations may be investigated separately through the Dean's Discipline process and/or, if deemed appropriate by the Title IX Coordinator or designee, folded into the pending investigation, based on the circumstances of the allegations.

- Allegations of retaliation by other Parties, i.e., not between the Complainant and the Respondent, will be investigated separately when the allegations involve gender-based misconduct. Any other allegations of retaliation will be investigated and adjudicated through the Dean's Discipline process.

## D. Prohibited Conduct Under the Interim Title IX Policy

Behaviors that meet the definition of prohibited conduct under the Interim Title IX Policy must be investigated, adjudicated and reviewed under the Interim Title IX Policy, even if those behaviors also violate the Gender-Based Misconduct Policy.

### Title IX - Sexual Harassment

The Interim Title IX Policy uses the definition of "sexual harassment" set out in the Title IX regulations issued in May 2020:

Sexual Harassment includes any conduct on the basis of sex that involves:

- An employee conditioning educational benefits on participation in unwelcome sexual conduct (i.e., quid pro quo);

- Unwelcome conduct that a reasonable person would determine is so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the educational institution's education program or activity.

The following behaviors also fall within the Title IX regulations' definition of sexual harassment and are applied in this Interim Title IX Policy:

### Title IX - Sexual Assault

As required by the May 2020 Title IX regulations, the definition of Title IX Sexual Assault used in the University's Interim Title IX Policy incorporates the definitions of the FBI's Uniform Crime Reporting (NIBRS) program, as follows:

- Rape:[9]

    - The carnal knowledge of a person (i.e., penile-vaginal penetration), without the consent of that person, including instances where the person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity.

    - Oral or anal sexual intercourse (i.e., penile penetration) with another person, without the consent of that person, including instances where the person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity.

---

[9] Both completed rape and attempted rape are prohibited by this policy.

- 15 -

- To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of that person, including instances where the person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity. An "object" or "instrument" is anything used by the offender other than the offender's penis.

- Fondling: The touching of the private body parts of another person for the purpose of sexual gratification, without the consent of that person, including instances where the person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity (for purposes of this definition, "private body parts" includes breasts, buttocks, or genitals, whether clothed or unclothed).

- Statutory Rape: Sexual intercourse with a person who is under the statutory age of consent. In New York, the age of consent is 17 years old.

## Title IX - Dating Violence

Any violence committed by a person:

- who is or has been in a social relationship of a romantic or intimate nature with the victim; and

- where the existence of such a relationship shall be determined based on a consideration of the following factors:

  - The length of the relationship;

  - The type of relationship; and

  - The frequency of interaction between the persons involved in the relationship.

## Title IX - Domestic Violence

Any felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabited with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under New York's domestic or family violence laws or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of New York.

Note: *The regulations rely for this definition on a federal law known as the Violence Against Women Act (VAWA) amendments to the Clery Act. For more information, see [Violence*

- 16 -

*Against Women Reauthorization Act of 2013, 42 U.S.C. §§ 13701 (2013)].*

## Title IX - Stalking

Engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

- fear for their safety or the safety of others; or
- suffer substantial emotional distress.

For purposes of this definition—

- Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.
- Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim.
- Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

Note: *The regulations rely for this definition on a federal law known as the Violence Against Women Act (VAWA) amendments to the Clery Act. For more information, see [Violence*

*Against Women Reauthorization Act of 2013, 42 U.S.C. §§ 13701 (2013)].*

## E. Important Policy-Related Concepts

Concepts outlined in this section apply to matters of gender-based misconduct under both Policies, except where a red asterisk (*) and a blue box indicates a concept that applies only in cases where an allegation meets the definition of prohibited conduct under the Interim Title IX Policy.

**Complainant:** The person making the allegation(s) of gender-based misconduct.

**Cross-Complaint:** In some cases, each person makes allegations of policy violations by the other. This is called a "cross-complaint." In the event of a cross-complaint, the Parties will be referred to as Party A and Party B instead of as "Complainant" and "Respondent." Each Party will have all of the same rights and be subject to the same procedures that apply to Complainants and Respondents. Cross-complaint allegations will be investigated and resolved simultaneously, other than in exceptional circumstances or at the discretion of the Investigative Team when that approach will create an undue delay.

*****Cross-Examination:** During a hearing to resolve an allegation of misconduct under the Interim Title IX Policy, each Party's advisor is permitted to ask the other Party and any witnesses relevant questions, including those

challenging an individual's credibility or reliability. This questioning will be monitored by the Hearing Chair and is restricted by rules regarding relevance. Such questioning must be conducted directly, orally, and in real time by the Party's advisor and never by a Party personally.

**\*Educational Program or Activity:** This includes locations, events, or circumstances over which the University exercises substantial control over both the Respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University, including fraternities and sororities. As required by the May 2020 Title IX regulations, this does not include educational programs or activities outside of the United States.

**Party:** Complainants and Respondents are sometimes referred to as Parties. A "Party" is someone who is directly involved in a proceeding. Others, such as witnesses and advisors, are not considered Parties. In a case where the Title IX Coordinator signs and files a complaint, the Title IX Coordinator is not a "Party."

**\*Relevance:** Questions asked in a hearing must be relevant to the allegations and the

response to those allegations. The basic test for relevance is whether the question asks for information that might help prove or disprove facts related to whether the Respondent has committed the alleged misconduct.

**Respondent:** The person alleged to have committed gender-based misconduct.

**\*Title IX Formal Complaint:** A document that contains allegations of conduct prohibited by the Interim Title IX Policy and that requests that the University initiate a resolution process. Even without a Title IX Formal Complaint, the University may have an obligation to respond promptly, including by offering supportive accommodations to a student who may have experienced prohibited conduct.

\*\*\*

The definitions that follow provide additional guidance regarding the prohibited conduct previously discussed.

**Affirmative Consent:** Affirmative consent is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity.

- Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. It is important

- 18 -

not to make assumptions about consent. If there is confusion or ambiguity, participants need to stop sexual activity and communicate about each person's willingness to continue.

- Consent cannot be procured by the use of physical force, compulsion, threats, intimidating behavior, or coercion.

- Consent cannot be obtained from, or given by, a person who is incapacitated.

- Consent to one form of sexual activity does not imply consent to other forms of sexual activity.

- Consent to engage in sexual conduct with one person does not imply consent to engage in sexual conduct with another person.

- Silence or the lack of resistance, in and of itself, does not demonstrate consent. Again, it is important not to make assumptions; if confusion or ambiguity arises during a sexual interaction, it is essential that each participant stops and clarifies the other's willingness to continue engaging in the sexual conduct.

- Consent can be withdrawn at any time, including after it is initially given. When consent is withdrawn or can no longer be given, sexual activity must stop.

- Previous relationships or previous consent for sexual activity is not consent to sexual activity at another time. However, established patterns of consent in a specific relationship may be considered when evaluating whether affirmative consent was given on a particular occasion.

- Accepting a meal, a gift, or an invitation to socialize, including on dating apps, does not imply or constitute consent to sexual activity.

- The definition of consent does not vary based on a participant's sex, sexual orientation, gender identity, gender expression or relationship status.

**Coercion:** Coercion is verbal and/or physical conduct, including intimidation and explicit or implied threats of physical, emotional, or other harm, that would reasonably place an individual in fear of immediate or future harm and that is used to compel someone to engage in sexual conduct against their will.

- Coercion is more than an effort to persuade, entice or attract another person to engage in sexual conduct. When a person makes clear that they do not want to participate in a particular form of sexual conduct, that they want to stop or that they do not want to go beyond a certain type of sexual conduct, continued pressure can be coercive if it would reasonably place an individual in fear of immediate or future harm.

- In evaluating whether coercion was used, the frequency, duration and intensity of the other person's verbal or physical conduct or threats are all relevant, as is the degree of

confinement or isolation to which the person was subjected. Coercion may be evidenced by an interaction that can reasonably be interpreted as indicating that a Party will be harmed or restrained if they do not engage in sexual conduct.

**Intimidation:** Intimidation is any threat of violence or other threatening behavior directed toward another person or group that reasonably leads the target(s) to fear for their physical well-being or to engage in sexual conduct for self-protection. A person's size alone does not constitute intimidation; however, a person can use their size or physical power in a manner that constitutes intimidation (for example, by blocking access to an exit).

**Force:** Force refers to the use or threat of physical violence to compel someone to engage in sexual activity. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking, strangulation and/or brandishing or using any weapon.

**Incapacitation:** Incapacitation occurs when an individual lacks the ability to knowingly choose to participate in sexual conduct. A person who is incapacitated cannot make a rational, reasonable decision because the person lacks the ability to understand his or her decision.

- Incapacitation may be associated with a person lacking consciousness; being asleep; being involuntarily restrained; or having a disability that impedes consent. *Under New*

*York State law, a person under the age of 17 lacks the capacity to give consent.*

- Whether sexual conduct with an incapacitated person constitutes gender-based misconduct depends on whether the Respondent knew or should have known of the Complainant's incapacitation, based on objectively and reasonably apparent indications when viewed from the perspective of a sober, reasonable person in the Respondent's position.

- Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent. See the following for additional information on how drugs and alcohol can affect consent.

### How drugs and alcohol affect consent

- The use of alcohol or other drugs is never an excuse for committing gender-based misconduct and never diminishes anyone's responsibility to obtain informed and freely given consent.

- The use of alcohol or other drugs never makes someone at fault for experiencing gender-based misconduct.

- The impact of alcohol and other drugs varies from person to person and there is no specific amount of alcohol or drugs consumed that leads to incapacitation.

In evaluating whether a person is incapacitated due to the consumption of alcohol, drugs or

- 20 -

intoxicants, the following factors will be considered:

- Whether the Complainant understood the "who, what, when, where, why or how" of the sexual conduct; and

- How the Complainant was physically affected by the consumption of alcohol or drugs, which may include, but is not limited to, warning signs such as having slurred or incomprehensible speech, vomiting, unsteady gait, imbalance, bloodshot eyes, combativeness, emotional volatility, or notable change in personality.

Because the impact of alcohol and other drugs varies from person to person, the amount of alcohol and/or drugs a person consumes will not ordinarily be sufficient, without other evidence, to prove that they were incapacitated under this Policy.

Another effect of alcohol consumption can be memory impairment, or forgetting entire or partial events (sometimes referred to as "black-out" or "brown-out"). A person may experience this symptom while appearing to be functioning "normally," including communicating through actions or words that seem to express an interest in engaging in sexual conduct. Whether sexual conduct with a person who is "blacked-out" constitutes gender-based misconduct depends on the presence or absence of the observable factors that would indicate to a reasonable, sober person a person is also incapacitated, as described above. Total or partial loss of memory, without more, is insufficient to demonstrate incapacitation.

The use of alcohol or drugs can create an atmosphere of confusion and can lower inhibitions. All students should be aware of, and carefully consider, the potential consequences of the use of alcohol or drugs, and of the potential consequences of engaging in sexual activity when anyone involved in the activity may have been affected by alcohol or drugs. Every individual is responsible for ensuring there is mutual, affirmative consent prior to engaging in sexual conduct regardless of whether their judgment may be impaired by the use of alcohol or drugs.

## F. Scenarios

The following scenarios help illustrate some applications of the Policy:

Pat and Dana met at a party. They spent the entire party getting to know each other and dancing. Dana had four shots of tequila and four beers over the course of the evening. At one point, Dana went to the bathroom and Pat noticed that Dana stumbled when walking back into the room. Dana's friend told Pat that Dana had been vomiting. Pat volunteered to take Dana home. When they arrived at Dana's room, Pat began kissing Dana and proceeded to have sex with Dana. When Dana woke up in the morning, Dana asked Pat what happened that evening. Pat told Dana that they had sex and that Dana had asked to have sex.

*Pat having sex with Dana while Dana may have been incapacitated could be a violation of the Interim Title IX Policy, depending upon where the incident happened. If it happened on campus, in a dorm room or University apartment, this could be a violation of the Interim Title IX Policy. If it happened at an off-campus location or outside of the United States, including on a study abroad program, it could be a violation of the Gender-Based Misconduct Policy. A reasonable person could have concluded that Dana was incapacitated due to her alcohol use because Pat saw Dana stumbling and knew Dana had vomited in the bathroom. Dana was therefore not able to give consent.*

Taylor and Hong have been dating for a few months. On several occasions, Taylor and Hong have engaged in consensual sexual intercourse. One night in Taylor's off-campus apartment, Hong and Taylor were making out when Hong said, "I don't feel like having sex tonight." Taylor continued to kiss Hong and took off Hong's clothing despite Hong's verbal and physical objections. Eventually, Hong became silent and submitted to Taylor's insistence to have sex.

*Taylor did not have Hong's consent to engage in sexual intercourse, which is a violation of the Gender-Based Misconduct Policy. (The Gender-Based Misconduct Policy applies because this happened in an off-campus location.) Hong objected to having sex and Taylor ignored these objections. Although Taylor and Hong have previously had consensual sexual intercourse, Hong did not consent to sexual conduct on this particular evening. In addition, Hong's silence does not imply that Hong consented.*

Peyton and Jordan were in the hallway of their residence hall with a group of their neighbors on the floor, joking around and telling stories. Peyton placed his arms around Jordan's waist as they continued their conversation and then touched Jordan's breasts. Jordan removed Peyton's hands from her body. A few minutes later, Peyton stated he did not understand why Jordan was making such a big deal about Peyton touching her.

*Jordan did not consent to Peyton's sexual touching, which includes contact under or over clothes. Peyton's behavior constitutes intentional physical contact of a sexual nature without affirmative consent - a violation of the Interim Title IX Policy because this contact took place in a Columbia University residence hall.*

Kai and Lee met at an off-campus location and quickly realized they were both Columbia students. Lee asked Kai for their number and suggested that they meet for lunch on campus. A few hours later, Lee began to call and text Kai, asking Kai out on a date. Kai told Lee repeatedly that they are not interested and did not want to date them. After that, Lee found Kai's campus address and began to send cards and flowers to Kai's room. Kai wrote to Lee after the first card arrived and asked Lee to leave them alone. Then Lee waited for Kai outside of their class to invite them to dinner.

*Lee's repeated contact with Kai is stalking. Because this happened on campus, it is a violation of the Interim Title IX Policy. Kai declined Lee's multiple requests to go on a date. Additionally, Kai asked Lee to leave them alone and to stop visiting their dorm.*

Melissa and Joe are married and live in off-campus housing. After a stressful meeting with his advisor concerning his dissertation, Joe came back to the apartment and berated Melissa about the apartment being messy. Joe grabbed the dinner that Melissa ordered and threw it in her direction, though he did not hit her. When Melissa tried to leave the apartment, Joe grabbed her by the wrist. In the struggle to get away from Joe, Melissa fell and hit her head on the table.

*Joe's actions are domestic violence. This is a violation of the Gender-Based Misconduct Policy which applies to conduct off campus. Any use or threat of physical violence toward a domestic partner or spouse constitutes domestic violence.*

Bette and Tina had been dating for a few months. Tina, an aspiring photographer, asked Bette to pose in the nude for her portfolio. Bette and Tina got into an argument regarding Tina's photography. Shortly after they broke up, a mutual friend informed Bette that Tina had posted Bette's nude photographs on Facebook.

*This is a violation of the Gender-Based Misconduct Policy. The use and distribution of photographs of another person's unclothed body or body parts, without permission, regardless of whether they originally consented, is sexual exploitation.*

Noam and Xiang have been dating for a couple weeks. On several occasions, Noam and Xiang have engaged in consensual sexual intercourse with a condom. One night, Noam asked Xiang to have sex without a condom, and Xiang said no. Noam and Xiang began having consensual intercourse with a condom, but Noam removed the condom without Xiang's knowledge ("stealthing").

*Noam removing the condom while having sex with Xiang is a violation of either the Gender-Based Misconduct Policy or the Interim Title IX Policy. The location is unclear and would determine which Policy applies.*

*Xiang consented to sex with a condom. Contrary to Xiang's wishes, and knowing that Xiang would not have consented and did not consent to penetration without a condom, Noam deliberately removed the condom without Xiang's knowledge.  This act would be prohibited under both policies because Noam did not have affirmative consent from Xiang to engage in this type of sexual interaction.*

## G. Resources for Students

### Immediate Assistance

The University encourages all students affected by gender-based misconduct to seek assistance. Seeking assistance promptly may be important to ensure a student's physical safety or to obtain medical care, emotional support, or other support. It may also be necessary to preserve evidence, which can assist the University and/or law enforcement in responding effectively. Assistance is available twenty-four hours a day, 7 days a week, throughout the year. The Resource listing at the end of this document provides contact information for the campus and community resources available to help.

### Confidentiality, Privacy, and Mandatory Reports

The University values the privacy of its students, employees, and other community members. Community members should be able to seek the assistance they need without fear that the information they provide will be shared more broadly.

The May 2020 Title IX regulations provide that universities must maintain as confidential any supportive accommodations provided to a Complainant or Respondent, to the extent that maintaining such confidentiality would not impair the ability of the institution to provide the supportive accommodations. The regulations also provide that universities must keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness, but the regulations also make exceptions for disclosure of information to conduct an investigation or hearing under the Interim Title IX Policy. The regulations also allow for disclosures that are permitted by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g, or FERPA regulations, 34 CFR part 99, or as required by law, or to carry out the purposes of the Title IX regulations, including the conduct of any judicial proceeding arising under those regulations.

Some resources on campus are confidential and will not share any identifying information with others, except as required by law in emergency circumstances.

Other resources are not confidential, but will protect students' privacy to the greatest extent possible and share information with other staff only on a need-to-know basis. This includes the Title IX Coordinator(s) and any Deputy or Designee of the Title IX Coordinator, who are required by federal law to address allegations of discrimination and to institute corrective measures if they receive a report or information that may indicate a violation of the Interim Title IX Policy. Other "non-confidential" resources include faculty and most staff

(including Teaching Assistants, coaches and students employed by the University and acting in an official capacity, such as Resident Advisors),[10] who are required by the University to provide relevant information about gender-based misconduct complaints to Student Conduct and Community Standards or the Title IX Coordinator. Staff within SCCS, in consultation with the appropriate Title IX Coordinator(s), are responsible for connecting students with supportive resources and working to ensure community safety.

Appendix B includes a chart summarizing the confidentiality obligations of different categories of University employees with respect to reports of gender-based misconduct. Any of the staff listed as a Resource will be able to explain their reporting obligations in more detail.

### Confidential Resources

Confidential resources on campus include: Sexual Violence Response, Clergy, Counseling and Psychological Services (Morningside), Mental Health Services (CUIMC), Disability Services, the Ombuds Office, and Healthcare Providers.[11]

*Students may use these resources even if they decide not to make a report or participate in University disciplinary proceedings or the criminal justice process.*

University advocates, counselors, clergy, disability services professionals, the Ombuds Office staff, and healthcare providers can provide students with immediate and long-term help. Conversations with them are confidential, except in certain emergencies as described in the Resources list in Appendix B.

They will listen, help students to access additional assistance if needed, and explain options for obtaining additional support from the University and others. They can also arrange for medical care or accommodations and accompany students, or arrange for someone to accompany students, to seek such care. These individuals are familiar with the University's disciplinary process, can explain what to expect, and provide support while disciplinary or criminal processes are pending.

### Additional Resources (Non-Confidential)

#### Student Conduct and Community Standards ("SCCS" or "The Office")

SCCS supports and provides assistance to students affected by gender-based misconduct, whether they are a Complainant or a Respondent. The Office does not act as an advocate, and is a neutral resource available to all students. The Office refers students to available resources, offers appropriate protections, and is responsible for investigating and adjudicating or otherwise resolving reports of gender-based misconduct involving students, and coordinating the disciplinary

---

[10] At Teachers College, responsible employees also include instructional and administrative employees.

[11] The Teachers College Office of Access and Services for Individuals with Disabilities is not a confidential resource.

process when necessary. The Office can provide support and assistance immediately following an incident, throughout the disciplinary process, and throughout a student's time at the University. Contact information for SCCS is in the Resources listing following the Procedures.

Equal Opportunity and Affirmative Action ("EOAA")

When alleged misconduct involves allegations of misconduct by an employee, Equal Opportunity and Affirmative Action in partnership with a SCCS case manager will support students and ensure that they understand their rights within the EOAA Policy and, if necessary, through the investigation process.

Title IX Coordinators

The Title IX Coordinators for Columbia and Teachers College are responsible for overseeing the University's compliance and response to Title IX reports and complaints, and identifying and addressing any patterns or systemic problems revealed by such reports and complaints. The Title IX Coordinators also oversee the administration of these Policies and the Procedures in a neutral and equitable manner. Columbia's Title IX Coordinator also participates in the investigation of complaints as needed.

Separately, there is a Title IX Coordinator for Barnard College. The Title IX coordinators from Barnard, Columbia, and Teachers College will work collaboratively when students from different institutions are involved in the disciplinary process. Contact information for the Title IX Coordinators is in the Resources listing following the Procedures.

Deputy Title IX Coordinators and Designees

Deputy Title IX Coordinators assist with the oversight of the University's compliance and response to the Gender-Based Misconduct Policy and misconduct under the Interim Title IX Policy.

The Title IX Coordinator may also appoint Designees to receive and respond to reports, provide policy education, or offer supportive accommodations. Designees include Case Managers and Title IX Investigators in the Student Conduct and Community Standards office.

Law Enforcement

Students may report gender-based misconduct to the New York City Police Department (by telephone, 1-212-267-7273), the Manhattan District Attorney's Office, the New York State Campus Sexual Assault Victim's Unit, (https://troopers.ny.gov/campus-sexual-assault-victims-unit) or the local law enforcement agency where the misconduct occurred if the misconduct occurred outside of New York City. The University and criminal justice systems work independently from one another. Law enforcement authorities do not determine whether a violation of this Policy has occurred, and the criminal justice system uses

different standards related to proof and evidence. SCCS may need to temporarily delay an investigation while law enforcement is gathering evidence, generally no longer than 10 days[12], except when law enforcement specifically requests and justifies a longer delay. The Office will resume the investigation after learning that law enforcement no longer requires a delay or has completed the evidence-gathering stage of their investigation. The Office is not required to wait for the conclusion of any related criminal proceeding to begin or continue its process. If either Party declines to participate in the University's review of an allegation due to a concurrent criminal investigation, a statement submitted by the Party after the disciplinary process has concluded will not be considered "new evidence" for the purpose of appeal.

The University does not require a Complainant to report gender-based misconduct to law enforcement; however, the University Resources listed later in this document are available to assist a Complainant with contacting law enforcement. Any questions about criminal law violations should be addressed to law enforcement.

The University's Public Safety personnel, Columbia's Title IX Coordinator and members of SCCS are familiar with New York City and New York State law enforcement processes, and can help to explain and connect students to those processes.

Confidential support resources and other resources listed also can explain how to report sexual assault and other forms of gender-based misconduct to law enforcement.

Confidential support resources or University Public Safety personnel can also accompany any student requesting support to the Police Department or District Attorney's Office. They cannot serve as a substitute for legal advice on these matters.

---

[12] Any reference to "days" in this Policy and these Procedures refers to business days.

# IV. PROCEDURES FOR RESPONDING TO STUDENT MISCONDUCT UNDER THE GENDER-BASED MISCONDUCT AND THE INTERIM TITLE IX POLICIES (PROCEDURES)[13]

Here you can find information about the University's disciplinary process for addressing alleged violations of the Gender-Based Misconduct Policy and the Interim Title IX Policy.

This section first describes how to report an incident of gender-based misconduct; students' rights and responsibilities in the disciplinary process; and other important background information about privacy, advisors, and time frames. It then details the various options available for resolving reports of gender-based misconduct, under both the Gender-Based Misconduct Policy and Interim Title IX Policy.

## A. Reporting Misconduct

The University encourages students to report gender-based misconduct as soon as possible to maximize the University's ability to respond promptly and effectively. Students may meet with SCCS staff to learn more about the process before making a report or providing

additional information about a previously filed report.

The University recognizes that students may be most comfortable disclosing gender-based misconduct to a University employee they know well, such as a faculty member, coach, or resident advisor. These individuals and other University personnel – including officers of administration and research, library staff, staff who work directly with students including advising, residential program and student affairs staff, and teaching assistants and resident advisors -- are required to report the incident to the Office, either directly or through the appropriate Title IX Coordinator(s) or a designee.

Before a student reveals information about an incident, these individuals will try to ensure that the student understands their reporting obligations. If a student wants to maintain confidentiality and has not disclosed information about an incident, these individuals will seek to direct the student to the University's confidential resources.

Confidential resources, such as counseling staff, Disability Services staff, and staff from Sexual Violence Response, are not obligated to report disclosures of gender-based misconduct except for aggregate statistical data that does not include individuals' names or identifying information. They will not share identifying

---

[13] Columbia University's Equal Opportunity and Affirmative Action office is responsible for employee Discrimination & Harassment Policies.

information with SCCS about a student or an incident without the student's permission, except under exigent circumstances as required by law.

### Requesting Confidentiality in Connection with a Report to Student Conduct and Community Standards

A student who reports gender-based misconduct to the Office can request that the Office not disclose their identity to anyone else, including the person who allegedly committed the misconduct. While such a request may limit the University's ability to address the reported misconduct, the Office, in consultation with the appropriate Title IX Coordinator(s), will consider the request and honor it whenever possible. Considerations that are taken into account include: the Complainant's articulated concerns; the best interests of the University community; fair treatment of all involved individuals, including the Respondent's right to have specific notice of the allegations if the University were to take action that affects the Respondent; and the University's obligations to provide a safe and non-discriminatory environment for all students. The Office will promptly notify the student whether the University will be able to honor their request for anonymity.[14]

Regardless of whether the University is able to grant a request to keep the student's identity

confidential, University personnel will not reveal information about reported gender-based misconduct except to those who need to know in order to carry out their duties and responsibilities. In all cases, the University will take appropriate steps designed to counteract the effects of the alleged gender-based misconduct, prevent its recurrence, provide support and implement appropriate supportive accommodations for the students involved. This may include academic, residential, and work accommodations for University employment (see "Supportive and Interim Measures" section); increased monitoring, supervision or security at locations or in connection with activities where the alleged misconduct occurred; and training and educational materials for the campus community. If there is reason for concern about possible retaliation or harm, the University will take measures in consultation with the affected students.

If a Complainant desires only supportive accommodations (see Supportive Accommodations and Interim Measures), the University will, consistent with regulations described above, make every effort to keep the Complainant's identity confidential (including from the Respondent), unless disclosing the Complainant's identity is necessary to provide certain supportive accommodations for the Complainant (e.g., where a no-contact

---

[14] If the complaint falls into the category addressed by the Interim Title IX Policy, and the Complainant wishes to submit a Title IX Formal Complaint, the Complainant's name must

be shared with the Respondent in the formal notification to the Respondent.

directive is appropriate and the Respondent would need to know the identity of the Complainant in order to comply with the no-contact directive or campus security is informed about the no-contact directive in order to help enforce its terms).

## Other Information about Reporting

### Time for Reporting

There is no time limit for submitting a report of gender-based misconduct, under either the Gender-Based Misconduct Policy or the Interim Title IX Policy. However, the University's ability to investigate and respond effectively diminishes with the passage of time.

Additionally, the timing of a report to the Office may affect the University's ability to implement sanctions on a Respondent found responsible for a violation of Policy. For example, if a Respondent is not a student at the time the report is made, the University is limited in the action it can take. It will still seek to meet its Title IX obligations by providing support for a Complainant and taking steps to end the prohibited conduct, prevent its recurrence, and address its effects.

### Title IX Formal Complaint

A Title IX Formal Complaint is a submission by a Complainant, including via e-mail, online, or in other writing alleging that a current student or active alum has engaged in conduct that violates the Interim Title IX Policy and requesting that the University initiate a resolution process, investigate the allegation, or initiating an investigation. The Title IX Formal Complaint must contain the Complainant's physical or digital signature, or other indication that the Complainant is the person submitting the Complaint.

Making a report to the University or meeting with someone from the Office or the Title IX Coordinator to talk about a situation or incident does not automatically launch a formal investigation or constitute a Title IX Formal Complaint. It is, however, an important first step in alerting the University to an issue and getting assistance in resolving an issue or incident.

If the Office or the Title IX Coordinator receives a report alleging misconduct under the Interim Title IX Policy, a Case Manager or the Title IX Coordinator will meet with a Complainant to discuss and explain the options for resolution.

Students may choose to submit a report and receive supportive accommodations without submitting a Title IX Formal Complaint or being involved in an investigative process or any other resolution process under the Interim Title IX Policy.

### Reports from Others and Anonymous Reports

In cases where gender-based misconduct is reported to the Office by someone other than the student who was subjected to the alleged misconduct (for example, a faculty member,

Resident Advisor, friend or roommate), the Office will promptly notify the student that a report has been received. The Policies will apply in the same manner as if the student had made the initial report. The Office will make every effort to meet with the student to discuss available options and on-campus and off-campus resources.

Reports from anonymous sources will be treated in a similar fashion. Due to the nature of anonymous complaints, action by the Office in response to an anonymous complaint may be more difficult and, at times, impossible.

Related Alcohol and Drug Violations (Amnesty)

The health and safety of every student at the University is of utmost importance. The University recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that gender-based misconduct occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. Because the University strongly encourages students to report gender-based misconduct to University employees, the following provision applies: A student (including a bystander), acting in good faith, who discloses any incident of gender-based misconduct to a University employee or law enforcement will not be subject to subsequent disciplinary action by the University for violations related to the possession or use of alcohol and/or drugs occurring at or near the time of the gender-based misconduct, whether use and/or possession is intentional or accidental. This does not apply to those who use alcohol or drugs as a weapon or to facilitate assault.

In an effort to encourage students to make honest disclosures during the course of the disciplinary process, statements related to the use of alcohol or drugs during the reported incident(s) will also fall under this amnesty Policy provision unless, as explained above, the alcohol or drugs were being used to facilitate gender-based misconduct.

Unknown/Non-University Offenders

The University will review reports of incidents affecting University students and active alumni that involve persons who are not members of the University community or whose identity is not known, and take appropriate actions to protect the affected Parties and others in the University community. Without knowing the identity of a perpetrator, action by the University may be more difficult and, at times, impossible. Regardless, the Office will assist in identifying appropriate campus and other resources and assist them with reasonable accommodations and other supportive accommodations.

Public Awareness Events

The University supports public awareness events such as "Take Back the Night," the Clothesline Project, candlelight vigils, protests, survivor speak outs, and other forums and

advocacy meetings that help inform the need for campus-wide education and prevention efforts. In accordance with federal guidance and New York State law, the disclosure of incidents of gender-based misconduct at such events, forums and meetings is not considered a report to the University for the purposes of prompting an investigation of a particular incident.

## B. Rights and Responsibilities During the Gender-Based Misconduct and Interim Title IX Disciplinary Processes

The University disciplinary process provides accessible, prompt, and fair methods of addressing reports of student gender-based misconduct to all Parties. Both the New York State Students' Bill of Rights (Appendix A) and the University's process give the Complainant and the Respondent the following rights, explained in the subsequent sections.

The New York State Students' Bill of Rights includes rights:

- To respect, dignity, and sensitivity;

- To appropriate support from the University;

- To privacy to the extent possible consistent with applicable law and University policy;

- To information about the University's Gender-Based Misconduct Policy and Procedures for Students;

- To the presence of an advisor throughout the process;

- To participate or to decline to participate in the disciplinary process (however, a decision not to participate in the process either wholly or in part may not prevent the process from proceeding with the information available);

- To a prompt and thorough review of the allegations;

- To adequate time to review documents following an investigation;

- To adequate time to prepare for a hearing;

- To an opportunity to challenge Investigator(s) or Hearing/Appellate Panel member(s) for a possible conflict of interest in cases involving an investigation and Hearing/Appellate Panel;

- To refrain from making self-incriminating statements;

- To an appeal of the decision made by the Hearing Panel and of any sanctions imposed by the Sanctioning Officer in cases involving an investigation and Hearing Panel;

- To notification, in writing, of the case resolution, including the outcome of any appeal, where applicable;

- To report the incident to law enforcement at any time; and

- To understand that information collected in the process may be subpoenaed in criminal or civil proceedings.

Additionally, specific rights and responsibilities are afforded to students whose cases are investigated and adjudicated under the Interim Title IX Policy, as outlined in section "Interim Title IX Policy Investigation and Hearing Procedure."

## Privacy

The University will only reveal information about any report of gender-based misconduct to those who need to know the information in order to carry out their duties and responsibilities or as otherwise provided by law. It will inform all University affiliates, including students, faculty and staff participating in a disciplinary process, that they are expected to maintain the privacy of the process.

Complainants and Respondents may seek the assistance of family members, friends, counselors, therapists, clergy, doctors, attorneys, or similar resources; the Parties are not prevented from discussing the incident(s) that are the subject of the disciplinary process.

## Advisors

The Complainant and the Respondent, respectively, may be accompanied to any meeting or hearing by one advisor of their choice who may be, but does not have to be, an attorney, through the course of the disciplinary process. Witnesses or others involved in the disciplinary process are not permitted to bring another person to any meeting or hearing, absent an approved disability accommodation.

Advisors may support the student and provide advice during the disciplinary process. Parties are expected to maintain the same, single advisor throughout the process but are not required to bring their advisor to all meetings. Retaining a single, consistent advisor enables the process to move forward in an efficient fashion. In the event that a student wants to change their advisor, they must provide written notice to their Case Manager.

During meetings and hearings, the advisor may talk quietly with the student or pass notes in a non-disruptive manner. The advisor may not intervene in meetings with SCCS. In addition, while advisors may provide guidance and assistance throughout the process, all written submissions must be authored by the student.

When the chosen resolution option is investigation and adjudication, an advisor may address the Investigative Team during an investigative interview to seek clarity, however these interactions should be limited.

- During the Gender-Based Misconduct Hearing Panel Procedure, the advisor may not directly address the Hearing Panel, nor may they submit evidence, directly question witnesses or make verbal or written objections.

- During the Interim Title IX Hearing Procedure, the advisor is permitted to ask questions of the Parties through the cross-examination process.

SCCS and University administrators will communicate directly with the student. It is the student's responsibility to communicate with their advisor, including but not limited to information related to process updates, except in cases where the University is otherwise required to communicate directly with an advisor as outlined by the May 2020 Title IX regulations.

Additionally, while efforts will be made to accommodate the schedules of students and advisors, the process will not be unduly delayed due to an advisor's unavailability.

Advisors will be expected to sign an agreement to abide by these guidelines and others, including the Rules of Decorum (see Appendix C for the Rules of Decorum). If an advisor fails to abide by the guidelines, they may be prohibited from attending ongoing or future meetings, and the student may be required to identify an alternative advisor. The agreement will be provided to the student and their advisor when the student requests an advisor or notifies their Case Manager that they have an advisor.

A Complainant or Respondent may choose to have an attorney serve as their advisor while engaging with these Policies when the matter under review is: (1) an allegation of Gender-Based Misconduct and the chosen resolution option is an investigation and adjudication; or

(2) an allegation of misconduct under the Interim Title IX Policy. University students and, in cases under the Interim Title IX Policy, active alumni, may retain counsel at their own expense, or request that the University arrange for an attorney-advisor. If a Party makes that request, the University will provide an attorney-advisor at no cost to the Party, from a predetermined pool of trained attorney advisors.[15] Once an attorney-advisor is assigned by the University, the student may not request a different attorney-advisor from the University, but may independently select another advisor at the student's expense; if that occurs, the attorney-advisor originally provided by the University will withdraw from that role. If a Complainant or Respondent requests a University-provided attorney-advisor, the Office will notify the other Party and upon request arrange for an attorney-advisor for the other Party.

### Declining to Participate

The Complainant and/or Respondent may decline to participate in any investigation, adjudication, and/or any step of this process and any subsequent appeal. However, SCCS will make multiple efforts to engage their participation and may continue the process without the Complainant's and/or Respondent's participation, if able and permitted under applicable law and University policy. Declining to participate in an

---

[15] The University will arrange for an attorney-advisor for a student in matters when an investigation will occur. For matters that begin with restorative justice, mediation, or administrative resolution, the student may bring their advisor of choice, but a University-appointed attorney-advisor will not be provided.

investigation may preclude a Complainant or Respondent from participating in the adjudication process, including the ability to submit new information to a Hearing Panel or Appellate Panel. The Complainant or Respondent may always submit an impact statement at the sanctioning stage, if applicable, without regard to earlier participation in the process. Choosing to participate in a limited fashion (e.g. providing a prepared written statement but declining to participate in an interview or answer questions) may similarly limit a student's ability to participate in the adjudication process and/or submit new information to a Hearing or Appellate Panel, if applicable. Additionally, participating in a limited fashion or declining to participate may limit the information that can be formally reviewed and considered or render it impossible for the University to investigate.

If a Party declines to participate in the investigation of an allegation under the Gender-Based Misconduct Policy, the Office will continue to update each Party throughout the process, unless a Party submits a written request to the Office to cease contact. In cases that fall under the Interim Title IX Policy, the May 2020 Title IX regulations require the University to send notifications to each Party throughout the process even if a Party indicates that they do not wish to receive such notifications.

Recurring refusal or failure to respond to outreach by the Office may be interpreted as declining to participate and may preclude or limit participation in later stages of the process that are described on the following pages. Silence or a decision not to participate will not be treated as a negative factor in the investigation, adjudication, or appeal.

## Withdrawal from the Disciplinary Process

A student involved in the disciplinary process may withdraw from participation at any time without penalty. However, the University may, consistent with other provisions of federal and New York State law, still have obligations to investigate and/or take other action. In those instances when the Office, in consultation with the appropriate Title IX Coordinator(s), determines that the University must proceed with an investigation, the Office will notify the appropriate Party that the University intends to initiate or continue an investigation, but that the involved student is not required to participate in the disciplinary process. Students who withdraw from the University while a disciplinary action is pending against them will receive a transcript notation indicating a "withdrawal with disciplinary action pending."

Withdrawing participation before an investigation is complete may preclude a Complainant or Respondent from participating in the remainder of the disciplinary process, including the ability to submit new information to the Hearing Panel or Appellate Panel. The Complainant or

Respondent may always submit an impact statement at the sanctioning stage, if applicable, without regard to earlier participation in the process.

A Party who declines to participate but who wishes to subsequently participate at a later point in the investigation or hearing process, may be permitted to participate subject to the following:

- Their request to participate must be received no later than five (5) business days prior to the scheduled date of the hearing.

- They must be interviewed by the Investigative Team at least five (5) business days prior to a scheduled or rescheduled hearing. The information from this interview will be shared with the other Party and may be referenced during the hearing.

### Time Frames

The University makes every reasonable effort to ensure that complaints are resolved as expediently and efficiently as possible. Many complaints may require extensive review, and time frames will vary depending on the complexity of the investigation and the severity and extent of the alleged misconduct. Additionally, any reference to "days" in these Policies refers to business days.

The Office strives to complete the investigation and adjudication of allegations within 120 days

after the notice of an investigation under the Gender-Based Misconduct process or notice of an Interim Title IX Formal Complaint.

Time frames may be extended for good cause as necessary to ensure the integrity and completeness of the process. The reasons for extension of the time frame also include, but are not limited to: compliance with a request by law enforcement; a limited accommodation of the availability of Parties, their advisors, and witnesses; students on leave; exam periods, school breaks or vacations; and accounting for complexities of a specific investigation, including the number of witnesses and volume of information provided by the Parties.

To enable prompt and efficient resolution of complaints, the Office expects that any individual involved in the disciplinary process will respond to outreach from SCCS within two days. In addition, the Office expects its deadlines to be honored absent extraordinary circumstances. Requests for deadline extensions will be considered on a case by case basis.

The Office will give periodic status updates to the Parties in writing. For more information on case resolution time frames and data, please see the report on Gender-Based Misconduct Prevention and Response, which is published annually.[16]

---

[16] Available at https://studentconduct.columbia.edu/ and https://sexualrespect.columbia.edu.

- 37 -

## Conflicts of Interest or Bias

The University requires any participant in any disciplinary process, including a Complainant, Respondent, Investigator, Hearing Panelist, Sanctioning Officer, or Appellate Officer, to disclose to SCCS any potential or actual conflict of interest. If a Complainant or Respondent believes that any individual involved in the investigation, adjudication, sanctioning or appellate process has a conflict of interest of bias, they must notify the Office. A conflict of interest would include, for example, situations where an individual is a Party's family member, close friend, current or former faculty member, advisor or has other similar relationships with a Party. Additionally, anyone in an investigative or decision-making position in the process may not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent.

A Complainant or Respondent who believes that an Investigator, Hearing Chair or Panelist, Sanctioning Officer, or Appellate Officer has a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent must submit a written request to the Office that the individual not participate in the process. This request must be made within two days after the Office provides notification of the individuals involved in the investigation, sanctioning decision, or panel. Any request should include a description of the conflict. The fact that an individual is the same or different gender, race, etc., of a Party or individual involved in the process is not a conflict and requests for changes in staffing on this basis will not be considered. If the Office determines that an actual or potential conflict of interest or bias exists, the University will take steps to address the conflict in order to ensure an impartial process.

The following do not constitute conflicts of interest or bias under these policies:

- Submission of a complaint or report in any other harassment or discrimination proceeding

- Engagement and facilitation of an investigation in any other harassment or discrimination proceeding

- Employment status or title or previous employment

## C. When a Report is Made: Case Management; Supportive and Interim Measures; and Initial Assessment

SCCS is charged with addressing reports of violations of the Gender-Based Misconduct Policy and the Interim Title IX Policy. The following section details the Office's initial response to and assessment of reports, and available options for resolution, including the investigation and hearing processes.

## Case Management

Case Managers within SCCS support the students who file a complaint and those

responding to an accusation of a Policy violation. When a report is made, the Case Managers are designated by the Title IX Coordinator to promptly contact the Complainant and, when applicable, the Respondent to discuss the availability of supportive accommodations and interim measures, consider the Complainant's wishes with regard to supportive and interim measures, with or without filing a Title IX Formal Complaint, if applicable, and explain the processes available under the Gender-Based Misconduct Policy or the Interim Title IX Policy, depending on the allegations of the case.

Case Managers help Complainants and Respondents to understand their rights and the disciplinary processes within these Policies. Case Managers are also available to receive reports of concern and determine an appropriate response to assist the student.

Case Managers may help to facilitate the following:

- Academic support, including notifying academic advisors regarding missed classes, dropping classes, withdrawal, exam extensions, etc.;

- Referrals to supportive and confidential resources on campus, such as counseling and Sexual Violence Response;

- Emergency housing and/or exploring housing options;

- Referrals to attorney-advisors, where applicable;

- Identification of supportive services on and off campus to meet students' needs;

- Support for navigation of the resolution processes once a report is filed, including through the investigative and hearing process, if applicable; and

- Support throughout the time of a student's enrollment at the University, including after the resolution process has concluded.

In some instances, Case Managers may provide limited support to Complainants who may not be currently enrolled or affiliated with the University to help facilitate appropriate accommodations through off-campus community resources.

## Supportive and Interim Measures

The University can provide supportive accommodations and impose interim measures after a report has been filed. Supportive accommodations and interim measures are non-disciplinary, non-punitive individualized measures designed to support Complainants and Respondents in having equal access to the University's educational programs and activities. They are offered and implemented as appropriate, as reasonably available, and without fee or charge to either Party. They are designed to avoid unreasonably burdening either Party and may include measures designed to protect the safety of all Parties or the University's educational environment, or

- 39 -

deter prohibited conduct. The discussion below provides more information and examples of each.

While the Office may implement interim measures as appropriate and on a case by case basis, Case Managers do not grant accommodations, but conduct outreach and facilitate accommodation requests by connecting students with the appropriate decision-making departments within the University. Any ordinary fees associated with approved accommodations (e.g. housing changes) during the process of resolving an allegation of gender-based misconduct will be waived as applicable.

Supportive Accommodations

The Title IX Coordinator and the Office work with all students to promote their safety and promote their well-being throughout their time at the University, including by helping to secure appropriate supportive accommodations.

Students may request supportive accommodations even in cases where an investigation is not undertaken or either Party has declined to participate in the University disciplinary process.

The Title IX Coordinator and the Office evaluate requests for supportive

accommodations in light of the circumstances and information available at the time of the request. In some instances, additional information may be required to sufficiently evaluate the need or provide for a requested supportive accommodation. If requested accommodations cannot be granted, the Office will provide an explanation, in writing, to the student.

Supportive accommodations may include, but are not limited to:

- Relocation of a student's residence;

- Adjusting a student's work schedule for University employment;

- Changing a student's academic schedule;

- Allowing a student to withdraw from or retake a class without penalty; and/or

- Providing access to tutoring or other academic support.

In consultation with the appropriate Title IX Coordinator(s), the Office will work with students to obtain additional supportive accommodations as necessary. The Office will also work with students who need assistance registering with Disability Services, as appropriate. Students who require support for ongoing health-related accommodations must provide appropriate documentation as required by Disability Services.[17] This may include

---

[17] Disability Services has established guidelines to assist students in providing the required information (https://health.columbia.edu/content/general-guidelines-disability-documentation).

Please refer to specific documentation guidelines for each type of disability. Teachers College students and employees should refer to OASID's guidelines for accommodations at: https://www.tc.columbia.edu/oasid/services/accordion-1/general-registration-

note-taking services for students who are registered with Disability Services as unable to take their own notes due to a disability. The University will provide notice about accommodations only to those who need to know in order to make them effective. Time frames for evaluation and implementation of requested supportive accommodations may vary based on the particular circumstances of a specific request.

A student who has experienced gender-based misconduct may also be entitled to remedies under applicable law, such as an order of protection. While the University cannot impose legal remedies such as an order of protection, the University can assist students in contacting law enforcement or legal service organizations to learn about these remedies and their enforcement.

Interim Measures

The University may also impose interim measures, based on the totality of facts known at the time, to protect the safety of all Parties involved, to prevent the escalation of conflict, and to protect the integrity of the disciplinary process while the process is ongoing. Interim measures include, but are not limited to:

- No-contact directives;

- Restricting a Party's access to campus buildings and/or University property; and

- Moving a student's residence.

If, after undertaking an individualized safety and risk analysis, the University determines that there is an immediate threat to the physical health or safety of any student or other individual arising from the allegations of misconduct, the University may:

- Temporarily suspend a Respondent from specified activities and/or positions of leadership; and

- Temporarily suspend a Respondent from the University.[18]

When such an interim suspension occurs, the University will provide a Respondent with notice and an opportunity to challenge the decision immediately following the suspension.

The imposition of supportive accommodations and interim measures does not indicate that the University has made a final decision about the report of prohibited conduct.

The University will provide notice about these supportive accommodations and interim measures only to those who need to know in order to make them effective.

Failure to comply with interim measures or other directives is a violation of University Policy and may lead to disciplinary action.

***

---

information/NewStudentRegistrationForm.pdf, and at https://www.tc.columbia.edu/oasid/services/accordion-1/general-registration-information/DisabilityDocumentationForm.pdf.

[18] Interim suspensions will be reasonable and tailored to balance the ability of the Respondent to complete their studies with the safety of both the Complainant and the University community at large.

Following the report of a potential Policy violation, the Office will provide written notice to the students involved in the conduct, describing any necessary interim measures and providing information about the supportive accommodations and resources available to them.

Students who are Complainants or Respondents may request a prompt and reasonable review of the need for and terms of any supporting accommodation or interim measure that directly affects them and may submit evidence in support of their request. Requests for review of the supportive accommodation or interim measure must be submitted in writing to the Title IX Coordinator or Designee and will be reviewed within three days upon receipt. Any interim measure(s) implemented will be periodically reviewed, may be revised as appropriate, and may be kept in place after a final decision is reached. Students may appeal an interim measure issued by SCCS to the Title IX Coordinator.

### Initial Assessment of Reports

After receiving a report, the Office will conduct an initial assessment to evaluate whether, if substantiated, the conduct constitutes a violation of the Gender-Based Misconduct Policy or the Interim Title IX Policy and whether there is sufficient information to engage the disciplinary process. The Office will assess the available information, determine if a report is supported or unsupported by any such information, and take any one of the following actions:

- The Office may contact the reporter or the Complainant to collect additional or clarifying information;

- The Office may dismiss the report if it determines that the report does not allege facts that, if substantiated, would constitute a violation of a policy or that the facts as alleged in the report are refuted by evidence or information known to or possessed by the Office;[19]

- The Office may refer the report to another office for review or address the conduct through alternate means, if the Office determines that the report is outside the scope of the Gender-Based Misconduct Policy; or

- The Office will review available options for resolution with the Complainant and Respondent if the Office determines that the report would, if substantiated, constitute a violation of the Policy. These may include, depending on the report, administrative resolution; mediation; restorative justice; or investigation and adjudication. The Office will also determine interim measures and facilitate

---

[19] Additionally, should the Office learn of evidence or information become known to the Office during an investigation that leads the Office to conclude that there is no reasonable basis to engage the disciplinary process, the Office may, in its reasonable discretion and in consultation with the Title IX Coordinator, dismiss the report.

supportive accommodations, as appropriate, and initiate an appropriate resolution process.

Reports of Prohibited Conduct Under the Interim Title IX Policy

When conduct that may violate this Policy is reported, the University must first determine whether the reported conduct would, if proved, constitute sexual harassment as defined in the Interim Title IX Policy.

Students and others can submit reports as described above. ["Reporting Misconduct"]

A formal Title IX Formal Complaint is required for the University to initiate an investigation, seek resolution, and impose sanctions, if applicable, for misconduct covered by the Interim Title IX Policy. SCCS and the Title IX Coordinator are available to assist student with questions about this process.

A Title IX Formal Complaint should provide detailed information, including dates and locations of the incident(s), that may violate the Interim Title IX Policy. If possible, the Title IX Formal Complaint should also include:

- The name and role (e.g., employee, student) of the person filing the complaint and the person(s) accused of misconduct;

- The name and role of any witness(es) to the incident(s) and their telephone numbers, e-mail addresses, and street addresses if known;

- A request that the University respond to the alleged misconduct.

- The individual's physical or digital signature, or another indication that the Complainant is the person submitting the Title IX Formal Complaint. A hard copy document can be submitted by mail or in person. The document should be submitted to the Office or the Title IX Coordinator electronically, by mail, or in person.

Each of these requirements is set out in the May 2020 Title IX regulations.

At the time of filing a Title IX Formal Complaint, a Complainant must be a student or active alum participating in or attempting to participate in the education program or activity of the University. Complainants desiring to initiate an investigation and adjudication through the Interim Title IX Investigation and Hearing procedure cannot remain anonymous, as the May 2020 Title IX regulations require that the identity of each Party be included in the notification to the other Party about the complaint. Reports submitted to the Office that do not identify a Complainant or are submitted anonymously will require the signature of the Title IX Coordinator to initiate an investigation and adjudication

- 43 -

through the Interim Title IX Investigation and Hearing Procedure.

When the Office or the Title IX Coordinator receives a Title IX Formal Complaint, the Office will inform the Complainant and the Respondent of the submission and will provide information about the review process.

If the Title IX Coordinator files a Title IX Formal Complaint in lieu of the Complainant and there is an investigation or other resolution as a result of this Title IX Formal Complaint, written notice of allegations will be sent to both Parties outlining the allegations, and will include the identity of the Parties if known, as required by the May 2020 Title IX regulations. In rare instances, the Title IX Coordinator may determine that an investigation or other resolution process should proceed, even though the written notice of allegations does not include the Complainant's identity. However, if a Complainant still refuses to participate in the resolution process, the University may be severely limited in its ability to address the allegation.

Initial Assessment of Title IX Formal Complaint

After receiving a Title IX Formal Complaint, the Office conducts an initial assessment to evaluate whether, if substantiated, the conduct would violate the Interim Title IX Policy and whether there is a reasonable basis to engage the disciplinary process.

Unless a Formal Complaint initiating an investigation and adjudication under the Interim Title IX Investigation and Hearing Procedure is signed by the Title IX Coordinator, the Office[20] must, in accordance with the May 2020 Title IX regulations, dismiss a Title IX Formal Complaint for Title IX purposes under the following circumstances:

- the alleged misconduct does not meet the Title IX definition of covered Sexual Harassment;

- the alleged misconduct does not arise from a University program or activity, or it is not raised against a person in the US;

Further, the Office may dismiss a Formal Complaint after an investigation under the Interim Title IX Investigation and Hearing Procedure was initiated if:

- the Complainant requests to withdraw the complaint;

- the Respondent does not meet the definition of student or active alum; or

- it is unlikely that the Office would be able to collect sufficient evidence to reach a determination.

---

[20] References to "the Office" in this section refer to actions taken by an individual in the Student Conduct and Community Standards office other than the Title IX Coordinator, as the Title IX Coordinator is responsible for determining appeals of dismissals referenced in this section.

If a complaint is dismissed for Title IX purposes under the Interim Title IX Policy through this initial assessment, the Office will consider whether the Gender-Based Misconduct Policy applies to the allegations. Parties will be provided with a written notice describing the reason(s) for dismissal under the Interim Title IX Policy, and dismissals may be appealed.

Appealing the Dismissal of a Title IX Formal Complaint for Title IX Purposes

If the Office dismisses a Title IX Formal Complaint for Title IX Purposes, the Complainant and the Respondent have the right to appeal the dismissal. This appeal must be addressed to the Title IX Coordinator or a designee and submitted within five (5) business days from the Parties' receipt of the dismissal. The appeal may not exceed three single-spaced typed pages, using 12- point Times New Roman font and one-inch margins. The appeal must meet one or more of the following criteria:

- Procedural Irregularity: An appeal based on procedural irregularity must identify with specificity each alleged irregularity within the consideration of the Complaint and the ways in which each specified irregularity affected the decision to dismiss the complaint; or

- New Information: An appeal based on new information must explain why this information was not available at the time the decision to dismiss the Complaint

was made and how this information could affect the decision to dismiss the Complaint. Information not provided because a Party declined to participate or withdrew from the process cannot be considered new information for the purpose of appeal. This includes situations where a Party declines to participate on the advice of their advisor or due to a concurrent criminal investigation; and/or

- Conflict of Interest/Bias: An appeal based on conflict of interest or bias must explain how any staff including the investigator(s), or any decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally, or the individual Complainant or Respondent, that affected the decision to dismiss the complaint.

After receiving an appeal from one of the Parties, the Title IX Coordinator will inform the other Party and provide a copy of the appeal. The non-appealing Party will have three (3) business days from receipt of the appeal to respond should the Party wish to do so. The response may not exceed three single-spaced, typed pages, using 12-point Times New Roman font and one-inch margins. If both parties appeal, the appeals will be considered concurrently and each Party will have the opportunity to review and respond to the other Party's appeal within three (3) business days.

The Title IX Coordinator will review the appeal and non-appealing Party's response (if provided). Within seven (7) business days of the non-appealing Party's response or the appeal if no response is provided, the Title IX Coordinator will communicate in writing the determination regarding the appeal simultaneously to both Parties. The Title IX Coordinator may take the following actions:

- Uphold the decision to dismiss the Complaint. In such cases, the Office will consider whether the Gender-Based Misconduct Policy applies to the allegations; or

- Reverse the decision to dismiss the Complaint. If the Title IX Coordinator reverses the decision to dismiss, the Complaint will be resolved through one of the methods identified in the next section, "Available Options for the Resolution of Reports of Prohibited Conduct."

The determination of the Title IX Coordinator is final. Failure to meet the deadline for appeal will result in waiver of the right to appeal.

Consolidation of Title IX Formal Complaints

The University may consolidate Title IX Formal Complaints against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one Party against the other Party, where the allegations arise out of the same facts or circumstances.

## D. Available Options for the Resolution of Reports of Prohibited Conduct Under the Gender-Based Misconduct Policy and Interim Title IX Policy

During their initial meeting with a Case Manager and/or Investigator, and again at the conclusion of the initial assessment, relevant options for resolution will be discussed with each Party. Options include: administrative resolution; mediation; restorative justice; or investigation and adjudication.

- The investigation and adjudication of allegations under the Gender-Based Misconduct Policy are reviewed through the Gender-Based Misconduct Investigation and Hearing Panel.

- The investigation and adjudication of allegations under the Interim Title IX Policy are reviewed through the Interim Title IX Investigation and Hearing Procedure.

- Complaints that include allegations of both Gender-Based Misconduct and misconduct under the Interim Title IX Policy will be investigated and adjudicated under the Interim Title IX Investigation and Hearing Procedure.

At any time after a report is filed and before a hearing or procedure is scheduled, either Party may request a different form of resolution. The

- 46 -

Office will review a requested resolution in light of its initial assessment of the available information, and will determine if such a resolution is appropriate. The Office will make the final determination regarding the appropriate resolution process and can require the investigation and adjudication of a matter even if the Parties request to engage in a different resolution process.

Three of the four types of resolution (administrative resolution, mediation, and restorative justice) do not involve potential disciplinary or punitive action. These options are available when the Parties do not wish to proceed with an investigation and adjudication process, and instead seek the Office's assistance to resolve allegations of misconduct without taking disciplinary or punitive action.[21]

Generally speaking, these resolution options are less time intensive than an investigation and adjudication process, while still affording students an opportunity to actively participate in a process led by the Office for resolution of their complaints. For more information on resolution timeframes, please consult the annual Gender-Based Misconduct Prevention and Response reports.

While a student may request to engage in a particular resolution process, the decision to pursue these resolution processes will be made after the Office conducts an initial assessment of a complaint or report, including an assessment of whether there is sufficient information to conduct an investigation and of the nature and scope of the alleged misconduct. Ultimately, the Office will determine which resolution is appropriate. If both Parties agree to one of the non-punitive resolution processes, and the Office agrees that this is an appropriate resolution process, the Office can take next steps to engage the Parties in the agreed-upon process.

As discussed above, the University also has the authority to take immediate and corrective action to address all alleged misconduct and any additional alleged Policy violations that have occurred. The Office, in consultation with the appropriate Title IX Coordinator(s), may determine that additional action is appropriate without the participation of the Parties, and may insist upon an investigation to ensure a safe campus environment.

If a Party requests the initiation of a non-punitive resolution option of a Title IX Formal Complaint and the Office determines that the matter is appropriate for such resolution, the University will provide to each Party a written notice that discloses:

- The allegations;

- The requirements of the non-punitive resolution process including the

---

[21] Should statements made during administrative resolution, mediation, or restorative justice highlight aspects of the reported conduct not previously known to the Office, or detail additional violations of the Policy, the Office reserves the right to stop that resolution process and re-evaluate the available resolution options. However, such statements will not be used in an ensuing investigation.

circumstances under which it precludes the Parties from resuming an investigation and adjudication arising from the same allegations;

- As noted below, the University generally permits Parties to withdraw from a non-punitive resolution process and initiate or re-initiate an investigation and adjudication process at any time before a non-punitive resolution process is completed and any resolution is agreed to in writing by the Parties; and

• Any consequences resulting from participating in the non-punitive resolution process, including the records that will be maintained.

## Administrative Resolution

This form of resolution can include no-contact directives, no-contact terms mutually agreed upon by the Parties, implementation of safety measures, referrals to counseling, and targeted education and training. Administrative resolution can take place for example when a Complainant does not want to engage in other resolution processes, or where the Office, at its discretion and based on the available information, determines that an administrative resolution is necessary to ensure the safety of the University community.

## Mediation

The purpose of mediation is for the Parties who are in conflict to identify the implications of a student's actions and, with the assistance of a trained facilitator, identify points of agreement and appropriate remedies to address them. Either Party can request mediation to seek resolution; mediation will be used only with the consent of both Parties, who will be asked not to contact one another during the process. The Office will also review any request for mediation, and may decline to mediate based on the facts and circumstances of the particular case. Either Party has the right to terminate the mediation process and choose or resume another option for resolution at any time.

The mediation process will typically commence within 10 days after the Office receives consent to mediate from both Parties, and will continue until concluded or terminated by either Party or the Office. During mediation, any potential investigation and calculations for time frames will be stayed. If the mediation results in a resolution, the disciplinary process will be concluded and the matter will be closed. If a resolution cannot be reached, the matter will be referred to the Title IX Coordinator or Designee to re-evaluate other options for resolution, including investigation.

During mediation, a facilitator will guide a discussion between the Parties. In circumstances where the Parties do not wish to meet face to face, either Party can request "caucus" mediation, and the facilitator will conduct separate meetings. Whether or not the Parties agree to meet face to face, each Party

- 48 -

will be permitted to bring an advisor of their choice to any meetings.

At the conclusion of the mediation, the facilitator will memorialize the agreement that was reached between the Parties. The Office will monitor adherence to the proposed solution and close the matter when compliance is satisfactory.

## Restorative Justice

A restorative justice ("RJ") Conference is a dialogue, facilitated by an Office staff member, intended to restore relationships and repair harm after a conflict has occurred. Both the responsible Party and the individuals affected by the conflict come together to identify what harm was caused and, collaboratively, determine how conflict and trust might be, respectively, resolved and repaired.

A Party may request to engage in RJ at any stage of the disciplinary process, however, restorative justice may not be an appropriate mechanism for all conflicts. To qualify for RJ, the student accused of wrongdoing must accept responsibility and express remorse for the harm that was caused. The harmed Party must also be willing to accept an apology offered by the student accused of wrongdoing. Additionally, all involved Parties must agree to and abide by measurable and timely actions within the scope of this Policy and directives. The Office will review any request for RJ, and may decline to initiate RJ based on the facts and circumstances of the particular case.

The RJ Conference proceeds only if all Parties agree to participate willingly. Upon doing so, the RJ process typically commences within 10 days after the Office receives written agreements from all involved Parties. The conference will continue until the conference is successfully concluded or until the Office determines that the conference will not be successful. If successful, an agreeable resolution is reached by all involved Parties, at which time the process is concluded, and the matter is resolved. If a resolution cannot be reached, the matter will be referred to the Title IX Coordinator to re-evaluate other options for resolution.

The Office will monitor the Parties' adherence to their proposed solution and reserves the right to close the matter when compliance is satisfactory.

## Investigation and Adjudication

Another option for resolution is investigation and adjudication. As stated above:

- The investigation and adjudication of allegations under the Gender-Based Misconduct Policy are reviewed through the Gender-Based Misconduct Investigation and Hearing Panel.

- The investigation and adjudication of allegations under the Interim Title IX Policy are reviewed through the Interim Title IX Investigation and Hearing Procedure.

- 49 -

- Complaints that include allegations of both Gender-Based Misconduct and misconduct under the Interim Title IX Policy will be investigated and adjudicated under the Interim Title IX Investigation and Hearing Procedure.

## 1. Gender-Based Misconduct Investigation and Hearing Panel Procedure

After the initial intake with a Case Manager, the University will notify the Complainant and the Respondent, in writing, that an investigation will proceed. This initial outreach will describe the allegations in the report, summarize the disciplinary process, and include a scheduling form for the Complainant and the Respondent to meet separately with SCCS. The Complainant and the Respondent must confirm receipt of the notice and meet with the Investigative Team within one week of receiving this notice. Requests to postpone meetings and interviews, for a limited period of time, may be granted, provided that the request is based on a compelling reason. When possible, Complainants and Respondents should request a postponement no less than 24 hours before the scheduled meeting or interview.

Requests Not to Investigate

The Complainant may request that an investigation not be undertaken. The Office, in consultation with the appropriate Title IX Coordinator(s), will consider such a request in light of the University's commitment to provide a safe and non-discriminatory

environment for all students, and will weigh the following factors:

- Circumstances that suggest there is a risk of the Respondent committing additional acts of gender-based misconduct, such as: whether there have been other gender-based misconduct complaints and/or escalation of conduct known to the Office by the same Respondent; whether the Respondent has threatened further gender-based misconduct against the Complainant or others; and other circumstances that suggest there is an increased risk of similar future acts of gender-based misconduct by the Respondent;

- Whether the alleged gender-based misconduct was committed by multiple perpetrators;

- Whether there was use of a weapon or force in connection with the gender-based misconduct;

- Whether the University possesses other means to obtain relevant evidence, such as security cameras, witnesses and/or physical evidence; and

- If the Complainant is under 17 years old.

If the Office determines not to investigate, it will notify the Complainant in writing, including that the determination was made at the Complainant's request. At the Complainant's written request, the Office will also notify the Respondent, in writing,

- 50 -

including that the Complainant asked the University not to investigate.

Notices

The Office will provide notice in writing to both the Complainant and Respondent at many points in the process. Notice from the Office will be sent via University e-mail and may include information, such as: a written explanation of the allegation(s), Complainants' and Respondents' rights and options, interim measures, supportive accommodations, initiation of a particular resolution option, and the range of possible sanctions should the Respondent be found responsible for a Policy violation as a result of an investigation and Hearing Panel, if applicable. The Office will also ensure that the Complainant and Respondent are updated throughout the process, including timely notice of meetings in which either or both the Complainant and the Respondent may participate, and/or if there are updates to the alleged violation(s) that will be investigated and/or adjudicated based on information learned during the investigation.

Prior to the initial interview with the Investigative Team, the Complainant and the Respondent will receive notice including a brief summary of the underlying facts of the reported incident. After the initial interview, the Investigative Team, in consultation with the appropriate Title IX Coordinator(s), will make an initial assessment of the information as detailed above in the Initial Assessment of Reports section. Should the investigation continue, the Complainant and the Respondent will receive notice detailing the allegation(s). At the conclusion of the investigation, and prior to a hearing, if applicable, the Complainant and the Respondent will receive notice of the charges detailing the specific Policy violation(s) to be considered by the Hearing Panel.

*Importantly, the initial allegations reported to the Office may not be the final charges submitted to the Hearing Panel for adjudication. The notice of final charges is dependent on the information gathered during the investigation. Whenever there are additional or modified allegations, notice will be provided to both Parties.*

Investigation Procedures

The Office will designate an Investigative Team to conduct an investigation into whether a violation of the Policy occurred. All Title IX Investigators will have extensive training in investigating and evaluating conduct prohibited under the Policy. The Investigative Team will be impartial and unbiased. The University may, in its sole discretion, assign appropriate non-SCCS investigators to a matter.

The Parties will meet separately with the Investigative Team. The Investigative Team will discuss with each Party the nature of the allegation(s), the rights and responsibilities of each Party, the prohibition against retaliation, and the disciplinary process before discussing the specific facts of an allegation with each Party. The Complainant, the Respondent,

advisors, and all witnesses may not record any meeting or hearing conducted as part of the process, nor copy or photograph any documents or evidence to which they are afforded access as part of the process.

The Investigative Team will speak to each Party in detail about the allegation(s) and ask each Party to provide a list of witnesses and/or any relevant documents or evidence to be considered. The Investigative Team has the discretion to determine the relevance of any proffered witness and/or evidence and determine that certain witnesses and/or evidence should be included or excluded in the investigative process in light of the allegations and/or Policy set out here. A Party is not required to provide any particular witness or evidence for an investigation to proceed, nor should a lack of such information dissuade any student from participating in the process.

Any documents submitted to the Investigative Team for consideration may become part of the Investigative Report in redacted form. During the investigation, the Investigative Team will adhere to the following protocols:

Statements

All Parties and witnesses are obligated to be honest and act in good faith. Any person who knowingly makes a false statement in connection with the investigation may be subject to separate disciplinary action.[22]

Evidence[23]

The Investigative Team will direct the Complainant, Respondent, witnesses, and other interested individuals to preserve any relevant evidence. Examples include, but are not limited to, electronic messages (e.g., e-mails, text messages, social media and digital app messages, and other relevant writings and photographs). Any documents submitted to the Investigative Team for consideration may become part of the Investigative Report in redacted form. Intentional manipulation, editing, or other forms of fabricating evidence may result in disciplinary action. Certain forms of evidence will not be considered (e.g. polygraph examination results). Other unique pieces of evidence (e.g. sexual assault medical examination documentation) that a particular student wants to be considered will be reviewed by the Office in consultation with the appropriate Title IX Coordinator(s).

Witnesses

---

[22]Reports or denials of gender-based misconduct made in good faith are not considered knowingly false solely because the outcome of an investigation and adjudication is contrary to those reports or denials.

[23]In the event any evidence is gathered during the course of an investigation that is in a language other than English, SCCS will procure an official translation via University resources. Where the University procures a translation through University resources, or an outside company or agency, the

translation received will be the official translation for the Investigative Team and Hearing Panel to consider, however the Parties may offer their own clarifications of any evidence if relevant. The Investigative Team may ask the providing party for a translation into English, at its discretion and in limited circumstances, such as when the text to be translated is not substantively related to the investigation or when it is very short but will assist the Investigative Team or a Hearing Panel with better understanding the material.

The Complainant and the Respondent have the right to identify any individuals who may be witnesses to the conduct alleged. The Parties should be aware it is possible for both the Respondent and the Complainant to list the same people as witnesses. Any attempt to threaten, intimidate or otherwise improperly influence the testimony of a witness may result in disciplinary action. The Investigative Team will attempt to contact and interview any witnesses it deems to have relevant information, including those identified by the Parties. The Investigative Team will not interview witnesses whose sole purpose is to provide character information. If the Investigative Team determines that expertise on a topic will assist the Hearing Panel in making its determination(s), the Investigative Team may include in the investigative record medical, forensic, technological, or other expert testimony and materials (such as writings and recordings) that the Investigative Team deems relevant and reliable. A Party may also request that a topic be considered by an expert, but a Party is not permitted to retain their own expert to consider a topic or submit testimony and/or reports as part of the investigation. In the limited circumstance that the Investigative Team grants a Party's request for an expert to consider a topic, then the Investigative Team will retain an appropriate expert.

- The Investigative Team has the discretion to determine the relevance and reliability of any expert testimony and materials, and, accordingly, the Investigative Team will determine what, if any, expert testimony and materials will be included in the investigative record.

- Requested expert testimony or materials not included in the investigative record will not be considered by the Hearing Panel.

- The results of polygraph tests and other "lie-detection" techniques are inadmissible in the proceedings.

## Questions

Throughout the investigation, and until the Pre-Determination Conference, both the Complainant and the Respondent have the opportunity to submit questions to be asked of each other and any witnesses involved in the investigation. Questions will be reviewed by the Investigative Team for their appropriateness and permissibility pursuant to the Policy.

## Advisors

During any meeting, interview or hearing, the Complainant and Respondent may be accompanied an advisor. In order to avoid undue delay, if a Complainant, Respondent, or advisor is unable to be physically present for any stage of the investigative process, including for reasons related to public health guidance or generally-related University protocols, accommodations will be made for their participation by other means.

## Sexual History

Either the Complainant or the Respondent may provide information regarding their shared sexual history. Generally, the Investigative Team will not consider information concerning the Complainant's or the Respondent's sexual history with other people, except under very limited circumstances such as explaining an injury or responding to another specific question raised by an allegation. If either Party offers any of the aforementioned information, the other will be notified and have the right to respond and request this information not be considered. The Investigative Team will determine whether information should be included based on relevance to the investigation, applicable law, and fairness to both Parties.

Mental Health Treatment/Diagnosis

Each Party has the right to request that evidence regarding their mental health diagnosis and/or treatment be excluded from consideration when responsibility is being determined. However, if an individual wishes to present evidence of their *own* mental health diagnosis and treatment, they may do so in limited circumstances. If either Party offers this type of information for consideration, the other Party will be notified and can request that the information not be considered.

Prior Conduct Violations

Prior reports or determinations of responsibility for gender-based misconduct will not be considered in determinations of responsibility (see the following pages) and will

therefore not be addressed in an Investigative Report. The University is committed to ensuring each Party a meaningful opportunity to be heard in any given case; for this to occur the investigation and adjudication of one complaint must be based on facts relevant to that complaint and may not be influenced by reports or determinations from another, separate complaint. However, prior determinations of responsibility for allegations of the same type of gender-based misconduct may be admissible in the sanctioning stage of the process.

Credibility Assessment

The Investigative Team may consider the following factors when assessing the credibility of Parties and witnesses: consistency or inconsistency of accounts of events over time; potential for bias in favor of a specific party or outcome; any corroborating evidence; and reasonable and logical statements, including statements about details associated with the allegations

Burden of Proof

The Investigative Team applies "preponderance of the evidence" as the standard of proof to determine whether a violation of the Policy occurred. Preponderance of the evidence means that the Investigative Team must determine, based on the evidence presented, whether the Respondent was more likely than not to have engaged in the conduct at issue. During the investigation and adjudication process, the

Respondent is presumed not responsible. The Complainant and Respondent may each participate at the level to which they are comfortable. The Investigative Team bears the burden of showing evidence to support its recommendation regarding responsibility. The burden is not on the Respondent to prove that they did not engage in gender-based misconduct.

Prohibition on Recording

The unauthorized recording of any part of the disciplinary process or unauthorized copying of any documents in the disciplinary process by any means is prohibited. Copying includes but is not limited to: audio or video recording, streaming, photographing, scanning, transcribing, or any other form that conflicts with the spirit of this directive. Allegations of non-compliance will be reviewed through the Dean's Discipline process and may result in disciplinary action.

*** 

The University's process for responding to, investigating and adjudicating gender-based misconduct reports will ordinarily continue during any law enforcement investigation or proceeding. SCCS may need to temporarily delay an investigation while law enforcement is gathering evidence, generally no longer than 10 days, except when law enforcement specifically requests and justifies a longer delay. The Office will resume the investigation after learning that law enforcement no longer requires a delay or has completed the evidence-gathering stage of their investigation. The Office will not wait for the conclusion of any related criminal proceeding. It should be noted that the standards of criminal law are different than those employed by the University; while information collected by law enforcement may be included in the Office investigation, determinations in criminal investigations and proceedings will not be considered in the Office's investigation and adjudication.

At the conclusion of the initial phase of the investigation, the Investigative Team will provide to the Complainant and the Respondent, in writing, a Notice of Final Charges, which will include a description of the alleged Policy violation(s) that will be considered during the hearing process, if applicable.

The Investigative Team will then prepare a report based on interview summaries, witness statements and other documents gathered during the investigation. In accordance with the Family Educational Rights and Privacy Act ("FERPA"), the Investigative Team will redact names and other identifying information of other students from the report and related materials, except to the extent that doing so would interfere with the purpose of Title IX to eliminate sex-based discrimination. The Office will provide a redacted and watermarked copy of the report to the Complainant, Respondent, and their respective advisors for their review, if applicable. Media exhibits such as video recordings and photographs of individuals will

- 55 -

be available for individual review, at a prearranged time.

Pre-Determination Conference

After the Parties have had the opportunity to review the factual summary of the Investigative Report, a Pre-Determination Conference will be scheduled. During the conference, the Investigative Team will review available options for resolution, if applicable, with each of the Parties (see Available Options for Resolution above). If the Parties or the University determines that a post-investigation Hearing Panel is the appropriate resolution option, each Party will be asked if they would like to provide additional information or clarification to their own portion of the factual summary.

The Pre-Determination Conference is each Party's opportunity to provide corrections to typos in the factual summary, including correction of names and/or dates, or other minor factual errors. They also can argue that the factual summary is inaccurate; identify additional witnesses to be interviewed; and ensure that all relevant information is included. The Pre-Determination Conference is the final opportunity for the Complainant and Respondent to offer evidence or information to be included as an exhibit in the Investigative Report. The Investigative Team will review all requests and make the appropriate changes to the factual summary, which may be reviewed by each Party. The Complainant and Respondent will be required to submit any

proposed corrections to the Factual Summary and/or additional witnesses to be interviewed or evidence to be reviewed no later than three (3) days before the scheduled Pre-Determination Conference, so that these submissions can be considered in advance and discussed during the Conference.

While the Parties may suggest questions during any stage of the investigative process, the Pre-Determination Conference will be each Party's final opportunity to provide questions for the Investigative Team to ask of any other individual involved, including witnesses. The Complainant and Respondent will be required to submit a written list of all proposed questions to the Investigative Team no later than one day before the scheduled Pre-Determination Conference, so the questions can be considered in advance and discussed during the Conference.

The Pre-Determination Conference is the final opportunity for the Complainant and Respondent to offer evidence or information to be included as an exhibit in the Investigative Report. If the Complainant or Respondent suggest evidence at this stage that had previously been requested by the Investigative Team more than one month prior, the newly submitted evidence will not be accepted except under exceptional circumstances. The Investigative Team will review all requests and make the appropriate changes to the factual summary, which may be reviewed by each Party.

While the Parties may suggest questions during any stage of the investigative process, the Pre-Determination Conference will be each Party's **final** opportunity to provide questions for the Investigative Team to ask of any other individual involved, including witnesses. The Complainant and Respondent will be required to submit a written list of all proposed questions to the Investigative Team no later than one day before the scheduled Pre-Determination Conference, so the questions can be considered and discussed during the Conference. Questions should be related to the factual summary and should not be duplicative or seek a restatement of a fact that has already been included in the factual summary. The Investigative Team will inform each Party if any of the questions they proffered are outside the scope of the Policy or are unrelated to the case and, as such, may be denied. Questions may be modified for appropriateness or clarity by the Investigative Team prior to being asked of the other individual. Following the conference, the Investigative Team will pose additional questions and document responses as appropriate.

The Investigative Team does not issue a recommended finding(s) regarding the alleged violation(s) of Policy during the Pre-Determination Conference.

After the Pre-Determination Conferences and additional review conclude, the investigation is considered closed.

Hearing Panel Process

The process described here will be used in all matters where the Parties choose this process or do not achieve a resolution through another available process.

Pre-Hearing Conference, Disciplinary Action Agreement, and Finalization of Investigation

After the investigation is completed, the Investigative Team schedules a Pre-Hearing Conference with each Party. During the Pre-Hearing Conference, the Investigative Team will discuss the analysis and recommendation of responsibility for each alleged charge, and provide to each Party a copy of this section of the Investigative Report, which contains a credibility assessment and analysis of the charges.

At the Pre-Hearing Conference, the Investigative Team will ask each Party to complete a Disciplinary Action Agreement. The Disciplinary Action Agreement asks whether the Party would like the matter referred to a Hearing Panel for adjudication (i.e. a formal decision about whether the alleged charge(s) occurred). In addition, the Disciplinary Action Agreement asks the Respondent to respond in writing to the alleged charge(s) in one of the following ways: Responsible; Not Responsible; No Contest; or No Response. Each Party must submit their respective Disciplinary Action Agreement to the Office in writing within three days of receipt. Each Party will be notified of the other Party's response.

Should neither Party request a hearing within three days, the Investigative Team's recommended finding(s) will stand, with each Party retaining their right to appeal the sanction if applicable (see Appeal Process below).

If the Respondent accepts responsibility or responds "No Contest" on the Disciplinary Action Agreement, or the Investigative Team recommends a finding of responsibility and neither Party requests a hearing, the matter will be referred directly to the Sanctioning Officer (see section, "Sanctions and Other Remedies"). A hearing will not be conducted and neither Party can appeal the finding(s) of responsibility for Policy violation(s). Both Parties retain the right to appeal the sanction issued by the Sanctioning Officer (see "Appeal Process"). Any appeal of the sanction must be submitted within three days of receipt of the sanction notice issued by the Sanctioning Officer.

If either Party requests a hearing, or if the Respondent responds "No Response" or "Not Responsible," the matter will proceed to a Hearing Panel for adjudication.

Hearing Panel

The Hearing Panel is tasked with evaluating and analyzing all relevant information in the Investigative Report, including the credibility assessment and recommendation of responsibility provided by the Investigative Team, as well as any relevant additional submissions and information presented by the Parties in the hearing process (see Preparing for the Hearing below). The panel determines whether a violation of Policy occurred based on the preponderance of evidence standard.

If the Hearing Panel reviews the Investigative Report and determines that additional investigation needs to be conducted, it may request that the Investigative Team conduct additional interviews or address any concerns. Any additional information collected by the Investigative Team at this stage will be provided to the Hearing Panel, the Complainant, and the Respondent in the form of a post-investigation addendum to the Investigative Report.

The Hearing Panel will generally have three members drawn from specially trained administrators within SCCS and/or Equal Opportunity and Affirmative Action, excluding the Investigative Team and other administrators responsible for the report. All panelists receive relevant training at least once a year. In addition to training on how the adjudicatory process works, the training will include specific instruction on how to evaluate evidence impartially and how to approach students about sensitive issues that may arise in the context of alleged gender-based misconduct.

The Complainant and Respondent will be informed of the panel's membership before the hearing process begins and afforded an opportunity to raise any perceived conflicts of interest before the hearing (see Conflicts of Interest above).

Preparing for the Hearing

In preparation for the hearing, the Complainant and the Respondent should review the Investigative Report and any supplemental materials. The Parties may prepare a written statement in response to the Investigative Report addressing their agreement or disagreement with the recommendation(s).

The written statement must be prepared by the student and be no more than 10 single-spaced typed pages, using size 12-point Times New Roman font and 1-inch margins. The written statement must be submitted to the Office no fewer than two days prior to the scheduled hearing. References to evidence should be made to materials already included in the Investigative Report; no attachments or additional exhibits will be accepted. Statements discussing the impact of the alleged gender-based misconduct or the disciplinary process are provided directly to the Sanctioning Officer; they are not considered for the purpose of determining responsibility. Statements submitted for consideration that include information outside the scope of review by the Hearing Panel may be redacted.

Hearing Procedures

The Office, whenever possible, will give the Complainant and the Respondent at least five days advance notice of the hearing. The hearing is a closed proceeding; no one other than the Hearing Panel members, the Respondent, the Complainant, their respective advisors, the Investigative Team, and necessary University personnel may be present in the hearing room or rooms during the proceeding. If a Party is unable to appear at the Office for the hearing, accommodations may be made for the Party's appearance by other means. Requests to postpone the hearing may be granted at the discretion of the Office based on a compelling reason. Where possible, Parties should make a postponement request no less than 24 hours prior to the time of the hearing.

The Complainant, the Respondent, and the Investigative Team are afforded the opportunity to participate in the hearing. Witnesses are not involved in the hearing process. Each Party and the Investigative Team will be placed in a separate room for the duration of the hearing and may view the proceedings via video conference. When it is their turn to appear before the Hearing Panel, the Complainant, the Respondent, and/or the Investigative Team will appear separately before the panel. Each Party may have their advisor in the room with them at all times. During the hearing, the Hearing Panel may pose questions to a Party and/or the Investigative Team to better clarify or understand and analyze the Investigative Report. The Complainant and Respondent will not be permitted to submit additional questions at the hearing. Additionally, in the event a student submits a statement containing inaccurate facts or information outside the scope of the Policy, those portions of the information may be redacted and/or a curative

instruction may be given to the Hearing Panel. In general, hearings will proceed as follows:

- Complainant's opening statement (up to and no more than seven minutes)

- Respondent's opening statement (up to and no more than seven minutes)

- Questions by the Panel to the Complainant *(if the Panel deems necessary)*

- Questions by the Panel to the Respondent *(if the Panel deems necessary)*

- Questions by the Panel to the Investigative Team *(if the Panel deems necessary)*

- Complainant's closing statement (up to and no more than seven minutes)

- Respondent's closing statement (up to and no more than seven minutes)

In cases where either the Complainant or Respondent opts not to participate in the hearing after having previously requested a hearing in their Disciplinary Action Agreement, the other Party may request that a hearing not be held and the Hearing Panel may render a decision based on the Investigative Report, post-investigation addendum (if applicable), and any written submissions from the Complainant and/or Respondent.

Additional hearing rules include:

- Statement via Video Conference: Only the person giving a statement (and that person's advisor, if applicable) is in the hearing room with the panelists and necessary administrator(s) during their statement. The Complainant, the Respondent, and the Investigative Team will each have the opportunity to view and listen to statements from a separate, private room via video conference[24] (e.g., Zoom, etc.).

- Questioning: Only the Hearing Panel may ask questions of the Complainant, Respondent, and/or Investigative Team. Questions generally will focus on statements made by the Parties and the analysis of the information provided by the Parties and the Investigative Team, including the Investigative Team's recommendation. The Complainant and the Respondent will not be permitted to ask or submit questions at the hearing.

- Information Regarding Sexual History: The same standards that apply to considerations of sexual history by the Investigative Team also apply to the Hearing Panel. In addition, only information included in the Investigative Report will be considered by the Hearing Panel and may be discussed at the hearing.

- Prior Conduct Violations: In cases involving allegations of gender-based misconduct, prior findings of responsibility for allegations of the same type of misconduct will not be considered by the

---

[24] Due to the COVID-19 pandemic, hearing panels will be conducted via video conference until further notice.

Hearing Panel. However, these prior findings may be admissible in determining the appropriate sanction for a particular violation of Policy.

- Cell Phones and Recording Devices: Cell phones and recording devices may not be used in the hearing room(s) unless approved by the Hearing Panel in advance.

Determining Responsibility

Following the investigation and conclusion of the hearing, the Hearing Panel will render a determination of whether the Respondent is responsible for the violation(s). The Hearing Panel will use "preponderance of the evidence" as the standard of proof to determine whether a violation of the Policy occurred. Preponderance of the evidence means that a Hearing Panel must determine whether, based on the evidence presented, the Respondent was more likely than not to have engaged in the conduct at issue.

The Hearing Panel will find a student responsible or not responsible, based on a majority vote, after a review of all of the statements and evidence summarized in the Investigative Report, the written statements submitted by the Complainant and the Respondent, and the statements, testimony, and evidence at the hearing. The Hearing Panel will generally render a decision within three days after the conclusion of a hearing, and will include an explanation of the basis for the decision.

If the Hearing Panel finds the Respondent responsible, the matter will proceed to the sanctioning stage. The Office will transmit the Hearing Panel's determination to the Sanctioning Officer (described on the following pages) of the Respondent's school, and to the Respondent and the Complainant.

Regardless of the Hearing Panel's determination, each Party will have the opportunity to appeal any decision and/or sanction, if applicable.

## 2. Interim Title IX Policy Investigation and Hearing Procedure

Notices

The Office will provide notice to the Complainant and Respondent at many points in the process. Notice from the Office will be sent via University e-mail or *Maxient* (the University's reporting system and database). The initial notice will occur as soon as practicable after the institution receives a Title IX Formal Complaint, absent extenuating circumstances.

The Notice of Allegations will include the following:

- The Gender-Based Misconduct and Interim Title IX Policies and Procedures, which includes information about the Interim Title IX Investigation and Hearing Procedure;

- Information about the allegations potentially constituting the violation and

sufficient details known at the time of the Notice of Allegations. Sufficient details include the identities of the Parties involved in the incident, if known, including the Complainant; the conduct allegedly constituting a violation, and the date and location of the alleged incident(s), if known.

- A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding a violation of the Interim Title IX Policy is made at the conclusion of the Interim Title IX Investigation and Hearing Procedure.

- A statement that informs the Parties that they may have an advisor of their choice, who may be, but is not required to be an attorney.

- A statement that before the conclusion of the investigation, the Parties and their advisors may inspect and review evidence obtained as part of the investigation that is directly related to the allegations raised in the Title IX Formal Complaint, including the evidence on which the University does not intend to rely in reaching a determination regarding responsibility, and evidence that both tends to prove or disprove the allegations, whether obtained from a Party or other source.

- A statement that any person who knowingly makes a false statement in connection with the investigation may be subject to separate disciplinary action.

- The range of possible sanctions should the Respondent be found responsible for a violation as a result of an investigation and the Interim Title IX Investigation and Hearing Procedure, if applicable.

If, in the course of an investigation, the University decides to investigate allegations about the Complainant or Respondent that are not included in the Notice of Allegations and are otherwise covered under the Interim Title IX Policy or covered under the Gender-Based Misconduct Policy, the institution will notify the Parties accordingly.

Notice of Meetings and Interviews

The Office will provide, to a Party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all investigative interviews, hearings, or other meetings with a Party, with sufficient time for the Party to prepare to participate.

Delays

Each Party may request a one-time delay in the Interim Title IX Investigation and Hearing Procedure of up to five (5) days for good cause (granted or denied in the sole judgment of the Vice President of Student Affairs or Title IX Coordinator or Designee)

provided that the requestor provides reasonable notice and the delay does not overly inconvenience the other Party.

For example, a request to take a five day pause made an hour before a hearing for which multiple witnesses, the other Parties and their advisor have traveled to and prepared for will generally not be granted, while a request for a five day pause in the middle of investigation interviews to allow a Party to obtain certain documentary evidence will generally be granted.

The Vice President of Student Affairs or Title IX Coordinator or Designee reserves the ability to consider and grant further pauses in the process, upon request of a Party or otherwise.

Investigation Procedures and Protocols

The Office will designate "the Investigative Team" to conduct an investigation into whether a violation of the Policy occurred. All Title IX Investigators will have extensive training in investigating and evaluating conduct prohibited under the Policy. The University may also, in its sole discretion, assign appropriate non-SCCS investigators to a matter.

The Investigative Team will be impartial and unbiased. The University ensures that investigators receive training on University policies and procedures, including the Interim Title IX Policy; the scope of the University's education program or activity;

how to conduct an investigation, hearing, appeals, and informal resolution processes, as applicable; and how to serve impartially, including by avoiding prejudging the facts at issue, conflicts of interest, and bias. Training also includes as applicable the use of any technology necessary at a hearing and training on issues of relevance of questions and evidence.

The Parties will meet separately with the Investigative Team. The Investigative Team will discuss with each Party the nature of the allegation(s), the rights and responsibilities of each Party, the prohibition against retaliation, and the disciplinary process before discussing the specific facts of an allegation with each Party. The Complainant, the Respondent, advisors, and all witnesses may not record any meeting or hearing conducted as part of the process, nor copy, distribute, or photograph any documents or evidence to which they are afforded access as part of the process.

The Investigative Team will speak to each Party in detail about the allegation(s) and ask each Party to provide a list of witnesses and/or any relevant documents or evidence to be considered. The Investigative Team, and not the Parties, has the burden of proof and the burden of gathering evidence, i.e. the responsibility of showing a violation of the Interim Title IX Policy has occurred. This burden does not rest with either Party, and either Party may decide not to share their

- 64 -

account of what occurred or may decide not to participate in an investigation or hearing. This does not shift the burden of proof away from the Investigative Team and does not indicate responsibility.

Advisors

During any meeting, interview or hearing, the Complainant and Respondent may be accompanied by an advisor. In order to avoid undue delay, if the Complainant, Respondent, or advisor is unable to be physically present for any stage of the investigative process, including reasons related to public health guidance or generally related University protocols, accommodations will be made for their participation by other means.

Statements

All Parties and witnesses are obligated to be honest and act in good faith. Any person who knowingly makes a false statement in connection with the investigation may be subject to separate disciplinary action.[25]

Evidence

The Investigative Team will direct the Complainant, Respondent, witnesses, and other interested individuals to preserve any relevant evidence. Examples include, but are not limited to, electronic messages (e.g., e-mails, text messages, social media and digital app messages, and other relevant writings and photographs). Any documents submitted to the Investigative Team for consideration may become part of the Investigative Report. Intentional manipulation, editing, or other forms of fabricating evidence may result in disciplinary action.

The Investigative Team cannot access, consider, or disclose medical records or privileged communications without a waiver from the respective Party.

Directly Related / Relevant Information:

The Complainant, Respondent, witnesses, and other individuals may provide any information to the Investigative Team deemed to be related to the allegations. Only relevant information will be considered by the Investigative Team, and the Investigative Team retains sole discretion in determining whether the statements of witnesses or other evidence are relevant to the allegation(s).

Witness statements and information are relevant to an Interim Title IX Policy Investigation if they help to show that the allegation is more or less likely to be true. The Parties must articulate a reasonable basis to the Investigative Team regarding why the statements of their proposed witnesses or other suggested evidence are relevant before

---

[25]Reports or denials of gender-based misconduct made in good faith are not considered knowingly false solely because the outcome of an investigation and adjudication is contrary to those reports or denials.

the Investigative Team will consider such proposals.

The Investigative Team will objectively evaluate all relevant evidence gathered through the course of the investigation.

Inspection and Review of Evidence

Prior to the completion of the investigation, the Parties will have an equal opportunity to inspect and review the evidence obtained through the investigation. The purpose of the inspection and review process is to allow each Party the equal opportunity to meaningfully respond to the evidence prior to conclusion of the investigation. All Parties must submit any evidence they would like the Investigative Team to consider prior to when the Parties' time to inspect and review evidence begins.

Evidence that will be available for inspection and review by the Parties will be any evidence that is directly related to the allegations raised in the Title IX Formal Complaint. It will include any:

- Evidence that is relevant, even if that evidence does not end up being relied upon by the Investigative Team or during the Hearing in making a determination regarding responsibility;

- Evidence that is directly related to the allegations, whether obtained from a Party or other source.

Prior to obtaining access to any evidence, the Parties and each advisor must sign an agreement not to:

- Disseminate any of the evidence submitted by another Party or witness or obtained from any source other than the Party themselves, and that is provided through the inspection and review process;

- Disseminate testimony heard or evidence obtained during the Interim Title IX Policy Investigation and Hearing Procedure; and

- Use such testimony or evidence for any purpose unrelated to the Interim Title IX Policy Investigation and Hearing Procedure that would knowingly or recklessly compromise the integrity of the Interim Title IX Policy Investigation and Hearing Procedure.

Once signed, this Agreement may not be withdrawn, including if a Party withdraws from the Interim Title IX Policy Investigation and Hearing Procedure.

The University will make the evidence available for each Party and each Party's advisor, if any, to inspect and review through an electronic format. The University is not required to use any specific process or technology to provide the evidence and will have the sole discretion to determine the

format and any restrictions or limitations on access.

The Parties will have ten (10) business days to inspect and review the evidence and submit a written response by e-mail to the Investigative Team. Any written response to the evidence by the Parties will be considered by the Investigative Team prior to completion of the Investigative Report.

Parties may request a reasonable extension of time to inspect and review the evidence.

Witnesses

The Complainant and the Respondent have the right to identify any individuals who may be witnesses to the conduct alleged, including fact, expert, or character witnesses. The Parties should be aware it is possible for both the Respondent and the Complainant to list the same people as witnesses. Any attempt to threaten, intimidate or otherwise improperly influence the testimony of a witness may result in disciplinary action. The Investigative Team will attempt to contact and interview any witnesses it deems may possess relevant information, including those identified by the Parties.

Expert Witnesses

If the Investigative Team determines that expertise on a topic will assist the Hearing Panel in making its determination(s), the Investigative Team may include in the investigative record medical, forensic, technological, or other expert testimony and materials (such as writings and recordings) that the Investigative Team deems relevant and reliable.

Any Complainant or Respondent may also submit a witness to be interviewed by the Investigative Team as an expert. In the circumstance that the Investigative Team interviews an expert witness, then the Investigative Team will determine what, if any, expert testimony and materials will be included in the Investigative Report. Any evidence not included in the Investigative Report will be attached as an appendix and available for the Hearing Panel's consideration. In order for an expert report or testimony to be considered as part of an Interim Title IX Policy Investigation and Hearing, the expert must be available for questioning at the hearing for the matter on which the expert opined.

Sexual History

Either the Complainant or the Respondent may provide information regarding their shared sexual history. Questions and evidence regarding the Complainant's prior sexual behavior are generally irrelevant and prohibited, subject to two limited exceptions: (1) where evidence of prior sexual behavior is offered to prove someone other than the Respondent committed the alleged offense, or (2) where prior sexual behavior evidence is specifically about the Parties'

shared sexual history and is offered to prove consent. If either Party offers such information, the other will have the right to respond.

### Medical Information

Any Party's medical, psychological, or similar records cannot be accessed, considered, disclosed, or otherwise used as part of this investigative process without the Party's voluntary, written consent. Each Party has the right to request that evidence regarding their mental health diagnosis and/or treatment be excluded from consideration on the basis that it is not relevant to the allegations. Further, such information that is included in an otherwise-relevant record that is not directly related to the allegations may be redacted from any documents shared with the other Party and their advisor for their inspection and review.

### Legally Recognized Privilege

Any information protected by a legally recognized privilege (e.g. attorney-client) is deemed irrelevant and will not be considered in the Interim Title IX Policy Investigation and Hearing Procedure, unless properly waived by the Party who holds the privilege.

### Credibility Assessment

The Investigative Team may consider the following factors when assessing the credibility of Parties and witnesses: consistency or inconsistency of accounts of events over time; potential for bias in favor of a specific party or outcome; any corroborating evidence; and reasonable and logical statements, including statements about details associated with the allegations.

### Burden of Proof

The Investigative Team applies "preponderance of the evidence" as the standard of proof to determine a recommended finding of whether a violation of the Interim Title IX Policy occurred. Preponderance of the evidence means that the Investigative Team must determine, based on the evidence presented, whether the Respondent was more likely than not to have engaged in the conduct at issue. During the investigation and adjudication process, the Respondent is presumed not responsible. The Investigative Team bears the burden of showing evidence to support its recommendation regarding responsibility. The burden is not on the Respondent to prove that they did not engage in gender-based misconduct.

### Prohibition on Recording

The Office may record investigative interviews and such recordings are subject to the expectations for the Inspection and Review of Evidence. Parties are prohibited from recording any part of the disciplinary process or unauthorized copying of any documents in the disciplinary process by any means. Copying includes but is not limited

to: audio or video recording, streaming, photographing, scanning, transcribing, or any other form that conflicts with the spirit of this directive. Allegations of non-compliance will be reviewed through the Dean's Discipline process and may result in disciplinary action.

\*\*\*

The University's process for responding to, investigating and adjudicating misconduct under the Interim Title IX Investigation and Hearing Procedure will ordinarily continue during any law enforcement investigation or proceeding. SCCS may need to temporarily delay an investigation while law enforcement is gathering evidence, generally no longer than 10 days, except when law enforcement specifically requests and justifies a longer delay. The Office will resume the investigation after learning that law enforcement no longer requires a delay or has completed the evidence-gathering stage of their investigation. The Office will not wait for the conclusion of any related criminal proceeding. It should be noted that the standards of criminal law are different from those employed by the University; while information collected by law enforcement may be included in the Office investigation, determinations in criminal investigations and proceedings will not be considered in the Office's investigation and adjudication.

Conclusion of Investigation

At the conclusion of the initial phase of the investigation, the Investigative Team will provide to the Complainant and the Respondent, in writing, a Notice of Final Charges, which will include a description of the alleged Policy violation(s) that will be considered during the hearing process, if applicable.

The Investigative Team will then prepare a report based on interview summaries, witness statements and other documents gathered during the investigation. In accordance with the Family Educational Rights and Privacy Act ("FERPA"), the Investigative Team will redact names and other identifying information of other students from the report and related materials, except to the extent that doing so would interfere with the purpose of Title IX to eliminate sex-based discrimination. The Office will provide a redacted and watermarked copy of the report to the Complainant, Respondent, and their respective advisors for their review, if applicable. Media exhibits such as video recordings and photographs of individuals will be available for individual review, at a prearranged time, or through a process determined by the Office.

The Parties will have ten (10) business days to inspect and review the evidence and submit a written response to the Investigative Team. The Investigative Team will consider

- 69 -

the Parties' written responses before completing the Investigative Report.

The Investigative Team will provide each Party five (5) business days after the initial inspection and review of evidence, and before the Investigative Team completes their Investigative Report, to provide additional evidence in response to their inspection and review of the evidence, and then provide the Parties five (5) business days to inspect, review, and respond to the Party's additional evidence through a written response to the investigator. Those written responses will be disclosed to the Parties and hearing panel, if applicable.

Any evidence subject to inspection and review will be available at any hearing, including for purposes of cross-examination.

Evidence Not Directly Related to the Allegations

Evidence obtained in the investigation that is determined in the reasoned judgment of the Investigative Team not to be directly related to the allegations in the Title IX Formal Complaint will be included in the appendices to the Investigative Report.

Investigative Report

Only relevant evidence (including both inculpatory and exculpatory – i.e. tending to prove and disprove the allegations) will be referenced in the Investigative Report. The Investigative Team may redact irrelevant information from the Investigative Report when that information is contained in documents or evidence that is otherwise relevant.

The Investigative Team will create an Investigative Report that fairly summarizes relevant evidence and provides a credibility assessment and analysis of the charges. The Investigative Report is not intended to catalog all evidence obtained by the investigator, but only to provide a fair summary of the relevant evidence. The Investigative Team retains the right to make recommended findings or conclusions in the Title IX Investigative Report. However, the Investigative Team does not make the final determination of responsibility.

Interim Title IX Policy Pre-Hearing Conference

Following the completion of the Investigative Report, the Parties will be informed of the assignment of a Hearing Chair. The Hearing Chair is a voting member of the Hearing Panel and is responsible for the facilitation and moderation of the hearing process.

In order to promote a fair and expeditious hearing, the Parties and their advisors will attend a pre-hearing conference with the Hearing Chair. The other hearing panelists may also be in attendance, although the Hearing Chair is responsible for directing the pre-hearing conference. The pre-hearing

conference assures that the Parties and their advisors understand the parameters of the hearing and allows for significant issues to be addressed in advance of the hearing.

At the pre-hearing conference, the Hearing Chair will address the conduct expectations for the Parties and advisors at the hearing (see Appendix C for the Rules of Decorum). Additionally, the Parties must provide the Hearing Chair with a list of the witnesses they intend to question and exhibits they intend to present at the hearing. All references to witnesses and exhibits will be made to those contained in the investigative file.

- Submission of Proposed Evidence: The Hearing Chair will also ensure that no evidence regarding prior sexual history of the Parties is considered, unless the Hearing Chair determines at the pre-hearing conference that the evidence meets at least one of the permitted exceptions.

  The Hearing Chair may, only in exceptional circumstances, grant requests to present evidence not already in the investigative file and retains complete authority to determine how such new evidence may impact the hearing (e.g., if the hearing must be continued until a later date for the Investigative Team to review and present the new evidence to the Parties).

Interim Title IX Policy Hearing

The Office will not issue a disciplinary sanction arising from an allegation without holding a hearing. The hearing may be conducted with all Parties physically present in the same geographic location, or, at the Office's discretion, any or all Parties, witnesses, and other participants may appear at the hearing virtually. All proceedings will be recorded through audiovisual recording and transcribed. That recording and transcript will be made available to the Parties for inspection and review.

- Participants in the hearing: The Complainant, the Respondent, their respective advisors, witnesses, and the Investigative Team are afforded the opportunity to participate in the hearing. The hearing also includes a Hearing Chair and the Hearing Panel and, when appropriate, the Title IX Coordinator or designee. Each participating individual will have access to a private room for the duration of the hearing, if the hearing is in-person, and may choose to participate in the proceedings via video conference. When it is an individual's turn to appear before the Hearing Panel, that person will appear separately before the panel and may bring notes for their reference. The Hearing Panel may ask any individual for a copy or inspection of their notes. The Complainant and Respondent may be accompanied by or

may otherwise be in contact with their advisor at all times. If the hearing is conducted wholly or partially through video conference, an administrator will ensure that each Party has the opportunity to appear before or speak directly to the hearing panel and appropriately participate in the questioning process.

Live hearings are not public, and the only individuals permitted to participate in the hearing are as follows:

- <u>Complainant and Respondent (The Parties)</u>:

  Here are important points about the Parties' participation:

  - The Parties cannot waive the right to a hearing. This means that a hearing is required in cases that are resolved by an investigation and adjudication under the Interim Title IX Policy.

  - The Office may still proceed with the hearing in the absence of a Party, and may reach a determination of responsibility in their absence. In addition, the Hearing Panel may consider evidence created by the Party where the evidence itself constituted the alleged prohibited conduct. Such evidence may include, by way of example but not limitation, text messages, e-mails, social media postings, audio or video recordings, or other documents or digital media created and sent by a Party as a form of alleged sexual harassment, or as part of alleged course of conduct that constitutes stalking.

  - The Office will not threaten, coerce, intimidate or discriminate against a Party in an attempt to secure the Party's participation.

  As stated earlier, formal rules of evidence do not apply to hearings conducted by the University. The Hearing Panel may at their discretion consider statements of a party or witness made before or at a hearing and/or other information, and give the weight to such information as they determine is appropriate under the circumstances, regardless of whether the party or witness appears at or answers some or all cross-examination questions at a hearing. Hearing Panels will not draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer

- 72 -

cross-examination or other questions.[26]

- If a Party does not attend the hearing and does not testify at the hearing, the hearing panel may still reach a determination regarding responsibility based on other relevant evidence submitted during the investigation and may, at their discretion, consider statements of a party or witness made before or at a hearing and/or other information, including any statement relayed by the absent witness to a witness or Party who testifies at the hearing.

- The Hearing Panel cannot draw an inference about the responsibility for a policy violation based solely on a Party's absence from the hearing or refusal to answer cross examination or other questions.

- The Parties are subject to the University's Rules of Decorum (see Appendix C for the Rules of Decorum).

- <u>The Hearing Chair:</u> The Hearing Chair is a voting member of the Hearing Panel and is responsible for the facilitation and moderation of the hearing process. The Hearing Chair is also responsible for the oversight of the Rules of Decorum and has the authority to remove a hearing participant for egregious or repeated violations of the Rules of Decorum. The University may, in its sole discretion, assign an appropriate non-SCCS Hearing Chair to a matter

- <u>The Hearing Panel</u>: In addition to the Hearing Chair, the Hearing Panel will generally include two members drawn from specially trained administrators within SCCS and/or Equal Opportunity and Affirmative Action ("EOAA"), excluding the Investigative Team and other administrators responsible for the report. The University may, in its sole discretion, assign appropriate non-SCCS/non-EOAA Panelists to a matter

All panelists receive relevant training at least once a year. In addition to training on how the adjudicatory process works, the training will include specific instruction on how to evaluate evidence impartially, bias and conflict of interest, how to approach people about sensitive issues that may arise in the context of alleged gender-based misconduct, issues of relevance, including how to apply the rape shield protections provided for

---

[26] Update on Court Ruling about the Department of Education's Title IX Regulations regarding Exclusionary Evidence Rule U.S. Department of Education sent this bulletin at 08/24/2021 04:42 PM EDT:

https://content.govdelivery.com/accounts/USED/bulletins/2ee0a5d

Complainants, and any technology to be used at the hearing.

No member of the Hearing Panel will have a conflict of interest or bias for or against Complainants or Respondents generally, or for or against a Party in a particular case.

The Complainant and Respondent will be informed of the panel's membership before the hearing process begins and will be afforded an opportunity to raise any perceived conflicts of interest before the hearing (see Conflicts of Interest or Bias above).

- Advisor: The advisor must conduct any cross-examination; the Parties are not permitted to do so. If a Party does not select an advisor, the University will select an advisor to serve in this role for the limited purpose of conducting the cross-examination at no fee or charge to the Party.

The advisor is not prohibited from having a conflict of interest or bias for or against Complainants or Respondents generally, or for or against a Party in a particular case. The advisor is also not prohibited from being a witness in the matter.

If a Party does not attend the hearing, the Party's advisor may appear and conduct cross-examination on the Party's behalf. If neither a Party nor their advisor appear

at the hearing, the Office will provide an advisor to appear on behalf of the non-appearing Party.

Advisors are subject to the institution's Rules of Decorum, and may be removed upon violation of those Rules (see Appendix C for the Rules of Decorum).

- Witnesses: Witnesses cannot be compelled to participate in the hearing, and have the right to be free from retaliation if they do not participate in the hearing. However, witnesses possessing relevant information are strongly encouraged to participate in the hearing.

Formal rules of evidence do not apply to hearings conducted by the University. The Hearing Panel may at their discretion consider statements of a party or witness made before or at a hearing and/or other information, including any statement relayed by the absent witness to a witness or Party who testifies at the hearing and give the weight to such information as they determine is appropriate under the circumstances, regardless of whether the party or witness appears at the hearing panel or answers some or all cross-examination questions at the hearing panel. Hearing Panels will not draw an inference about the determination regarding responsibility based solely on a party's or witness's

absence from the live hearing or refusal to answer cross-examination or other questions.[27]

Witnesses are subject to the institution's Rules of Decorum (see Appendix C for the Rules of Decorum).

Interim Title IX Policy Hearing Procedures

In general, all Interim Title IX Policy Hearings will proceed as follows:

- Hearing Chair will open and establish rules and expectations for the hearing;

- Complainant's opening statement

- Respondent's opening statement

- Hearing Chair conducts an initial round of questioning;

- Parties' cross-examination

  - The Hearing Chair has the authority to assess any questions presented by the advisors, for relevancy. The Hearing Chair will make a determination regarding relevance before any Party or witness is expected to provide an answer.

  - The Hearing Chair has the authority to pause cross-examination at any time for the purposes of asking the Hearing Chair's own follow up questions; and at any time as

necessary to enforce the established Rules of Decorum (see Appendix C for the Rules of Decorum).

  - If a Party or the Party's advisor chooses not to cross-examine another Party or witness, the Party must affirmatively waive cross-examination of that Party or witness through a written or oral statement to the Hearing Chair. A Party's waiver of cross-examination does not eliminate the ability of the Hearing Chair to use statements made by that Party or witness.

- Hearing Panel poses follow-up questions to Parties and witnesses

- Complainant's closing statement

- Respondent's closing statement

*** 

Opening Statements: The Complainant and the Respondent may provide opening statements to the Hearing Panel. If they choose to do so, the presentation of the opening statement may not exceed seven (7) minutes. The Parties' advisors may assist them with drafting an opening statement and the Parties may read from a written document. However, the Parties' advisors may not present the opening statement on

---

[27] Update on Court Ruling about the Department of Education's Title IX Regulations regarding Exclusionary Evidence Rule U.S. Department of Education sent this bulletin at 08/24/2021 04:42 PM EDT:

https://content.govdelivery.com/accounts/USED/bulletins/2ee0a5d

their behalf. Unless explicitly requested by the Hearing Panel, the Complainant and the Respondent may not submit such a written document as additional evidence for consideration.

- Questions by the Hearing Panel: The Hearing Panel may ask questions of the Complainant, Respondent, and witnesses, including the Investigative Team. Generally, questions will focus on statements made by the Parties or witnesses, information contained in the investigative report, the Investigative Team's recommendation, and any other information provided to the Hearing Panel. The Hearing Panel will pose any questions they have to the hearing participants prior to the advisors' questioning of the participants and may ask any necessary follow up questions after questions from the advisors.

- Questions by the Advisors: Each Party's advisor may pose **relevant** questions to the opposing Party and witnesses (including the Investigative Team). Relevant questions include those questions that tend to prove or disprove an element of the allegation(s) being considered by the Hearing Panel. Before a Complainant, Respondent, or witness answers a question, the Hearing Panel Chair will determine whether the question is irrelevant and therefore can be answered. If the Hearing Panel Chair

decides to exclude a question, the Hearing Panel Chair will provide an explanation as to why the question is not relevant. The advisor will have the opportunity to offer a brief explanation in response as to why they believe their question is relevant. The Hearing Chair may accept or reject that explanation without any additional explanation required.

The Parties may not pose questions to each other or the witnesses. If a Party does not have an advisor, the University will provide an advisor for the hearing without fee or charge to that Party. The advisor will be selected by the University and is not required to be an attorney even if the opposing Party's advisor is an attorney. A Party should let the Hearing Chair know as early as possible if the Party needs the University to appoint an advisor, so that the arrangements can be made and the process can continue to progress in a timely manner. If neither the Party nor their advisor attends, the University will supply an advisor for the purpose of cross examination of the opposing Party or their witnesses.

The Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on that individual's absence from the hearing or refusal to answer questions.

- Closing Statements: At the conclusion of the cross-examination and questioning by the Hearing Panel, the Complainant and Respondent will have the opportunity to present closing statements to the Hearing Panel. Closing statements may not exceed seven (7) minutes, and, similar to the opening statements, the closing statements must be presented by the Parties, not their advisors. The advisors may assist in the preparation of the closing statement and the Parties may read from a written document. Unless explicitly requested by the Hearing Panel, the Complainant and the Respondent may not submit such a written document as additional evidence for consideration.

- Review of Recording and Transcript: The Office will record the hearing and provide a written transcript. The recording and transcript of the hearing will be available for review by the Parties within five (5) business days, unless there are any extenuating circumstances. The recording and transcript of the hearing will be provided for review and inspection only. As stated above, any other recording is prohibited.

Determining Responsibility

Following the investigation and conclusion of the hearing, the Hearing Panel will render a determination regarding whether the Respondent is responsible for the violation(s). The Hearing Panel will use "preponderance of the evidence" as the standard of proof to determine whether a violation of the Policy occurred. Preponderance of the evidence means that a Hearing Panel must determine whether, based on the evidence presented, the Respondent was more likely than not to have engaged in the conduct at issue. If the Hearing Panel determines that the Respondent violated the Interim Title IX Policy, the Hearing Chair will forward the determination to the Sanctioning Officer to decide upon the appropriate discipline.

While the opportunity for cross-examination is required in all Title IX hearings, determinations regarding responsibility may be based in part, or entirely, on documentary, audiovisual, and digital evidence, as warranted in the reasoned judgment of the Hearing Panel. The Hearing Panel will find a student responsible or not responsible, based on a majority vote, after a review of all of the statements and evidence summarized in the Investigative Report, the written statements submitted by the Complainant and the Respondent, and the statements, testimony, and evidence at the hearing.

The Hearing Panel will not draw inferences regarding a Party or witness' credibility based on the Party or Witness' status as a Complainant, Respondent, or Witness, nor

will it base its judgments in stereotypes about how a Party or witness would or should act under the circumstances.

Generally, credibility judgments will rest on the plausibility and consistency of individuals' testimony and the reliability of testimony in light of corroborating or conflicting testimony or evidence. However, credibility judgments will not rest on whether a Party or witness' testimony is non-linear or incomplete, or if the Party or witness is displaying stress or anxiety.

- The Hearing Panel will afford the highest weight relative to other testimony to first-hand testimony by Parties and witnesses regarding their own memory of specific facts that occurred. All evidence will be weighed in equal fashion.

- Except where specifically barred by the May 2020 Title IX regulations, a witness' testimony regarding third-party knowledge of the facts at issue will be allowed, but will generally be afforded lower weight than testimony regarding direct knowledge of specific facts that occurred.

- While expert witnesses who are deemed to have potentially relevant information will be allowed to testify and be cross-examined, the Hearing Panel affords lower weight to non-factual testimony of the expert relative to fact witnesses, and

any expert testimony that is not directed to the specific facts that occurred in the case will be afforded lower weight relative to fact witnesses, regardless of whether the expert witness testimony is the subject of cross examination and regardless of whether all Parties present experts as witnesses.

- While character witnesses will be allowed to testify and be crossed-examined, the Hearing Panel affords very low weight to any non-factual character testimony of any witness.

- While polygraph tests, the processes and testimony about them are permitted, the Hearing Panel affords lower weight to such processes relative to the testimony of fact witnesses.

- Where a Party or witness' conduct or statements demonstrate that the Party or witness is engaging in retaliatory conduct, including but not limited to witness tampering and intimidation, the Hearing Panel may draw an adverse inference as to that Party or witness' credibility or an adverse inference as to the testimony of any witness whose testimony appears to have been influenced by such intimidation or witness tampering.

- 78 -

Written Determination

The Hearing Panel will generally render a determination decision within ten (10) business days after the conclusion of a hearing, which will be delivered simultaneously to the Parties' Columbia e-mail address via Maxient, and will include the following explanation of the basis for the decision:

- Identification of the allegations potentially constituting prohibited conduct under the Interim Title IX Policy;

- A description of the procedural steps taken from the receipt of the Title IX Formal Complaint through the determination, including any notifications to the Parties, interviews with Parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

- Findings of fact supporting the determination;

- Conclusions regarding which section of the Policies, if any, the Respondent has or has not violated.

- For each allegation:

  - A statement of, and rationale for, a determination regarding responsibility;

  - Any disciplinary sanctions and an accompanying rationale for sanctions the University imposes on the Respondent;

  - A statement of, and rationale for, whether remedies designed to restore or preserve equal access to the University's education program or activity will be provided by the University to the Complainant; and

  - Columbia University's procedures and the permitted reasons for the Complainant and Respondent to appeal (described below in "Appeal Process").

- 79 -

## E. Sanctions and Other Remedies

### How Sanctions are Determined

In determining a sanction, the Sanctioning Officer of the Respondent's school, after consultation with SCCS, will impose sanctions that are:

- Fair and appropriate, given the facts of the particular case;

- Adequate to promote the safety of the campus community; and

- Reflective of the seriousness of gender-based misconduct.

When a student is found responsible for a Policy violation, relevant factors will be considered when imposing a sanction, including but not limited to, if applicable: the specific gender-based misconduct at issue (such as penetration, touching under clothing, touching over clothing, unauthorized recording, etc.); the circumstances accompanying the lack of consent (such as force, threat, coercion, incapacitation, etc.); the Respondent's state of mind (intentional, knowing, bias-motivated, reckless, negligent, etc.); sanctions imposed on the Respondent in other matters involving similar conduct; the impact of the offense on the Complainant; the Respondent's prior disciplinary history; and the safety of the University community.

In addition, prior to the imposition of a sanction, both the Complainant and the Respondent may provide a written impact statement discussing how the alleged gender-based misconduct has impacted them. The written statement must be prepared by the student and be no more than five single-spaced typed pages, using size 12-point Times New Roman font and one-inch margins. The statement will only be considered by a Sanctioning Officer if there is a finding of responsibility by a Hearing Panel or if, through the Gender-Based Misconduct Procedure, the Respondent has accepted responsibility or responded "No Contest" to the alleged violation(s) in the Disciplinary Action Agreement.

Any impact statement must be submitted to SCCS within three days following: (i) the completion of any hearing panel process; or (ii) the submission of a Disciplinary Action Agreement answering "Responsible" or "No Contest."

The Sanctioning Officer from the Respondent's school, in consultation with SCCS, will render a sanctioning decision within three days following the receipt of the Impact Statements.

- The sanctioning decision will be issued within three days following the receipt of a Gender-Based Misconduct Hearing Panel's determination or the Respondent's Disciplinary Action Agreement answering "Responsible" or "No Contest." Time frames for sanctioning decisions are subject to the availability of the Sanctioning Officer.

- As noted above, the sanctioning decision and the rationale will be issued as part of the written determination following an Interim Title IX Procedure Hearing Panel.

There will be no sanction notice if there is not a finding of responsibility.

## List of Sanctions

The University may impose one or more of the following sanctions on a student determined to have violated either the Gender-Based Misconduct Policy or the Interim Title IX Policy:

- Reprimand/Disciplinary Warning;

- Disciplinary Probation;

- Revocation of honors or awards;

- Restriction of access to University facilities or activities (student activities and campus organizations and buildings);

- Removal from and/or restricted participation in academic or extracurricular activities and/or University organizations, or restriction from University services;

- Dismissal or restriction from University employment;

- Removal from student housing;

- Admission revocation (for example, in the case of an undergraduate student admitted to a University graduate or professional program);

- Disciplinary Suspension;

- Expulsion;

- Withholding or deferral of issuance of degree;

- Revocation of degree; and/or

- Revocation of alumni privileges.

If a sanction of disciplinary probation, disciplinary suspension, expulsion, withholding of degree, or revocation of degree is issued, the student will be considered not in good disciplinary standing.

In addition to any other sanction (except where the sanction is withholding of degree, expulsion, or revocation of degree after a student has graduated), the University will require any student determined to be responsible for a violation of the Policy to receive appropriate education and/or training related to the gender-based misconduct at issue. The University may also recommend counseling or other support services for the student.

When a student is found responsible and the sanction includes suspension or expulsion, the student may be removed from a campus residence and either severely restricted in their movements on campus or barred completely during the entirety of the appeal-filing period and appeal process. If a Respondent is eligible for return to campus while a Complainant remains on campus, the Complainant will, at the earliest possible date, be notified in writing of the Respondent's intention to return.

In addition, while an investigation, a determination or appeal is pending, an

administrative hold may be placed on the Respondent's University transcript, diploma, registration, and/or student account until the process is resolved. Upon conclusion of the appeal process, a transcript notation will be indicated on the Respondent's record for cases resulting in suspension, expulsion or in cases where the Respondent withdraws from the University during the investigation or the hearing process. Notations on transcripts will be indicated as follows: disciplinary suspension; disciplinary expulsion; or withdrawn with disciplinary action pending. For more information on transcript notations please visit:

http://www.essential-policies.columbia.edu/university-regulations-including-rules-conduct#standard or http://www.tc.columbia.edu/policylibrary/associate-provost-enrollment-services/transcript-notations/ for Teachers College.

## Ongoing Supportive Accommodations for Students

Whatever the outcome of the investigation, hearing or appeal, the Complainant and the Respondent may request ongoing or additional supportive accommodations, and the Office, in consultation with the designated administrator of the student's school, will determine whether such measures are appropriate. Ongoing supportive accommodations that do not unreasonably burden a Party may be considered and provided even if the Respondent is found not responsible for

violating this Policy. These supportive accommodations and additional responses may also be available for Complainants who choose not to file a complaint or participate in an investigation, hearing or appeal. Potential ongoing supportive accommodations include:

- Issuing or maintaining a No-Contact directive or No-Contact Agreement
- Providing an escort for the student;
- Moving the student's residence;
- Changing the student's academic schedule;
- Adjusting the student's work schedule;
- Allowing the student to withdraw from or retake a class without penalty; and
- Providing access to tutoring or other academic support, such as extra time to complete or re-take a class.

## Additional Responses

The University may also determine that additional measures are appropriate to respond to the effects of an incident on the University community. Additional responses for the benefit of the University community may include:

Increased monitoring, supervision, or security at locations or activities where the misconduct occurred;

- Additional training and educational materials for students and employees;
- Revision of the University's policies on gender-based misconduct; and/or

- Climate surveys regarding gender-based misconduct.

## F. Appeal Process

Respondents and Complainants may appeal a Gender-Based Misconduct Hearing Panel decision, an Interim Title IX Policy Hearing Panel decision, and/or the sanction(s) within five days after receipt of the finding and sanctioning notice (if applicable), respectively, by filing an appeal in writing to SCCS.

Appeals are decided by an Appellate Panel majority vote. The Appellate Panel consists of three Deans of schools: the Dean of the Respondent's school, the Dean of the Complainant's school, and a Dean from another school. Should the Complainant and the Respondent attend the same school, two Deans will be added from other schools. Should the Parties both be students of a graduate or professional school, Deans from graduate or professional schools will comprise the panel. Should one Party be an undergraduate student and another Party a graduate or professional student, the Appellate Panel will consist of the Dean of the Respondent's school, the Dean of the Complainant's school, and a Dean of School from the academic level of the Respondent. All Deans will receive relevant training at least once a year on how the adjudicatory and appeal process works, the elements essential to a fair and balanced review, and the sensitive issues in reviewing gender-based misconduct cases.

The four grounds for appeal are:

- Procedural irregularity: An appeal based on procedural irregularity must identify with specificity each alleged irregularity within the investigative and/or hearing process and the ways in which the specified irregularity or irregularities substantially affected the decision of the Hearing Panel and/or Sanctioning Officer to the detriment of the appealing Party. Disagreement with the finding or sanction is not, by itself, a ground for appeal;

- New information: An appeal based on new information must explain why this information was not available or not provided to the Investigative Team in a timely manner, and how this information would have substantially altered the decision by the Hearing Panel. If a Party declined to participate or withdrew from the process, the panel will not consider information that the Party could have provided if they had fully participated in the process. This includes situations where a student declines to participate on the advice of their advisor or due to a concurrent criminal investigation; and/or

- Conflict of Interest/Bias: An appeal based on conflict of interest or bias must explain how the Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally, or the individual Complainant or Respondent, that affected the outcome of

the matter. Complainants and Respondents are afforded multiple opportunities throughout the process to appeal based on potential conflicts of interest or alleged bias. Students must indicate a potential conflict of interest or alleged bias through these opportunities (e.g., during Notice of the Investigators assigned to the case, Notice of the Hearing Panelists, etc.) so that they are immediately addressed before the process moves forward. As such, only newly known or newly apparent conflicts of interest or bias will be considered; or

- <u>Excessiveness or insufficiency of the sanction</u>: An appeal based on the imposed sanction must explain why the sanction is inappropriate based on the weight of the information provided during the investigation, hearing and/or sanction.

Attached to their appeal, the student may provide a written submission for the Appellate Panel to review. The written statement must be prepared by the student and be no longer than five single-spaced typed pages, using 12-point Times New Roman font and one-inch margins. No attachments or exhibits will be accepted; references to evidence should be made to cited portions of the Hearing Panel's decision, the Investigative Report, or to materials included with the Investigative Report.

If either the Complainant or the Respondent submits an appeal, the Office will notify the other Party within three days after receipt. The Office will provide the non-appealing Party an opportunity to review the appeal and submit a written response. This response must be written by the student and be no more than five single-spaced typed pages, using 12-point Times New Roman font and one-inch margins, and be submitted within five days after a notice of appeal is issued. If both the Complainant and the Respondent appeal, the appeals will be considered concurrently and each Party will have the opportunity to review and respond to the other Party's appeal.

The purpose of an appeal is not to initiate a review of substantive issues of fact, or for a new determination of whether a violation of the Policy has occurred. The Appellate Panel is strictly limited to determining if an appeal should be granted based on the above four grounds for appeal. In making a determination, the Appellate Panel will have access to and the ability to review all applicable documents, including the complete Investigative Report, all exhibits, written statements submitted to the Hearing Panel, impact statements, and a recording of the hearing (if applicable). The Appellate Panel may also request additional information from the Investigative Team and/or Hearing Panel regarding issues of procedural irregularity or new evidence. Additionally, in the event a student submits an appeal containing inaccurate facts or information outside the scope of the Policy, those portions of the information may be redacted and/or the Title IX Coordinator may

provide a curative instruction to the Appellate Panel. The Appellate Panel may take the following actions:

- Affirm the decision and/or sanction;

- Revise the sanction; or

- Reverse and send back the matter to the Hearing Panel or Investigative Team or a different Hearing Panel or Investigative Team for further consideration.

If the matter is returned to a Hearing Panel or Investigative Team, the Appellate Panel will provide instructions regarding the nature and extent of the reconsideration. Following reconsideration by the Hearing Panel or Investigative Team, further proceedings will be conducted as appropriate.

The Appellate Panel will notify the Complainant and the Respondent of their decision in writing. Appeal decisions will be rendered generally within 15 days after the receipt of the last written submission by either of the Parties, depending on the availability of the Appellate Panel at the time of the appeal. The Office will notify the Parties if there is a delay. There is no further recourse beyond the decision of the Appellate Panel.

### G. University Records

### Records Retention and Disclosure

The information compiled as part of a review of allegations of gender-based misconduct is part of a student's educational record and is maintained by SCCS. This record generally contains a description of the alleged violation, supporting documentation, written submissions, the Investigative Report with exhibits, if applicable, and official case-related correspondence.

Disciplinary proceedings conducted by the University are subject to the Family Educational Records and Privacy Act ("FERPA"), a federal law governing the privacy of student information. FERPA generally limits disclosure of student information outside the University without the student's consent, but it does provide for release of student disciplinary information without a student's consent in certain circumstances. For example, it is important to note that the release of student disciplinary records is permitted, without prior consent, to University officials with legitimate educational interest such as a student's academic advisor and to Columbia Athletics if the involved student is an athlete. The University will also release information when a student gives written permission for information to be shared.

Any information gathered by the Office may be subpoenaed by law enforcement authorities as part of a parallel or subsequent investigation into the same conduct, or required to be produced through other compulsory legal processes.

Unless otherwise specified by the student, the University will respond to third-Party requests for a student's disciplinary records (e.g. requests by graduate schools or employers) by

disclosing only records of disciplinary matters that result in the change of a student's good disciplinary standing at the University. Matters that resulted in Disciplinary Probation are reported for seven years from the date that the student was found responsible for a violation of University policy. Matters that result in a Disciplinary Suspension or Expulsion from the University are reported as a part of the student's permanent education record. Matters where students maintained good disciplinary standing are not reported unless otherwise specified by the student. This disclosure includes the student's violation(s), the corresponding sanction(s), and the date of determination.

Students and alumni may inquire about their disciplinary record by visiting: https://studentconduct.columbia.edu/ or http://bitly.com/sccsbgcheck/.

Additional information about FERPA can be found at:

- Columbia University's Essential Policies for the Columbia Community;

- Barnard College's Policy and Guidelines Regarding Student Records Under the Family Educational Rights and Privacy Act of 1974 (FERPA); and

- Teachers College's Student Records and Family Education Rights and Privacy Act (FERPA) Statement.

## Reporting of Crime and Disciplinary Statistics

A federal law called the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act")[28] requires the University to record and report certain information about campus safety, including the number of incidents of certain crimes on or near campus, some of which constitute gender-based misconduct under this Policy. As described in the chart in the Resources listing at the back of the Policy, many employees who receive reports of gender-based misconduct are required by the Clery Act to notify University Public Safety about such incidents for statistical reporting purposes only; these notifications may include the classification and location of the reported crime, but do not identify the students involved.

Additionally, as a matter of Policy unrelated to the Clery Act, the University annually reports aggregate information to the University community concerning reported incidents of gender-based misconduct and the results of student disciplinary proceedings. Such reports do not contain information identifying individual student participants.

---

[28] For purposes of the Clery Act, Columbia University, Barnard College, and Teachers College separately report Clery data.

# V.   UNIVERSITY AUTHORITY/ AMENDMENTS

The University may amend the Policy or the Procedures periodically. Nothing in the Policy or Procedures shall affect the inherent authority of the University to take such actions or alter, change or modify this Policy or Procedures as it deems appropriate to further the educational mission or to protect the safety and security of the University community. The information in this Policy is intended to be explanatory and not contractual in nature.

If any portion of the Title IX Final Rule, (May 19, 2020), is stayed or held invalid by a court of law, through an applicable order, or should the Title IX Final Rule be withdrawn or modified to not require some or all of the elements of this Policy, the elements of this Policy that are no longer required by the Final Rule will be deemed revoked as of the publication date of the opinion, order, withdrawal or modification, and for all after such a date, as well as any elements of the process that occur after that date if a case is not complete by that date. Should the Interim Title IX Policy be revoked in this manner, any conduct covered under the Interim Title IX Policy will be investigated and adjudicated under the Gender Based Misconduct Policy.

# VI.   APPENDICES

A. New York State Students' Bill of Rights

B. Resource Guide for Students

C. Rules of Decorum

# NYS STUDENTS'
# BILL OF RIGHTS

New York State law requires that all institutions of higher education in New York publish the following Bill of Rights for all students attending higher education institutions in the State.

**All students have the right to:**

1. Make a report to local law enforcement and/or state police

2. Have disclosures of domestic violence, dating violence, harassment, stalking, sexual exploitation, sexual assault, and retaliation treated seriously

3. Make a decision about whether or not to disclose a crime or violation and participate in the University gender-based misconduct process and/or criminal justice process free from pressure by the University

4. Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard

5. Be treated with dignity and to receive from the University courteous, fair, and respectful health care and counseling services, where available

6. Be free from any suggestion that the Complainant is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations

7. Describe the incident to as few University representatives as practicable and not be required to unnecessarily repeat a description of the incident

8. Be protected from retaliation by the University, any student, the accused and/or the Respondent, and/or their friends, family, and acquaintances within the jurisdiction of the University

9. Access to at least one level of appeal of a determination

10. Be accompanied by an advisor of choice who may assist and advise a Complainant, accused, or Respondent through the judicial or conduct process included during all meetings and hearings related to such process

11. Exercise civil rights and practice of religion without interference by the investigative, criminal justice or judicial or conduct process of the University

# STUDENT CONDUCT AND COMMUNITY STANDARDS
## GENDER-BASED MISCONDUCT RESOURCES FOR STUDENTS

## ON-CAMPUS RESOURCES

The University Health Services Student Fee covers the on-campus resources that are available to students enrolled in their school's health service program. Services are available during normal business hours, 9:00 a.m.-5:00 p.m., unless otherwise noted.

## CONFIDENTIAL

### Sexual Violence Response & Rape Crisis/Anti-Violence Support Center*
- **Morningside:** Alfred Lerner Hall, Suite 700
- **CUIMC:** 60 Haven Ave, Bard Hall, Suite 206
- **Barnard:** 105 Hewitt Hall, 1st Floor
- **Helpline:** 212-854-HELP (4357) *(Available 24 hours a day year-round)*

### Ombuds Office
- **Morningside:** 660 Schermerhorn Ext. | 212-854-1234
- **CUIMC:** 154 Haven Ave, Room 412 |212 -304-7026

### Medical Services
- **Morningside:** John Jay, 4th Floor | 212-854-7426 | Mon–Thur 9am-4:30pm | Fri 8am – 3:30pm
- **CUIMC:** 100 Haven Ave, Tower 2, 2nd Floor| 212-305-3400
- **Barnard:** Lower Level Brooks Hall | 212-854-2091

### University Counseling and Psychological Services
- **Morningside:** Alfred Lerner Hall, 5th and 8th Floors | 212-854-2878
- **CUIMC:** 100 Haven Ave, Tower 2, 3rd Floor | 212-305-3400
- **Barnard:** 100 Hewitt Hall, 1st Floor | 212-854-2092 After hours 855-622-1903

### University Pastoral Counseling
- **Office of the University Chaplain:** *(Ordained Clergy)* W710 Lerner Hall | 212-854-1493
- **Columbia Religious Life:** *(Ordained Clergy)* 303 Earl Hall | 212-854-2184

### Columbia Office of Disability Services *(Confidential Resource for Columbia Only)*
- **Morningside:** Wien Hall, Suite 108A | 212- 854-2388
- **CUIMC:** 105 Bard Hall | 212-304-7029 http://www.health.columbia.edu/disability-services Indicates that facility supports Teachers College.

The medical treatment resources listed above can provide treatment for injuries and for potential exposure to sexually transmitted diseases. They also provide emergency contraception and other health services. They can assist in preserving evidence or documenting any injuries, including by helping find a Sexual Assault Nurse Examiner, who is specially trained to collect evidence. Taking these steps promptly after an incident can be very helpful in later criminal proceedings and/or in seeking a protective order.

## ADDITIONAL RESOURCES (NON-CONFIDENTIAL)

### Student Conduct and Community Standards ("SCCS")
- Case Management and Community Engagement conductcm@columbia.edu | 212-854-1717

### Equal Opportunity and Affirmative Action ("EOAA")
- eoaa@columbia.edu | 212-854-5511

### University Title IX Coordinators
- **Columbia University:** Marjory Fisher, Associate Vice President | 201A Kent Hall | mdf2166@columbia.edu 212-853-1276
- **Barnard:** Dr. Elizabeth Scott-Francis, Director of Nondiscrimination and Title IX | Elliott Hall, 1st Floor | escottfr@barnard.edu | 212-854-0037
- **Teachers College:** Janice Robinson, Vice President for Diversity and Community Affairs | Zankel 128 jsr167@tc.columbia.edu | 212-678-3391

### University Public Safety
- **Morningside:** 212-854-2797
- **Manhattanville:** 212-853-3301
- **CUIMC:** 212-305-8100
- **Barnard:** 212-854-3362
- **Teachers College:** 212-678-3333

### International Students and Scholars Office ("ISSO")
- 524 Riverside Drive, 1st Floor https://isso.columbia.edu/ | 212-854-3587

### Requesting Accommodations for a Disability at Barnard and Teacher's College
- **Teachers College Office of Access and Services for Individuals with Disabilities:** Zankel 301 http://www.tc.columbia.edu/oasid | 212-678-3689
- **Barnard Office of Disability Services:** 101 Althschul Hall http://www.barnard.edu/disabilityservices | 212-854-4634

## OFF-CAMPUS RESOURCES**

Unless otherwise noted, all facilities listed below are available 24 hours a day.

☽ indicates facilities that are not available 24 hours a day.  **Fees may apply.

### Off-Campus Advocacy, Counseling and Health Services

- **Safe Horizon**
  Sexual Assault Hotline: 212-227-3000
  Domestic Violence Hotline: 800-621-HOPE (4673)

- ☽**Mt. Sinai St. Luke's Hospital Crime Victims Treatment Center** 1-212-523-4728 *by appointment only* (sexual assault advocates available 24 hours a day).

- **New York-Presbyterian/CUIMC Emergency Room** 1-212-305-6204

- **New York City Anti-Violence Project** 1-212-714-1184

- **New York State Office of Victim Services** 1-800-247-8035

- **New York State Office of Campus Safety** 1-518-474-6460

- **New York State Office for the Prevention of Domestic Violence** 1-800-942-6906

- **It's On Us 1-**202-908-5226 www.itsonus.org

### Neighboring Hospitals with SAFE Centers:

- **Mt. Sinai St. Luke's Hospital** *(CHP Group)*
  1111 Amsterdam Avenue at West 113th Street

- **Mt. Sinai West Hospital** *(CHP Group)*
  1000 10th Avenue at West 58th Street

- **Beth Israel-Petrie Campus** *(CHP Group)*
  281 First Avenue at East 16th Street

- **Bellevue Hospital** *(HHC Group)*
  462 First Avenue at East 27th Street

- **Harlem Hospital** *(HHC Group)*,
  506 Malcolm X Boulevard at West 135th Street

- **Metropolitan Hospital Center** *(HHC Group)*
  1901 First Avenue at 96th Street

- **Mount Sinai Medical Center** *(Mount Sinai)*,
  1 Gustave L Levy Place (Fifth Avenue) at East 98th Street

- **New York-Presbyterian - Columbia** *(NYP)*
  622 West 168th Street

- **New York-Presbyterian - The Allen Pavilion** *(NYP)*,
  5141 Broadway at West 221st Street

- **New York-Presbyterian - Weill Cornell** *(NYP)*, 525 East 68th Street at York Avenue

Mt. Sinai St. Luke's Hospital's Emergency Room at 1111 Amsterdam Avenue (West 113th Street between Amsterdam and Morningside Avenues) and New York-Presbyterian Hospital/CUIMC Emergency Room at 630 West 168th Street (at Broadway) can provide treatment for injuries and for potential exposure to sexually transmitted infections, emergency contraception, and other health services. They can assist in preserving evidence or documenting any injuries and have personnel who are specially trained to collect evidence.

### Off-Campus Law Enforcement

- **New York City Police Department** (NYPD)
  Emergency: 911
  26th Precinct: 212-678-1311

- **New York County District Attorney's Office**
  Domestic Violence Unit: 212-335-4308
  Sex Crimes Unit:  212-335-9373

- **New York Campus Sexual Assault Victims Unit Hotline** 1-844-845-7269

- **Sex Crimes Report Hotline** 212-267-7273

### Additional Government Resources

The government resources listed here may provide additional assistance for students wishing to file an external complaint of gender-based misconduct or students with inquiries regarding the application of Title IX and its implementing regulations:

- ☽**NYC Family Justice Center – Manhattan**
  https://www1.nyc.gov/site/ocdv/programs/family-justice-centers.page
  212-602-2800 | 80 Centre St New York, NY 10013

- ☽**New York State Office of Victims Services**
  https://ovs.ny.gov/ |1-800-247-8035

- ☽**U.S. Department of Education, Office for Civil Rights** | http://www.ed.gov/ocr
  646-428-3800 | New York – Region II, 32 Old Slip, 26th Floor | OCR.NewYork@ed.gov

- ☽**U.S. Department of Justice, Office on Violence Against Women** | https://www.justice.gov/ovw
  202-307-6026 |145 N St, NE, Suite 10W.121 Washington, D.C. 20530

- **National Domestic Violence Hotline**
  1-800-799-SAFE

- ☽**National Crime Victim Center**
  http://www.ncvc.org | 855-484-2846 (8:30 am – 7:30 pm)

### Overseas Services

In an emergency, contact the nearest U.S. Embassy or Consulate, or call these numbers:
- From Canada: 1-888-407-4747
- From Overseas: +1-202-501-4444-4747

See the chart on the following page for an explanation of these resources' reporting obligations.

Up-to-date contact information can be found on the University's *Sexual Respect* website at http://sexualrespect.columbia.edu.

| CONFIDENTIALITY PROTECTIONS & REPORTING OBLIGATIONS |||
| :---: | :---: | :---: |
| Confidential resources will not share information with some exceptions. Exceptions to confidentiality are listed below. |||
| TYPE | PERSONNEL | REPORTING OBLIGATIONS |
| **CONFIDENTIAL** | University Chaplains (*Ordained Clergy*) | • None, unless acting in a role described below. |
| | Counseling and Psychological Services | • If a patient's clinical state poses a substantial risk of harm to the patient or others, as manifested by conduct, this resource must report to County Mental Health officials. (NY Mental Hygiene Law)<br>• If there is reasonable cause to suspect that a minor has been sexually abused, this resource will report to the requisite state officials. (NY Social Services Law) |
| | Physicians and Other Health Professionals | • This resource will report incidents on an aggregate periodic basis without any identifying information to the Office to enable the University to understand the existence and extent of the problem. (Title IX)<br>• If a patient's clinical state poses a substantial risk of harm to the patient or others, as manifested by conduct, these resources will report to New York County Mental Health officials. (NY Mental Hygiene Law)<br>• If there is reasonable cause to suspect that a minor has been sexually abused, this resource will notify the requisite state officials. (NY Social Services Law) |
| | Sexual Violence Response & Rape Crisis/Anti-Violence Support Center | • This resource will report incidents on an aggregate periodic basis without any identifying information to the Office to enable the University to understand the existence and extent of the problem. (Title IX)<br>• If there is reasonable cause to suspect that a minor has been sexually abused, this resource will notify University leadership. (NY Social Services Law)<br>• When disclosure may prevent harm to self or others where the danger is imminent (i.e. suicide or homicide) N.Y. [Mental Hygiene] Law<br>• If there is reasonable cause to suspect abuse or neglect of an Incompetent or Physically Disabled Person (defined as persons who are unable to care for themselves because of physical disability, mental disease or defect). (Article 260, NYS Penal Law & Soc. Services) |
| | Disability Services (*for Columbia only*)<br><br>University Ombuds Offices | • This resource will report incidents on an aggregate periodic basis **without any identifying information** to the Office to enable the University to understand the existence and extent of the problem. (Title IX)<br>• If a patient's clinical state poses a substantial risk of harm to the patient or others, as manifested by conduct, these resources will report to New York County Mental Health officials. (NY Mental Hygiene Law)<br>• If there is reasonable cause to suspect that a minor has been sexually abused, this resource will notify University leadership. (NY Social Services Law) |

| CONFIDENTIALITY PROTECTIONS & REPORTING OBLIGATIONS | | |
|---|---|---|
| Non-confidential resources are required to protect students' privacy to the greatest extent possible and will only disclose identifying information on a need-to-know basis. | | |
| TYPE | PERSONNEL | REPORTING OBLIGATIONS |
| ADDITIONAL RESOURCES (NON-CONFIDENTIAL) | Student Conduct and Community Standards<br><br>Title IX Coordinators<br><br>Equal Opportunity and Affirmative Action | • Unless a complainant requests otherwise and the request is granted, this resource will investigate and respond to reported gender-based misconduct incidents (Title IX)<br>• If the incident may be a crime, this resource will report it without any identifying information to Campus Public Safety for inclusion in the daily crime log and annual statistical report and for issuance of any required timely warning. (Clery Act)<br>• This resource will share information with University personnel who need to know it in order to carry out University policies and procedures |
| | Public Safety Personnel | • Public Safety will report to the Office all information received about gender-based misconduct incidents so the University can investigate and respond. (Title IX)<br>• If the incident may be a crime, Public Safety will include it in a crime log and annual crime statistics without identifying the alleged victim. (Clery Act)<br>• If the incident may be a crime and poses a serious or continuing threat, Public Safety will issue an emergency notification or timely warning. (Clery Act)<br>• If there is reasonable cause to suspect that a minor has been sexually abused, Public Safety will notify University leadership. (NY Social Services Law)<br>• Public Safety will share information with University personnel who need to know it in order to carry out University policies and procedures |
| | Other University Personnel<br><br>Disability Services<br>*Barnard and Teacher's College* | • Will report to the Office all information received about gender-based misconduct incidents so the University can investigate and respond. (Title IX)<br>• If the incident may be a crime, a "campus security authority" will report it without any identifying information to Campus Public Safety for inclusion in the daily crime log and annual statistical report and for issuance of any required timely warning. (Clery Act)<br>• If there is reasonable cause to suspect that a minor has been sexually abused, other University personnel will notify University leadership. (NY Social Services Law)<br>• Other University personnel will share information with University personnel who need to know it in order to carry out University policies and procedures. |

# APPENDIX C

## RULES OF DECORUM FOR GENDER-BASED MISCONDUCT HEARINGS & INTERIM TITLE IX GRIEVANCE PROCEDURE HEARINGS

The University's resolution processes are designed to be educational. Hearing Participants are expected to act in accordance with their role as it is described above, and in accordance with the Rules of Decorum set out here.

The Hearing Chair is responsible for conducting the hearing and maintaining decorum so that the hearing takes place fairly and effectively. If the Hearing Chair determines that decorum is broken and the hearing has become disorderly the Hearing Chair may recess or pause proceedings to address the behavior. Misconduct during the hearing can take many forms, both minor and egregious. It is within the Hearing Chair's discretion to discourage or penalize Parties, Witnesses or advisors who demonstrate a lack of decorum.

The following rules apply equally to all hearing participants, including Parties, witnesses and advisors regardless of sex, gender, or other protected class, and regardless of whether they are in the role of Complainant, Respondent, or Witness.

### Rules of Decorum

1. If an advisor, Party or witness is referencing another person, including the hearing participants, as much as possible the person's name or role (i.e. Complainant, Respondent) should be used.

2. Anyone referring to another person should refer to that person by their gender as they identify it. No participant may intentionally mis-gender another person.

3. During cross-examination, the Hearing Chair must approve all questions before the Party or witness responds. As much as possible, the Hearing Panel and advisors are expected to restrict the use of irrelevant questions (e.g. questions that are redundant, compound, or do not seek relevant information).

4. In posing questions to a Party or witness, the advisor may not use profanity or make ad hominem attacks. Questions are meant to be interrogative statements used to test knowledge or understand a fact; they may not include accusations.

5. Hearing participants are prohibited from:

   - Interrupting other participants;

   - Using profanity directed toward another participant;

   - Using objectively offensive or aggressive gestures;

   - Harassing another participant;

   - Yelling, screaming, badgering;

- Physically "leaning in" to the personal space of another participant;

- Approaching a participant without the express permission of the Hearing Chair;

- Taking any action that a reasonable person would see as intended to intimidate a participant or to meaningfully modify someone's participation in the process.

- Engaging in any other behavior to deliberately disrupt the hearing.

The Hearing Chair has sole discretion to pause or interject during the process and all hearing participants are expected to comply with any direction provided. If a hearing participant violates the Rules of Decorum or proceedings otherwise become disorderly the hearing officer may recess or pause proceedings to address the behavior.

If a hearing participant violates the Rules of Decorum, the Hearing Chair may issue a penalty to that hearing participant. Specifically, the Hearing Chair may give a verbal warning, pause the hearing process, or remove a hearing participant. If an advisor is removed for egregious or repeated violations of the Rules of Decorum, the respective Party may have the opportunity to immediately replace the advisor or the Office will assign an advisor to the Party for the purpose of completing cross-examination. Reasonable delays, including the temporary adjournment of the

hearing, may be anticipated should an advisor be removed. A Party cannot pose cross-examination questions themselves in such a circumstance.

If the Hearing Chair determines that an advisor violated the Rules of Decorum in the course of asking a relevant question, the violation will not affect the question's relevancy. The Hearing Chair will notify the advisor of the violation and permit the question to be re-asked (or permit a replacement advisor to ask the question in cases where the advisor has been removed for the violation of the Rules of Decorum).

## Notification of Rules-of-Decorum Violation and Removal Process

If the Hearing Chair determines that a participant has violated the Rules of Decorum, the Hearing Chair will first notify the offending person of the violation. Upon a second or further violation, the Hearing Chair has the discretion to remove the offending participant. The Hearing Chair will document any decision to remove a participant as part of the written determination regarding responsibility.

**Student Conduct and Community Standards**
800 Watson Hall, 612 West 115th Street, 8th Floor, MC 2611
New York, NY 10025
T: 212/854-6872 F: 212/854-8614
https://studentconduct.columbia.edu

September 30, 2021