PO Box #250050<br>
New York, NY 10025<br>
(917) 450-9050

**Direct Dial: (917) 450-9050**
**Direct Email: johndoe.casemail@gmail.com**

May 19, 2025

**VIA ECF**
The Honorable Robyn F. Tarnofsky
United States District Court
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007

    **Re:**     ***John Doe v. Columbia University*** **No. 1:25-cv-02132-DEH-RFT**

Dear Judge Tarnofsky:

        I write as Plaintiff in the above-caption matter, in vehement opposition to Columbia's request to stay discovery pending its motion to dismiss. Columbia's request is legally untenable, factually baseless, and strategically calculated to delay this litigation and deny Plaintiff access to critical evidence that will drive a stake directly through the heart of Columbia's defenses. Moreover, Columbia's refusal to acknowledge the substance of Plaintiff's allegations, and the binding case law that *actually* applies in this Circuit, and its calculated effort to recast all 1,075 of Plaintiff's allegations as conclusory, insufficient, and a basis for a stay is diabolical. The Court should see Columbia's request to stay discovery for exactly what it is— another[1] desperate and last-ditch attempt to delay the reckoning that discovery will bring. As such, and for the plethora of reasons stated in this letter, including courts routine denials of discovery stays in Title IX and Civil right litigation, "when the motion to dismiss is not clearly dispositive and the plaintiff faces serious continuing harm" (*see Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 147 (N.D.N.Y. 2018) Columbia's request to stay discovery should be denied.

**LEGAL STANDARDS THAT *ACTUALLY* APPLY**

- **Rule 12(b)(6) Motion to Dismiss**

       A Rule 12(b)(6) motion (on which Columbia rests its hat on demanding a discovery stay) tests the sufficiency of a plaintiffs claims as plead in the initial pleadings. In order to survive such a motion, the plaintiff's pleadings must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). " A claim has facial plausibility when the plaintiff

---

[1] Columbia has previously tried, albeit unsuccessfully to delay this litigation—including by refusing to honor FRCP pretrial obligations and deadlines as well as this courts standing orders and individual rules and practices ultimately forcing the adjournment and rescheduling of the Initial Pretrial Conference.

1

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

"On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiffs favor, in deciding whether the complaint alleges sufficient facts to survive." *Doe v. Columbia Univ.,* 831 F.3d 46, 48 (2d Cir. 2016). At the motion to dismiss stage, a court "is not engaged in an effort to determine the true facts." *Id.* Thus, a court "must accept the facts alleged and construe ambiguities in the light most favorable to upholding the plaintiffs claim." *Id.* To the extent that a movant asserts that documents incorporated by reference contradict the allegations contained in a complaint, a plaintiff states a plausible allegation sufficient to overcome a motion to dismiss when he offers an "explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the [documents]" or "cast[s] doubt on the authenticity or veracity of these documents." Cf *B.B. v. New Sch.,* 2018 U.S. Dist. LEXIS 80068 at *16 (S.D.N.Y. Apr. 30, 2018 Civ. Action No. 17 Civ. 8347 (AT)) (finding allegations in complaint contradicted by exhibits to complaint implausible and insufficient to defeat a motion to dismiss where plaintiff failed to provide explanation or dispute the authenticity or veracity of the exhibits).

- **Title IX Erroneous Outcome**

In order to properly plead an erroneous outcome claim, a plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994). Notably, "the pleading burden in this regard is not heavy." *Id.* A plaintiff can assert a successful erroneous outcome claim by alleging "particular evidentiary weaknesses" or "particular procedural flaws." *Id.* Allegations that "go well beyond the surmises of the plaintiff to what was in the minds of others and involve provable events that in the aggregate would allow a trier of fact to find that gender affected the outcome of the disciplinary proceeding" are sufficient to plead an erroneous outcome claim. *Id.* at 716. Plaintiff does that here.

### A. Columbia's Motion to Dismiss is not "strong" or dispositive

Columbia's motion to dismiss is not "strong" or dispositive as it contends—it is a fact-disputing brief in disguise, littered with misrepresentations of the Complaint and willful distortions of governing law. As required Plaintiff's Complaint adequately pleads facts that plausibly support at least the needed minimal inference of sex bias. *See Doe v. Columbia Univ.,* (2d Cir. 2016), . As such, Columbia's motion to dismiss is a textbook example of bad-faith lawyering and strategic misdirection. It does not engage with the *actual* allegations in the Complaint, nor does it contend with the clear and binding precedent in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) *Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016), *Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir. 1994), *Schiebel v. Schoharie Central School District,* No. 23-1080 (2d Cir.2024), *Prasad v. Cornell University,* Civ. No. 15-cv-00322 (N.D.N.Y. Feb. 24,2016), *Menaker v. Hofstra University,* 935 F.3d 20 (2d Cir. 2019), *Feibleman v. The Trustees of Columbia University In The City of New York,* 1:19-cv-04327 (S.D.N.Y.) *Tudor v. Whitehall Central School District,* No. 23-1217 (2d Cir. 2025), *Dean v. University at Buffalo School of Medicine,* No. 21-

2040 (2d Cir.2023), *Zeno v. Pine Plains CSD*, 702 F.3d 655 (2d Cir. 2012), *DiStiso v. Cook*, 691 F.3d 226 (2d Cir. 2012), *Williams v. NYC Housing Auth.*, 872 N.Y.S.2d 27 (1st Dep't 2009), and *B.B. v. New School*, No. 17 Civ. 8347 (AT), *2018 U.S. Dist. LEXIS. 80068*, at *19 (S.D.N.Y. Apr. 30, 2018*) that govern Plaintiff's claims.

Instead, Columbia offers a superficial and misleading narrative packaged in a disorganized rendition of irrelevant and selectively quoted case law held together by a shoestring. Columbia's motion to dismiss repeatedly misstates it's own Gender-Based Misconduct Policy[2] on which it purports to rely on dismissing Plaintiff's claims. Columbia's motion is not in the slightest, a genuine effort to challenge the legal plausibility of Plaintiff's claims under Rule 12(b)(6); nor is it a basis for a blanket discovery stay. Rather, it is a tactical, bad faith attempt to mislead this court and to shield its egregious and indefensible misconduct from any further scrutiny. In any event, Columbia's motion to dismiss merely seeks the courts determination on issues of fact, not of law, on every cause of action of which the court cannot resolve on a motion to dismiss.

In a nutshell, Columbia's defenses boils down to this: that the Court should resolve factual disputes in its favor at the pleading stage, ignore binding Second Circuit precedent (*Doe v. Columbia Univ.*, *Menaker*, *Yusuf*, *Zeno*, *Dean*), and stay discovery so it can continue to obscure the truth behind its discriminatory and retaliatory conduct against Plaintiff. However, Courts in this Circuit do not reward such antics and neither should this court. Under *Alapaha View Ltd. v. Prodigy Network, LLC*, No. 20-cv-7572, 2021 WL 1893316 (S.D.N.Y. May 10, 2021), a party seeking a stay of discovery bears the burden of showing: (1) a strong showing that the motion to dismiss will succeed; (2) that discovery would impose undue burden; and (3) that the plaintiff will not be prejudiced. Columbia meets none of these.

### 1. No Strong Showing by Columbia

Columbia's motion to dismiss rests on unsound premises and gross mischaracterizations of the Complaint[3] and outright baseless assertions that are flatly contradicted by the factual record. It fails, outright, as a matter of law. Far from presenting a legitimate challenge under Rule 12(b)(6), Columbia's motion to dismiss amounts to a conclusory denial of the well-pleaded facts, an improper invitation for the Court to weigh evidence, and an attempted end-run around discovery. Columbia does not even plausibly argue for dismissal on the legal merits of any cause of action alleged in the Complaint. Instead, it demands the Court expeditiously resolve contested factual disputes—issues squarely reserved for a jury.

Put simply, Columbia's motion to dismiss seeks the Court's determination on questions of fact, not of law. It despicably asks this Court to infer, without discovery, that Plaintiff is lying about his disability, lying about reporting racial harassment, coercion, and death threats and lying about receiving unfair and gender-biased treatment under Columbia's Gender-Based Misconduct Policy, despite the Complaint containing detailed, corroborated, and specific allegations to the contrary. This flies in the face of controlling Second Circuit precedent, which makes clear that the

---

[2] *See* ECF No. 42 Exhibit A Exhibit A - Columbia's Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students.

[3] Columbia's gross mischaracterizations of the Complaint are simply too many to cite in this letter. However, they will be fully addressed in Plaintiff's Opposition Brief to Columbia's Motion to Dismiss.

Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor at this stage. (*Doe v. Columbia Univ.*, 831 F.3d 46, 54 (2d Cir. 2016)).

### 2. No undue burden on Columbia

Columbia's protestations of undue burden are hypothetical and exaggerated. Specifically, Columbia's letter grossly misrepresents the scope and nature of discovery at issue. Plaintiff has never indicated an intent to pursue abusive discovery tactics or fishing expeditions. To the contrary, Plaintiff has made clear that discovery will focus on specific topics central to the Title IX, ADA, and Title VI discrimination claims, including comparator evidence, communications among Title IX officials, and by and between non-party witnesses, relevant student records, and deliberate indifference to racial coercion, sexual harassment, and related discriminatory conduct. Columbia's reference to FERPA does not preclude discovery either—FERPA simply governs how such discovery is handled, not whether it may proceed. Furthermore, Courts in this Circuit including this court, routinely navigate these issues without issuing blanket stays.

### 3. Clear prejudice to Plaintiff

This is a civil rights action asserting five causes of action under Title IX, Title VI, the ADA, and the NYCHRL—each involving serious allegations of discrimination. Plaintiff remains suspended, in academic limbo, stripped of his academic merit-based scholarship, barred from his academic transcripts[4], and banned from campus, just shy of graduation[5], based on findings that cannot withstand factual scrutiny. Delaying discovery under these circumstances would severely prejudice Plaintiff and further compound the very harms this action seeks to remedy. Courts routinely deny discovery stays in civil rights cases where, as here, the motion to dismiss lacks dispositive force and the plaintiff faces ongoing deprivation of his fundamental rights. A stay of discovery would improperly convert Columbia's procedural maneuvering into a substantive roadblock to justice.

### I. Plaintiff's Title IX Claim (Erroneous Outcome Theory)

Columbia's motion to dismiss Plaintiff's Title IX erroneous outcome claim descends into absurdity when it audaciously invokes employment discrimination and antitrust case law to justify its deeply flawed, erroneous and gender-biased disciplinary decision. Absurdly, in support of its motion, Columbia cites *Furnco Constr. Corp. v. Waters*, an employment case from the 1970s, and *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, an antitrust case, as legal justification for finding Plaintiff responsible for sexual exploitation under Title IX. This legal strategy is desperate and illogical. Columbia is not an employer disciplining an employee for workplace conduct, nor is it a corporate monopolist defending its refusal to deal in a commercial market. It is a world-renowned Ivy League university subject to the specific regulatory, procedural, and constitutional constraints of Title IX, which governs gender-based discrimination in education—not employment, not commerce, and certainly not speculative inference.

---

[4] Plaintiff's academic transcript has been erroneously withheld since May 5, 2022
[5] But for Columbia's discriminatory conduct Plaintiff was set to graduate from Columbia University on May 21st 2025.

The fact that Columbia cannot locate a single controlling Title IX case to support its argument—and instead leans on antitrust and labor doctrines—is not all surprising, and exposes the sheer vacuousness of its legal position. Columbia's preposterous implication in its Motion to Dismiss, that a mere "suggestion" was a sufficient evidentiary proof to find Plaintiff responsible for sexual exploitation that he did not commit, obliterates the well-settled standard of preponderance of the evidence, which requires actual proof, not convenient analogies to unrelated law. Simply put, Columbia is asking this Court to adopt a Frankenstein legal standard cobbled together from irrelevant doctrines because it cannot justify its actions under the law that *actually* applies.

Furthermore, Columbia's argument is hollow and misleading. It deliberately misstates the law and disregards the very authority it cites. First, Columbia incorrectly claims that Plaintiff must allege *direct evidence* of gender bias to survive a motion to dismiss. This is false, and deeply concerning, given the fact that Counsel for Columbia boasts[6] of their "expertise" in Title IX defense and Jurisprudence. The Second Circuit, and even this court, has made clear that a plaintiff need not plead "direct, smoking-gun evidence of discriminatory intent" to state a Title IX claim. See *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) and *Feibleman v. The Trustees of Columbia University In The City of New York*, 1:19-cv-04327 (S.D.N.Y.) Indeed, courts in this Circuit have repeatedly held that circumstantial evidence—such as procedural irregularities, patterns of bias, credibility disparities, and external pressures—may give rise to a *plausible inference* of gender bias sufficient to sustain a claim under *Twombly* and *Iqbal*. See *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33–34 (2d Cir. 2019); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). *Schiebel v. Schoharie Central School District,* No. 23-1080 (2d Cir.2024) and *Feibleman v. The Trustees of Columbia University In The City of New York*, 1:19-cv-04327 (S.D.N.Y.)

Second, Columbia's reliance on *B.B. v. New School*, 2018 WL 2316342, at *5, is misplaced and misleading. *B.B.* does not hold that gender-biased statements are required to sustain a Title IX claim—rather, it reiterates *Yusuf's* principle that a combination of procedural anomalies and context can plausibly infer gender bias. Plaintiff does precisely that: the Complaint alleges, in exhaustive detail, Columbia's disparate treatment of Plaintiff, irregular credibility assessments, refusal to investigate Plaintiff's counter-claims against the female complainant, and Columbia's institutional motive to favor the female complainant to preserve its reputation in the wake of Title IX scrutiny, liability and bad publicity.

Third, Columbia's argument that the presence of a male complainant (Mack Roe) who at Columbia's behest[7] arrived on scene months later in the process, the dismissal of one claim (Stalking) somehow negates the inference of gender bias is legally frivolous. The Second Circuit has expressly rejected this kind of categorical logic. As *Columbia* itself concedes in its own briefing, the relevant question is whether *gender bias influenced the outcome of the proceeding*,

---

[6] https://www.heckerfink.com/our-talent/gabrielle-e-tenzer
https://www.heckerfink.com/our-talent/anna-collins-peterson

[7] On or about September 16, 2023, one year after the Complainant filed false Sexual exploitation allegations against Plaintiff, Columbia's Title IX Investigator Jamie Kleidman instructed Mack Roe to file a frivolous retaliation complaint against Plaintiff using a separate Dean's Discipline process, which ultimately resulted in an erroneous, arbitrary, and capricious finding against Plaintiff on which Columbia erroneously considered "prior bad acts" from Plaintiff and subsequently relied on in imposing harsher, and even excessive sanctions on Plaintiff.

not whether every decision in the process was adverse. See *Doe v. Columbia Univ.*, 831 F.3d at 56. The existence of a single dismissed claim does not immunize the process from scrutiny where the core finding—here, sexual exploitation—was infected by bias.

Finally, Columbia's dismissal of "gender biased campus culture" and external pressures as too "attenuated" flies in the face of *Columbia* and *Menaker*, which explicitly recognize that public pressure and institutional incentives to protect complainants at the expense of accused males can support a Title IX claim. See *Menaker*, 935 F.3d at 34 ("[T]he combination of pressure on the university to demonstrate that it took sexual misconduct complaints seriously, and procedural irregularities in the disciplinary process, supported an inference of gender bias.").

> "A defendant is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action." "A covered university that adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex." *Doe v. Columbia Univ.*, 831 F.3d 46, 58 n.11 (2d Cir. 2016)

> "where a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination." *Menaker v. Hofstra University*, 935 F.3d at 33.

Columbia wants this Court to ignore these cases—because they directly undermine its position. Columbia's attempt to shield its discriminatory and procedurally flawed disciplinary process behind the guise of deference to credibility determinations misstates the law and mischaracterizes Plaintiff's allegations. It selectively quotes case law—namely *Doe v. Vassar Coll.*, 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) and *Yusuf*, 35 F.3d 709—without acknowledging the controlling Second Circuit authority that governs at the motion to dismiss stage.

First, *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), the binding precedent in this Circuit, explicitly rejects Columbia's position. There, the Second Circuit reversed the dismissal of a Title IX erroneous outcome claim, holding that procedural irregularities—such as ignoring exculpatory evidence or applying credibility standards unevenly—can support a plausible inference of gender bias. The court emphasized that, even when a university's credibility determinations are ordinarily given deference, such deference is *not* appropriate where the process is plausibly alleged to have been influenced by bias or motivated reasoning. That is precisely what Plaintiff alleges here.

Second, Columbia misrepresents Plaintiff's Complaint as "conclusory" while ignoring the detailed factual allegations cited in the very paragraphs it references. Plaintiff specifically alleges: (1) The existence of contemporaneous text messages, photographs, and timestamps establishing that Jane Roe—not Plaintiff—was in possession of her phone at the time the explicit content was transferred (¶¶ 210–224, 977) (2) Contradictions between Jane Roe's oral statements and her digital activity logs, including photo metadata and message timestamps (¶¶ 383–391, 695) (3) that key portions of eyewitness statements favorable to Plaintiff were excluded or misrepresented in the Investigative Report (¶¶ 365–368) (4) that Columbia's own investigator admitted there was insufficient evidence to prove the required elements of the charge, yet the university proceeded with the finding anyway (¶¶ 724–742) and that Columbia's Title IX Investigator telling Plaintiff that "He had no right under Title IX" (¶¶ 678–679). Columbia's argument that these are "conclusory" is a transparent effort to reframe evidentiary disputes as pleading failures. But under *Iqbal* and *Twombly*, a plaintiff need not prove his case in the complaint—he need only allege facts that plausibly support his claim. That standard is clearly met here.

Third, Columbia's citation to *Yusuf*—specifically, its concern that Title IX should not impair a university's discretion where "the evidence of an offense, after a fair hearing, is overwhelming"—is patently inapposite. Plaintiff alleges the hearing was anything but fair: Columbia ignored exculpatory digital evidence, selectively credited one party's testimony, denied accommodations, excluded key witness statements, and permitted procedural advantages to the female complainant that were denied to Plaintiff. These are not minor administrative missteps—they are concrete allegations of biased adjudication. Under *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016 *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019), *Schiebel v. Schoharie Central School District,* No. 23-1080 (2d Cir.2024) and *Feibleman v. The Trustees of Columbia University In The City of New York*, 1:19-cv-04327 (S.D.N.Y.) such allegations are precisely the kind that defeat a motion to dismiss.

Fourth, Columbia wholly misrepresents the procedural context and legal significance of the court's language in *Doe v. Vassar College*, attempting to elevate a selective portion of a quote into binding precedent. The court's caution against "second-guessing" credibility determinations arose in the context of a preliminary injunction motion, where the burden on the movant is far higher than at the pleading stage. There, the plaintiff was required to demonstrate a likelihood of success on the merits and irreparable harm—standards entirely inapplicable here. Here, Plaintiff enjoys a "low bar" as a matter of law, and need only allege facts sufficient to support a minimal plausible inference of gender bias, as established in *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016). Columbia's conflation of these standards is a transparent attempt to import an inapplicable evidentiary threshold into the Rule 12(b)(6) analysis. Ultimately, Columbia invites this Court to ignore well-pleaded facts, weigh evidence prematurely, and impose a higher pleading burden than the law requires. The Court should decline that invitation. The alleged procedural irregularities and credibility distortions go far beyond second-guessing—they are affirmative allegations of discriminatory process, substantiated by dates, evidence, and Columbia's own investigative record.

### The factual timeline tells the true story and proves Plaintiff's innocence

Indeed, just as Plaintiff alleged in his complaint, and just as Columbia complains, plaintiff takes major issue with Columbia's gender-biased "weighing of the evidence" which included intentionally misconstruing and misrepresenting critical exculpatory evidence, including witness statements, photos, timestamps and timeliness. However, and perhaps most tellingly of all, Columbia does not deign to dispute the factual timeline in Plaintiff's timeline, that establishes, incontrovertibly, that Plaintiff was not in possession of Jane Roe's phone during the time that the transfer of the explicit images and photos took place, nor does Columbia offer a competing timeline in its Motion to Dismiss. Instead, Columbia's head stays buried in the sand.

Specifically, At approximately 12:30 AM on April 23, 2022, Eyewitness 2, Mack Roe, and a few other guests migrated to Jane Roe's bedroom to have a private chat, at which specific time Eyewitness 2 observed Plaintiff sitting on the couch with a cellphone in his hand. Jane Roe, Plaintiff, Eyewitness 1, and Eyewitness 3 remained in the living room. Eyewitness 1 and Eyewitness 3 sat by Jane Roe's computer sharing and listening to music. Jane Roe roamed her apartment ,tidying things up, and cleaning up the space. Mack Roe sat on Jane Roe's couch playing 8 ball pool, and price matching ride share options Uber and Lyft. Eventually, Jane Roe joined Plaintiff on the couch.

At 12:50 AM, for some unexplained reason, Jane Roe took a photo of Plaintiff sitting down looking at his phone. Eyewitness 1 and Eyewitness 3 were still in the living room chatting at the computer and sharing music. A few seconds later Jane Roe took a series of live and still photos of Eyewitness 1 and Eyewitness 3 chatting at the computer. After taking these series of photos, Jane Roe left the living room, and joined Eyewitness 2 and Mack Roe in her bedroom.

At 12:59 AM and shortly thereafter, Plaintiff received a series of explicit photos and videos from Jane Roe. At approximately 1:00 AM Eyewitness 2 exited Jane Roe's bedroom and left the apartment along with Eyewitness 2. As he was leaving, Eyewitness 2 observed Plaintiff sitting on the couch "in the same place" with the "same phone in his hand" that he had observed in his hand at approximately 12:30 AM. All remaining guests left Jane Roe's apartment at approximately 1:00 AM. The only individuals who remained in Jane Roe's apartment were Plaintiff and Jane Roe.

During the hearing, Jane Roe falsely stated to Investigator Kleidman that after taking the series of photos at 12:50 AM, including the photo of Plaintiff, and before joining Eyewitness 2 and Mack Roe in the bedroom, she "handed off" her phone to Plaintiff to order an Uber. However, this is wholly inconsistent with Eyewitness 2's *independent* observance and recollection of the evening with respect to Jane Roe and Plaintiff's respective possessions of their phones. During his interview Eyewitness 2 falsely told Investigator Kleidman that before he left the living room, at approximately 12:30 AM, to go into Jane Roe's bedroom along with Mack Roe, he observed Plaintiff sitting on the couch with Jane Roe's phone in his hand. Investigator Kleidman asked Eyewitness 2 how he was able to "identify" that it was Jane Roe's phone.

Unsurprisingly, Eyewitness 2 was unable to provide an answer to Kleidman's question. Eyewitness 2's only independent recollection was that Plaintiff possessed a phone, and that it was

8

the "same phone" at 12:30 AM and 1:00 AM. Knowing that Eyewitness 2's independent recollection, and his inability to independently identify the phone, was fatal to her gender-biased ploy, and exculpatory for Plaintiff. Kleidman interjected, asking Eyewitness 2 if he "recognized the phone" from "hanging out with Jane Roe in the past". Eyewitness 2 said "yeah". However, Eyewitness 2's statement was not fully his independent recollection with respect to identifying the Phone as Jane Roe's, as evidenced by his clarifications to Investigator Kleidman. Eyewitness 2 clarified to Investigator Kleidman that he "learned" about Plaintiff's alleged possession of Jane Roe's phone "through Jane Roe" after the party, when Jane Roe was spreading her narrative to Eyewitnesses present at the party, requesting their participation as witnesses in her gender-based misconduct complaint against Plaintiff.

To be sure, the undisputed timestamps on Jane Roe's photos prove, that when Eyewitness 2 observed Plaintiff sitting on the couch with a phone in his hand on his way to Jane Roe's bedroom at 12:30 AM Plaintiff and Jane Roe were in possession of their own respective phones as evidenced by the series of photos, of which included Plaintiff, that Jane Roe took at 12:50 AM. Eyewitness 2 clarified that when he came back into the living room at 1:00 AM, he observed Plaintiff in the "same place" with the "same phone" in his hand that he observed him with when he left the room at 12:30 AM.

Logically, because the factual timeline already established that the phone in Plaintiff's hand during Eyewitness 2's first observance at 12:30 AM was his own and not Jane Roe's, and because Eyewitness 2 observed the same phone in Plaintiff's hand on his last observance at 1:00 AM it is therefore established that the phone Eyewitness 2 observed in Plaintiff's hand at 12:30 AM and 1:00 AM was Plaintiff's and not Jane Roe's. This also establishes that there was no "handoff" of Jane Roe's phone to plaintiff at 12:50 AM, and that Plaintiff remained in possession of his own respective phone. To be sure, Jane Roe and Plaintiff had completely different cases on their phones, and were easily discernible from one another. The only explanation for Eyewitness 2's unsupportable testimony is that his testimony was influenced by Jane Roe's false and inaccurate statements to him regarding phone possessions prior to his interview, and Investigator Kleidman's leading questions to Eyewitness 2.

Further, during her interview Jane Roe alleged that Plaintiff was in possession of her phone for "for approximately 1 hour" and for the duration of time she was "not paying attention to her phone" because she was "engaged with other guests" at the party. However, all guests (except for Plaintiff) left Jane Roe's apartment at 1:00 AM. For Jane Roe's statement to be true, Plaintiff would have had to have gained possession of Jane Roe's phone at approximately 12:00 AM. The evidence, including timestamps, witness testimony, and Jane Roe's own statements to Columbia proves, unequivocally, and beyond a shadow of a doubt that he did not.

Importantly, Eyewitness 1 stated in her interview that she observed Plaintiff with a phone "swiping from uber, lyft, and other applications on the phone". Eyewitness 1 stated that she thought it was Plaintiff's own phone, until Jane Roe falsely told her after the fact that it was actually Jane Roe's that he possessed during the time that Eyewitness 1 and Eyewitness 3 were talking at the computer. Importantly, Eyewitness 1 also stated that she observed Plaintiff with "this" phone for approximately 1 hour. Again, Plaintiff's and Jane Roe's phones were easily discernible. Considering the fact that Eyewitness 1 left Jane Roe's apartment at 1:00 AM, Plaintiff would have

had to have had possession of Jane Roe's phone since 12:00 AM. However, that is not possible considering that Jane Roe was taking pictures on her phone, including a photo of Plaintiff, within that same time period, specifically at 12:50 AM.

Ultimately, the pictures were transferred at 12:59 AM. By overwhelming evidence, and far more than a "preponderance" including Eyewitness statements, photos, and timestamps, the evidence does not support Jane Roe's allegation that Plaintiff was in possession of Jane Roe's phone at 12:59 AM during which time the photos and videos were transferred from Jane Roe to Plaintiff. The preponderance of the evidence put Jane Roe in possession of her own respective phone at 12:59 AM when the photos and videos were transferred to Plaintiff.

Tellingly, and as alleged in the complaint, Investigator Kleidman refused to include the *actual* timeline in her Investigative report and recommendation to the hearing panel, as well as any direct references to or detailed analysis of the Eyewitness statements, timeline, timestamps, photos, and plethora of evidence that exculpated Plaintiff. Instead, Investigator Kleidman buried the evidence that exculpated Plaintiff, and recommended that Plaintiff be found responsible for sexual exploitation based on a "suggestion" that Plaintiff committed the act with "illicit intent"—a standard well below the "preponderance of the evidence" required under Columbia's own Gender-Based Misconduct Policy. Just as Plaintiff alleges in his complaint, and just Columbia concedes in its motion to dismiss, Columbia adopted Investigator Kleidman's recommendation and erroneously found Plaintiff responsible for sexual exploitation, an act he did not commit.

> When accepting Plaintiff's allegations that the investigators intentionally misconstrued and misrepresented critical exculpatory evidence, as the Court must do on [a motion to dismiss], Plaintiff presents facts casting an articulable doubt on the accuracy of the outcome of his disciplinary proceeding. *Prasad v. Cornell Univ., 2016* U.S. Dist. LEXIS 161297, *51

**This is *not* a "he said she said" case**

Clearly, to Columbia's ire, and just as Plaintiff alleged in the Complaint, this is not a "he said" she said" case, nor is it "gray" despite how desperately Columbia wants it to be. It is a "it didn't happen" case. There is a mountain of evidence (far mor than a mere preponderance) that wholly favors Plaintiff, supports Plaintiff's innocence, and tells the story as it *actually* happened. However, as also alleged in the complaint Columbia, true to form, conducted a gender-biased investigation, hearing, and appeal, that resulted in an incorrect conclusion in favor of Jane Roe. and an erroneous finding of sexual exploitation against Plaintiff.

> "When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias. *Doe v. Columbia,* 831 F.3d at 57.

> "where decision-makers choose "to accept an unsupported accusatory version over [that of the accused], and declined even to explore the testimony of witnesses,"

this too "gives plausible support to the proposition that they were motivated by bias" *Menaker v. Hofstra* University, 935 F.3d 20 (2d Cir. 2019)

Clearly, the factual timeline creates far more than the *"articulable doubt"* required under *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). In fact, it far exceeds that threshold. In any event, Columbia's argument attempts to impose evidentiary burdens that do not apply at the pleading stage, while cherry-picking case law and misstating controlling authority. The Court should reject these tactics and allow Plaintiff's well-pleaded claims to proceed to discovery without delay, as these are *major* factual disputes— not legal deficiencies as Columbia contends, that must be explored in discovery, and resolved at trial, *not* on Motion to Dismiss.

## II.     Plaintiff States a Title IX Claim (Selective Enforcement Theory)

Columbia's defense to Plaintiff's Title IX selective enforcement claim is equally absurd and rests on the demonstrably false assertion that Plaintiff failed to allege that he filed any counter-complaints against the complainant, or that Columbia had any knowledge of the Complainants alleged gender-based misconduct against Plaintiff. However, In reality, the Complaint alleges in detail that Plaintiff reported misconduct allegations against the complainant and was treated far less favorably in response—textbook selective enforcement. Moreover, the only appropriate way to describe Columbia's assertions to this court is to utilize one of Columbia's preferred phrases— "a web of lies". To be sure, Columbia, in its own investigative report, claimed to have investigated Plaintiff's claims of sexual harassment and coercion by the Complainant but (as Columbia even quotes in their Motion to Dismiss" determined that Plaintiff was "not credible" in any claim or allegation that he made". So for Columbia to now tell this court that Plaintiff never alleged, and failed to allege reported enforceable misconduct, or actual knowledge by the Complainant is untruthful. However, to the extent Columbia now wishes to concede that every single Columbia administrator and staffer involved in Plaintiff's underlying disciplinary proceeding violated Columbia's "Mandatory Reporting" policy[8], that would only lend further supports to Plaintiff's claims. In any event, these too are factual disputes— not legal deficiencies as Columbia contends, that must be explored in discovery, and resolved at trial, *not* on Motion to Dismiss.

## III.    Plaintiff States ADA Claim

Columbia's basis for seeking dismissal of the Plaintiff's claim is equally baseless and even more absurd. In its motion to dismiss Columbia claims Plaintiff failed to disclose his FERPA-protected disability records in his complaint, and thus failed to allege a qualifying disability or request for accommodation. Specifically, Columbia contends that Plaintiff "failed to allege that he had a disability, and failed to disclose "what his disability was", and baselessly contends that this is "fatal to his claim". This is ludicrous. The Complaint clearly states that Plaintiff had a documented disability, disclosed it to the Title IX office, and requested accommodations through Columbia's disability services—requests that were denied following the deliberate and well documented interference by Columbia's own Title IX staff.

---

[8] https://institutionalequity.columbia.edu/content/mandatory-reporters-and-witnesses "All Columbia University employees have a Duty to Report any instance or allegation of prohibited conduct - discrimination, harassment, retaliation or gender-based misconduct - that involves any undergraduate or any graduate student. Columbia employees are required to report any information that they learn about or observe."

11

Moreover, Columbia's contradictory posture on the handling of FERPA-protected records is outrageous. On the one hand, Columbia seeks to stay discovery by claiming it must protect the FERPA-protected confidential records of third-party students. Yet, on the other hand, in it's Motion to Dismiss, Columbia faults Plaintiff for not attaching or publicly disclosing his own FERPA-protected disability records in his public Complaint—and uses that as a basis for dismissal, and thus a discovery stay. This is hypocritical and incoherent. Plaintiff's disability documentation and accommodation requests are confidential educational records protected under FERPA and need not be disclosed in public pleadings to survive a motion to dismiss. Columbia cannot invoke privacy laws to shield itself from discovery and then turn around and argue that the absence of those very same protected records proves Plaintiff's claims are deficient as a matter of law *See Tudor v. Whitehall Central School District,* No. 23-1217 (2d Cir. Mar. 25, 2025) *Dean v. University at Buffalo School of Medicine and Biomedical Sciences,* No. 21-2040 (2d Cir. 2023) The Court should see this tactic for exactly what it is: another[9] desperate attempt to dodge liability by distorting the law and contradicting itself within the same brief. In any event, these too are factual disputes— not legal deficiencies as Columbia contends, that must be explored in discovery, and resolved at trial, *not* on Motion to Dismiss.

### IV. Plaintiff States a Title VI Claim (Deliberate Indifference Theory)

Columbia's Title VI defense is just as absurd as the rest. Columbia contends that Plaintiff failed to allege Columbia's awareness of race-based harassment and coercion. Yet the Complaint details multiple instances where Plaintiff notified Columbia of specific racial coercion, comments and harassment specifically that Plaintiff "was a black man and did not stand a chance" and repeated death threats "to kill" Plaintiff, by another Columbia student and Jane Roe's former romantic interest and partner, who Columbia has permitted to graduate and receive his diploma, and who Columbia has granted admission to its graduate school —including Columbia's failure to investigate or respond in anyway whatsoever. In fact, Plaintiff cited the race-based harassment and coercion in his papers in the underlying disciplinary proceeding which Columbia flat out ignored—textbook Deliberate Indifference.) This clearly satisfies the "actual knowledge" standard for Title VI under *Zeno v. Pine Plains Central School District,* 702 F.3d 655 (2d Cir. 2012*)* and *DiStiso v. Cook,* 691 F.3d 226 (2d Cir. 2012 holding that schools may be held liable where it has actual knowledge of racial harassment and responds with deliberate indifference even if it takes *some* disciplinary steps, so long as those steps are ineffective in stopping the discriminatory misconduct. Furthermore, to the extent Columbia now wishes to concede that every single Columbia administrator and staffer involved in Plaintiff's underlying disciplinary proceeding violated Columbia's "Mandatory Reporting" policy[10], that would only lend further support to Plaintiff's claims. In any event, this creates a question of fact—one that cannot be decided as a matter of law at this stage and must explored in discovery, and resolved at trial, *not* on Motion to Dismiss.

---

[9] Columbia has previously tried, albeit unsuccessfully to delay this litigation—including by refusing to honor FRCP pretrial obligations and deadlines as well as this courts standing orders and individual rules and practices ultimately forcing the adjournment and rescheduling of the Initial Pretrial Conference.

[10] https://institutionalequity.columbia.edu/content/mandatory-reporters-and-witnesses "All Columbia University employees have a Duty to Report any instance or allegation of prohibited conduct - discrimination, harassment, retaliation or gender-based misconduct - that involves any undergraduate or any graduate student. Columbia employees are required to report any information that they learn about or observe."

### V. Plaintiff states a NYHRL Claim

Columbia's basis for dismissing Plaintiff's NYCHRL claim and staying discovery is equally meritless. Its sole basis is the circular and baseless assertion that the federal claims fail—thereby implying the NYCHRL claim must fail too. This argument demonstrates a fundamental misunderstanding of the law. The NYCHRL is interpreted far more liberally than its federal counterparts and imposes a lower pleading threshold. As the First Department made clear in *Williams v. NYC Housing Auth.*, 872 N.Y.S.2d 27 (1st Dep't 2009), the NYCHRL requires independent analysis and must be construed "broadly in favor of discrimination plaintiffs." Columbia's effort to bootstrap dismissal of the NYCHRL claim to its doomed Title IX, Title VI, and ADA arguments is legally flawed and underscores Columbia's continued refusal to engage the actual allegations and the independent merits of each claim.

### Columbia's request to stay discovery should not be denied as a matter of law

First, as analyzed above, Columbia has failed to make the requisite showing that would warrant a stay of discovery. Its motion to dismiss—on which it rests its hat—does not present a strong or dispositive challenge to the Complaint, but instead improperly invites the Court to resolve disputed issues of fact that are well beyond the scope of Rule 12(b)(6). As courts in this Circuit consistently reaffirm, "[t]he function of a motion to dismiss is to test the legal sufficiency of a complaint, not to resolve factual disputes or weigh evidence." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). Yet Columbia's motion does precisely that—it seeks early dismissal not because the allegations fail to state a claim, but because Columbia disagrees with the factual content of those allegations. Such a posture cannot satisfy the first prong of the governing test for a stay. A party seeking to halt discovery must demonstrate a strong likelihood of success on the merits of the motion to dismiss. *Alapaha View Ltd. v. Prodigy Network, LLC*, No. 20-cv-7572, 2021 WL 1893316, at *1 (S.D.N.Y. May 10, 2021). Columbia has not even come close. It offers no controlling authority in its favor, misrepresents its own policies, mischaracterizes Plaintiff's claims, and advances arguments that ask the Court to weigh evidence, make improper credibility determinations, credit its version of the facts while ignoring binding Second Circuit precedent and the well-pleaded allegations in the Complaint.

Second, Columbia's assertions of burden are speculative, conclusory, and legally insufficient to justify a stay. The burden of responding to targeted and proportionate discovery—particularly in a civil rights action implicating serious allegations of institutional discrimination—is not "undue" under prevailing Second Circuit standards. Columbia fails to identify with specificity any discovery request that would impose an exceptional hardship. See *Alapaha View Ltd. v. Prodigy Network, LLC*, 2021 WL 1893316, at *1 (S.D.N.Y. May 10, 2021) (requiring "particularized" showing of burden to justify a stay). Moreover, Columbia's suggestion that discovery would intrude upon FERPA protections is a red herring. FERPA does not prohibit discovery; it regulates how student records are disclosed and permits disclosure subject to a court order with appropriate safeguards. See *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 n.6 (2d Cir. 2012). Courts in this Circuit routinely fashion protective orders to facilitate discovery while respecting privacy obligations. Columbia's generalized references to FERPA fall far short of justifying a stay of discovery.

Third, this is not a routine civil dispute. It is a civil rights case involving five distinct claims under Title IX, Title VI, the ADA, and the NYCHRL. Plaintiff, a former senior in good standing, remains suspended from Columbia University, deprived of his academic transcripts, barred from campus, and stripped of his scholarship—mere credits shy of graduation. These life-altering sanctions were imposed following a disciplinary process infected by gender bias, procedural irregularities, and unlawful discrimination. Columbia's refusal to allow discovery only prolongs this injustice. The harm to Plaintiff is not hypothetical—it is ongoing and concrete. A stay of discovery would freeze the case at a moment when Plaintiff is most vulnerable and in urgent need of relief. Courts in this Circuit routinely deny discovery stays in discrimination actions where plaintiffs face continued exclusion from education or employment opportunities. See *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 147 (N.D.N.Y. 2018) (denying stay where Title IX plaintiff alleged reputational and educational harm); *Rivera v. Inc. Vill. of Farmingdale*, 2012 WL 1077980, at *1 (E.D.N.Y. Mar. 30, 2012).

As a matter of law, Plaintiff has stated viable claims on every cause of action asserted in the Complaint—including under Title IX, Title VI, the ADA, and the NYCHRL. Columbia has failed to make any strong showing—let alone the requisite showing—of a likelihood of success on the merits of its motion to dismiss. Indeed, Columbia has argued that this case is in its "early stages"—maybe for Columbia, but not for Plaintiff, who Columbia has enchained for over 3 years, and destroyed his academic career.

It is precisely for those reasons, this Honorable Court deny Columbia's motion to stay discovery in its entirety, pending resolution of its motion to dismiss the Complaint, and allow discovery to proceed in full on *all* of Plaintiff's claims without delay, so that the facts may be further developed and Plaintiff may vindicate his rights.

Plaintiff expressly reserves the right to file a separate and full opposition to Columbia's motion to dismiss under Rule 12(b)(6), and nothing in this submission should be construed as a waiver of any claims, arguments, or defenses of the same.

> "The only people who fear the truth are those with something to hide."
> — *Unknown*

Respectfully Submitted,

John Doe
Plaintiff, Pro Se

cc: Anna Collins Peterson (Via Email)
    Gabrielle E. Tenzer (Via Email)