UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2025 JUL -2  PM 4: 27

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | Case No. 1:25-CV-02132-DEH-RFT |
| v. | |
| COLUMBIA UNIVERSITY, | |
| Defendant. | |

## PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

**JOHN DOE** *Plaintiff, Pro Se*
PO Box #250050 New York, New York 10025
(917) 450-9050
July 2 , 2025

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................................... iii

PRELIMINARY STATEMENT............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

    I.    Columbia's Faulty Investigative Process and Erroneous Conclusions and
         Decisions.......................................................................................... 4

LEGAL STANDARDS ............................................................................................ 4

    I.    Motion to Dismiss............................................................................ 4

    II.    Title IX Erroneous Outcome........................................................... 5

    III.    Title IX Selective Enforcement...................................................... 5

    IV.    Violation of the American's with Disabilities Act (ADA) ..................... 6

    V.    Title VI Deliberate Indifference..................................................... 6

    VI.    Violation of NYCHRL  and NYSHRL ................................................. 7

ARGUMENT............................................................................................................ 7

    I.    Columbia Repeatedly, Deliberately, and Shamelessly Misstates its own Gender-
         Based Misconduct Policy all Throughout its Brief................................. 7

    II.    Columbia Completely Disregards Binding 2nd Circuit Precedent......................... 8

    III.    Plaintiff  States a Claim on Every Cause of Action Asserted in the Complaint ..... 9

    IV.    Plaintiff States a Title IX Erroneous Outcome IX Claim ....................... 9

         A.    Plaintiff Has Plausibly Alleged an Erroneous Outcome Supported by
             *Clear* Procedural Irregularities and Gender Bias........................... 9

         B.    Columbias Motion Deliberately Misstates the Law and Disregards The
             Very Authority it Cites ............................................................. 12

         C.    Plaintiff Sufficiently Alleges Columbia's Motivation to Discriminate
             Against Him on The Basis of His Gender ................................... 13

         D.    The *Undisputed* Factual Timeline Creates Grave Doubt as to the
             Accuracy of Columbia's Findings Against Plaintiff................................ 18

i

V.   Plaintiff States a Title IX Selective Enforcement Claim ..................................... 23

VI.   Plaintiff States an ADA Claim ................................................................................ 23

VII.   Plaintiff States a Title VI Deliberate Indifference Claim ...................................... 24

     A.   Plaintiff States a Claim Under NYCHRL ............................................... 25

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................... passim

*B.B. v. New School*
No. 17 Civ. 8347 (AT), 2018 U.S. Dist. LEXIS. 80068, at *19 (S.D.N.Y. Apr. 30, 2018) .. 9, 13

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................... passim

*Dean v. University at Buffalo School of Medicine*
No. 21-2040 (2d Cir.2023) ........................................................................... 6, 9

*DiStiso v. Cook*
691 F.3d 226 (2d Cir. 2012) ......................................................................... 9, 25

*Doe v. Columbia University*
831 F.3d 46 (2d Cir. 2016) ........................................................................... passim

*Feibleman v. The Trustees of Columbia University In The City of New York*
1:19-cv-04327 (S.D.N.Y.) ........................................................................... 12, 17

*Furnco Constr. Corp. v. Waters* ................................................................... 11

*Menaker v. Hofstra Univ.*
935 F.3d 20 (2d Cir. 2019) ........................................................................... passim

*Ortiz v. Pace Univ.* ................................................................................... 24

*Playboy Enterprises, Inc. v. Dumas*
960 F. Supp. 710 (S.D.N.Y. 1997) ................................................................ 22

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.* ................................... 11

*Prasad v. Cornell University*
Civ. No. 15-cv-00322 (N.D.N.Y. Feb. 24,2016) ............................................. 8, 22

*PrecisionlR Inc. v. Clepper*
693 F. Supp. 2d 286,291 n.2 (S.D.N.Y. 2010) .............................................. 22

*Schiebel v. Schoharie Central School District*
No. 23-1080 (2d Cir.2024) ........................................................................... 8, 13, 17

*Tudor v. Whitehall Central School District*
No. 23-1217 (2d Cir. 2025) ........................................................................... 9

*U.S. v. Yousef*
   327 F.3d 56 (2d Cir. 2003) ................................................................................. 22

*Williams v. NYC Housing Auth*
   872 N.Y.S.2d 27 (1st Dep't 2009) ................................................................. 9, 25

*Yusuf v. Vassar College*
   35 F.3d 709, 715 (2d Cir. 1994) ................................................................. passim

*Zeno v. Pine Plains CSD*
   702 F.3d 655 (2d Cir. 2012) ................................................................... 6, 9, 25

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 4, 18

## PRELIMINARY STATEMENT

Columbia's motion to dismiss is merely, a fact-disputing brief in disguise—replete with misrepresentations of the Complaint, distortions of governing law,  and selective citations to inapposite authority. In attempting to defend the indefensible, Columbia attempts to falsify the record all throughout its brief, and extends an invitation to this Court to resolve disputed factual issues solely in its favor—which is improper at this stage of the pleadings, and squarely reserved for the jury. When the Complaint is read as it must be—accepting Plaintiff's well-pled allegations contained therein as true, and construing them in the light most favorable to Plaintiff, as is required at this stage—Plaintiff states  a legal claim on every cause of action he asserts in the Complaint. Plaintiff's burden is not high in this regard, and he has more than met his burden.

Under well-established Second Circuit precedent, the Complaint need only plead facts that give rise to a plausible inference of sex discrimination. See *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016). (vacating dismissal of Title IX erroneous outcome claim). Plaintiff has more than met that burden. ⸺ But rather than test the sufficiency of Plaintiff's well-pleaded allegations under Rule 12(b)(6) , Columbia does not even try. Instead, it offers a misleading and fraudulent narrative and demands the Court assess credibility, weigh evidence, and resolve contested facts. Courts in this Circuit do not reward such antics and neither should this court.  The only question for the Court to consider at this stage is whether the complaint pleads facts sufficient to state a legal claim" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (establishing the pleading standard for civil complaints under Rule 12(b)(6).

Plaintiff  has *clearly* alleged that Columbia reached an erroneous outcome when it found him "responsible" for sexual exploitation and retaliation— acts that he did not commit. When viewed through an objective lens rather than through Columbia's misleading and unfounded

characterizations, the "Apology Letter" and "Apology text" which Columbia purports to rely on dismissing Plaintiff's claims, *supports* the allegations in the Complaint. ¶¶ 264-270, ¶ 290.

As detailed further below, the Complaint contains reasonable and clearly stated explanations for any perceived conflicts and Plaintiffs allegations. The remaining related allegations in the Complaint, contain ample factual content that permits the Court to draw the reasonable inference that Columbia violated Title IX under an erroneous outcome theory.

> "Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail." *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994)

> ". . . However, the pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof." *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994).

Moreover, Columbia either lacks a clear understanding of its own policies or seeks to mislead the Court by deliberately and shamelessly, misstating its own Gender-Based Misconduct Policy on sexual exploitation, on which it purports to rely in dismissing Plaintiff's claims. Under the Gender-Based Misconduct Policy, sexual exploitation is defined (in clear and unambiguous terms) as "Non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage, or any other illicit purpose". Simply being a male accused of sexual exploitation by a female accuser, does not support a finding of responsibility despite Columbia's pernicious connotations to the contrary. Columbia does not even deign to challenge Plaintiff's factual timeline alleged in his complaint, and detailed in this brief,— nor does Columbia deign to proffer a competing factual timeline related to the facts.

## STATEMENT OF FACTS

On the evening of April 23, 2022, and the early morning of April 24, 2022, Plaintiff John Doe attended a small gathering at the home of Jane Roe after receiving multiple personal invitations from her. At 12:59 AM, Jane Roe sent Plaintiff a series of sexually explicit images and videos to Plaintiff's phone in an attempt to convince Plaintiff to stay the night at her apartment and have sex with her. ¶ 221.When Plaintiff conveyed his disinterest, Jane Roe grew upset and told Plaintiff he must not tell Mack Roe (her romantic interest) about her sending the explicit photos and videos to Plaintiff, and if he did, Plaintiff would be "breaking the trust". Thereafter, Jane Roe called Mack Roe on the telephone and falsely accused Plaintiff of sending the explicit images and videos to himself without her consent, in an effort to preempt any adverse disclosures from Plaintiff to Mack Roe. ¶ 242

Thereafter Jane Roe communicated to Plaintiff that unless Plaintiff complied with her demands, including forfeiting his scholarship and campus employment, she would file a misconduct complaint against Plaintiff accusing him of "criminal and immoral actions". Plaintiff communicated to Jane Roe that he would not meet her coercive demands. Shortly thereafter, Jane Roe filed a sexual misconduct complaint against Plaintiff with Columbia University falsely accusing Plaintiff of sexual exploitation and stalking triggering Columbia's gender-based misconduct investigation resulting in the erroneous findings that gave rise to this action. Plaintiff was innocent. Jane Roe's allegations of sexual exploitation against Plaintiff and stalking were false, and Columbia's decision to find Plaintiff guilty despite the mountain of evidence proving Plaintiff's innocence, was erroneous and due to Plaintiff's gender as a male accused of sexual misconduct by a female accuser.

3

I.    **Columbia's Faulty Investigative Process and Erroneous Conclusions and Decisions**

All throughout its protracted (2) year (1) month "investigation" that spanned (5) semesters, Columbia committed numerous evidentiary and procedural missteps throughout, as a result of Plaintiffs male gender, including telling Plaintiff that "[he] had no rights under Title IX". Despite photographs, videos, and eyewitness statements, indicating that Plaintiff was *not* in possession of Jane Roe's phone during the time that the explicit media was transferred, and despite Columbia's investigators own concessions that there was insufficient evidence to substantiate the charge against Plaintiff, Columbia improperly found Plaintiff responsible for sexual exploitation.

## LEGAL STANDARDS

I.    **Motion to Dismiss**

A Rule 12(b)(6) motion tests the sufficiency of a plaintiffs claims as plead in the initial pleadings. In order to survive such a motion, Plaintiffs must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiffs favor, in deciding whether the complaint alleges sufficient facts to survive."*Doe v. Columbia Univ., 831 F.3d 46, 48 (2d Cir. 2016).* (vacating dismissal of Title IX erroneous outcome claim). At the motion to dismiss stage, a court "is not engaged in an effort to determine the true facts." Id. Thus, a court "must accept the facts alleged and construe ambiguities in the light most favorable to upholding the plaintiffs claim." Id.

Further, "To the extent that a movant asserts that documents incorporated by reference

4

contradict the allegations contained in a complaint, a plaintiff states a plausible allegation sufficient to overcome a motion to dismiss when he offers an "explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the [documents]" or "cast[s] doubt on the authenticity or veracity of these documents." Cf *B.B. v. New Sch.*, 2018 U.S. Dist. LEXIS 80068 at *16 (S.D.N.Y. Apr. 30, 2018 Civ. Action No. 17 Civ. 8347 (AT)) (finding allegations in complaint contradicted by exhibits to complaint implausible and insufficient to defeat a motion to dismiss where plaintiff failed to provide explanation or dispute the authenticity or veracity of the exhibits). Plaintiff does exactly that in his Complaint. ¶¶ 262-270, ¶¶ 290-294 ¶¶ 553-564, ¶ 866.

## II.    Title IX Erroneous Outcome

In order to properly plead an erroneous outcome claim, a Plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusufv. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994) . Notably, "the pleading burden in this regard is not heavy." *Id.* A plaintiff can assert a successful erroneous outcome claim by alleging "particular evidentiary weaknesses" or "particular procedural flaws." *Id* Allegations that "go well beyond the surmises of the plaintiff to what was in the minds of others and involve provable events that in the aggregate would allow a trier of fact to find that gender affected the outcome of the disciplinary proceeding" are sufficient to plead an erroneous outcome claim. *Id.* at 716.

## III.    Title IX Selective Enforcement

In order to properly plead a Title IX selective enforcement claim, plaintiff must allege that, "irrespective of [his] actual guilt or innocence, the educational institution imposed a disciplinary measure that was motivated by gender bias, and that similarly situated individuals of the opposite sex were treated more favorably. The claim turns on the existence of a facially discriminatory

enforcement of disciplinary rules, where plaintiff's gender was a motivating factor in the differential treatment. "A selective enforcement claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

## IV.    Violation of the American's with Disabilities Act (ADA)

In order to properly plead a claim of disability discrimination under the Americans with Disabilities Act (ADA) Plaintiff must allege that they are a qualified individual with a disability; and that  a reasonable accommodation was refused and that the refusal was motivated by discriminatory intent or resulted in a denial of meaningful access. "in the education context, a plaintiff alleging a failure to accommodate a disability bears the burdens of both production and persuasion as to the existence of some accommodation that would allow the plaintiff to meet the essential requirements of the service, program, or activity at issue." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) .

## V.    Title VI Deliberate Indifference

In order to properly plead a discrimination under Title VI of the Civil Rights Act of 1964, a plaintiff must allege that the defendant received federal funding, the plaintiff was subjected to discrimination, the discrimination was based on race, color, or national origin, the Defendant had knowledge of the alleged discrimination, and that the defendant failed to  meaningfully respond to the alleged discrimination. "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances and when remedial action only follows after a lengthy and unjustified delay." *Id.* at 666–67" and "Repeatedly failing to respond meaningfully to reports of race-based harassment is an act of deliberate indifference." *Zeno v. Pine Plains Central School District*, 702 F.3d

### VI.    Violation of NYCHRL  and NYSHRL

In order to properly plead a discrimination Claim Under the NYSHRL and NYCHRL Plaintiff "need only show that they were treated less well than others because of a protected characteristic" The provisions of the NYCHRL must be construed independently from and more liberally than their federal and state counterparts." and need not prove severe or pervasive conduct to survive a motion to dismiss." *Id.* at 39 *Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009) *Williams*:

### **ARGUMENT**

### I.    Columbia Repeatedly, Deliberately, and Shamelessly Misstates its own Gender-Based Misconduct Policy all Throughout its Brief

Columbia shamelessly misstates its own Gender-Based Misconduct Policy (GBMP) when it states that " The content of the Explicit Images alone…combined with their transfer to Plaintiff's phone without Jane Roe's consent *suggests* an illicit act and an illicit purpose of the act" This argument is desperate and  untrue. The GBMP does not presume the act, or purpose of the act from content alone — it requires *actual* proof of the act itself and *actual* proof of illicit purpose of the act (both of which were nonexistent here), not merely a "suggestion," as Columbia now falsely contends to this Court is the standard. Columbia's assertion that the mere presence of explicit content satisfied these evidentiary burdens of Columbia is a gross distortion of its own policy and rules and is a clear attempt to manufacture *post hoc* justification for a clearly gender-biased and erroneous outcome.

Moreover, Columbia's reliance on a "suggestion" of the act, and purpose of the act due to Plaintiff's gender as a male — absent any actual evidence of the act itself, or purpose of the act, — only underscores the very gender-biased double standard at the heart of  Plaintiff's claims. Had the roles been reversed, it is inconceivable that Columbia would have interpreted the presence of

the content as inherently exploitative or imputed illicit intent. Columbia's willingness to "suggest" an illicit act, and illicit purpose of the act, solely from ambiguous facts and gender biased assumptions is directly tied to Plaintiff's status as a male accused and Jane Roe's status as a female accuser. This gendered biased assumption of guilt is *textbook* gender bias as held explicitly in *Doe*. Thus, Columbia's arguments in its motion to dismiss, on which it rests its hat on dismissing Plaintiff's claims,  does *not* defeat Plaintiff's claims at this stage; it only confirms them.

Additionally, Columbia asserts that the improper "global hearing" with Mack Roe (a material witness) alleged in the Complaint "was not a procedural irregularity" because the "Gender-Based Misconduct Policy allows for consolidation of complaints." That assertion is a lie. The Gender-Based Misconduct Policy contains no such provision. In a blatant attempt to mislead the Court on this issue, Columbia cites language from its *Interim Title IX Policy,* which did not apply to the underlying disciplinary proceeding, and does not apply here. The alleged misconduct was adjudicated under the Gender-based Misconduct Policy—*not* the Interim Title IX Policy. Columbia's reliance on an inapplicable policy to justify a *clear* procedural irregularity, is simply one of many of Columbia's  attempts to mislead the Court and obscure the gender bias at the very heart of Plaintiff's claims.

## II.    Columbia Completely Disregards Binding 2nd Circuit Precedent

Columbia's motion to dismiss can also be described, as textbook example of bad-faith lawyering and strategic misdirection. It does not engage with the *actual* allegations in the Complaint, nor does it contend with the clear and binding precedent in *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994), *Schiebel v. Schoharie Central School District*, No. 23-1080 (2d Cir.2024) , *Prasad v. Cornell University*, Civ. No. 15-cv-00322 (N.D.N.Y. Feb. 24,2016) , *Menaker v. Hofstra University*, 935 F.3d 20 (2d Cir. 2019) ,

8

*Tudor v. Whitehall Central School District*, No. 23-1217 (2d Cir. 2025), *Dean v. University at Buffalo School of Medicine*, No. 21-2040 (2d Cir.2023), *Zeno v. Pine Plains CSD*, 702 F.3d 655 (2d Cir. 2012) , *DiStiso v. Cook,* 691 F.3d 226 (2d Cir. 2012) , and *B.B. v. New School*, No. 17 Civ. 8347 (AT), 2018 U.S. Dist. LEXIS. 80068, at *19 (S.D.N.Y. Apr. 30, 2018)  or *Williams v. NYC Housing Auth.*, 872 N.Y.S.2d 27 (1st Dep't 2009) , that govern Plaintiff's claims.

### III.    Plaintiff States a Claim on Every Cause of Action Asserted in the Complaint

Plaintiff's Complaint alleges—clearly and specifically— 1,075 factual allegations inferring erroneous outcome and selective enforcement theories of gender discrimination under Title IX, disability discrimination under the ADA, race-based deliberate indifference under Title VI, and violations of New York City's Human Rights Law. Columbia's deliberate refusal to acknowledge the substance of Plaintiff's allegations, and the binding case law that *actually* applies in this Circuit,  and its calculated effort to recast all 1,075 of  Plaintiff's allegations as irrelevant, conclusory,   insufficient, and a basis for dismissing the Complaint is diabolical. Despite Columbia's untruthful and misleading assertions to the contrary,  the Complaint details a plethora of procedural irregularities, instances of bias,  selective enforcement, denial of accommodations, retaliatory conduct, and deliberate indifference to racial harassment and coercion. Each of these *independently* satisfies the pleading threshold established in *Twombly* and *Iqbal*, and is backed by binding second  Circuit precedent including *Doe v. Columbia*, *Yusuf v. Vassar*, *Menaker v. Hofstra*, *Dean*, *Tudor*, *Zeno*, and *Williams*.

### IV.    Plaintiff States a Title IX Erroneous Outcome IX Claim

#### A.    Plaintiff Has Plausibly Alleged an Erroneous Outcome Supported by *Clear* Procedural Irregularities and Gender Bias.

Courts have consistently held that a flawed disciplinary process, when combined with

procedural irregularities, supports a plausible inference of gender bias under Title IX. See *Doe v. Columbia Univ.*, 831 F.3d 46, 56–58 (2d Cir. 2016) ("[W]hen the allegations of gender bias... are combined with the alleged procedural irregularities, the complaint plausibly supports an inference of sex discrimination."); *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) (holding that a university's clearly irregular adjudicative process in the face of gender-based external pressure may give rise to a Title IX claim).

Here, Plaintiff alleges a *plethora* of procedural irregularities and instances of preferential treatment awarded to Jane Roe that, when viewed in the light most favorable to Plaintiff—as the Court must at this stage—support a plausible inference of sex-based bias including but not limited to: (1) Columbia's Title IX Investigators slanted the Investigative Report against Plaintiff, deliberately misconstrued or outright excluded witness statements and digital evidence that exculpated Plaintiff (2) Columbia's Title IX Investigators refused to correct known and identified factual errors in the record that severely prejudiced Plaintiff (3) Columbia's Title IX Investigators deliberately distorted the factual timeline that proved Plaintiff's innocence (4) Columbia's Title IX Investigators gave preferential treatment female complainant by allowing her electronic access to evidence while prohibiting the same for plaintiff (5) Columbia's Title IX Investigators permitted the female complainant to submit written responses authored by the female complainant's attorney but prohibiting the same from Plaintiff (6) Columbia's Title IX Investigators and Senior Director permitted Mack Roe, a material witness to participate in the proceeding and to advocate for a finding of responsibility against Plaintiff (7) Columbia's Title IX Coordinator, and Senior Director of Title IX Investigations permitted the female complainant to submit false statements to sanctioning officer without consequence (8) Columbia's Senior Director of Title IX Investigations, and Hearing Chair, permitted the female complainant to submit new evidence at the hearing, but

prohibited the same from Plaintiff (9) Columbia's Title IX Coordinator, and Senior Director of Title IX Investigations permitted the female complainants administrative Dean and complaint-related advisor (Dean Alonso) to serve as an Appellate officer on Plaintiff's appeal despite Dean Alonso having a clear conflict of interest (10) Columbia's Title IX Coordinator, and Senior Director of Title IX Investigations appointed an unqualified Dean, Dean Eggers to serve as an Appellate officer on Plaintiff's appeal (11) Columbia double jeopardized Plaintiff by isolating allegations that stemmed from the GBM proceeding for separate prosecution through a separate disciplinary process, and then relied on the findings from that process as "evidence of prior bad acts" of Plaintiff as to "warrant" a harsher sanction (12) Columbia deliberately relied on evidence that they *knew* was coerced and unreliable to find Plaintiff responsible for sexual exploitation (13) Columbia withheld exculpatory evidence from Plaintiff (14) Columbia blocked Plaintiff's disability accommodations that he requested to assist him with the proceeding and (15) Columbia's Title IX Investigator told Plaintiff that "[he] had no rights under Title IX"

These actions were not policy-driven; they were improvised, case-specific deviations that by design, severely disadvantaged Plaintiff. That pattern, when coupled with Columbia's institutional motive to appease a complainant who had framed her allegations as a potential public movement, supports a plausible inference of sex-based bias.

Columbia's motion to dismiss Plaintiff's Title IX erroneous outcome claim further descends into absurdity when it audaciously invokes employment discrimination and antitrust case law to justify its deeply flawed, erroneous and gender-biased disciplinary decision. Absurdly , in support of its motion, Columbia cites *Furnco Constr. Corp. v. Waters*, an employment case from the 1970s, and *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, an antitrust case, as legal justification for finding Plaintiff responsible for sexual exploitation. This is desperate and illogical.

11

The fact that Columbia cannot locate a single controlling Title IX case to support its argument—and instead leans on antitrust and labor doctrines—is not at all surprising, and exposes the sheer vacuousness of its motion to dismiss. Columbia's preposterous implication that a mere "suggestion" was a sufficient evidentiary proof to find Plaintiff responsible for sexual exploitation that he did not commit, obliterates the well-settled standard of preponderance of the evidence, which requires actual proof, not convenient analogies to unrelated law. Simply put, Columbia is asking this Court to adopt a Frankenstein legal standard cobbled together from irrelevant doctrines because it simply cannot justify its actions under the law that *actually* applies.

**B.    Columbias Motion Deliberately Misstates the Law and Disregards The Very Authority it Cites**

Furthermore, Columbia's subpar rendition of the law is disjointed and misleading. First, Columbia claims that Plaintiff failed to allege any clear procedural irregularities in his complaint. However, a simple review of the Complaint proves that Columbia's assertions are false. Second, Columbia falsely asserts that Plaintiff must allege *direct evidence* of gender bias to survive a motion to dismiss. This is also false, and deeply concerning. The Second Circuit, and even this court, could not make it clearer that a plaintiff need not plead "direct, smoking-gun evidence of discriminatory intent" to state a Title IX claim. See *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) and *Feibleman v. The Trustees of Columbia University In The City of New York,* 1:19-cv-04327 (S.D.N.Y.) Rather, the courts in this Circuit including this court, have repeatedly held that circumstantial evidence—such as procedural irregularities, patterns of bias, preferential treatment, credibility disparities, and external pressures all of which Plaintiff sufficiently alleges in his complaint —may give rise to a *plausible inference* of gender bias sufficient to sustain a claim and survive a motion to dismiss under *Twombly* and *Iqbal*. See *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016)  *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33–34 (2d Cir. 2019); *Yusuf v. Vassar*

*Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). *Schiebel v. Schoharie Central School District,* No. 23-1080 (2d Cir.2024) and *Feibleman v. The Trustees of Columbia University In The City of New York,* 1:19-cv-04327 (S.D.N.Y.)

Moreover, Columbia's reliance on *B.B. v. New School*, 2018 WL 2316342, at *5, is misplaced and misleading. *B.B.* does *not* hold that specific gender-biased statements by university officials involved in the proceedings are *required* to sustain a Title IX claim—rather, it reiterates *Yusuf's* principle that a *combination* of procedural anomalies and differential treatment of the parties can plausibly infer gender bias. Plaintiff does precisely that: the Complaint alleges, in exhaustive detail, Columbia's disparate treatment of Plaintiff, biased credibility assessments, dozens of procedural irregularities, refusal to investigate Plaintiff's counter-claims against the female complainant, as well as Columbia's institutional motive(s) to favor the female complainant to preserve its reputation in the wake of Title IX scrutiny , liability and bad publicity.

### C. Plaintiff Sufficiently Alleges Columbia's Motivation to Discriminate Against Him on The Basis of His Gender

Plaintiff cites no less than  20 sources, including opinion pieces, institutional statements, public remarks by Columbia officials, news coverage, federal investigations, and prior lawsuits—all documenting Columbia's public relations fallouts related to its handling of sexual misconduct complaints brought by female Columbia students, against male Columbia students. ¶¶ 115-156. Courts have consistently held that such allegations, especially when coupled with procedurally irregular adjudication thereof, plausibly support an inference of sex bias at the motion to dismiss stage. See *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) .

Columbia's dismissal of this broader context invites the Court to ignore highly plausible allegations of Columbia's motive to discriminate—allegations which go directly to the heart of Plaintiff's Title IX erroneous outcome claim. Columbia argues in its motion to dismiss that

13

"scrutiny pertaining to [a former Columbia employee's] [sexual] abuse [of female patients] and the University's related settlement fund provide no support for Plaintiff's allegation that the University was motivated to discriminate against male student respondents in campus disciplinary proceedings between students." However, Columbia ignores controlling Second Circuit precedent that could not be clearer on this issue.

> "[W]here a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a prima facie case of sex discrimination." *Menaker v Hofstra University* 935 F.3d 20, 33 (2d Cir. 2019).

Plaintiff's allegations fall squarely within the *Menaker* framework. Columbia's decision to initiate and sustain an adverse finding against Plaintiff despite digital, testimonial, undisputed evidence to the contrary occurred amid a broader public relations crisis over its mishandling of sexual misconduct complaints by female Columbia students. This context, coupled with the irregularities Plaintiff has detailed throughout his Complaint, more than satisfies the pleading standard under *Menaker* and *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016). Columbia does not dispute Plaintiff's well-plead allegations that Jane Roe was an active participant in Columbia's sexual assault awareness programming, or that she referenced her active participation in Columbia's sexual assault awareness programming in her gender-based misconduct complaint against Plaintiff, or that she indicated to Columbia that her sexual misconduct complaint against Plaintiff "will start a movement" and that she had "written enough to give speeches" regarding her allegations and complaint  against Plaintiff, nor does Columbia dispute that Jane Roe demanded that Columbia take immediate and "decisive action" against Plaintiff.

Instead, Columbia contends that because Plaintiff "failed to allege that any "movements" or "speeches" from Jane Roe "ever materialized" he fails to state a claim. Columbia is sorely

14

mistaken. The fact that no "movements" or "speeches" from Jane Roe ever materialized *supports* Plaintiff's claims that Columbia took gender biased action against Plaintiff to avoid bad publicity such as potential movements and speeches from Jane Roe. But as the Second Circuit made clear in *Doe*, Columbia cannot escape liability for discrimination merely because the motive was reputational self-preservation rather than overt gender biased animus: *Columbia* held:

> "a defendant [institution] is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action. *Doe v. Columbia Univ.*, 831 F.3d 46, 48

Additionally, Columbia's argument that the presence of a male complainant (Mack Roe) who at Columbia's behest[1] arrived on scene months later in the process, and who at Columbia's direction filed frivolous retaliation allegations against Plaintiff, and the dismissal of one claim of (Stalking) against Plaintiff somehow negates the inference of gender bias fairs no better. The Second Circuit has expressly rejected this kind of categorical logic. As Columbia itself concedes in its own briefing, the relevant question is whether *gender bias influenced the outcome of the proceeding,* not whether every decision in the process was adverse. See *Doe v. Columbia Univ.*, 831 F.3d at 56. The existence of a single dismissed claim does not immunize the process from scrutiny where the core finding—here, sexual exploitation—was infected by gender bias.

Finally, Columbia's dismissal of "gender biased campus culture" and external pressures as too "attenuated" flies in the face of *Columbia* and *Menaker*, which explicitly recognize that public pressure and institutional incentives to protect complainants at the expense of accused males can

---

[1] On or about September 16, 2023, one year after Jane Roe filed false Sexual exploitation allegations against Plaintiff, Columbia's Title IX Investigator Jamie Kleidman instructed Mack Roe to file a frivolous retaliation complaint against Plaintiff using a separate Dean's Discipline process, which ultimately resulted in an separate erroneous, arbitrary, and capricious finding against Plaintiff on which Columbia erroneously considered "prior bad acts" from Plaintiff and subsequently relied on in imposing harsher sanctions on Plaintiff.

support a Title IX claim. See *Menaker*, 935 F.3d at 34 ("[T]he combination of pressure on the university to demonstrate that it took sexual misconduct complaints seriously, and procedural irregularities in the disciplinary process, supported an inference of gender bias.").

In *Menaker* and *Doe*, the Second Circuit explicitly held :

"A covered university that adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex." *Doe v. Columbia Univ.*, 831 F.3d 46, 58 n.11 (2d Cir. 2016)

"where a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination." *Menaker v. Hofstra University*,  935 F.3d at 33.

Columbia wants to hide these holdings from the Court—because they directly undermine its motion to dismiss, and fully support Plaintiff's claims. First, *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) , the binding precedent in this Circuit, explicitly rejects Columbia's position. There, the Second Circuit reversed the dismissal of a Title IX erroneous outcome claim, holding that procedural irregularities—such as ignoring exculpatory evidence or applying credibility standards unevenly—can support a plausible inference of gender bias. The court emphasized that, even when a university's credibility determinations could be given deference, such deference is *not* appropriate where the process is plausibly alleged to have been influenced by bias or motivated reasoning. That is precisely what Plaintiff plausibly alleges in his Complaint. Columbia's argument that Plaintiff's allegations are "conclusory" is a transparent attempt to reframe factual disputes as pleading failures. But under *Iqbal* and *Twombly*, Plaintiff need not prove his case in the complaint—he need only allege facts that plausibly support his claims. Plaintiff *clearly* meets that burden here as a matter of well-established law.

Moreover, Columbia's citation to *Yusuf*—specifically, its concern that Title IX should not impair a university's discretion where "the evidence of an offense, after a fair hearing, is overwhelming"—is patently inapposite. Plaintiff alleges that the hearing was anything but fair, and that there was *not* "overwhelming" evidence or even any evidence at all that proved that Plaintiff was responsible for sexual exploitation. The very evidence in which Columbia purported to rely in finding Plaintiff guilty was either edited, manipulated, incomplete, or coerced. These are not minor administrative missteps—they are concrete allegations of biased adjudication. Under *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019), *Schiebel v. Schoharie Central School District,* No. 23-1080 (2d Cir.2024) and *Feibleman v. The Trustees of Columbia University In The City of New York*, 1:19-cv-04327 (S.D.N.Y.) such allegations are precisely the kind that defeat a motion to dismiss.

Absurdity, Columbia wholly misrepresents the context of the court's language in *Doe v. Vassar College*, attempting to elevate a selective portion of a quote into binding precedent. In *Vasser* the court's caution against "second-guessing" credibility determinations arose in the context of a preliminary injunction motion, where the burden on the movant is 'far higher' than at the pleading stage on a Motion to Dismiss. There, the plaintiff was required to demonstrate a likelihood of success on the merits of his claims without discovery—a standard entirely inapplicable here. Here, Plaintiff enjoys a "low bar" as a matter of law, and need only allege facts sufficient to support a minimal plausible inference of gender bias, *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016). Columbia's conflation of this inapplicable standard and attempts to import an inapplicable evidentiary threshold into the Rule 12(b)(6) analysis should be rejected by the Court. Ultimately, Columbia graciously invites this Court to ignore Plaintiff's well-pleaded facts, weigh evidence, and impose a far higher pleading burden than the law requires at this stage. The Court

should decline that invitation. Plaintiff's alleged procedural irregularities and gender-biased credibility distortions go far beyond second-guessing—they are affirmative allegations of a gender-biased process.

### D. The *Undisputed* Factual Timeline Creates Grave Doubt as to the Accuracy of Columbia's Findings Against Plaintiff

Indeed, just as Plaintiff alleged in his complaint, and as Columbia complains of in its brief, plaintiff takes major issue with Columbia's gender-biased "weighing of the evidence" which included intentionally misconstruing and misrepresenting critical exculpatory evidence, including witness statements, photos, timestamps and timeliness. However, Columbia does not deign to dispute the factual timeline in Plaintiff's Complaint that establishes, incontrovertibly, that Plaintiff was not in possession of Jane Roe's phone during the time that the transfer of the explicit images and photos took place, and that Columbia's conclusions to the contrary were erroneous.

On April 23, 2022 at approximately 12:30 AM April 23, 2022, Eyewitness 2, Mack Roe, and a few other guests migrated to Jane Roe's bedroom to have a private chat, at which specific time Eyewitness 2 observed Plaintiff sitting on the couch with a cellphone in his hand. At 12:50 AM, for some odd and unexplained reason, Jane Roe took a photo of Plaintiff sitting down looking at his phone. Eyewitness 1 and Eyewitness 3 were still in the living room chatting at the computer and sharing music. A few seconds later Jane Roe took a series of live and still photos of Eyewitness 1 and Eyewitness 3 chatting at the computer. After taking these series of photos, Jane Roe left the living room, and joined Eyewitness 2 and Mack Roe in her bedroom. At 12:59 AM  Plaintiff received a series of  explicit photos and videos from Jane Roe. At approximately 12:59 AM Eyewitness 2 exited Jane Roe's bedroom and at approximately 1:00 AM left the Jane Roe's apartment along with Eyewitness 2. As he was leaving, Eyewitness 2 observed Plaintiff sitting on

the couch "in the same place" with the "same phone in his hand" that he had observed in his hand at approximately 12:30 AM. All remaining guests left Jane Roe's apartment at approximately 1:00 AM. The only individuals who remained in Jane Roe's apartment were Plaintiff and Jane Roe.

During the hearing, Jane Roe stated that she "put her phone on the coffee table" after taking the Photo of Plaintiff at 12:50 AM. However, after some coaxing from Investigator Jamie Kleidman Jane Roe stated to Investigator Kleidman that after taking the series of photos at 12:50 AM, including the photo of Plaintiff, and before joining Eyewitness 2 and Mack Roe in the bedroom, she actually "handed off" her phone to Plaintiff to order an Uber. However, this coaxed statement by Jane Roe was false, and wholly inconsistent with Eyewitness 2's *independent* observance and recollection of the evening with respect to Jane Roe and Plaintiff's respective possessions of their phones. During his interview Eyewitness 2 told Investigator Kleidman that before he left the living room, at approximately 12:30 AM, to go into Jane Roe's bedroom along with Mack Roe, he observed Plaintiff sitting on the couch with Jane Roe's phone in his hand. However, Eyewitness 2's statement was also false. Investigator Kleidman asked Eyewitness 2 how he was able to "identify" that it was Jane Roe's phone. Unsurprisingly, Eyewitness 2 was unable tanswer to Kleidman's question. Eyewitness 2's only independent recollection was that Plaintiff possessed a phone and that it was the "same phone" at 12:30 AM and 1:00 AM.

Knowing that Eyewitness 2's independent recollection, and his inability to independently identify the phone, and exculpated Plaintiff, Kleidman interjected, suggesting to Eyewitness 2 that he "recognized the phone" from "hanging out with Jane Roe in the past". Eyewitness 2 immediately agreed with Kleidman's suggestion. However, Eyewitness 2's statement that he observed Plaintiff with Jane Roe's phone at 12:30 AM was not his independent recollection. It was a manufactured memory strategically created by Kleidman as evidenced by his subsequent

19

clarifications to Investigator Kleidman. Eyewitness 2 clarified to Investigator Kleidman that he "learned" about Plaintiff's alleged possession of Jane Roe's phone "through Jane Roe" after the party, when Jane Roe was spreading her narrative to Eyewitnesses present at the party, requesting their participation as witnesses in her gender-based misconduct complaint against Plaintiff. But Kleidman did not care. She had accomplished her goal of creating a false memory in Eyewitness 2, on which she wrote in her investigative report that "Eyewitness 2 observed Plaintiff with Jane Roe's phone in his hand shortly before the images were transferred and that he that he had recognized Jane Roe's phone from hanging out with her other times. Kleidman stated that Eyewitness 2's recollection was inculpatory for Plaintiff, and recommended to the hearing panel that Plaintiff be found "responsible" for sexual exploitation against Jane Roe".

Clearly, the undisputed timestamps on Jane Roe's photos prove, that when Eyewitness 2 observed Plaintiff sitting on the couch with a phone in his hand on his way to Jane Roe's bedroom at 12:30 AM Plaintiff and Jane Roe were in possession of their own respective phones as evidenced by the series of photos, of which included Plaintiff, that Jane Roe took at 12:50 AM. Eyewitness 2 clarified that when he came back into the living room at 12:59 AM and ultimately left the apartment at 1:00 AM, he observed Plaintiff in the "same place" with the "same phone" in his hand that he observed him with when he left the room at 12:30 AM. Logically, because the factual timeline already established that the phone in Plaintiff's hand during Eyewitness 2's first observance at 12:30 AM was his own and not Jane Roe's, and because Eyewitness 2 observed the same phone in Plaintiff's hand on his last observance at 12:59 AM and 1:00 AM it is therefore established that the phone Eyewitness 2 observed in Plaintiff's hand at 12:30 AM, 12:59 AM and 1:00 AM was Plaintiff's and not Jane Roe's. This also establishes that there was no "handoff" of Jane Roe's phone to plaintiff at 12:50 AM, and that Plaintiff remained in possession of his own

respective phone, and did not have possession of Jane Roe's phone.

To be sure, Jane Roe and Plaintiff had completely different cases on their phones, and were easily discernible from one another. The only explanation for Eyewitness 2's unsupportable testimony is that his testimony (by his own admission) was influenced by Jane Roe's false and inaccurate statements to him regarding phone possessions prior to his interview, and Investigator Kleidman's leading and coaxing questions to Eyewitness 2. Further, during her interview Jane Roe alleged that Plaintiff was in possession of her phone for "for approximately 1 hour" and for the duration of time she was "not paying attention to her phone" because she was "engaged with other guests" at the party. However, all guests (except for Plaintiff) left Jane Roe's apartment at 1:00 AM. For Jane Roe's statement to be true, Plaintiff would have had to have gained possession of Jane Roe's phone at approximately 12:00 AM. The evidence, including timestamps, witness testimony, and Jane Roe's own statements to Columbia proves, unequivocally, that he did not.

Ultimately, the pictures were transferred at 12:59 AM. By overwhelming evidence, and far more than a "preponderance" including Eyewitness statements, photos, and timestamps, the evidence did not support Jane Roe's allegation that Plaintiff was in possession of Jane Roe's phone at 12:59 AM during which time the photos and videos were transferred from Jane Roe to Plaintiff. The preponderance of the evidence put Jane Roe in possession of her own respective phone at 12:59 AM when the photos and videos were transferred to Plaintiff. Tellingly, and as alleged in the complaint, Investigator Kleidman refused to include the *actual* timeline in her Investigative report and recommendation to the hearing panel, as well as any direct references to or detailed analysis of the Eyewitness statements, timeline, timestamps, photos, and plethora of evidence that exculpated Plaintiff.

Instead, Investigator Kleidman buried the "overwhelming evidence" that *exculpated*

21

Plaintiff, and recommended that Plaintiff be found responsible for sexual exploitation based on a "suggestion" that Plaintiff committed the act, and with "illicit intent"—a standard well below the "preponderance of the evidence" required by Columbia's own Gender-Based Misconduct Policy.

Just as Plaintiff alleges in his complaint, and as Columbia concedes in its motion to dismiss, Columbia adopted Investigator Kleidman's erroneous investigative findings and erroneously found Plaintiff responsible for sexual exploitation, an act he did not commit.

> "When accepting Plaintiff's allegations that the investigators intentionally misconstrued and misrepresented critical exculpatory evidence, as the Court must do on [a motion to dismiss], Plaintiff presents facts casting an articulable doubt on the accuracy of the outcome of his disciplinary proceeding. *Prasad v. Cornell Univ., 2016* U.S. Dist. LEXIS 161297, *51

> "When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias. *Doe v. Columbia,* 831 F.3d at 57.

> "where decision-makers choose "to accept an unsupported accusatory version over [that of the accused], and declined even to explore the testimony of witnesses," this too "gives plausible support to the proposition that they were motivated by bias" *Menaker v. Hofstra* University, 935 F.3d 20 (2d Cir. 2019)

Clearly, the factual timeline (which Columbia does not dispute) creates far more than the *"articulable doubt"* required under *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994). In fact, it far exceeds that threshold. Put simply, Columbia does not present any argument whatsoever for dismissing Plaintiff's erroneous outcome cause of action. Any attempt by Columbia to rectify this issue in its reply memorandum of law should be rejected by the Court. *See PrecisionIR Inc. v. Clepper,* 693 F. Supp. 2d 286,291 n.2 (S.D.N.Y. 2010) ("The Court will not consider Defendants' expanded, procedurally-improper arguments" raised for the first time in their reply brief); *U.S. v. Yousef,* 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); *Playboy Enterprises, Inc. v. Dumas,* 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997)

("Arguments made for the first time in a reply brief need not be considered by a court").

## V.    Plaintiff States a Title IX Selective Enforcement Claim

Columbia's defense to Plaintiff's Title IX selective enforcement claim is equally absurd and rests on the demonstrably false assertion that Plaintiff failed to allege that he filed any counter-complaints against the complainant, or that Columbia had any knowledge of the Complainants alleged gender-based misconduct against Plaintiff. However, In reality, the Complaint alleges in detail that Plaintiff reported misconduct allegations against the complainant and was treated far less favorably in response—textbook selective enforcement. To be sure, Columbia, in its own investigative report, claimed to have "investigated" Plaintiff's claims of sexual harassment and coercion by the Complainant *despite not charging her*. Columbia even states in its Motion to Dismiss that Columbia allegedly  determined that Plaintiff was "not credible" in any claim or allegation that he made". So for Columbia to now tell this court that Plaintiff failed to allege sexual misconduct by the complainant, or any actual knowledge by Columbia is not at all the truth.

However, to the extent Columbia concedes that every Columbia University administrator and employee involved in Plaintiff's underlying disciplinary proceeding violated Columbia's "Mandatory Reporting" policy[2], it only lends further supports to Plaintiff's claims of selective enforcement.  In any event, these are factual disputes— not legal deficiencies as Columbia contends, that cannot be resolved on a Motion to Dismiss.

## VI.    Plaintiff States an ADA Claim

Columbia's basis for seeking dismissal of the Plaintiff's ADA claim is equally baseless and

---

[2] https://institutionalequity.columbia.edu/content/mandatory-reporters-and-witnesses "All Columbia University employees have a Duty to Report any instance or allegation of prohibited conduct - discrimination, harassment, retaliation or gender-based misconduct - that involves any undergraduate or any graduate student. Columbia employees are required to report any information that they learn about or observe."

even more absurd. Specifically, Columbia contends in its Motion to Dismiss that Plaintiff "failed to allege that he had a disability, and failed to disclose "what his disability was", and baselessly contends that this is "fatal to his claim". This is ludicrous. The Complaint clearly states that Plaintiff had a documented disability, disclosed it to the Title IX office, and requested accommodations through Columbia's disability services—requests that were denied following the deliberate and well documented interference by Columbia's own Title IX staff.

Columbia faults Plaintiff for not attaching or publicly disclosing his own HIPPA-protected disability records in his public Complaint—and uses that as a basis for dismissal. Plaintiff's disability documentation are confidential records protected under HIPPA and need not be disclosed in public pleadings to survive a motion to dismiss. In any event, these are factual disputes— not legal deficiencies as Columbia contends, that cannot be resolved on a Motion to Dismiss. Finally, Columbia's reliance on *Ortiz v. Pace Univ.,* to dismiss Plaintiff's ADA claim is disgraceful.  In *Ortiz,* the complaint was dismissed due to an unopposed Motion to Dismiss by the Defendant *not* on the individual merits of its claims.

### VII.    Plaintiff States a Title VI Deliberate Indifference Claim

Columbia's Title VI defense is just as absurd as the rest. Columbia contends that Plaintiff failed to allege Columbia's awareness of race-based harassment and coercion, and therefore his Title VI claim must be dismissed. Yet, the Complaint details multiple instances where Plaintiff notified Columbia of specific racial coercion, and harassment by Mack Roe specifically that Plaintiff "was a black man and did not stand a chance." Furthermore, in addition to verbally disclosing the race-based harassment  and coercion to Columbia, Plaintiff cited the race-based harassment and coercion in his "Impact Statement"  in the disciplinary proceeding. which flat out ignored— textbook Deliberate Indifference. This clearly satisfies the "actual knowledge" standard

for Title VI under *Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012*)* and

*DiStiso v. Cook,* 691 F.3d 226 (2d Cir. Furthermore, to the extent Columbia concedes that every

Columbia administrator involved in Plaintiff's disciplinary proceeding violated Columbia's

"Mandatory Reporting" policy[3], that would only lend further support to Plaintiff's claims. In any

event, this is question of fact that cannot be resolved on a motion to dismiss.

### A.    Plaintiff States a Claim Under NYCHRL

Columbia's basis for dismissing Plaintiff's NYCHRL claim is meritless. Its sole basis is

the circular assertion that the federal claims fail and therefore the NYCHRL claim must fail too.

This argument is baseless. The NYCHRL is interpreted far more liberally than its federal

counterparts and imposes a lower pleading threshold. As the First Department made clear in

*Williams v. NYC Housing Auth.*, 872 N.Y.S.2d 27 (1st Dep't 2009), the NYCHRL requires

independent analysis and must be construed "broadly in favor of discrimination plaintiffs."

Columbia's effort to bootstrap dismissal of the NYCHRL claim to its doomed Title IX, Title VI,

and ADA arguments only underscores Columbia's continued refusal to engage the actual

allegations and the independent merits of each of Plaintiff's claims.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss should be denied in its

entirety. In the event that the Court grants any portion of Defendant's Motion to Dismiss, Plaintiff

respectfully requests leave of the Court to file an Amended Complaint.

"But I know, somehow, that only when it is dark enough can you see the stars." -MLK

---

[3]    https://institutionalequity.columbia.edu/content/mandatory-reporters-and-witnesses    "All Columbia University employees have a Duty to Report any instance or allegation of prohibited conduct - discrimination, harassment, retaliation or gender-based misconduct - that involves any undergraduate or any graduate student. Columbia employees are required to <u>report</u> any information that they learn about or observe."

Dated: July 2, 2025
New York, New York

Respectfully Submitted,
**JOHN DOE**

By:

John Doe
PO Box #250050
New York, New York 10025
(917) 450-9050
johndoe.casemail@gmail.com
Plaintiff, Pro Se

## CERTIFICATE OF COMPLIANCE

I, Plaintiff John Doe, hereby certify that this memorandum of law complies with the word count limitations set forth in Local Civil Rule 7.1(c) and Rule 4(c)(ii) of Your Honor's Individual Rules and Practices in Civil Cases. This memorandum contains 8,750 words and spans 25 pages, excluding the caption, table of contents, table of authorities, signature blocks, and this certification.

Dated: July 2, 2025                     Respectfully Submitted,
New York, New York                      **JOHN DOE**


By:
John Doe
PO Box #250050
New York, New York 10025
(917) 450-9050
johndoe.casemail@gmail.com
Plaintiff, Pro Se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

Plaintiff,                         Case No. 1:25-CV-02132-DEH-RFT

v.

COLUMBIA UNIVERSITY,

Defendant.

### DECLARATION OF JOHN DOE
### IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

I, John Doe, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Plaintiff in this action and submit this declaration in support of my memorandum of law in opposition to Columbia University's motion to dismiss.

2. I have personal knowledge of the facts stated in the Complaint, and the allegations contained therein are true to the best of my knowledge, information, and belief.

3. I respectfully request that the Court deny the motion to dismiss and allow my claims to proceed.

Dated: July 2, 2025
New York, New York

_____
JOHN DOE
Plaintiff, Pro Se