```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK
----------------------------:

JOHN DOE,                     : Civil Action No.:

                              : 25-cv-2132

              Plaintiff,      :

        v.                    :

COLUMBIA UNIVERSITY,          : New York, New York

                              : July 18, 2025

              Defendant.      :

----------------------------:



          TRANSCRIPT AND STATUS CONFERENCE HEARING

        BEFORE THE HONORABLE ROBYN F. TARNOFSKY

            UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:        JOHN DOE, PRO SE
                      P.O. Box 250050
                      New York, New York 10025

For Defendant:        HECKER FINK LLP
                      BY:  Anna Collins Peterson, Esq.
                           Gabrielle Tenzer, Esq.
                      350 Fifth Avenue
                      New York, New York 10118




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

1           THE DEPUTY CLERK:  Good morning.  Judge

2    Robyn Tarnofsky is now presiding over 25-cv-2132;

3    Doe v. Columbia University.

4           Please state your name for the record,

5    starting with the plaintiff.

6           MR. DOE:  Plaintiff John Doe, proceeding

7    pro se.

8           THE COURT:  Good morning.

9           MS. PETERSON:  And this is Anna Collins

10   Peterson on behalf of Columbia University.  And I'm

11   joined by my colleague, Gabrielle Tenzer.

12          THE COURT:  Good morning.

13          MS. PETERSON:  Good morning.

14          MS. TENZER:  Good morning, your Honor.

15          THE COURT:  Okay, then.  Why don't we get

16   started.  I understand we have some discovery

17   disputes.

18          Ms. Peterson, would you like to start?

19          MS. PETERSON:  Thank you, your Honor.

20          The two issues that we wrote to the Court

21   about to address are the parties' protective order

22   and the ESI protocol.  We understand plaintiff has

23   also raised an issue with our initial disclosures.

24          We think the protective order and the ESI

25   protocol, in particular, have been as a source of

1    discussion among the parties.  And I'm happy to

2    speak in a little bit more detail about each of

3    those.

4         We laid out the history between the parties

5    in the letter to the Court.  On the protective

6    order, the parties have exchanged drafts with

7    competing proposals.  We met and conferred for close

8    to two hours earlier this month.  And at the

9    conclusion of that meet and confer, we believed that

10   we had reached an agreement on the protective order.

11        Plaintiff told us that he would execute the

12   protective order, understanding that the parties had

13   just had some disagreements.  He, you know, reserved

14   the right to seek modifications later if he believed

15   it was necessary.  But he told us to send him the

16   protective order, and he said he would sign it.

17        When we did that and sent him the

18   protective order along with the other materials

19   required by your Honor's individual practices,

20   plaintiff informed us that he no longer agreed to

21   the protective order.

22        A more fulsome rendering of the back and

23   forth is in the letter we submitted this week.  But,

24   in essence, plaintiff raised some new issues, raised

25   some issues we had already addressed, and told us

1    that the protective order needed to be reconsidered

2    in its entirety.  And he eventually sent us new

3    edits on the document.

4         And at this point, we've spent just an

5    inordinate amount of time negotiating a protective

6    order, and it doesn't appear that we're close to

7    agreeing on that order, and so we are seeking the

8    Court's assistance in finalizing a document, getting

9    a protective order in place so that discovery can

10   move forward.

11        If it would be helpful, we can discuss some

12   of the more substantive, you know, issues with the

13   protective order, but we think that it's, you know,

14   largely laid out in the letter.

15        On the ESI protocol --

16        THE COURT:  Well, let's just talk about the

17   protective order first, and then we'll move on to

18   the ESI protocol.

19        Mr. Doe, what is your position on the

20   protective order?

21        MR. DOE:  Good morning, your Honor.

22        My position on the protective order is

23   that -- well, first of all, I never agreed to sign.

24   I never agreed to the proposed protective order in

25   its current form.  I believe that that's extremely

1    misleading, and I just wanted to put that on the

2    record.  I never agreed to it.

3            We have been back and forth on this

4    proposed protective order.  And as any negotiations

5    go, obviously, sometimes -- you know, sometimes it's

6    quick and sometimes it's not.

7            But I have a couple main concerns with the

8    protective order.  And, really, my understanding,

9    really, of this protective order is, you know, this

10   protective order is something that, you know,

11   Columbia proposed.  Columbia believed, obviously,

12   you know, that a protective order was appropriate.

13   And I agree.  I have no disputes with that.

14           However, you know, the problem that I have

15   is the protective order is more like a -- reads more

16   like a discovery roadblock in my eyes and as it was

17   currently drafted by counsel for Columbia with the

18   initial draft that was sent to me.

19           And the reason why I say that is because

20   it's very one sided.  It's very lopsided and

21   disproportionately favors Columbia on nearly every

22   single issue and makes it extremely difficult for me

23   to be able to get the discovery, the discovery that

24   I seek in this action.

25           So I'd be happy to address more

```
 1   substantively and more specifically the specific
 2   points of our --
 3           THE COURT:  Yeah, I think that's where we
 4   should be focused.
 5           MR. DOE:  Okay.
 6           THE COURT:  What are the specific points
 7   that you're concerned about?
 8           MR. DOE:  Okay.  So, really, the first
 9   thing is, is the FERPA records.  And Columbia -- my
10   understanding is Columbia's position is, is that,
11   you know, obviously, you know, they need to comply
12   with FERPA.  And that's true, they do need to comply
13   with FERPA.  But Columbia has indicated that -- over
14   and above what FERPA mandates, they have indicated
15   that they have their own internal FERPA policy that
16   they must comply with.  And so, obviously, I believe
17   that that's an issue.
18           I believe that FERPA, as codified in the
19   statute -- the actual law of FERPA, that's what
20   should govern this litigation, not Columbia's
21   internal policies.  And I believe that that's a
22   place of disagreement.
23           The other place of disagreement is I
24   believe the parties --
25           THE COURT:  Well, let me get them to
```

```
 1    respond.
 2             Mr. Doe, let me get them to respond to the
 3    issue of FERPA.
 4             MR. DOE:  Yes.  Sure.
 5             THE COURT:  Ms. Peterson?
 6             MS. PETERSON:  Thank you, your Honor.
 7             I don't think there's much difference in
 8    what's required under Columbia's internal FERPA
 9    policy, which is that, generally, the university
10    will notify students before their records are
11    disclosed.  The university is required by FERPA to
12    have an internal policy.  And FERPA requires notice.
13             It would be, I think, helpful to understand
14    from plaintiff what it is from the policy or what it
15    is from the notice, FERPA notice, or the FERPA
16    provisions that we have proposed that he believes
17    are out of compliance with the statute or that he
18    otherwise has an issue with.
19             THE COURT:  So, Mr. Doe, what is it about
20    the Columbia FERPA policy that you think is
21    problematic in the context of a protective order?
22             MR. DOE:  Well, I don't know what
23    Columbia's FERPA policy is, right?  I just know what
24    the law is and what the mandates are as it pertains
25    to FERPA more generally.
```

```
 1                THE COURT:  Well, Ms. Peterson, have you
 2      shared a copy?
 3                MR. DOE:  But I don't know what
 4      Columbia's --
 5                THE COURT:  Ms. Peterson, have you shared a
 6      copy of the FERPA policy with Mr. Doe?
 7                MS. PETERSON:  I believe that we cited it
 8      in the letter, and it's made available to all
 9      Columbia students, and it's available online, so we
10      haven't --
11                THE COURT:  Okay.  But why don't you
12      provide him with a policy, and then he can see if
13      there's anything in it that he objects to.
14                MS. PETERSON:  We can certainly do that,
15      your Honor.  I think it would still be helpful for
16      us to understand what in the protective order that
17      Mr. Doe has concerns about.
18                THE COURT:  So, Mr. Doe, what in the
19      protective order is troubling to you with regard to
20      FERPA policies?
21                MR. DOE:  Okay.  So as a preliminary issue
22      here, Columbia's position is, is that, you know,
23      obviously, they have to provide notice to the
24      student.  And I agree they need to provide notice to
25      the student.  That's standard.
```

1    However, the issue that I have is that,
2    particularly, with the notice to the student, what
3    is actually considered FERPA-protected records,
4    right?

5    Like, FERPA more generally doesn't -- is
6    largely silent on this issue.  And it's pretty
7    broad, right?  It specifically just says, like, any
8    institutional records where a student's PII is
9    personally identifiable, that's protected by FERPA.

10    What the question becomes is, then, what
11    actually is considered protected by FERPA?  And
12    there are many disagreements, you know, among
13    litigants and among courts, right, established in
14    the -- it is established in the case law of where
15    different parties interpret things differently
16    because there's a gap in what FERPA said -- what
17    FERPA identifies is actually protected records.

18    So Columbia can -- Columbia's -- their
19    position is, is that e-mails between the university,
20    which is, you know, of the university administrators
21    and Jane Roe and Mack Roe are protected by FERPA.
22    That's their position.

23    So with that position, with my discovery
24    request, every single discovery request that I make,
25    whether it's for e-mails, whether it's for -- you

```
 1   know, whether it's phone conversations or video
 2   recordings from the underlying disciplinary
 3   proceeding, it's Columbia's position that those are
 4   all individual requests that must be noticed
 5   separately.
 6           And so we're already in a 25-day notice
 7   period.  And what I mean by that is, if I make a
 8   discovery request and Columbia says, this is
 9   noticeable under FERPA, they send a notice, it
10   goes -- as it reads in the current protective order,
11   it's 10 days.  They have 10 days from receipt of the
12   notice.  And I argue that it should be 10 days from
13   Columbia sending the notice, but it's 10 days.  Then
14   they have an additional five days to file an
15   order -- to file a motion with the Court, seeking
16   protection.  And then, your Honor, the Court would
17   have to rule on that motion.  And then we go from
18   there.
19           So that's essentially an additional 25 to
20   30 days for every discovery request that's protected
21   by FERPA.  So, basically, what I'm trying to avoid
22   is, essentially, a 25-, 30-day delay on every single
23   request that I'm making.  And I think that could be
24   open to abuse.
25           The bigger issue that I have here, your
```

1    Honor, is the inconsistency with which Columbia has

2    operated as it pertains to FERPA.  In the underlying

3    disciplinary proceeding, as is established and

4    proven by the evidence file, during the proceeding,

5    I had communications with Investigator Kleidman, and

6    it was in regards to the uses and production of

7    evidence in my defense.

8            In that communication, my attorneys were

9    cc'd on that chain.  Without my permission, without

10   my consent, without giving me any notice, Columbia

11   uploaded -- Investigator Kleidman uploaded that

12   communication between me and university officials to

13   the Google Drive and to the docket; that way, it

14   could be seen by other parties.

15           So the problem I have, your Honor, is if my

16   discovery requests are seeking e-mails between the

17   investigators, between Columbia administrators

18   involved in the underlying disciplinary proceeding,

19   as well as Jane Roe and Mack Roe, but those are

20   protected by FERPA and require notice, then why

21   wasn't my communications with investigators in the

22   underlying disciplinary proceeding -- why was that

23   not protected by FERPA?  And why did that not

24   require notice?  Why did that not require my

25   consent?  And why did that not require giving me the

1    ability to object to that disclosure?

2              That's the problem I have here, your Honor.

3    It's almost like there's two separate rules.  And so

4    I believe that this process is being exploited and

5    abused by Columbia.  That's the problem that I have.

6              THE COURT:  Okay.  We're not going to --

7    Mr. Doe, please try to keep it to the facts, right?

8    You can tell me what happens, and I can assess how I

9    characterize them.  You're perfectly entitled to

10   have your own views about how you characterize it,

11   but I don't think that we need to talk about that

12   right now.

13             MR. DOE:  Okay.  So that's on that, right?

14             So there's --

15             THE COURT:  Okay.  Well, why don't we pause

16   there.  Why don't we pause there.

17             Okay.  As to the issue of needing new FERPA

18   notices when there are new requests, I would hope

19   that the requests would be consolidated, and so that

20   you're asking or propounding as few requests at

21   different times as possible.

22             I understand that new things will come up.

23   New things will occur to you.  No one's saying that

24   you're limited to one request, but you should try to

25   group things so that there are as few requests

1    propounded as you can manage.  And under those

2    circumstances, that limits any additional delays due

3    to multiple discovery requests.  So that doesn't

4    particularly trouble me.

5           I guess I will ask Ms. Peterson to respond

6    to your question about differential enforcement of

7    FERPA requirements.

8           Ms. Peterson?

9           MS. PETERSON:  Your Honor, yes, I'm not

10   familiar with the specific incident that plaintiff

11   is talking about.

12          As a general rule, in the disciplinary

13   proceedings, under Title IX and its regulations, the

14   parties have a right of access to various documents

15   and evidence and information in the disciplinary

16   file.  And so there is -- within the disciplinary

17   process, students get access to information that

18   would be otherwise considered education records

19   of -- typically, like, of multiple students for the

20   purpose of that disciplinary proceeding.

21          I'm, again, not familiar with the specific

22   incident that plaintiff is talking about.  I don't

23   know the details of what was uploaded or how it was

24   uploaded or what was shared.  But I do know that the

25   provisions that we have included in the protective

1    order are consistent with FERPA, are similar to

2    other protective orders ordered by other judges in

3    SDNY.  And I'm not -- you know, other than this,

4    this question about being concerned about how many

5    notices the students will get, I'm not sure if

6    there's a specific issue that plaintiff is raising

7    about the protective order as it's drafted.

8            THE COURT:  So, Mr. Doe, aside from the

9    issue of the differential enforcement, which I tend

10   to think is something that needs to be addressed

11   between you and Columbia outside the context of this

12   protective order, is there something about the way

13   FERPA materials are treated in this direct

14   protective order that you think should be changed?

15           MR. DOE:  Well, let me just first say

16   this -- and I just want to respond to your Honor's

17   suggestion about consolidating the requests.

18           I would fully be in agreement with that,

19   and that would obviously completely extinguish my

20   concerns in that regard, and that would address that

21   issue.

22           I think the only thing with that is,

23   obviously, as the Court is aware, Columbia has been

24   sensitive to the possibility that my discovery

25   requests would be overly broad and would not be

```
 1    proportional to the needs of the case and would be
 2    unduly burdensome and costly, et cetera, et cetera.
 3            And so I know that your Honor hasn't had
 4    the chance to review my discovery requests yet, but
 5    I think that -- if your Honor did, I think your
 6    Honor would see that they are very pointed, they are
 7    very narrow, and they are proportionate to the needs
 8    of the case, and I'm being sensitive to Columbia's
 9    concerns.
10            So I am happy to consolidate all of the
11    requests to the extent that the consolidation of
12    these requests wouldn't draw some arbitrary
13    objection from Columbia that, hey, your Honor, well,
14    this is overly broad, this is too much, it needs to
15    be more narrow at this stage.
16            So I will just put that out there, that I
17    was keeping in -- I was keeping in mind Columbia's
18    sensitivities to that issue.  And so I would be
19    happy to consolidate.  I was just really concerned
20    that I could draw an objection from Columbia to the
21    Court that it was overly broad, unduly burdensome.
22    But to the extent that your Honor certainly
23    recommends that, I will happily do that.
24            THE COURT:  So I would say this, Mr. Doe.
25            MR. DOE:  Yes?
```

1          THE COURT:  We're doing, sort of, more

2    limited document-related discovery in this first

3    stage.

4          MR. DOE:  Yes.

5          THE COURT:  And so I applaud your

6    willingness to be targeted at that point.  To the

7    extent the case continues, the discovery can become

8    broader.  And at that point, you can group requests

9    together.  If Columbia thinks they're overly broad,

10   you'll talk about that.  And if you can't resolve

11   it, you'll come to me.

12         So I think we've, at least, put off for

13   another day any dispute about -- concerns about

14   having to make multiple discovery requests.

15         What else is of concern to you about the

16   draft protective order?

17         MR. DOE:  Okay, so the other concern that I

18   have here is as it pertains to how the information

19   within discovery can be used by the parties.

20         It is my position, and I always -- I live

21   by the old saying, what's good for the goose is

22   what's good for the gander.  And what I mean by that

23   is, Columbia's position is that I shall not be able

24   to use any discovery-related material or any

25   material that is obtained in discovery outside the

1    context of the litigation.  It must remain only

2    within the walls and within the confines of this

3    litigation.  And I understand that.  I don't

4    necessarily have a problem with that.

5            However, Columbia's position is, is that

6    they may, indeed, use information that is uncovered

7    in discovery against me in any subsequent

8    disciplinary proceeding, academic or disciplinary or

9    administrative review by Columbia "in their

10   discretion," as long as it doesn't come from me.

11   They say if it comes from other parties or if it

12   somehow comes from some other source, we can use

13   that information.

14           And, your Honor, I believe that that's a

15   problem and very lopsided.  I think it would be very

16   unfair for me not to have the ability -- me not have

17   the same right to use information uncovered in

18   discovery at my discretion outside the context of

19   the litigation if Columbia has the ability to do so

20   as well.

21           THE COURT:  Okay.

22           So, Ms. Peterson, what is your response?

23           Ms. Peterson, what is your response to

24   that?

25           MS. PETERSON:  Your Honor, the Court's

1    standard protective order has a provision, which we

2    think is pretty standard, to say that discovery

3    material or, you know, information covered by the

4    confidentiality order or protective order can only

5    be used for purposes of the litigation and for no

6    other purpose.  We included that provision in the

7    draft protective order that we shared with

8    plaintiff.  We think that that provision is

9    appropriate.

10          In exchanging drafts, plaintiff had added a

11    provision; it's essentially paragraph 4 in the draft

12    protective order that we submitted.  And we, with

13    some modifications, accepted plaintiff's additional

14    provision.

15          Our view is that, as is standard,

16    information should not be -- confidential

17    information exchanged in discovery in this

18    litigation should only be used for purposes of this

19    litigation.  And we have proposed and discussed at

20    length with plaintiff a return-or-destroy provision.

21          Our understanding is that it is plaintiff

22    who objects to such a provision.  He previously

23    e-mailed us and said, "Even after the resolution of

24    this action, I may reasonably anticipate related or

25    separate litigation involving Jane Roe, Mack Roe

1    and/or Columbia stemming from the same operative

2    facts.  And accordingly, any requirement that I

3    destroy or relinquish discovery materials would be

4    incompatible with my legal preservation

5    obligations."

6            So our understanding of this issue with the

7    protective order was that -- our position was that

8    we very much would like and think is appropriate to

9    have a provision that requires the destruction or

10   return of confidential information at the conclusion

11   of litigation and a provision saying that

12   confidential information disclosed in discovery can

13   only be used for purposes of this litigation.

14           If there's something in the draft of the

15   protective order that plaintiff thinks has some

16   other effect, that certainly wasn't the intention,

17   and it would be helpful to understand from plaintiff

18   what provision that is.  And we can discuss edits to

19   effectuate our intention to have a return-or-destroy

20   provision and a provision limiting the use of

21   confidential information to only this litigation.

22           THE COURT:  Okay.

23           So, Mr. Doe, what specific provision are

24   you referring to where you say that Columbia may use

25   materials in their discretion for other purposes?

1          MR. DOE:  Give me a second here, your

2     Honor.  Thank you.  I'm pulling up this -- let's see

3     here.

4          So this would be under -- this would be

5     under Provision 4.

6          It says, "However, any documents, records,

7     or information that Columbia now possesses or later

8     receives from a source, other than plaintiff, may be

9     used at the discretion of Columbia, including, but

10    not limited to, in connection with any other

11    proceeding."

12         That's the provision right there.  And I

13    don't believe that Counsel for Columbia actually

14    addressed that in response to your question.

15         And in terms of the --

16         THE COURT:  Okay.  So why don't we ask

17    Ms. Peterson to address that.

18         MR. DOE:  Yeah.

19         MS. PETERSON:  Thank you, your Honor.

20         So the rest of paragraph 4, which

21    restricts -- it says -- it lists a bunch of

22    different information about plaintiff:  Plaintiff's

23    educational, counseling, psychological, behavioral,

24    mental health, disability and disciplinary records.

25    They will be used solely for purposes of this civil

1    action, and those materials won't be used in

2    concurrent or future administrative, academic,

3    disciplinary proceedings.

4         That was language that was proposed by

5    plaintiff.  That is not -- that's not a provision

6    that we would have suggested, but we are open to

7    suggest -- to accepting plaintiff's edits.

8         But we thought the last sentence was

9    important to clarify that, just because information

10   is disclosed from plaintiff in the process of this

11   litigation, doesn't mean that Columbia can't use

12   that information, if it already has that

13   information, in other proceedings or other issues

14   with plaintiff.

15        I think, as plaintiff has acknowledged,

16   there are some other pending disciplinary

17   proceedings with plaintiff at the university, and,

18   you know, plaintiff has an ongoing academic

19   relationship with the university, and so we already

20   have -- the university has information about

21   plaintiff.  And just because plaintiff produces that

22   information back to Columbia won't mean that the

23   university can't use information that it already

24   has.

25        So that was the intention with the last --

```
 1            THE COURT:  Is the draft clear that when
 2    you -- by that sentence, you're referring to
 3    materials received outside the course of this
 4    litigation?
 5            MS. PETERSON:  We would be happy to add
 6    language to say, documents, records or information
 7    that Columbia now possesses or later receives from a
 8    source, other than plaintiff, outside of this
 9    litigation.  I --
10            THE COURT:  Well, I mean, I think it would
11    have to be from anyone, other than outside of the
12    litigation, not just plaintiff.
13            If you get something from a third party in
14    litigation, that's a litigation document.  If you
15    have it for some other reason or get it in some
16    other context, that's fine.  But any documents you
17    get in the litigation and that you have only based
18    through the litigation, you can't use.  It should
19    not be that hard to draft up a provision to that
20    effect.
21            MS. PETERSON:  Yes, your Honor.  I mean,
22    we're -- I think it's fine.  We're happy to add that
23    language in this provision.  We also have other
24    provisions in the protective order that says --
25            THE COURT:  I understand, but each
```

1    provision should be able to stand on its own, to a
2    certain extent.
3         Mr. Doe, would that -- if the language --
4    if we can get the language right, would that concept
5    be acceptable to you?
6         MR. DOE:  Yes, your Honor.  And you hit the
7    nail directly on the head with that.  That is my
8    concern because obviously it's very clear --
9         THE COURT:  Okay.  It sounds like we have a
10   resolution on that point, subject to getting the
11   drafting right.
12        What is the next point about the protective
13   order that you are concerned about?
14        MR. DOE:  Okay.  Just briefly.
15        So I believe that the disclosure clock
16   should begin running when Columbia sends the notice
17   to the student.  So when Columbia notices a student
18   that their PII may be revealed, that that clock
19   should begin running when Columbia sends the notice,
20   not when the affected student claims that they
21   received the notice.
22        What I'm trying to avoid is a situation
23   where a student says, hey, I was out of the country,
24   or I was -- I don't know.  I was in a coma or
25   whatever.  I didn't receive this.  I only received

1    this now, and it's now 30 days later.

2             I'm trying to avoid that, so I believe that

3    the clock should start running when Columbia sends

4    the notice.

5             And I want to just add, the other part with

6    that is, as it pertains to FERPA-protected records,

7    I believe that the major issue that we have here is

8    whether or not -- so if Columbia -- if the -- so the

9    way the protective order reads is that, even when

10   the notice period has expired, even if the Court has

11   ruled that no protection will be given to the

12   affected student as it pertains to their records,

13   Columbia -- their position is that they will still

14   only provide -- they will still only provide -- they

15   will only provide redacted records with all the

16   students' PII -- meaning their name, e-mail

17   addresses, et cetera, et cetera -- redacted.

18            And so my position is, is if the

19   information -- if they're providing information that

20   is redacted, then that extinguishes -- in my

21   opinion, that -- my position is that extinguishes

22   the need for notice.

23            If you're going to notice -- so Columbia

24   says, we will produce records with all PII redacted,

25   even if the Court rules that no --

```
 1            THE COURT:  Okay.  I understand your
 2   position, Mr. Doe.
 3            MR. DOE:  Yes.
 4            THE COURT:  Ms. Peterson, what is your
 5   response to that, both as to the timing of when the
 6   clock starts to run and as to redacted docs?
 7            MS. PETERSON:  As for the timing of the
 8   notice, as provided in the protective order, we
 9   anticipate providing notice to students by mail and
10   by e-mail, so we don't think that there's likely to
11   be a significant difference.  If 10 days from the
12   time that the e-mail is sent to students advising
13   them, I think, like, that is an acceptable -- like,
14   10 business days from the time the notice is sent.
15            It's hard to imagine a situation or sort of
16   account for a situation in which a student, you
17   know, claims some good reason why they didn't
18   receive the notice, but that's not what the -- you
19   know, the protective order says 10 days and then an
20   additional five.  And so if that time is based on
21   when the university sends the notice via e-mail and
22   via mail, we think that's acceptable.
23            As to --
24            THE COURT:  Okay.  So you've agreed ten
25   days from sending the e-mail, plus five.
```

```
1              MR. DOE:  Yes.
2              THE COURT:  Okay.
3         Is that okay with you, Mr. Doe?
4              MR. DOE:  Yes.  I'm okay with that.  That's
5    just not how the current protective order reads.
6              THE COURT:  Okay.  Well, that's why we're
7    here.
8              What about the redacted documents,
9    Ms. Peterson?
10             MS. PETERSON:  So, as I think we -- we have
11   explained to plaintiff and described in the letter,
12   redacting the documents does not obviate the need
13   for FERPA notice.  And this is -- this comes from
14   FERPA, the statute and the implementing regulations.
15   And I think it's sort of clear from this case why
16   that's so.
17             Even if we redact the PII of these other
18   students, plaintiff knows their identity.  And so
19   the FERPA regulations address that situation and
20   acknowledge that in situations where, based on the
21   information in the records or other contacts, that
22   the identity of the student is identifiable, the
23   notice is still required.  And so our position is
24   that, to comply with FERPA, we need to provide
25   students notice.
```

1           THE COURT:  Okay, Mr. Doe?

2           MR. DOE:  Well, I think she completely

3     skirted the question.  I think the question was -- I

4     think she completely skirted the question.

5           The question is, is why -- I'm not talking

6     about the notice here.  I believe that notice is

7     required.  After that process has run its course, I

8     believe that the documents that Columbia should

9     provide should be unredacted, right?

10          THE COURT:  Okay.

11          Ms. Peterson, could you respond to that?

12          Thank you.

13          Ms. Peterson?

14          MS. PETERSON:  Yes.

15          So we think it's appropriate to redact the

16    names and PII of the students.  There is a pseudonym

17    order in this case.  The order is in place for a

18    good reason.  Plaintiff sought pseudonym status for

19    himself and for other students, and we think that's

20    appropriate under the factors of the sealed

21    plaintiff case.

22          Plaintiff knows the identity of Jane Roe

23    and Mack Roe, and so it's hard to imagine that

24    there's any prejudice to plaintiff from redacting

25    that information.  And the protective order

1    explicitly permits plaintiff to seek unredacted

2    versions if there is any sort of prejudice.

3            But we think, given the really sensitive

4    nature of the records and the potential differences

5    between the standard for protecting PII and

6    pseudonym status, but also recognizing that just

7    because information is designated confidential in

8    discovery doesn't mean that it will necessarily be

9    under seal on the docket, and given the risk of any

10   sort of disclosure or inadvertent disclosure and the

11   university's FERPA obligations regarding

12   re-disclosure, this is in line with what other

13   courts have done with protective orders in SDNY.

14   And we think that both redactions as well as FERPA

15   notice are appropriate and required.  And as

16   reserved in the protective order, to the extent that

17   plaintiff believes he's prejudiced, he can seek

18   unredacted versions of the records.

19           THE COURT:  Okay.  Thank you, Ms. Peterson.

20           Mr. Doe, what is your response to that?

21           You have an ability, if you think it's

22   necessary, if you think you're prejudiced under --

23   at all, to seek unredacted versions.  And that would

24   ultimately, if you can't work it out, come to the

25   judge.

```
 1              Is that -- why isn't that sufficient, given

 2    that these are potentially sensitive documents?

 3              MR. DOE:  Well, your Honor, just in

 4    response to your question, just because I know the

 5    identity of Jane Roe and Mack Roe does not mean I'm

 6    going to be able to identify in a dump of

 7    potentially hundreds of e-mails between

 8    administrators who the e-mail was actually from.

 9              For example, if I --

10              THE COURT:  Well, so that's the thing,

11    though.  If you think you need the information, you

12    can ask for it.

13              MR. DOE:  Well, here's the problem.  Here's

14    the problem with that, is we talk about, you know,

15    undue burden, right?  If I identify 100 e-mails

16    where I don't know who the communication is from, it

17    is now on the burden of me to seek relief from the

18    Court to -- now, when we're in motion practice, over

19    100 e-mails.

20              That's the problem here, your Honor, and

21    it's the issue that I ran into in the underlying

22    discipline proceedings.

23              THE COURT:  Mr. Doe, that's a problem for

24    another day.  I am going to -- Mr. Doe, I'm going to

25    allow them to provide the documents in redacted
```

```
 1    form.  You have the ability to seek the unredacted
 2    versions.  And if that ever becomes too burdensome,
 3    that is a separate issue that we can take up at that
 4    later date.  Okay.
 5              What is the next issue?
 6              MR. DOE:  I just -- can I just --
 7              THE COURT:  Yeah?
 8              MR. DOE:  I just want to respond briefly to
 9    that.  I just want to respond briefly to that.  And
10    I am amendable to that to the extent that I could
11    request that in a letter motion to the Court and
12    wouldn't have to use up one of my discovery
13    requests.
14              I don't want to have to use up a request
15    for production in my discovery to get access to
16    this, and then use up my request for production.  I
17    don't want to -- I don't want to be prejudiced in
18    that way.
19              So if all of it takes is, you know, I seek
20    relief from the Court in the form of a letter motion
21    and we address it, I'm amendable to that.  I have no
22    issue with that.  But to the extent that somebody
23    argues --
24              THE COURT:  This should not have any impact
25    on the amount of discovery that you can seek.  This
```

1    is a separate issue.

2          MR. DOE:  Okay.  Good.  As long as that's

3    expressed, as long as we're on the same page with

4    that, I am completely amendable to that.

5          THE COURT:  Okay.  Wonderful.

6          What is the next issue?

7          MR. DOE:  The other issue that I have is in

8    terms of the -- and I don't know if I will

9    ultimately seek expert discovery in this case.  I am

10   not sure.  But to the extent that I do, I do not

11   believe that I should be required to file a -- to

12   file proof of the signed confidentiality/protective

13   order from any and all -- any or all experts that I

14   may decide to retain or may decide to engage in the

15   course of this litigation.

16         THE COURT:  Well, you don't have to --

17   Mr. Doe, you don't have to provide that information

18   if you don't provide them with confidential

19   documents.  But if you provide them with

20   confidential documents, that is something that you

21   need to do.  That's quite standard.

22         I am now going to take a pause for a few

23   minutes.  I need to take a call.  I shouldn't be

24   more than five minutes.  And we will resume then.

25   So I apologize for needing to take the break, but I

1    will be back shortly.

2              MS. PETERSON:  Thank you, your Honor.

3              (A recess is taken.)

4              THE COURT:  Okay.  Thank you for your

5    patience.  Why don't we move on to our next issue.

6              MS. PETERSON:  Thank you, your Honor.

7              I think the next issue that we had -- do

8    you mean in the protective order?

9              THE COURT:  Yes.

10             MS. PETERSON:  Okay.  Then we'll let --

11   apologies.  We will let --

12             THE COURT:  Yeah.

13             Mr. Doe, what is your next issue?

14             MR. DOE:  Yeah, and I think we're getting

15   to the end here.

16             So the other issue that I have is in terms

17   of -- I believe that the protective order should

18   contain language requiring Columbia to provide me

19   with the notices that were sent to students.

20             The way that the current protective order

21   reads is that Columbia shall make timely and

22   reasonable efforts to notify the student of the

23   possible disclosure of their records.

24             I suggested that -- when we met and

25   conferred with Columbia, I suggested that there be a

1    time frame that the university should have to notify

2    the student.  They rejected that and said there

3    should be no time frame.  Timely and reasonable is

4    sufficient.

5        And to the extent that they maintain that

6    position, what I would ask is that the Court require

7    Columbia to provide me with copies of the notice

8    that was sent to the student and when it was sent to

9    the student, just so I have an idea of how I can,

10   obviously, engage my discovery request.  I think it

11   will increase transparency, and I think it will help

12   mitigate any future disputes that we could have.

13       THE COURT:  Ms. Peterson?

14       MS. PETERSON:  Your Honor, we did discuss a

15   variation on this issue with plaintiff.  Plaintiff

16   had wanted Columbia to be required to provide the

17   FERPA notice within five business days of receiving

18   a document request from plaintiff.

19       Some of this is just -- from a practical

20   standpoint, is a little bit difficult to figure out

21   how we would operationalize that.  Obviously, when

22   we receive a document request from plaintiff,

23   depending on the request, there's a process to

24   review the request, you know, to figure out, you

25   know, our response and objection, to collect and

1    review documents.  And so it's not -- it's a little
2    hard to commit to a specific number of days from the
3    time of a request that we would identify documents
4    that require notice and to provide the notice to the
5    students.
6          We expect to provide timely and, you know,
7    reasonably timely notice, as we've agreed to in the
8    protective order.  Plaintiff hasn't previously
9    raised this question of providing the notices
10   directly to him.  I think we would be willing to
11   tell plaintiff when we have notified students.  We
12   would have to look at FERPA to understand whether we
13   can provide plaintiff the actual notices to the
14   students themselves, but we would be willing to tell
15   plaintiff when we're providing the notice to
16   students.
17         And I'm not sure, you know -- if there's a
18   reason that plaintiff thinks that it would be more
19   productive or that he's entitled to the actual
20   notices themselves to the students, we would be
21   interested to hear that.
22         THE COURT:  Mr. Doe?
23         MR. DOE:  Yeah.  So I think -- I mean, I
24   think that certainly would be a start, but I believe
25   that I should be entitled to see the actual notices

1    insofar as, you know, to the extent that -- I mean,

2    it is very likely that there could be, obviously,

3    some motion practice here where, if they file a

4    motion seeking protective order and I file a motion

5    in opposition, I believe that it would be very

6    helpful to me to know the language that Columbia

7    included in its notice to the student and to know

8    exactly what information they received from

9    Columbia.

10          I think I would be on unequal footing if,

11   you know, Mack Roe or Jane Roe or any other affected

12   student or their counsel, you know, files a motion

13   seeking protective order -- and I don't even know

14   what their notice -- maybe objecting to the

15   enforceability of the notice -- or whatever it is,

16   if I don't actually know what that notice says or

17   what language that notice contains, I think that

18   would really harm me and keep me in the dark.

19          It would only be Columbia and the party

20   seeking protection to know, you know, what those

21   communications entailed.  And for me, I'm just --

22   it's kind of like a shot in the dark.  I'm just

23   guessing at that point.  And I think that would be

24   extremely unfair to me.

25          I don't understand how a notice, a required

1    FERPA notice to the student -- I don't understand

2    how that would be an issue with FERPA, but that's

3    just what I would request.  I think it would

4    increase transparency here and help move the ball

5    forward.

6              THE COURT:  Thank you, Mr. Doe.

7              I have a question for Ms. Peterson.  Do you

8    have a standard form of notice?

9              MS. PETERSON:  No.  No, your Honor, we

10   don't have a standard form of notice, that we're

11   aware of.  Anything -- from our perspective, the

12   FERPA notice is something that's required by FERPA

13   and is a matter of sort of the relationship between

14   the university and the student.  Any sort of motion

15   practice stemming from the notice isn't really about

16   the notice, it's about the disclosure of the

17   documents.  And so we don't -- I don't really see a

18   reason why plaintiff needs to have the notices

19   themselves or, you know, should be micromanaging

20   this process.

21             I worry that it's going to lead to

22   additional unnecessary disputes that aren't really

23   relevant to discovery issues, but if this is

24   something that your Honor thinks the parties should

25   explore, we would need, I think, to look at FERPA to

```
 1    understand what we could and the university could do
 2    or share with the plaintiff here.
 3              THE COURT:  Okay.  Well, why don't you take
 4    a look into that.  You can meet and confer further.
 5    I would ask that you do that next week.  And if you
 6    can't reach resolution by the end of next week,
 7    raise it again by letter motion.  Okay?
 8              MS. PETERSON:  Thank you, your Honor.
 9              THE COURT:  Anything else about the
10    protective order?
11              MR. DOE:  Your Honor, I just wanted to talk
12    briefly -- just respond briefly about that, is that
13    Columbia has already provided me with a -- with
14    copies of the modifications to the no-contact
15    directives that were sent to both Mack Roe and Jane
16    Roe; it's the exact same type of communication.
17              So, again, Columbia obviously has already
18    made the decision that that is able to be provided
19    to me, and it provided transparency.  So they've
20    already provided those notices --
21              THE COURT:  Look, as I've said, they're
22    going to look into it.  They're going to make a
23    determination.  You're going to talk about it.  If
24    you can't reach resolution, you can raise it with
25    me, you know, after the end of next week.
```

```
 1                 What else about the protective order?
 2                 MR. DOE:  Okay.  Yeah.
 3                 And I think one last, or second-to-final
 4       thing, I believe that the language in the protective
 5       order should state expressly that, you know, if the
 6       party obviously does not notify Columbia -- or does
 7       not move to seek a protective order -- so okay.
 8                 So after 10 days -- so the student is given
 9       notice.  Columbia sends the notice on day one.  Then
10       day 10 -- and at day 10, they have additional --
11       then they have additional five days after that
12       10-day period to file a motion with the Court,
13       seeking protection.
14                 And I believe that if they do not file a
15       motion seeking protection from the Court within that
16       specified time frame, Columbia should -- on that
17       15th day, Columbia should comply with the discovery
18       request that is protected -- or regarding records
19       that are protected by FERPA.
20                 I had actually included that in my initial
21       redline to Columbia and they outright rejected it.
22       They didn't give a reason, but they just outright
23       rejected it.  So it seems like Columbia's position
24       is that, even if they don't object, Columbia should
25       not automatically comply.  And I believe that they
```

1    should.

2              THE COURT:  Okay.  So --

3              MR. DOE:  I'm just curious what Columbia's

4    position is on that.

5              THE COURT:  Ms. Peterson, what is the

6    position?

7              MS. PETERSON:  In a prior draft of the

8    protective order, plaintiff had included a provision

9    that purported to waive students' right to object to

10   disclosure outside of the 10, plus additional five,

11   time frame.

12             As we explained in response to plaintiff,

13   we didn't think the protective order should or

14   really could waive students' rights and that the

15   protective order established the time frame.

16             The students have 10 days to notify

17   Columbia that they're going to object.  And we think

18   the point of the additional five days is that if

19   Columbia receives notice during those first 10 days,

20   if the students don't actually move to seek a

21   protective order, that this process won't hold up

22   discovery.

23             We intend to produce documents in the

24   normal course.  I don't think it is productive for

25   discovery or really has much benefit to plaintiff to

1    obligate Columbia to produce documents on the 15th
2    day.  If anything, that will -- in the normal course
3    of document discovery, there's a lot that goes into
4    preparing a production.  And so, if anything, making
5    it so that Columbia absolutely must produce on day
6    15 means that we're just going to wait -- that
7    Columbia, then, has to essentially wait for a
8    production to be fully ready.
9            We just don't really see the benefit to
10   obligating Columbia to produce on this specific
11   timeline.  It just seems to needlessly complicate
12   discovery.
13           THE COURT:  Okay.
14           Mr. Doe?
15           MR. DOE:  Yeah, we're not -- I mean, I
16   think there's -- she raised a new issue, and that's
17   not really my issue here.
18           Obviously, you know, I'm aware that it
19   takes time to produce ESI.  I understand that.  I
20   completely understand.  However, I believe that
21   the -- that if a student -- if an affected student
22   does not notify Columbia within the 10 days and does
23   not seek a protective order within five days, on
24   that sixth day, I believe that they're -- obviously,
25   they're -- those rights should be waived, right?

```
 1            What I don't want is for issues where
 2     students come in and they say, oh, well, you know --
 3            THE COURT:  You know what?  But the
 4     protective order is not the vehicle for doing that.
 5     They'll raise the issue, and then it will have to be
 6     litigated.  You can't have a protective order that
 7     waives rights of people who aren't parties to that
 8     protective order.  That's just not how it works.
 9            MR. DOE:  Well, that's what FERPA does.
10     That's what FERPA says.  FERPA says, if you don't
11     receive notice and don't move to seek an order, then
12     obviously the issue moves forward.
13            THE COURT:  And then you can take that
14     position in litigation, but it is not something that
15     we can say can happen through the protective order
16     process.
17            MR. DOE:  Okay.
18            THE COURT:  If the situation comes up --
19     and we have no reason to think it will -- then we
20     will deal with it at that point.
21            MR. DOE:  Okay.  Yeah.  We'll cross that
22     bridge when we get there.  No objection to that.
23            THE COURT:  Exactly.
24            Okay.  So what about anything else on the
25     protective order?
```

```
 1              MR. DOE:  Your Honor, I think that that
 2    covers it.  I guess I could say one final thing, is
 3    I'm -- and I'm trying to find the provision here.
 4              Columbia has a claw-back clause in here
 5    where, essentially, their position is, if they
 6    identify a document that, oh, this should have been
 7    marked confidential, we're going to mark it now.
 8              I guess I would just be concerned -- and
 9    maybe I'm speculating here.  Maybe we cross that
10    bridge when we get there, but I would just be
11    concerned about some of the -- about the claw-back
12    provision, you know, if we're in, you know, active,
13    obviously, discovery with certain documents and
14    Columbia makes the decision, oh, we should have
15    marked this as confidential.  This should have been
16    FERPA noticed.  And now, we have to go back and kind
17    of undo -- we have to -- you know, we have to unwind
18    the string, so to say.  And I believe that that
19    could just further complicate issues.
20              THE COURT:  It's a pretty standard
21    provision.  If it raises difficulties, then we can
22    deal with it at the time.  I don't think that's
23    something we need to address right now.  Okay.
24              MR. DOE:  All right.  I think that's it,
25    your Honor.
```

```
 1              THE COURT:  Okay.
 2              MR. DOE:  That's all I have on the
 3    protective order.
 4              THE COURT:  What else do we need to talk
 5    about besides the protective order?
 6              We have, now, the ESI.
 7              MR. DOE:  Your Honor, I would like to
 8    address my motion, my motion to compel, obviously,
 9    my friends on the other side here to provide their
10    insurance agreement, as required by Rule 26(a).
11              THE COURT:  Well, we'll get to that, but
12    right now, we're talking about the ESI protocol.
13              MR. DOE:  Okay.  Okay.  Okay.
14              Your Honor, I have -- the ESI protocol
15    looks fine.  I've reviewed it.
16              But -- so my position was that it was
17    interwoven with the -- essentially, it was the ESI
18    protocol.  The language in the ESI protocol said
19    this should be governed by the protective order.
20    And so we were putting the cart before the horse.
21              We needed to address the substantive issues
22    in the protective order first, and then we can
23    address the ESI protocol.  But I think any questions
24    or concerns that I would have with ESI protocol can
25    be resolved with counsel, without the Court's
```

```
 1    intervention.

 2            I don't even see any at this point; maybe

 3    one or two things that wouldn't require the Court's

 4    intervention.  So we've addressed the substantive

 5    issues in the proposed protective order.  And so,

 6    now, I'm amendable to the ESI protocol.  I have no

 7    issue with it.

 8            THE COURT:  Okay.

 9            MR. DOE:  It's fine.

10            THE COURT:  Does counsel for defendant have

11    anything else that we should talk about with respect

12    to the protective order or the ESI protocol?

13            MS. PETERSON:  Your Honor, with respect to

14    the ESI protocol, I think it would be helpful to

15    understand if plaintiff has issues with the ESI

16    protocol.

17            THE COURT:  Well, it says -- he said that

18    he -- we're not doing this in the first instance

19    with me on the line.  This is something that you can

20    try to figure out yourselves, and then if you can't,

21    you can come back to me.

22            MS. PETERSON:  Okay.

23            THE COURT:  I'll hear you promptly, but

24    we're not going to negotiate in real time.  Okay.

25            Anything else?
```

```
 1              MS. PETERSON:  Your Honor, I just --
 2              MR. DOE:  That's all I have, your Honor.
 3              MS. PETERSON:  The deadline for a response
 4     to the initial -- to the parties' initial requests
 5     for production is coming up.  It's been just over a
 6     week.  And understanding the Court's instruction on
 7     negotiating the ESI protocol.  If we don't have an
 8     ESI protocol in place, I think we will be unlikely
 9     to be able to produce documents without any ESI
10     protocol in place.
11              And so we're not looking to delay
12     discovery, but from our perspective, we -- and so
13     that plaintiff understands, though we anticipate
14     providing responses and objections to his request,
15     we don't anticipate producing any documents until
16     there is a protective order and an ESI protocol in
17     place.
18              THE COURT:  That is how things generally
19     work.  And I would encourage you to get that ESI
20     protocol in place so you can start your production.
21              I guess that's all I need to say right now.
22              MS. PETERSON:  Thank you, your Honor.
23              THE COURT:  Okay.
24              So then we should talk about Mr. Doe's
25     request to get a copy of the insurance policy.  I
```

```
 1    understand why Mr. Doe wants it.  I understand that
 2    it's required.
 3            I guess I'd want to understand Columbia's
 4    position about why it shouldn't be obligated to
 5    provide that information.
 6            MS. PETERSON:  Thank you, your Honor.
 7            And we've discussed this a bit with
 8    plaintiff.  The most important piece here, from our
 9    perspective, is that the insurance policy is a
10    sensitive business document for the university, and
11    we think it would be commonplace and appropriate to
12    wait until there is a protective order in place to
13    produce anything.  We are --
14            THE COURT:  Okay, so now that you're going
15    to have a protective order in place shortly, is that
16    something that you intend to provide?
17            MS. PETERSON:  Yes.  We would agree to
18    provide this to plaintiff once a protective order is
19    in place.
20            THE COURT:  Okay.
21            Is there anything else, then, Mr. Doe?
22            MR. DOE:  Well, there's a couple more
23    issues with that.  And as I've stated in my letter,
24    I -- as I stated in my letter, if Columbia is going
25    to provide it to me, I believe that it needs to be
```

```
 1    provided, you know, in compliance with Rule 26.
 2            Columbia contends that -- or Columbia's
 3    position is, is that I would need to make an
 4    official request for these documents.
 5            THE COURT:  Okay.  But now they've said
 6    that you don't need to make an official request.
 7    They've said, once the protective order's in place,
 8    they're going to provide it.
 9            MR. DOE:  Yeah.  Okay.
10            THE COURT:  That's not unreasonable, right?
11            MR. DOE:  No, it's not unreasonable.  I
12    just want to make sure that they said they will
13    provide it, but they didn't say that they would --
14    you know, that they would extinguish their
15    requirement that I make an official request and that
16    it be at a mutually agreeable time and place.  I
17    have no idea what that means.
18            What does that mean?
19            THE COURT:  Ms. Peterson, are you going to
20    provide him a copy with the document --
21            MS. PETERSON:  Yes, we will provide --
22            THE COURT:  -- without him having to do
23    anything more?
24            MS. PETERSON:  Correct.  We'll provide
25    plaintiff a copy once the protective order is
```

1    placed.

2              THE COURT:  Okay.

3              Is there anything else?

4              MR. DOE:  I think that's all I have, your

5    Honor.

6              THE COURT:  Anything from Columbia?

7              MS. PETERSON:  No, nothing from us.  Thank

8    you, your Honor.

9              THE COURT:  Thanks very much, everyone.

10   Have a good weekend.

11

12                         0o0

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        C E R T I F I C A T E

4

5         I, Adrienne M. Mignano, certify that the

6    foregoing transcript of proceedings in the case of

7    Doe v. Columbia University; Docket #25CV2132 was

8    prepared using digital transcription software and is

9    a true and accurate record of the proceedings.

10

11

12   Signature   ___*Adrienne M. Mignano*___

13                  ADRIENNE M. MIGNANO, RPR

14

15   Date:       July 21, 2025

16

17

18

19

20

21

22

23

24

25