UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | |
| v. | |
| COLUMBIA UNIVERSITY, | |
| Defendant. | |

25 Civ. 2132 (DEH) (RFT)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff John Doe ("Plaintiff" or "Doe") sues Defendant Columbia University ("Columbia" or "the University") for its handling of a sexual misconduct complaint brought against him by Jane Roe, a female peer.[1] Doe claims that Columbia's disciplinary proceedings—which resulted in a determination that he was responsible for sexual misconduct and the imposition of sanctions including a three-semester suspension and loss of his full-tuition scholarship—unlawfully discriminated against him based on gender, disability, and race.

John Doe, who appears *pro se*, brings five claims against Columbia University: (1) erroneous outcome to a disciplinary proceeding in violation of Title IX, (2) selective enforcement in violation of Title IX, (3) failure to provide reasonable accommodations in violation of the Americans with Disabilities Act ("ADA"), (4) violation of Title VI of the Civil Rights Act of 1964, and (5) violation of the New York City Human Rights Law ("NYCHRL").

Before the Court is Columbia's Rule 12(b)(6) Motion to Dismiss. For the reasons discussed below, Columbia's Motion is **GRANTED** as to all claims.

---

[1] This case is referred to Magistrate Judge Tarnofsky for General Pretrial case management. The case was formerly referred to Magistrate Judge Ricardo, who entered an Order permitting John Doe, complainant Jane Roe, and non-party student witness Mack Roe to proceed pseudonymously in this case. Order granting Letter Motion to Seal, ECF No. 19.

## BACKGROUND

The following background facts relevant to the Court's decision are taken from Doe's Complaint, which the Court presumes are true for purposes of adjudicating Columbia's Motion to Dismiss. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court also takes judicial notice of Columbia's operative Gender-Based Misconduct and Interim Title IX Policies and Procedures, incorporated as an Exhibit to an attorney declaration in support of Columbia's Motion to Dismiss. Decl. of Anna Collins Peterson in Support of Motion to Dismiss, Ex. 1 ("GBM Policies"), ECF No. 42-1; *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 467 (S.D.N.Y. 2021) ("Columbia's Gender-Based Misconduct Policy and Procedures are integral to the Amended Complaint because they are written instruments and Plaintiff relies heavily on their terms and effects.").

### A.    John Doe's Allegations

#### 1.    Events giving rise to Jane Roe's Complaint

On the evening of April 23, 2022, John Doe attended a party hosted at Jane Roe's apartment. Compl. ¶ 158, ECF No. 1. Multiple guests attended the party, including John Doe, Jane Roe, and Mack Roe. *Id.* ¶¶ 158-61. "Mack Roe and Jane Roe were exploring [a mutual] romantic interest around this time . . . ." *Id.* ¶ 162-63, 168.

Jane Roe had continuous possession of her cell phone throughout the evening, except for a brief interval when Doe assisted her with cleaning the phone's charging port. *Id.* ¶¶ 169-78. As the party progressed, Jane Roe began making unwanted comments, including persistent requests that Doe take sexual photographs of her. *Id.* ¶¶ 185-89, 193-95. He did not agree to the requests, instead proposing a professional photoshoot with one of Jane Roe's friends present at some point in the future. *Id.* ¶¶ 196-97.

2

At around 12:45 a.m., Doe notified Jane Roe of his desire to leave the party. *Id.* ¶¶ 206-07. Jane Roe offered to purchase a rideshare service to transport him home, and he accepted her offer. *Id.* ¶ 209.

Doe alleges that around 1:00 a.m., multiple guests, including Mack Roe left the apartment. *Id.* ¶¶ 217-18. He alleges that some time thereafter without any prompting, Jane Roe texted him nude photographs and a video of herself. *Id.* ¶ 221. He alleges that Jane Roe then made comments that could be interpreted as an attempt to initiate a sexual encounter, which he declined. *Id.* ¶¶ 224-25. Afterward, he alleges that Jane Roe insisted he keep the fact she had sent him nude pictures and video secret from Mack Roe. *Id.* ¶ 226-30. Doe agreed. *Id.* ¶ 231.

At around 1:30 a.m., Doe asked Jane Roe about the status of his rideshare, but she stated that her rideshare application was not working properly. *Id.* ¶ 235. Doe then screen-recorded the text message conversation between himself and Jane Roe. *Id.* ¶ 237. This upset Jane Roe, who insisted Doe give her his cell phone. *Id.* ¶¶ 238-41.

At around 2:10 a.m., Jane Roe called Mack Roe and claimed that Doe had accessed her cell phone to send nude photographs and video of her to himself, without Jane Roe's consent. *Id.* ¶ 242. Mack Roe "secretly recorded" this conversation. *Id.* ¶ 243. Doe alleges that at some point, Mack Roe called Doe, *id.* ¶ 244, though he also appears to allege that Jane Roe simultaneously retained possession of Doe's cell phone and deleted the screen recording he had made memorializing their text conversation. *Id.* Jane Roe then repeated her claim that Doe had sent himself the nude photographs and video from her phone, and instructed Doe to leave her apartment. *Id.* ¶¶ 245-48.

Doe alleges that he then "falsely disclosed to Mack Roe that he had sent himself pictures from Jane Roe." *Id.* ¶ 251. He alleges that he repeated Jane Roe's false narrative because he feared her retribution. *Id.* Mack Roe called him at 2:54 a.m. asking to know the truth of what

happened, and Doe then gave him an account of events consistent with the facts alleged in the complaint. *Id.* ¶ 254.

Mack Roe then insisted that Doe text Jane Roe an apology, which he eventually did. *Id.* ¶¶ 264-70. Jane Roe also demanded he create a handwritten apology letter. *Id.* ¶ 290. Mack Roe told Doe that would not "stand a chance" if Jane Roe filed a complaint against him because of his identity as a Black man. *Id.* ¶¶ 295-96. Doe complied with the demand to send a handwritten apology letter. *Id.* ¶ 303. Doe also alleges that he reported to the University that "he was being racially coerced and harassed by Mack Roe," but that his reports were "ignored." *Id.* ¶¶ 297-98.

### 2.    Columbia's Investigation

On April 26, 2022, Jane Roe initiated a report against John Doe through Columbia's Gender-Based Misconduct Office, Title IX Office, and Student Conduct Office. *Id.* ¶¶ 310-11. Doe received notice of Jane Roe's allegations on May 5. *Id.* ¶ 335.

The University conducted an interview with Jane Roe on June 23, *id.* ¶ 339, and assigned Jamie Kleidman as the Title IX investigator for Jane Roe's case. *Id.* ¶ 340-41. Kleidman interviewed five eyewitnesses from Jane Roe's party, including Mack Roe. *Id.* ¶ 351. Doe alleges that the eyewitness interviews did not corroborate Jane Roe's account of events. *Id.* ¶¶ 353-63. He claims that Kleidman "mischaracterized and misconstrued" each statement to align with Jane Roe's account. *Id.* ¶ 364. Doe alleges that eyewitness interviews "fully exculpated" him, but that Kleidman deliberately omitted these portions of the interviews. *Id.* ¶¶ 365-67.

During Mack Roe's interview with Kleidman, Mack Roe disclosed the existence of the secret recording of the phone call between himself, Doe, and Jane Roe and eventually played the recording to Kleidman. *Id.* ¶¶ 407, 410. The version of the recording that Mack Roe played for Kleidman was incomplete and selectively edited. *Id.* ¶¶ 411-12. Mack Roe initially refused to share the recording file with the investigators and later met with Kleidman and Colleen Walsh,

Senior Director of Title IX Investigations, for a second interview about the recording. *Id.* ¶¶ 421-22. Doe alleges that Mack Roe notified him about the recordings in September 2022 and admitted to editing them. *Id.* ¶¶ 486-90. Doe alleges that Mack Roe had "falsified the recordings," and that "he was concerned that his falsification of the recordings and tampering of evidence would be revealed to Columbia." *Id.* ¶¶ 491-92. "Mack Roe informed Joe Doe that he was giving John Doe the opportunity to comply with the demands that Jane Roe made of him," and "that if complied with Jane Roe's demands, he would provide the entire recordings to Columbia, including the edited parts which would be 'helpful' to John Doe. *Id.* ¶¶ 498-500. At some point thereafter, Mack Roe eventually negotiated being assigned an attorney advisor in exchange for providing the recordings to the investigation. *Id.* ¶¶ 510, 518.

Columbia conducted multiple interviews with John Doe. The first was an interview on August 10, 2022. *Id.* ¶ 458. Kleidman denied Doe's request to attend the conference virtually from his home. *Id.* ¶ 459. Kleidman required Doe's attorney advisor to confiscate Doe's electronic devices prior to each investigative meeting. *Id.* ¶ 466. These restrictions were not imposed on Jane Roe during the investigative process. *Id.* ¶¶ 460, 462, 467. During his first interview he provided an account of events consistent with those alleged in the Complaint and maintained his position that Jane Roe's account was false. *Id.* ¶ 476.

Kleidman conducted a follow-up interview with Doe on November 1, 2022, following Mack Roe's disclosure of the recorded conversations between himself, Doe, and Jane Roe. *Id.* ¶¶ 521-22. Doe alleges he was afforded no opportunity to review the recordings prior to the meeting. *Id.* ¶¶ 527-28. He alleges that Kleidman engaged Doe in a "hostile" series of questions about the recording. *Id.* ¶¶ 529-32. He alleges that the questioning was so hostile that his attorney advisor was forced to end the interview "minutes" after it began. *Id.* ¶ 537.

Kleidman conducted another follow-up interview with Doe on January 5, 2023. *Id.* ¶ 565. During that interview, Doe alleged that Mack Roe's recordings were incomplete, edited, and falsified. *Id.* ¶¶ 566-71. He also expressed his desire to pursue a retaliation and falsification complaint against Mack Roe, including because of allegations that Mack Roe had engaged Doe in a physical confrontation on December 20, 2022. *Id.* ¶¶ 538, 552, 574.

Doe filed his retaliation complaint against Jane Doe and Mack Roe and met with Kleidman and Walsh about the complaint on February 8, 2023. *Id.* ¶ 575. He alleges that Kleidman and Walsh did not take his complaint seriously. *Id.* ¶ 593. Mack Roe later submitted a complaint of retaliation against John Doe. *Id.* ¶ 604.

Doe reached out to disability services at Columbia University to request disability accommodations in his upcoming Gender-Based Misconduct proceeding. *Id.* ¶ 606. A Title IX Officer contacted an administrator at Columbia University's office of disability services and notified them of the pendency of gender-based misconduct proceedings against Doe. *Id.* ¶¶ 608-12. The disability services office subsequently denied Doe's request for accommodations, a decision that Doe alleges was "due to the objections of Columbia's Gender-Based misconduct office." *Id.* ¶ 616.

Kleidman provided the Factual Summary and Evidence File from the investigation to Doe on June 5, 2023. *Id.* ¶ 618. Doe alleges that the Factual Summary was biased and omitted information that corroborated his narrative of events. *Id.* ¶¶ 619-32. Doe formally responded to the Factual Summary on August 7, 2023, raising his arguments of bias and selective omission. *Id.* ¶¶ 636-51. Doe also raised the same arguments during an August 23, 2023 Pre-Determination Conference with Kleidman. *Id.* ¶¶ 652-68.

### 3.   Proceedings against John Doe

Prior to John Doe's hearing, Kleidman and Walsh met with him to discuss the Title IX investigation's "Findings and Analysis" and "Recommended Findings of Responsibility."  *Id.* ¶ 669.  Kleidman informed Doe that she would be recommending he be found responsible for sexual exploitation and two counts of retaliation against Mack Roe.  *Id.* ¶ 671.  She informed Doe that she would be recommending Jane Roe and Mack Roe be found not responsible on any count of retaliation against John Doe.  *Id.* ¶¶ 672-73.  Doe alleges that during that meeting, in response to his inquiry of his rights under Title IX, Kleidman told Doe that he "had no rights under Title IX."  *Id.* ¶¶ 678-79.  John Doe submitted an objection to Kleidman's final report on December 12, 2023 contesting the report's conclusions.  *Id.* ¶ 781.

John Doe's hearing took place on March 21, 2023.  *Id.* ¶ 789.  His 3-member hearing panel consisted of Assistant Dean of Student Support Herbert Hugh, Director of Student Wellness Stephanie King, and Meaghan Borys, an outside attorney who Columbia retained to chair the hearing.  *Id.* ¶ 791.  Mack Roe participated in the hearing, which Doe characterizes as a "procedural irregularity" because, Doe alleges, Mack Roe was merely a witness to Jane Roe's complaint.  *Id.* ¶¶ 792-94.  Doe also alleges that the panel improperly permitted Jane Roe to present "new, and previously undisclosed evidence" and allowed Jane Roe to respond to five minutes of questioning privately, without Doe or his attorney advisor's access to her responses.  *Id.* ¶¶ 801, 803.  Doe alleges that "[d]uring Jane Roe's questioning, the Hearing Chair asked [her] leading as well as asked and answered questions," *id.* ¶ 804, although he also alleges that "[t]he Panel had no questions for Jane Roe."  *Id.* ¶ 806.

In a conclusion that Doe describes as "pro-female" and "sex-biased," the hearing panel found him responsible for sexual exploitation.  *Id.* ¶ 816.  Dean James Colgrove issued a sanction letter on April 11, 2024 that, among other disciplinary measures, suspended Doe for three

semesters. *Id.* ¶¶ 818-28. Doe appealed on April 18, 2024. *Id.* ¶ 858. The appellate panel denied his appeal on June 5, 2024. *Id.* ¶ 901. Doe alleges that one member of the appellate panel was biased because he was a Dean of Jane Roe's school and had previously discussed Jane Roe's complaint with her. *Id.* ¶¶ 842-52. Doe argues that another member of the appellate panel was unqualified because he is the Dean of a graduate level school, whereas Doe is an undergraduate. *Id.* ¶¶ 853-857. On June 10, 2024, a coordinator with the Title IX Office notified him that he was restricted from employment with Columbia during his suspension period. *Id.* ¶ 916. On August 15, 2024, Doe's scholarship committee notified him that it would be terminating his full tuition scholarship due to the misconduct findings and sanctions. *Id.* ¶¶ 920-24.

## LEGAL STANDARD

Columbia University brings its Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 230 (E.D.N.Y. 2013) ("Although this Court must accept the factual allegations set forth in Plaintiffs' complaint as true, threadbare recitals and conclusory statements unsupported by specific

---

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

facts are not entitled to such credence"). Further, "[w]here plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10 Civ. 1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011).

John Doe brings his claims *pro se*, and the Court accordingly interprets his complaint liberally to raise the "strongest [claims] that they *suggest.*" *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Even so, the Court must dismiss a complaint that does not plead sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To state a claim, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. In other words, "the Court's duty to liberally construe a [*pro se*] plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 8934, 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016). If a *pro se* plaintiff has not pled sufficient facts to state a claim that is plausible on its face, the Court must dismiss his complaint. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

**DISCUSSION**

**I.      Doe's Title IX Claims**

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). It is well established that "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). "Claims that challenge university disciplinary proceedings under Title IX generally fall within two categories: 'erroneous outcome' or 'selective enforcement' claims."

*B.B. v. New Sch.*, No. 17 Civ. 8347, 2018 WL 2316342, at \*4 (S.D.N.Y. Apr. 30, 2018) (quoting *Yusuf*, 35 F.3d at 715). "[I]n neither case do wholly conclusory allegations suffice for purposes of Rule 12(b)(6)." *Yusuf*, 35 F.3d at 715.

The Second Circuit has held that the familiar burden shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to gender discrimination claims brought under Title IX. *Doe v. Columbia Univ.*, 831 F.3d 46, 53-54 (2d Cir. 2016). The Circuit has further explained that "a complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent . . . if it pleads specific facts that support a minimal plausible inference of such discrimination." *Id.* at 56.

Doe has asserted both an erroneous outcome and a selective enforcement claim. The Court considers each in turn.

### A.    Doe's Erroneous Outcome Claim

A plaintiff bringing an erroneous outcome claim under Title IX "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceedings. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail." *Yusuf*, 35 F.3d at 715. But it is not enough to allege facts calling into question the outcome of the disciplinary proceeding, or even that the university ultimately got it wrong. Nor are procedural errors, by themselves, sufficient to state a claim. "[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.* Rather, a plaintiff bringing a Title IX erroneous outcome claim must allege that the outcome of the disciplinary proceedings was erroneous *because* of sex-based bias, by pleading "specific facts that support a minimal plausible inference of . . . discrimination." *Doe*, 831 F.3d at 56. In

10

other words, a plaintiff must show a causal connection between the allegedly erroneous disciplinary outcome and his sex.

For example, in a case decided in 2016 involving similar allegations of gender discrimination made by a student disciplined by Columbia for alleged sexual misconduct, the Second Circuit held that a plaintiff had established this element through allegations of (1) contemporaneous political pressure on the University to pursue complaints of female students who alleged sexual assault by male students, and (2) procedural irregularities in the plaintiff's disciplinary proceedings. *Id.* at 56-57. The Second Circuit held that these allegations were sufficient to establish the causation element of a Title IX claim because, viewing various procedural irregularities in the plaintiff's sexual misconduct proceedings against a "factual background" of political pressure—including "substantial criticism" of Columbia for "not taking seriously complaints of female students alleging sexual assault by male students"—it was "entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Id.* at 57.[3]

Here, with respect to the first factor, contemporaneous political pressure, Plaintiff alleges that, as in the 2016 *Doe* decision, Columbia faced significant pressure from stakeholders to investigate accusations of sexual misconduct, from which it is possible to infer a motive to favor the female accuser over the male accused in his own case. The Court does not address this point

---

[3] *Doe* is not entirely clear on this point, but the Court concludes that the presence of *both* contemporaneous political pressure and procedural irregularities were essential to the Second Circuit's decision in that case. Otherwise, the mere existence of robust political conversation around the issue of sexual assault, and criticism of Columbia for its handling of the issue, would be enough to render suspect any university decision adverse to a male accused—and *Doe* does not seem to compel that inference.

fulsomely, other than to note that the allegations of political pressure in this case are arguably

distinguishable from those in the 2016 *Doe* litigation,[4] because, as explained below, the Court

---

[4] The plaintiff in the 2016 *Doe* decision alleged that, "having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Columbia was motivated in this instance to accept the [female student complainant]'s accusation of sexual assault and reject the [male student]'s claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students." *Doe*, 831 F.3d at 57-58; *see also Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 n.7 (S.D.N.Y. 2015) ("[T]he Complaint alleges that the disciplinary process against Plaintiff took place *during a time* when Columbia was 'under fire' for its handling of sexual assault complaints, culminating in the filing, by twenty-three students from Columbia and Barnard College, of complaints with the United States Department of Education . . . that Columbia's handling of sexual assault and sexual misconduct on campus violated Title IX and other laws.") (emphasis added). Thus, in that case, the Title IX proceedings at issue coincided in time with a concerted campaign and attendant media coverage around Columbia University's purportedly inadequate approach to sexual assault allegations. *See Doe*, 831 F.3d at 57-58.

Here, however, the allegations of purported political pressure on Columbia to favor accusers are somewhat different. As an initial matter, many concern events that were not specific to Columbia and which occurred much earlier in time than the events underlying the Complaint. For example, Plaintiff cites a 2011 Department of Education ("DOE") letter to postsecondary institutions generally, and a 2014 DOE Office of Civil Rights Guidance document. *See* Compl. ¶¶ 42-47. The events underlying the Complaint, however, occurred approximately a decade later, from 2022 to 2024. It is of course difficult to draw a bright line, and significant events can have long-lasting repercussions. But events that took place approximately a decade before those underlying the complaint, and that are largely about postsecondary institutions nationally rather than Columbia specifically, seem too attenuated to compel an inference of discriminatory motive here, at least without some allegations connecting them more directly them to Columbia and the time period in which the Plaintiff's disciplinary proceedings took place. *Cf. Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 276 (E.D.N.Y. 2013) ("Although there is no bright line rule regarding what length of time renders an allegedly discriminatory remark too attenuated to constitute evidence of discrimination, courts in this Circuit have generally found that a five month lapse between an allegedly discriminatory statement and an adverse employment action is too long a gap to find the remark probative of discrimination without some other evidence that the remark was related to the adverse employment action.") (citing cases). The 2016 *Doe* decision relied heavily on the fact that there was a high-profile *contemporaneous* pressure campaign *on Columbia* at the time of the events underlying the complaint in that case. And it did not suggest that those events would compel an inference of discriminatory motive in perpetuity against Columbia in its handling of sexual misconduct cases.

To be fair, the Complaint also alleges that Columbia faced "intense national media and federal scrutiny" in the early 2020s in the form of news reports and several settlements collectively totaling more than $200 million relating to Columbia's handling of sexual misconduct allegations against a doctor associated with the university. *See* Compl. ¶¶ 116-33. Plaintiff also points to

determines that Plaintiff's claim fails because he has failed to allege the sort of procedural irregularities that were present in the 2016 *Doe* litigation. That is, even assuming without deciding that Plaintiff has in fact alleged political pressure similar to that in the 2016 *Doe* decision, Plaintiff's erroneous outcome claim fails because he has not adequately alleged procedural irregularities in the handling of his disciplinary proceeding.

Turning to that prong now, the Second Circuit in its 2016 *Doe* decision determined that the plaintiff had adequately pleaded procedural irregularities by alleging that the plaintiff was never provided advice from counsel or informed of his right to do so. *Id.* at 50. Moreover, "[b]oth the investigator and the panel declined to seek out potential witnesses Plaintiff had identified as sources of information favorable to him. The investigator and the panel failed to act in accordance with University procedures designed to protect accused students," and consequently "reached conclusions that were incorrect and contrary to the weight of the evidence. . . ." *Doe*, 831 F.3d at 56-57. *See also Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 468 (S.D.N.Y. 2021) (holding that

---

2023 news reports covering allegations that a Columbia alumnus and former NFL star had sexually assaulted a fellow student approximately 30 years earlier. *See id.* at 134-35. But it is unclear to this Court if, for the purposes of Title IX pleading requirements, these sorts of news reports are analogous to the significant turmoil surrounding Columbia at the time of the allegations in the 2016 *Doe* decision.

Plaintiff also relies on the fact that Jane Roe's complaint coincided with Columbia's Sexual Assault Awareness Month, and immediately preceded a planned "Denim Day" to spread awareness about campus sexual misconduct. *See id.* at ¶¶ 147-48. But the mere existence of efforts to promote awareness about campus sexual assault, without more, does not lead to an inference that Columbia was under the kind of particularly intense pressure deemed probative of bias in favor of accusers in the 2016 *Doe* decision—otherwise any programming aimed at awareness of sexual misconduct would perversely become cause for suspicion against a university in its handling of allegations such misconduct. *Doe* does not compel such an inference.

In any event, the Court need not definitively opine on the sufficiency of Plaintiff's allegations that broader political context supports an inference of discriminatory motive here, because, as explained below, his claim does not adequately allege procedural irregularities that can sustain his erroneous outcome claim. It therefore fails on that independent basis.

a plaintiff adequately pleaded procedural irregularities where, among other things, he alleged the school had imposed an interim suspension on him without any prior notice or hearing).

None of these factors are present here. Indeed, according to Plaintiff's allegations, Columbia followed its internal procedures. First, it provided him with notice of Jane Roe's complaint. Compl. ¶ 335. Next, unlike in the 2016 *Doe* case, Columbia provided Plaintiff with an attorney advisor for his proceedings. *Id.* ¶ 461. He was afforded the opportunity to review and respond to the factual summary and evidence generated during the investigation, *id.* ¶ 618, as well as to the investigator's final report. *Id.* ¶ 685. He does not allege that Columbia refused to interview relevant witnesses, or that he was subject to interim discipline inappropriately, procedural irregularities that were cited in the cases described above. Plaintiff conclusorily asserts that "Columbia has been and is still in disagreement with" and "expressed dissatisfaction and distain [sic] for" rules established in 2017 by the Department of Education for Title IX proceedings at college and university campuses designed to protect the rights of those accused of misconduct. *Id.* ¶¶ 111, 114. But he does not allege any violations of those rules.

Plaintiff does make several assertions about Columbia's investigation and proceedings that he alleges were procedurally irregular. However, none amount to a violation of Columbia's GBM Policies, establish the sort of procedural irregularities cited by the Second Circuit in the 2016 *Doe* decision, or otherwise rise to the level of "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceedings." *See Doe*, 551 F. Supp. 3d at 465. For example,

- Plaintiff notes that he was required to conduct interviews at his attorney adviser's office and not permitted access to his electronic devices, while Jane Roe conducted her interview at home, *see* Compl. ¶¶ 459-60, but he does not identify anything procedurally irregular about those facts. As Columbia notes, there is nothing in its GBM Policies requiring that interviews be conducted under identical circumstances, and the procedures here "were entirely reasonable given that the relevant evidence included videos and a photograph of Jane Roe's naked body and

that Plaintiff was alleged to have distributed these Explicit Images, from one phone to another, without Jane Roe's consent." Def.'s. Mem. in Supp. of Mot. to Dismiss, ECF No. 41, at 17.

- Plaintiff states that he was denied a request for an extension of time while Jane Roe was granted one, *see* Compl. ¶¶ 774-80, but the GBM Policies permit such extensions for "good cause," *see* GBM Policies at 37—and here, Plaintiff acknowledges that Columbia's Title IX coordinator could not find good cause for his extension request based on the information he provided, *see* Compl. ¶ 778, and he does not argue that there was no such good cause for Jane Roe's request.

- Plaintiff also claims that it was a procedural defect to allow Mack Roe to participate in the hearing. Compl. ¶¶ 792-94. Based on Doe's allegations, however, Mack Roe was not merely a witness, but a *respondent* to the proceedings because Doe brought retaliation claims against Mack Roe. *Id.* ¶¶ 576, 604. Mack Roe therefore was permitted to be present. *See* GBM Policies at 46 ("The University may consolidate Title IX Formal Complaints against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one Party against the other Party, where the allegations arise out of the same facts or circumstances.").

- Plaintiff complains that he was not permitted to cross-examine adverse witnesses, *see* Compl. ¶ 805, but the GBM policies reserve that right exclusively for the Hearing Panel itself, *see* GBM Policies at 61.

- Plaintiff complains that the Hearing Chair inquired about his mental health, *see* Compl. ¶ 802, but the GBM Policies expressly permit such inquiry, *see* GBM Policies at 54.

- Plaintiff alleges that Jane Roe was permitted to present new evidence at the hearing, *see* Compl. ¶ 801, but fails to allege what this evidence was or how it may have prejudiced him.

- Plaintiff alleges that one of the members of the Appellate Panel had a "conflict of interest," because he previously discussed Jane Roe's complaint with her, *see* Compl. ¶ 843-47, but the GBM Policies define a conflict of interest in terms of a personal relationship with a party, *see* GBM Policies at 38, which is not at issue here.

- Plaintiff alleges that resolution of his proceedings was unreasonably delayed, *see* Compl. ¶ 989, but the GBM Policies do not guarantee resolution within a particular timeframe, *see* GBM Policies at 37.

- Plaintiff also argues that his sanction (primarily in the form of suspension for three semesters) was excessive, *see* Compl. ¶ 859, but it was within the bounds of Columbia's GBM Policies, *see* GBM Policies at 81, which Plaintiff does not dispute, *see* Compl. ¶ 1045 (acknowledging exposure to sanctions up to expulsion).

15

Plaintiff's remaining assertions (e.g., that "Columbia deliberately misconstrued or outright excluded witness statements," Pl.'s Opp'n to Mot. to Dismiss at 10, ECF No. 76; that Columbia "refused to correct known and identified factual errors," *id.*; and that he was found responsible "despite digital, testimonial, undisputed evidence to the contrary," *id.* at 14) are conclusory and wholly unsupported, and therefore cannot be a basis to sustain a claim.

Ultimately, Plaintiff alleges that the determinations that Jane Roe and Mack Roe were credible and that he was not credible were erroneous, *id.* ¶¶ 703-15, but this is a conclusory disagreement with *substantive* factual determinations, not an allegation of *procedural* irregularities, as Plaintiff does not identify any deviations from Columbia's GBM Policies, or from the 2017 DOE rules, in making these determinations. In any event, according to Doe's own allegations, Columbia did not rely exclusively on Jane Roe and Mack Roe's interviews in ultimately finding Doe responsible. Rather, it also considered various other evidence including Mack Roe's recording and Doe's own communications, including a handwritten letter, apologizing in a manner consistent with Jane Roe's account of events. *Id.* ¶¶ 290, 414. And perhaps more to the point, even if Columbia's conclusions were substantively incorrect, that alone is not sufficient for a Title IX erroneous outcome claim. A plaintiff must allege a causal connection between the allegedly erroneous outcome and his sex—and as explained above, Doe has failed to do so here.

In sum, because Plaintiff has failed to adequately plead facts about procedural irregularities along the lines of those identified by the Second Circuit in the 2016 *Doe* decision, his erroneous outcome claim must be dismissed. Columbia's Motion to Dismiss is therefore **GRANTED** as to this claim.

### B.    Doe's Selective Enforcement Claim

"In order to state a selective enforcement claim, a plaintiff must allege that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing

16

comparable disciplinary charges—differently and plead[] specific facts that support a minimal plausible inference of . . . discrimination." *Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 465 (S.D.N.Y. 2021) (internal quotations omitted).

Doe does not adequately allege that he and Jane Roe were similarly situated.  He asserts that they were both Columbia students subject to the same student conduct policies, and that they both "were reported to have committed sexual misconduct violations against each other," in reference to his allegations that she made unwanted sexual comments toward him during the party. Compl. ¶¶ 1023-24.  However, Doe faced a formal gender-based misconduct complaint made by Jane Roe, and two counts of retaliation by Jane Roe and Mack Roe; he does not allege that Jane Roe similarly faced a formal gender-based misconduct complaint from him.  This difference—i.e., that he was facing formal complaints from multiple students, while she was not—is material for purposes of his selective enforcement claim.  *See Doe*, 551 F. Supp. 3d at 471-72 (dismissing a plaintiff's Title IX selective enforcement claim) ("It makes sense that a school might respond differently in imposing interim measures on a student who is facing complaints from multiple students than a student who is facing a complaint from one student.  Such students are not facing 'similar disciplinary charges.' They are in materially different positions.").

Accordingly, Doe has failed to state a claim of selective enforcement.  Columbia's Motion to Dismiss is **GRANTED** as to the selective enforcement claim.

## II.    Doe's ADA Claim

Doe asserts a claim under the ADA based on the denial of accommodations for his gender-based misconduct hearing.  Compl. ¶¶ 1039-51.  To successfully bring a claim under the ADA, a plaintiff must sufficiently allege "(1) that []he is a qualified individual with a disability; (2) that the defendant[ is] subject to [the ADA]; and (3) that []he was denied the opportunity to participate in or benefit from [the] defendant['s] services, programs, or activities, or was otherwise

17

discriminated against by [the] defendant[], by reason of [his] disability." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015).

In order to sufficiently allege that they have a qualified disability, a plaintiff must demonstrate that they "(1) ha[ve] a physical or mental impairment that substantially limits [their] major life activities; (2) [they have] a record of such an impairment; or (3) [they are] regarded as having such an impairment." *Tew v. Town of Stony Point*, No. 22 Civ. 6148, 2023 WL 6146651, at \*8 (S.D.N.Y. Sep. 20, 2023).

Doe has not pled more than a conclusory allegation that he is a qualified individual with a disability within the meaning of the ADA. Compl. ¶ 1041. This bare allegation is insufficient to overcome Columbia's Motion to Dismiss. *Cf. Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019) (ADA claim properly dismissed where plaintiff asserted her short stature was a qualified disability, but failed to specifically allege how her stature necessitated accommodations).

Doe also has not alleged whether and how his disability necessitated accommodations for his misconduct hearing, and whether the accommodations he sought were reasonable. Compl. ¶¶ 1042-44. These deficiencies, too, are independently fatal to his ADA claim. *See Morey*, 794 F. App'x at 32.

Accordingly, Columbia's Motion to Dismiss is **GRANTED** as to Doe's ADA claim.

### III.    Doe's Title VI Claim

An educational institution may be liable for discrimination under Title VI "when it has been deliberately indifferent to teacher or peer harassment of a student." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664-65 (2d Cir. 2012) (internal quotations omitted). To assert a deliberate indifference claim, a plaintiff must allege "(1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Id.* at 665.

John Doe does not allege harassment that was sufficiently "severe, pervasive, and objectively offensive" to assert a claim of deliberate indifference. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650-51 (1999). Doe alleges that Mack Roe repeatedly told him "that as a 'black man' he 'did not stand a chance' in proceedings at Columbia" in an effort to pressure Doe to comply with Jane Roe's demands for an apology letter and other measures in the time following the alleged incident, but preceding Jane Roe's formal complaint. Compl. ¶ 1056. These allegations fall short of the severity and pervasiveness required to assert a deliberate indifference claim. *Compare Lachaab v. State Univ. of N.Y. Bd. of Trs.*, 715 F. App'x 73, 74 (2d Cir. 2018) (single incident of disparaging racial comments), *with Zeno*, 702 F.3d at 666-67 (three years of daily racial harassment, including highly offensive racial epithets).[5]

Accordingly, Columbia's Motion to Dismiss is **GRANTED** as to Doe's Title VI claim.

---

[5] It is also unclear to the Court whether Plaintiff has adequately alleged that Columbia had actual knowledge of ongoing harassment, or that it was deliberately indifferent to the alleged harassment. *See Zeno*, 702 F.3d at 668-71. After Mack Roe's comments, Doe alleges that he "reported to Columbia that he was being racially coerced and harassed by Mack Roe," Compl. ¶ 297, but that "Columbia ignored [his] complaint of racial coercion and harassment and refused to investigate John Doe's claims." *Id.* ¶ 298. But these allegations are somewhat vague, as Doe does not allege when or to whom at Columbia he reported his complaint. *Cf. DiStiso v. Cook*, 691 F.3d 226, 243-44 (2d Cir. 2012) (actual knowledge where parent of allegedly harassed student raised complaint with the student's teacher in person one week after specific incident where student was called a racial epithet). He also conclusorily alleges that "Columbia was repeatedly, willfully indifferent to [his] claims of racial harassment and [c]oercion." *Id.* ¶ 299. But he does not allege any facts about what Columbia did (or did not do) to substantiate that conclusion. *Cf. Zeno*, 702 F.3d at 668 (actual knowledge and deliberate indifference where multiple reports were made to a school district by the harassed student, faculty and staff at the school, a local advocacy organization, and law enforcement over a period of years). There are therefore no allegations to support the notion that Columbia's response was "clearly unreasonable in light of the known circumstances" such that it amounted to deliberate indifference. *See id.* at 666 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

## IV.    Doe's NYCHRL Claim

In light of the dismissal of Doe's federal claims, the Court declines to exercise supplemental jurisdiction over Doe's remaining state law claim.  In considering whether it is appropriate to exercise supplemental jurisdiction, courts weigh "judicial economy, convenience, fairness, and comity."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Generally, where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"  *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  This claim is therefore **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that the Motion to Dismiss filed by Defendant Columbia University is **GRANTED**.

With thirty (30) days of this Order, Plaintiff may file a motion seeking leave to file an amended complaint.  Any such motion shall be accompanied by a proposed First Amended Complaint (FAC), and a redline showing differences between the proposed FAC and the original Complaint.  The motion shall take the form of a letter brief not to exceed 5 single spaced pages explaining how the proposed FAC addresses the deficiencies identified in this Order.  If no such timely motion is filed, the Court will issue an order directing the Clerk of Court to close this case.

The Clerk of Court is respectfully requested to terminate ECF No. 40.

SO ORDERED.

Dated:  March 23, 2026

New York, New York

_____
DALE E. HO
United States District Judge