UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>          -against-<br><br>COLUMBIA UNIVERSITY,<br><br>                    Defendant. | |

25cv02132 (DEH) (RFT)

**ORDER**

**ROBYN F. TARNOFSKY, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is the application by non-party Jane Roe for reimbursement of reasonable expenses she incurred in complying with a subpoena issued by Plaintiff (ECF 191). For the reasons set forth below, the application is GRANTED IN PART and DENIED IN PART, with Plaintiff being ordered to pay Roe's counsel $7,155.88 in reasonable discovery vendor fees.

**I.**

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

As relevant here, on June 23, 2025, I issued an order allowing Plaintiff to serve a subpoena on Ms. Roe for production of "text messages, recordings, email messages, WhatsApp messages, and voice notes from April 23, 2022 until June 5, 2024 between Ms. Roe and Mr. Roe related to Plaintiff's disciplinary proceeding." (ECF 71, Order.) Ms. Roe's counsel accepted service of Plaintiff's subpoena on Ms. Roe on October 3, 2025; it sought documents and communications beyond what was contemplated by my June 23 order, including a log of calls between Ms. Roe and non-party Mack Roe. (*See* ECF 163, Pl. Letter at 7.) On February 27, 2026, I granted in part a letter-motion by Plaintiff for discovery (ECF 164), requiring Ms. Roe to

produce a log of all calls between Ms. Roe and Mr. Roe on days on which either of them was interviewed by Columbia. (*See* ECF 170, Order.)

Counsel for Ms. Roe offered Plaintiff the option of production of communications without metadata, she says at no cost and Plaintiff says for a "somewhat" lower cost than production in native format with metadata. (*See* ECF 204, Pl. Letter at 2.) Plaintiff says that counsel provided an estimated cost from her discovery vendor of $2,000 to $3,000 for producing all communications for the requested 25-month period. (*See id.*) Roe's counsel says that the estimate from her vendor was $3,000 for collection and an additional $2,000 for the production. (*See* ECF 191, Roe Letter-Mot. at 2.) Plaintiff opted for production with metadata. Roe's February 1, 2026 production consisted of 76 pages. (*See* ECF 204, Pl. Letter at 3.)

On March 23, 2026, Judge Dale E. Ho granted Columbia's motion to dismiss all Plaintiff's claims and provided Plaintiff 30 days to seek leave to file an amended complaint that addressed the deficiencies in the original complaint. (*See* ECF 188, Op. & Order.) The same day, I issued an order staying discovery until the filing of an amended complaint. (*See* ECF 189, Order.)

On April 1, 2026, counsel for Ms. Roe filed a letter-motion for a conference concerning reimbursement for Ms. Roe's $8,418.68 of discovery vendor costs accrued responding to Plaintiff's subpoena before discovery was stayed; Ms. Roe does not seek attorney fees in connection with her response to the subpoena. (*See* ECF 191, Roe Letter-Mot.) Plaintiff opposed the conference as premature, arguing that counsel had failed to meet and confer with him, that the production was incomplete, and that discovery is stayed. (*See* ECF 193, Pl. Letter.) I issued an order setting and then rescheduling a conference. (*See* ECF 192, Order; ECF 195, Order; ECF 199 Order.)

Plaintiff filed a motion for leave to file an amended complaint with a proposed amended complaint. (*See* ECF 202, Pl. Mot.; ECF 203, Proposed Am. Compl.)

On April 28, 2026, Plaintiff filed a letter responding more fully to Ms. Roe's arguments that she should be reimbursed for her discovery vendor costs. (*See* ECF 204, Pl. Letter.) I held a conference on May 6, 2026, during which I ordered Ms. Roe's counsel to submit the unredacted vendor bills for my in camera review. On May 6, 2026, Plaintiff filed a letter asking for permission to submit Roe's document production for my in camera review, on the theory that the reasonableness of the discovery vendor costs depends on the nature of the production. (*See* ECF 209, Pl. Letter.)

**II.**

**LEGAL STANDARD FOR AWARDING THIRD-PARTY DISCOVERY COSTS**

Under the Federal Rules of Civil Procedure, litigants issuing subpoenas "must take reasonable steps to avoid imposing undue burden or expense" on nonparties. Fed. R. Civ. P. 45(d)(1).[1] A court ordering a nonparty to comply with a subpoena "must protect [the nonparty] . . . from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). However, the responding party's right to such protection "does not mean that the requesting party necessarily must bear the entire cost of compliance." *Nike, Inc. v. Wu*, No. 13-CV-8012 (CM), 2020 WL 257475, at *11 (S.D.N.Y. Jan. 17, 2020) (quoting *In re Honeywell Intern., Inc. Sec. Litig.*, 230 F.R.D. 293, 302-3 (S.D.N.Y. 2003)), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021).

---

[1]     Unless otherwise indicated, this order omits internal quotation marks, citations, and alterations from quoted text.

Rule 45 provides for compensation for "reasonable expenses" only. *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, No. 09-CV-3855 (AYS), 2018 WL 1701944, at *4 (E.D.N.Y. Mar. 31, 2018) (quoting *G&E Real Est. v. Avison Young-Wash., D.C., LLC*, 317 F.R.D. 313, 316 (D.D.C. 2016)). "The determination of reasonableness is committed to the sound discretion of the trial court," *Sands Harbor Marina,* 2018 WL 1701944, at *4; the non-party bears the burden of showing that her costs were reasonable. *In re Aggrenox Antitrust Litig.*, No. 14-MD-2516, 2017 WL 4679228, at *2 (D. Conn. Oct. 18, 2017). Overpriced services, or services that are unnecessary for complying with the subpoena "do not count as expenses." *Id.* at 10.

Even if the respondent's fees and expenses are reasonable, courts typically consider three factors in assessing the equity of cost-shifting: "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance." *Honeywell*, 230 F.R.D. at 303. Other equitable considerations may also be relevant. For example, a non-party may be required to bear some of its expenses on the basis of "the [non-party's] degree of good faith" in responding to the subpoena. *Aggrenox*, 2017 WL 4679228, at *11.

### III.

### ANALYSIS

Roe argues that Plaintiff should be required to reimburse her for $8,418.68 in discovery vendor costs for two reasons – that the costs are reasonable, particularly since she is seeking vendor costs only and not attorneys' fees, and that courts frequently require parties to reimburse third parties' reasonable costs in responding to subpoenas. (*See* ECF 191, Roe Letter-

4

Mot. at 4 (citing cases).) Roe argues that Plaintiff's contention that her motion is premature because she has not yet completed her production (*see* ECF 204, Pl. Letter at 1) is misguided, in that the agreement between Plaintiff and Roe was that he must raise any disputes about costs of production within 30 days of any production; payment of the costs is due within 90 days of Roe's completion of her production. (*See* ECF 191, Roe Letter-Mot. at 4*.*) Roe argues that because Plaintiff must raise any issues with the cost of her February 1, 2026 production now, and because Defendant's motion to dismiss has been granted and discovery had been stayed, it makes sense for the Court to adjudicate the dispute about his reimbursement obligation now. (*See id.*)

Plaintiff counters that Roe's 76-page production omits a significant number of communications falling within the scope of my June 23, 2025 order and that Roe's counsel neglected to log the withheld documents, even though she had agreed to do so. (*See* ECF 204, Pl. Letter at 3.) Plaintiff bases his conclusion that the production was incomplete based on the "pattern of Jane Roe's communications with Mack Roe."  (*Id.* at 3 n.4.) Plaintiff expresses surprise that the cost of this production was "more than triple" the estimate he recalls, which he says was for "full production of native file documents with metadata." (*Id.* at 4.) Plaintiff complains that the invoices reflect billing by 14 individuals at exorbitant rates and include billing by different people for overlapping tasks or tasks for which he should not be charged. (*See id.* at 7.) Plaintiff also objects to tasks carried out by the vendor at the request of Roe's counsel, concluding that the costs were driven "entirely by [counsel's] preferences and directives, not by any legitimate requirement of the subpoena itself." (*Id.* at 8.)

A.      **Timing of the Motion**

Plaintiff's argument that Roe's motion is premature because Roe has not yet completed her production (*see* ECF 204, Pl. Letter at 8-9) misses the mark. Plaintiff's agreement with Roe requires Plaintiff to raise any cost concerns within 30 days of the associated production. (*See* ECF 191, Ex. 6, Nov. 2025 Correspondence at 1.) That obligation is distinct from his obligation to reimburse Roe, which is to take place 90 days after she completes her production. (*See id*.) Even absent the agreement, resolving any complaints Plaintiff has as to the costs of production close in time to the production to which the complaints relate is more efficient than waiting until all productions are complete; this approach prevents confusion over which complaints relate to which production installment.

B.      **Reasonableness of the Discovery Costs**

Plaintiff's contention $8,418.68 in discovery costs for a 76-page production is grossly unreasonable (*see* ECF 204, Pl. Letter at 12-13) misapprehends the typical costs charged by discovery vendors. In my experience, the hourly rates charged by Roe's vendor are fairly typical. Plaintiff's comparison of those rates to rates for general paralegal (*see id*. at 10) is inapposite, because discovery vendors' employees have specialized expertise in electronic discovery, which general paralegals do not.

Plaintiff's argument that it is inconceivable that the cost of producing 76 pages is more than the projected cost of producing all communications within a particular period also misunderstands how discovery works: production of all documents will almost always be less expensive than producing a subset, which requires the documents to be searched and reviewed – a process that takes time and therefore has associated costs.

Plaintiff's argument that the cost per page of production is excessive based on prior decisions by this Court fails to consider that each electronic production is different; if a collection yields a large proportion of responsive documents, the cost per produced document will be lower than the cost per produced document if that collection yielded few responsive documents. Plaintiff's complaint about the number of responsive documents does not make the cost of producing those documents unreasonable. And because discovery is stayed, this is not the appropriate time for Plaintiff to challenge the sufficiency of Roe's production. It is for that reason that I am declining at this time to review Roe's production in camera.

That the actual costs of production turned out to be higher than the estimate is not, in my experience, unusual. While Plaintiff faults Roe's counsel for not letting him know that the costs were higher than anticipated, it is not clear that he expressly asked for cost updates. Plaintiff said at the most recent conference that he requested such updates, but his description of what he told Roe's counsel – that she should keep him updated and not do "anything stupid" – was at best ambiguous.

As to Plaintiff's complaint that the invoices reflect billing by 14 individuals for overlapping tasks, it is my experience that vendors frequently staff small projects such as Roes' production with people pulled in when they can be spared from large projects, which can lead to many individuals each doing a small amount of work on a project and which can lead to some duplication of effort. To avoid requiring Plaintiff to pay for this staffing choice, the vendor's reasonable costs should be reduced by 15%, from $8,418.68 to $7,155.88.

And Plaintiff's complaint that Roe's counsel directed the discovery vendor's work, resulting in costs driven by her preferences rather than the nature of the subpoena, is also

unwarranted. A discovery vendor needs guidance from the lawyer who retained him to produce documents, and so it is typical and unsurprising that Roe's lawyer was instructing the vendor. I have reviewed the unredacted bills, and the directions provided by Ms. Roe's counsel did not appear to be unwarranted or to generate excessive costs.

**C.      The Equities of Cost Shifting**

As to the first factor in determining whether shifting costs is appropriate, whether the non-party has an interest in the case, Plaintiff argues that Ms. Roe was not a disinterested bystander to the litigation, given her involvement in the conduct underlying the litigation. (*See* ECF 204, Pl. Letter at 1, 14.) I agree that Ms. Roe has some interest in the outcome of the case. However, her interest is indirect, in that there is unlikely to be any tangible impact on her no matter what the outcome of this case. Accordingly, her interest in the case is limited. This factor narrowly disfavors cost shifting.

As to the second factor – relative ability to pay – Ms. Roe has not suggested that paying the costs of complying with the subpoena would present a hardship. This factor disfavors cost shifting.

The third factor, whether the case implicates the public interest, favors cost shifting when the litigation involves a purely private dispute. *See Nike,* 2020 WL 257475, at *14 (citing *US Bank Nat. Ass'n v. PHL Variable Ins. Co.,* No. 12-CV-6811 (CM) (JCF), 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012)); *see also In re Lane*, No. 22-MC-0034 (LGS), 2023 WL 2966647, at *2 (S.D.N.Y. Apr. 17, 2023) (finding that the third factor counseled in favor of cost-shifting where the litigation was not of public importance and the opposing party did not argue otherwise); *Swanson v. Interface Inc.*, No. 20-CV-5518 (BMC) (RER), 2023 WL 2561732, at *1 (E.D.N.Y. Mar.

17, 2023) (finding that the lack of public importance of the litigation weighed in favor of cost-shifting). Such is the case here.

Also favoring cost shifting is that that production was timely, and my in camera review of the discovery vendor's unredacted bills leads me to conclude that the work requests made by Ms. Roe's counsel were reasonable. There is no indication that Ms. Roe's compliance with the subpoena was not carried out in good faith. *See Aggrenox*, 2017 WL 4679228, at *11 (declining to award additional costs where the movant "was notably intransigent and dilatory in its response to the subpoena, taking a full year and necessitating three interventions by the court to complete a review" of the requested documents); *Nike,* 2020 WL 257475, at *15 (denying cost shifting where the movants refused to cooperate with subpoenas in a timely fashion, refused to mitigate costs of compliance, and engaged in "scored earth tactics and hardball litigation strategy").

By contrast, Plaintiff's discovery demands of Ms. Roe requested information, such as metadata for all documents produced, without balancing the value of the information against the costs of production. For example, Plaintiff could have accepted Ms. Roe's counsel's offer to produce documents in PDF format, at least in the first instance, and could have later sought metadata for specific documents that supported his theory of his case.

I cautioned Plaintiff at the beginning of discovery that he would be responsible for the costs of third-party productions, urging him to consider the costs when he made his discovery requests of third parties. His attitude throughout the case was that he would seek broad discovery no matter what the cost, because he saw his requests as vital to litigating his case. I understand that he may feel different now, when faced with a bill of over $8400, particularly in

light of the grant of the motion to dismiss the operative complaint and the limited number of responsive documents produced by Ms. Roe. He blames Ms. Roe's counsel for failing to tell him that the costs of production were higher than the vendor's original expert, but if getting billing updates had been important to him, he could have requested such updates from Ms. Roe's counsel.[2] His current profession of outrage at the cost of Ms. Roe's production is in tension with his approach to discovery, which suggested that minimizing costs was not his priority.

Considering the three commonly considered equitable factors along with other equitable factors, I conclude that the equities favor cost shifting.

## CONCLUSION

For the reasons set forth above, non-party Roe's application for reimbursement of $8,418.68 in discovery vendor fees incurred in responding to Plaintiff's subpoena (ECF 191) is **GRANTED IN PART** and **DENIED IN PART**, in that Plaintiff is **ORDERED** to pay counsel for Ms. Roe **$7,155.88** to reimburse her reasonable discovery fees incurred in connection with responding to Plaintiff's subpoena.

DATED:  May 13, 2026
        New York, New York

So Ordered.

**ROBYN F. TARNOFSKY**
United States Magistrate Judge

---

[2]     Plaintiff said at the most recent conference that he did ask for updates on the costs of discovery, but his description of what he said – that counsel should keep him updated and not do "anything stupid" – is at best ambiguous.