UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br>Plaintiff,<br>-against-<br>COLUMBIA UNIVERSITY,<br>Defendant. | 25-CV-2132 (DEH) (RFT)<br><br>**CORRECTED[1] OPINION and ORDER & REPORT and RECOMMENDATION** |

**TO THE HONORABLE DALE E. HO, United States District Judge:**

Pending before the Court are (1) Plaintiff's motion for leave to file an amended complaint (the "Motion To Amend") (ECF 202); (2) Defendant's motion to seal two exhibits submitted with its opposition to the Motion To Amend (the "Motion To Seal") (ECF 217); and (3) Plaintiff's motion to exclude from the Court's consideration the two exhibits filed with Defendant's opposition to Plaintiff's Motion To Amend (the "Motion To Exclude") (ECF 220). For the reasons set forth below, Defendant's Motion To Seal is **GRANTED**; Plaintiff's Motion To Exclude is **DENIED**; and I respectfully recommend that the Motion To Amend be **DENIED**.[2]

---

1 The only substantive change to the original opinion and order and report and recommendation (ECF 240) is the correction of the duration of the extension Defendant granted Plaintiff to respond to Defendant's factual summary during the disciplinary proceedings, as reflected in email correspondence between Defendant and Plaintiff: the original opinion and order and report and recommendation stated that the email correspondence reflected that Plaintiff was given a 45-day extension to respond followed by an additional 11-day extension (*see* ECF 240 at 25), while the correspondence reflects that Defendant originally gave Plaintiff at 24-day extension, for a total of 45 days to respond, followed by an additional 11-day extension (*see* ECF 219-1). *See infra* Part V.B.4.

2 Magistrate judges have broad discretion in hearing and issuing orders on non-dispositive motions, including motions to seal. *See Grand v. Schwarz*, No. 15-CV-8779 (KMW), 2018 WL 1604057, at *2 (S.D.N.Y. Mar. 28, 2018) ("[M]agistrate judges have broad discretion in resolving . . . motions to seal."). That broad discretion extends to deciding whether to consider materials outside the pleadings in connection with a motion to amend. *See White v. Fein, Such and Crane, LLP*, 2016 WL 6493415, at *2 (W.D.N.Y. Nov. 1, 2016) (excluding documents submitted by the

## I. Factual Allegations

This report and recommendation assumes familiarity with the allegations in the Complaint, which are described in Your Honor's March 23, 2026 opinion and order granting Defendant's motion to dismiss as to all claims. (*See* ECF 188, Op. & Order on Def.'s Mot. To Dismiss ("MTD Order") at 2-8.) I highlight the new allegations in the proposed amended complaint ("PAC") when I discuss each amended and added claim. *See infra* Part V.

## II. Relevant Procedural History

Plaintiff filed this action on March 14, 2025, bringing five claims against Defendant: (1) erroneous outcome to a disciplinary proceeding pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), (2) selective enforcement pursuant to Title IX, (3) failure to provide reasonable accommodations pursuant to the Americans with Disabilities Act ("ADA"), (4) deliberate indifference to a student pursuant to Title VI of the Civil Rights Act of 1964 ("Title VI"), and (5) impermissible discrimination in violation of the New York City Human Rights Law ("NYCHRL"). (*See* ECF 1, Compl. ¶¶ 957-1075.)

---

defendant in its opposition to the plaintiff's motion to amend and granting the referred motion to amend); *see also Powell v. 34 Endeavor Hosp., LLC,* No. 24-CV-6620 (JGLC) (KHP), 2025 WL 2346801, at *3 n.2 (S.D.N.Y. July 7, 2025) (concluding that a motion to strike a declaration in support of a motion was non-dispositive), *report and recommendation adopted*, 2025 WL 2345878 (S.D.N.Y. Aug. 13, 2025). A magistrate judge may grant a motion to amend by memorandum and order but must issue a report and recommendation to deny a motion to amend on futility grounds. *See, e.g., Xie v. JPMorgan Chase Short-Term Disability Plan,* No. 15-CV-4546 (LGS) (KHP), 2017 WL 2462675, at *1 (S.D.N.Y. June 6, 2017), *report and recommendation adopted,* 2018 WL 501605 (S.D.N.Y. Jan. 19, 2018).

This matter was originally referred to Magistrate Judge Henry J. Ricardo for general pretrial supervision (*see* ECF 16, Order of Ref.), and after Judge Ricardo recused himself from this action (*see* ECF 22), the referral was reassigned to me.

On May 16, 2025, Defendant filed a motion to dismiss with supporting papers. (*See* ECF 40, 41, 42.) On July 2, 2025, Plaintiff filed his opposition to the motion to dismiss (ECF 75, 76), and on August 1, 2025, Defendant filed its reply (ECF 88). Defendant argued that Plaintiff's Title IX, ADA, and Title VI claims should all be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law NYCHRL claim, or, in the alternative, that the Court should dismiss the NYCHRL claim for failure to state a claim. (*See* ECF 41, Def.'s MTD Mem.)

On March 23, 2026, Your Honor issued an opinion and order granting Defendant's motion to dismiss as to all claims. (*See* ECF 188, MTD Order.) Your Honor held that (i) Plaintiff did not sufficiently allege procedural irregularities in his disciplinary proceedings as required for a Title IX erroneous outcome claim where, according to Plaintiff's allegations, Defendant followed its internal procedures; (ii) Plaintiff did not sufficiently allege that he and Jane Roe were similarly situated as required for a selective enforcement claim under Title IX, because he did not allege that they were both subject to formal gender-based misconduct complaints and Plaintiff faced multiple such complaints; (iii) Plaintiff did not sufficiently allege an ADA claim because he did not sufficiently allege that he has a disability or how his disability necessitated accommodations; (iv) Plaintiff did not sufficiently allege harassment that was adequately severe, pervasive, and objectively offensive as required under Title VI; and (v) upon dismissal of

all Plaintiff's federal law claims, it was not appropriate to exercise supplemental jurisdiction over Plaintiff's NYCHRL claim. (*See id.* at 9-20.) Your Honor also ordered that Plaintiff could file a motion seeking leave to file an amended complaint within 30 days. (*See id.* at 20.)

On April 23, 2026, Plaintiff timely filed his Motion To Amend, which included the PAC. (*See* ECF 202, Pl.'s Mot. To Am.; ECF 203, PAC.) On May 27, 2026, Defendant filed its opposition. (*See* ECF 219, Def.'s Amend Opp.) On June 10, 2026, Plaintiff filed his reply in further support of his Motion to Amend. (*See* ECF 224, Pl.'s Amend Reply.)

## III. Defendant's Motion To Seal

### A. Legal Standards

There is a presumption of public access to judicial documents, and the Court must find that the presumption has been overcome before sealing a document. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).[3] The Second Circuit has set out a three-step test for determining whether the presumption of public access has been overcome: first, the court determines whether the documents are "judicial documents" as to which both a common law and a constitutional presumption of public access applies; second, if the documents are judicial documents, the court determines the "weight" of the presumption of public access; and finally, the court must "balance competing considerations against [the presumption of access]," including "privacy interests of those resisting disclosure." *Id*. at 119-20.

[3] Unless stated otherwise, this order and report and recommendation omits internal quotation marks, citations, and quotations from quoted text.

For documents to qualify as "judicial documents," they "must be relevant to the performance of the judicial function and useful in the judicial process." *Id*. at 119. A document is "relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling . . . ." *In re Arida, LLC*, No. 19-MC-0522 (PKC), 2020 WL 8513844, at *1 (S.D.N.Y. Dec. 23, 2020) (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)). If a party proposes to seal "judicial documents," the court determines how much weight to assign to the presumption of access. *See Lugosch*, 435 F.3d at 119. The court then assesses whether the party seeking sealing demonstrated that there are "countervailing factors," "competing considerations," or "higher values" sufficient to overcome the presumption of access. *Id*. at 120, 124.

B. Analysis

Defendant moves to seal two exhibits – education records relating to Plaintiff's request for accommodations due to his disability that it filed with its opposition to Plaintiff's Motion To Amend – and to redact two sentences referencing those exhibits in its opposition. (*See* ECF 217, Def.'s Mot. To Seal; ECF 219, Def.'s Amend Opp.; ECF 219-1, July 7, 2023 Office of Disability Services ("ODS") Email; ECF 219-2, July 10, 2023 Gender-Based Misconduct Office ("GBM Office") Email.) Defendant argues that because the exhibits contain Plaintiff's medical information, the presumption of access is weak and "competing considerations weighing against disclosure are strong." (ECF 217, Def.'s Mot. To Seal.)

The exhibits are undoubtedly judicial documents, as they were filed for the purpose of resolving a motion. *See Pierre v. City of N.Y.*, No. 20-CV-5116 (ALC) (VF), 2023 WL 4425766, at *1 (S.D.N.Y. June 6, 2023) (holding that exhibits filed in connection with the defendant's

opposition to the plaintiff's motion for leave to file an amended complaint were judicial documents). However, "public interest in [Plaintiff's] educational records is low, and [Plaintiff's] privacy interest is high, especially because the documents discuss [Plaintiff's] medical diagnoses and needs." *Zayas v. Aviles*, No. 25-CV-7561 (AT), 2026 WL 263396, at *1 n.1 (S.D.N.Y. Jan. 30, 2026).

Therefore, sealing of the exhibits and redactions of references to the exhibits is appropriate, and Defendant's Motion To Seal (ECF 217) is **GRANTED**.

## IV. Plaintiff's Motion To Exclude Extraneous Material

### A. Legal Standards

An application to exclude documents from consideration by the court in connection with a motion to amend is analyzed under the same standard for determining whether a court may consider extrinsic documents in connection with a motion to dismiss. *See Permatex, Inc. v. Loctite Corp.*, No. 03-CV-0943 (LAK) (GWG), 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (explaining that the same rules regarding consideration of materials outside the complaint apply to motions for leave to amend and motions to dismiss). After all, as relevant here, the test for determining whether to grant leave to amend under Rule 15(a) is whether amendment would be futile, meaning that "the proposed claim[s] could not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018) ("Generally, amendment is treated as futile if the proposed claim could not withstand a motion to dismiss."); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F. 3d 122, 126 (2d Cir. 2008) (explaining that "motions to amend should generally be denied in instances of futility"). (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Extrinsic evidence usually may not be considered on a motion to dismiss, because "a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Thus, in evaluating a Rule 12(b)(6) motion, and by extension a motion to amend, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is incorporated by reference if the complaint makes a "clear, definite and substantial reference to the document[ ]." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022).

Additionally, "[w]here a plaintiff has reli[ed] on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, we may consider its contents even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). "Th[is] exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, "if a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to it." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (citing *Cortec Indus., Inc. v. SUM Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)); *Chambers*, 282 F.3d at 153 (explaining that materials are "integral" to a complaint when the plaintiff (i) "ha[d] actual notice of all the information" in those materials and (ii) "relied upon these [materials] in framing the complaint").

And it is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss" *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011), and "of any fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *3 (S.D.N.Y. Sept. 29, 2017) (quoting Fed. R. Evid. 201), *aff'd*, 86 F.4th 961 (2d Cir. 2023), *rev'd and remanded on unrelated grounds*, 604 U.S. 693 (2025). "Courts regularly take notice of publicly available documents . . . ." *Cunningham*, 2017 WL 4358769, at *3 (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

However, when the Court considers extrinsic documents because they may be judicially noticed or because they are integral to the complaint, the Court's consideration is "limited to determining what the records state, not whether what the documents state is true." *Donoghue v. Gad*, No. 21-CV-7182 (KPF), 2022 WL 3156181, at *5 n.7 (S.D.N.Y. Aug. 8, 2022) (quoting *Kramer*, 937 F.2d at 774); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Wagner v. Royal Bank of Scotland Grp. PLC*, No. 12-CV- 8726 (PAC), 2013 WL 4779039, at *3 (S.D.N.Y. Sept. 5, 2013); *In re Lehman Bros. Sec. & ERISA Litig.*, 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012). Even so, to the extent that extrinsic "documents properly considered on a motion to dismiss contradict the pleadings, the Court need not accept those pleadings as true." *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, No. 12-CV-4828 (KPF), 2018 WL 1273343, at *8 n.4 (S.D.N.Y. Mar. 5, 2018) (considering on a motion to dismiss documents

that were integral to the complaint and that were referenced therein) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

B. Analysis

Plaintiff asks the Court to decline to consider two exhibits filed with Defendant's opposition to his Motion To Amend, which are letters from Columbia's ODS and GBM Office granting Plaintiff's accommodation request. (*See* ECF 220, Pl.'s Mot. To Exclude.) Plaintiff argues that the exhibits should be excluded from this Court's consideration because they are extraneous documents that he did not incorporate by reference in the PAC or rely on in drafting the PAC. (*See id*.) Defendant counters that the Court can consider the exhibits because Plaintiff's ADA claim, which rests on an allegation that the ODS denied his accommodation request due to the GBM Office's objection to that request, necessarily relies on the terms and effect of the letters addressing his accommodation request. (*See* ECF 226, Def.'s Exclude Opp.)

Defendant has the better of the argument. The letters are integral to the PAC. Plaintiff had notice of both exhibits, because they are emails from the ODS and GBM Office addressed to him. (*See* ECF 219-1, July 7, 2023 ODS Email; ECF 219-2, July 10, 2023 GBM Office Email.) And Plaintiff necessarily relied on these materials – ODS and GBM Office communications to him regarding his accommodation request – in framing the PAC, in that his ADA claims are based on his allegation that the GBM Office objected to ODS's recommendation that Plaintiff's accommodation request should be granted (*see* ECF 203, PAC ¶¶ 1470-83). *See DeMasi v. Benefico*, 567 F. Supp. 2d 449, 458 n.7 (S.D.N.Y. 2008) (relying on the letter from the plaintiff's doctor, which was considered integral because "the complaint relie[d] heavily upon its terms

and effect" and described the plaintiff's disability in less severe terms than alleged by the plaintiff in the complaint, to dismiss the plaintiff's failure to accommodate claim).

Accordingly, Plaintiff's Motion To Exclude the exhibits at ECF 219-1 and ECF 219-2 (ECF 220) is **DENIED**. I address below the extent to which the letters may be considered by the Court – to take note of what they state only or to contradict Plaintiff's allegation that Defendant denied his accommodation request – in connection with my analysis whether the PAC adequately pleads a claim under the ADA. *See infra* Part V.B.4.

## V. Plaintiff's Motion To Amend

### A. Legal Standard

Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011).

Rule 15 states that leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). As noted above, "amendment is treated as futile if the proposed claim could not withstand a motion to dismiss." *Hussain*, 2018 WL 11217206, at *1.

As relevant here, to withstand a 12(b)(6) motion to dismiss, "a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Medina v. Hunter Coll. of the City Univ. of N.Y.*, No. 25-CV-4275 (JHR) (JW), 2026 WL 1309177, at *3 (S.D.N.Y. Feb. 11, 2026)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), *report and recommendation adopted*, 2026 WL 1300102 (S.D.N.Y. May 5, 2026). The same is true for pro se complaints; while courts must "liberally construe pleadings . . . submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest . . . [,] even for a pro se plaintiff, conclusory allegations masquerading as factual conclusions are insufficient to defeat a motion to dismiss." *Medina*, 2026 WL 1309177, at *3 (quoting *Bertin v. United States*, 478 F. 3d 489, 491 (2d Cir. 2007) and *Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011)).

B. Analysis

I discuss each of Plaintiff's causes of action in the PAC in turn.

1. Title IX Erroneous Outcome Claim

To adequately plead an erroneous outcome claim under Title IX, "the plaintiff must allege (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) "circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Roe v. St. John's Univ.*, 91 F. 4th 643, 652 (2d Cir. 2024). Allegations that "a university conducted its disciplinary proceedings in a less-than-flawless manner" are not sufficient for the Court to find that gender bias was a motivating factor. *Id*. at 654. However, a plaintiff can establish that gender bias was a motivating factor by adequately alleging that (1) the university faced considerable and contemporaneous public pressure to pursue complaints by female students of sexual assaults by male students, and (2) there were "clear procedural irregularities in [the] university's response to allegations of sexual misconduct." *Id*. at 657.

The Court dismissed Plaintiff's erroneous outcome claim "because he [had] not adequately alleged procedural irregularities in the handling of his disciplinary proceeding." (ECF 188, MTD Order at 13.) The Court explained that the alleged procedural irregularities identified by Plaintiff did not violate Columbia's Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students (the "GBM Policies") "or otherwise rise to the level of particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceedings." (*Id.* at 14.) The Court did not reach the question whether Plaintiff had sufficiently alleged that Columbia faced significant public pressure but opined that Plaintiff's allegations were "arguably distinguishable" from the political pressure alleged in a similar case, *Doe v. Columbia University*, 831 F. 3d 46 (2d Cir. 2016). (ECF 188, MTD Order at 11-13.)

*a) Procedural Irregularities*

Plaintiff argues that the PAC adds "specific, named, policy-grounded irregularities, each tied to an express [provision of the GBM Policies]." (ECF 202, Pl.'s Mot. To Am. at 3.) However, for the reasons set forth below, the additional alleged irregularities would be insufficient to allow the PAC to survive a motion to dismiss.

- **Mack Roe's participation in the misconduct proceedings**. Plaintiff argues that Mack Roe's involvement in Plaintiff's misconduct proceedings violated the "GBM Policy expressly prohibit[ing] witness participation in hearings." (*Id*.) But Your Honor already ruled that Mack Roe's participation in Plaintiff's misconduct hearing was not irregular, because Mack Roe was a respondent. (*See* ECF 188, MTD Order at 15.) Plaintiff references new allegations in the PAC, but most such allegations are irrelevant to whether Mack Roe's participation violated GBM Policies. (*See* ECF 203, PAC ¶¶ 997-1020, 1275-82, 1303.) The only new allegation pertinent to this issue is that the GBM Policies do not allow for the consolidation of GBM complaints, meaning that Mack Roe's misconduct proceeding should not have been consolidated with Plaintiff's. (*See* ECF 202, Pl.'s Mot. To Am. at 3.) This allegation is contradicted by the GBM Policies, which state: "The University may consolidate Title IX Formal Complaints against more than one Respondent, or by more than one Complainant . . . where the allegations arise out of the same facts or circumstances." (ECF 42-1, GBM

Policies at 46.)[4] Plaintiff's "unsupported, conclusory assertion . . . cannot render [his] claim plausible." *Perez-Dickson v. Bridgeport Bd. of Educ.*, 801 F. App'x 811, 813 (2d Cir. 2020) (holding that amendment was futile where the plaintiff's new allegations were conclusory and unsupported and therefore could not "give plausible support to a minimal inference of discriminatory motivation").

- **Dean Carlos Alonso's undisclosed conflict of interest**. Plaintiff argues that Dean Alonso – a member of Plaintiff's appellate panel – "fail[ed] to disclose his personal advisory relationship with Jane Roe," in violation of the GBM Policies' mandate to disclose "any actual or potential conflict of interest." (ECF 202, Pl.'s Mot. To Am. at 3; ECF 42-1, GBM Policies at 41.) Plaintiff alleges that Dean Alonso "advised Jane Roe on how to proceed" during the GBM proceedings, "discussed the events in question," "offered to support Jane Roe," and "developed a personal relationship with Jane Roe." (ECF 203, PAC ¶¶ 192-96, 1085-89.) Plaintiff's new allegations fail to demonstrate that Dean Alonso had a conflict interest, as defined by the GBM Policies to cover situations where a faculty member has a close and long-standing relationship with a student, such as "where an individual is a Party's family member, close friend, current or former faculty member, advisor or has other similar relationships with a Party." (ECF 42-1, GBM Policies at 38.) The PAC contains conclusory allegations and provides no specifics about the nature of Dean Alonso's relationship with Jane Roe. Accordingly, the PAC fails adequately to plead that the relationship was sufficiently close to have created a conflict. *See Perez-Dickson*, 801 F. App'x at 813.[5]

---

[4] Because the GBM Policies are integral to the PAC and incorporated by reference, the Court may consider them in deciding the Motion To Amend. *See Chambers*, 282 F. 3d at 153 (holding that courts may consider an extrinsic document on a motion to dismiss "where the complaint relies heavily upon [the document's] terms and effect, which renders the document integral to the complaint"); *DiFolco,* 622 F. 3d at (2d Cir. 2010) (same as to documents incorporated by reference into the complaint). Indeed, the Court considered the GBM Policies in granting the motion to dismiss the original complaint. (*See* ECF 188, MTD Order at 14-16.) Plaintiff contends that this was an error by the Court, asserting that those policies were "extraneous material on which [he] did not rely in drafting the original Complaint or the PAC." (ECF 224, Pl.'s Amend Reply at 3.) But both the Complaint and the PAC mention and quote from those policies many times, and the core of Plaintiff's claims of procedural irregularities is that Defendant's process for conducting Plaintiff's GBM proceedings violated those policies. (*See, e.g.,* ECF 203, PAC ¶¶ 1000, 1062-79, 1278-81, 1323-24, 1331.) As such, those policies are integral to the original complaint and to the PAC and are incorporated by reference in both. *See Scott v. Westchester Cnty.*, 434 F. Supp. 3d 188, 197 (S.D.N.Y. 2020) (defining incorporation by reference as the complaint "mak[ing] a clear, definite and substantial reference to the document").

[5] Nor does a personal relationship between Jane Roe and Dean Alonzo support an inference of gender bias. *See Feibleman v. Trustees of Columbia Univ. in City of N.Y.*, No. 19-CV-4327 (VEC), 2020 WL 882429, at *7 n.11 (S.D.N.Y. 2020) (explaining that the personal

- **The composition of the appellate panel.** According to Plaintiff, "the GBM Policy requires that at least two of three appellate panelists be deans from the respondent's academic level" (ECF 202, Pl.'s Mot. To Amend at 3), but the appellate panel for Plaintiff's GBM Proceedings consisted of a dean from the undergraduate school and two deans from graduate schools (the Graduate School of Professional Studies and the Graduate School of Arts and Sciences). (*See* ECF 203, PAC ¶ 1081.) The GBM Policies state that the three-person appellate panel must consist of a dean from each party's school and one dean from another school, but that, "[s]hould the Complainant and the Respondent attend the same school[,] . . . two Deans will be added from other schools." (ECF 42-1, GBM Policies at 61.) Your Honor acknowledged in the order granting Columbia's motion to dismiss that Plaintiff advanced this argument in the original complaint. (*See* ECF 188, MTD Order at 8.) Although Your Honor did not specifically address this argument, in granting Columbia's motion to dismiss Plaintiff's erroneous outcome claim and finding that Plaintiff had failed to establish procedural irregularities (*see id.* at 13-16), it seems evident that Your Honor implicitly rejected this argument. Even with the additional allegations, the PAC fails to demonstrate a violation of the GBM Policies. Dean Shih-Fu Chang, whom Plaintiff alleges was qualified to decide his appeal, was the dean of an undergraduate school. (*See id.* at 1082.) Dean Alonso was the dean of Jane Roe's school. (*See id.* at 1083.) And Dean Eggers was a dean of another school. (*See id.* at 1081.) Even if the appellate panel composition was irregular, this type of minor procedural deviation would not support an inference of gender bias. *See St. John's Univ.*, 91 F. 4th at 654 (explaining that not every procedural error is indicative of gender bias and citing cases).

- **Columbia's use of inappropriate interim discipline to enhance Plaintiff's sanctions.** Plaintiff argues that Columbia imposed interim sanctions on him in an unrelated disciplinary hearing and then used those disciplinary measures to bootstrap imposing enhanced sanctions on him in the GBM proceedings. (*See* ECF 202, Pl.'s Mot. To Am. at 3.) But the PAC does not allege any new proceeding or disciplinary outcome beyond what was already described in the original complaint; instead, Plaintiff recharacterizes the disciplinary measures imposed during those other proceedings as "interim discipline" (ECF 203, PAC ¶¶ 937-49, 1290-91, 1303), perhaps in response to the Court's finding that Plaintiff had not sufficiently alleged a procedural irregularity in part because he had not alleged that "he was subject to interim discipline inappropriately" (ECF 188, MTD Order at 14). Plaintiff's recharacterization of factual allegations from the original complaint does not affect the Court's prior conclusion that Plaintiff has not adequately alleged that he was subject to inappropriate interim discipline.

- **Columbia's disclosure failures.** Plaintiff argues that Columbia failed to disclose highly relevant evidence of his communications with Mack Roe as required. (*See* ECF 202, Pl.'s Mot. To Am. at 3.) The PAC contains no new factual allegations on this point; Plaintiff instead makes the conclusory claim that he had the right to the evidence sought under Title

relationship between a member of the adjudicatory panel and the complainant did not give rise to an inference of gender bias).

IX, without identifying the regulations he contends were the source of that right. (*See* ECF 203, PAC ¶¶ 633-49, 1293-96, 1303.) Plaintiff fails to support his claim that there was a disclosure obligation, because conclusory allegations of procedural irregularity are insufficient to support a Title IX claim. *See St. John's Univ.*, 91 F. 4th at 653-54, 660; *Doe v. N.Y. Univ.*, 438 F. Supp. 3d 172, 185 (S.D.N.Y. 2020).

- **Columbia's omission of credible exculpatory testimony.** Plaintiff asserts that Columbia improperly excluded the credible exculpatory testimony of five eyewitnesses to the events underlying his GBM proceedings. (*See* ECF 202, Pl.'s Mot. To Am. at 3.) The PAC contains no new factual allegations on this topic (*see* ECF 203, PAC ¶¶ 441-66, 1297-99, 1303), and thus this Court's finding that the allegations in Plaintiff's original complaint were "conclusory and wholly unsupported, and therefore [could not] be a basis to sustain a claim" (ECF 188, MTD Order at 16) also applies to the PAC.

- **Absence of good cause for denying Plaintiff's and granting Jane Roe's adjournment request.** Plaintiff argues that Columbia did not have good cause to deny his request for a medical adjournment and did not have good cause for granting Jane Roe's request for a medical adjournment. (*See* ECF 202, Pl.'s Mot. To Am. at 3.) Like the original complaint, the PAC acknowledges that Columbia's decision to deny his adjournment request was because the Title IX coordinator could not find good cause "without access to his full medical records related to his medical prescriptions[ ] and other private health records," and none of the added allegations in the PAC could lead to a conclusion that there was any irregularity in the Title IX coordinator's denial of Plaintiff's adjournment request. (ECF 203, PAC ¶ 958.) As to Jane Roe, the new allegations in the PAC that she lied about her reasons for seeking a medical adjournment (*see id.* ¶¶ 962-83) provide no basis for concluding that Columbia's granting of her adjournment request was procedurally irregular. Procedural irregularities can result if the school "fail[s] to comply with its own grievance policies." *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F. 4th 1082, 1095, 1098 (2d Cir. 2024). Barring allegations that Columbia was aware of Jane Roe's dishonesty, her false statements would not support a conclusion that Columbia took procedurally irregular steps during Plaintiff's GBM proceedings.

- **Unsupportable finding of no evidence of collusion.** Plaintiff argues that Investigator Jamie Kleidman's finding that there was no evidence of collusion between Mack Roe and Jane Roe is "directly contradicted by subpoenaed text message communications produced in this action." (ECF 202, Pl's Mot. To Am. at 3.) While Plaintiff adds allegations regarding Mack Roe and Jane Roe's coordination of their testimony and lack of credibility, those allegations are unrelated to whether there were any procedural irregularities in Columbia's process. (*See* ECF 203, PAC ¶¶ 9, 486-517, 1300-03, 1413-14.) Without any allegation that Columbia knew of the collusion, or that there was contemporaneous evidence substantially weighing against Mack Roe and Jane Roe's lack of credibility, later-acquired evidence of coordinated testimony does not support an allegation of procedural impropriety. *See Schiebel*, 120 F. 4th at 1095, 1098; *Menaker v. Hofstra Univ.*, 935 F. 3d 20, 31, 34 (2d Cir. 2019) (explaining that there is an indication of procedural irregularity if "an evaluator forms a conclusion in favor"

of one side "when the evidence substantially favors" the other). Plaintiff argues in his reply that Columbia had actual knowledge of the collusion because Kleidman was copied on an email chain concerning coordination by Jane Roe and Mack Roe. (*See* ECF 224, Pl.'s Amend Reply at 3.) But the paragraphs of the PAC that Plaintiff cites in support state that Kleidman was *removed* from the e-mail chain and that Kleidman concluded "there was no evidence of collusion or coordination . . . ." (ECF 203, PAC ¶¶ 493-94.)

- **Columbia's reliance on subjective gender-biased inferences.** Plaintiff argues that Defendant relied on "subjective gender-biased inferences" to conclude that Plaintiff committed the alleged misconduct in violation of the GBM Policies. (ECF 202, Pl.'s Mot. To Am. at 3.) But the PAC contains no new factual allegations to support a conclusion that Columbia's procedures were irregular.

Accordingly, the PAC fails to sufficiently allege any procedural irregularities in Columbia's response to the sexual misconduct allegations against Plaintiff, and so I respectfully recommend that Plaintiff's Motion To Amend his erroneous outcome claim should be DENIED.

*b) Contemporaneous Pressure*

In the event Your Honor disagrees with my assessment of the new allegations of procedural irregularities, I address whether Plaintiff has sufficiently alleged that Columbia faced considerable contemporaneous public pressure to pursue complaints by female students of sexual assaults by male students. Plaintiff argues that the PAC identifies several "simultaneous, contemporaneous, Columbia-specific institutional pressure sources operating during the exact period of Plaintiff's GBM proceedings." (*See* ECF 202, Pl.'s Mot. To Am. at 2-3.) He alleges:

> (1) " at least five concurrent OCR investigations into Columbia's handling of sexual misconduct complaints by female students against male students, threatening Columbia's approximately $800 million in annual federal funding"; (2) "a pending federal lawsuit, *Jane Doe v. Columbia University,* No. 1:21-cv-05839-ER (S.D.N.Y.), targeting the exact same Gender-Based Misconduct Office and the same administrators who handled Plaintiff's case, remaining pending for the entire duration of Plaintiff's proceedings"; (3) "a campus pressure campaign by @CUsurvivors targeting Columbia's GBM Office directly, which extracted a formal settlement agreement from Columbia"; and (4) "a $71.5 million settlement implicating Columbia's own Title IX Coordinator, finalized four months before Jane Roe filed her complaint."

(*Id*. at 3.)[6]

The PAC alleges facts sufficient to show that Columbia faced considerable and contemporaneous public pressure. Like the plaintiff in a 2016 case against Columbia, Plaintiff alleges that the prolonged and ongoing scrutiny of Columbia's handling of sexual misconduct complaints by female students against males pressured Columbia "to find male students . . . responsible for complaints of sexual misconduct . . . to demonstrate to the Columbia Community that Columbia was taking complaints of sexual misconduct . . . seriously." (ECF 203, PAC ¶ 125.) As Plaintiff need only plead "sufficient specific facts giving at least the necessary minimal support to a plausible inference of sex discrimination to survive a 12(b)(6) motion to dismiss," Plaintiff has met this low threshold. *Columbia Univ.*, 831 F. 3d at 56.

Columbia argues that the settlement it entered into with survivors of sexual abuse by a Columbia-affiliated doctor had been rejected as a source of contemporaneous pressure by the Court in its dismissal of the original complaint. (*See* ECF 219, Def.'s Amend Opp. at 3.) But the Court did not reach any conclusions about contemporaneous pressure on Columbia when it dismissed Plaintiff's original erroneous outcome claim because the Court concluded that Plaintiff had not sufficiently alleged procedural irregularities. (*See* ECF 188, MTD Order at 11-13.) Moreover, while the Court opined that it was unclear whether allegations of pressure stemming from the settlement were sufficient to state an erroneous outcome claim, the PAC adds factual allegations about Columbia's Title IX and GBM Office's involvement in advising on

[6] Plaintiff also argues that Columbia faced "direct complaint-specific pressure from Jane Roe herself, including Dean Carlos Alonso's personal advisory relationship with Jane Roe beginning the day after she filed." (ECF 202, Pl.'s Mot. To Am. at 3.) As noted above, this allegation does not support an inference of gender bias. *See supra* note 4.

the settlement agreement, further supporting an inference that the GBM Office may have been motivated by gender bias in adjudicating the sexual misconduct complaint against Plaintiff. (*See* ECF 203, PAC ¶¶ 156-158.)

Columbia also argues that the @cusurvivors student group's activity was not alleged to have occurred contemporaneously and that "the mere existence of sexual assault awareness efforts on campus does not create an inference of bias." (ECF 219, Def.'s Amend Opp. at 3.) While it is notable that Plaintiff does not allege the timeframe when the @cusurvivors group was active, he does allege that the group's aims are more than sexual assault awareness; he includes new allegations that the group "demand[ed] that Columbia University face accountability for its many practices of violence, including protecting abusers[ ] and perpetrating environments hostile to survivors" and that Columbia eventually "caved to the pressure from [@cusurvivors] and . . . agree[d] to various demands the group had made in exchange for the group ceasing its political action . . . ." (ECF 203, PAC ¶¶ 149, 153.) These new allegations suggest that @cusurvivors's aims were not limited to "sexual assault awareness efforts on campus" and included pressure on the administration to take responsibility for prior poor treatment of victims of sexual violence.

Finally, Columbia suggests that Plaintiff's allegations regarding the concurrent OCR investigations are inapposite to whether Columbia faced significant public pressure because "at least three of the five investigations have been pending since 2015." (*See* ECF 219, Def.'s Amend Opp. at 3.) But this argument is undercut by the findings by courts in this Circuit that similar OCR investigations contributed to an inference of gender bias. *See Doe v. Hobart and William Smith Colls.*, 546 F. Supp. 3d 250, 258 (W.D.N.Y. 2021) (finding that two OCR

investigations against the school that began four years before the school opened a sexual misconduct investigation into the plaintiff and significant public criticism of the school's handling of sexual misconduct complaints supported a finding that the school was motivated by gender bias).

While Columbia raises some valid questions about Plaintiff's allegations regarding the public pressure Columbia was facing at the time of Plaintiff's proceedings, "even minimal evidence of pressure on the university to act based on invidious stereotypes" "combined with clear procedural irregularities in a university's response to allegations of sexual misconduct" "will permit a plausible inference of sex discrimination." *Menaker*, 935 F. 3d at 33. Accordingly, Plaintiff has sufficiently alleged that Columbia faced public pressure to find male students responsible for sexual misconduct, and if Your Honor finds that Plaintiff has sufficiently alleged procedural irregularities in Columbia's handling of the sexual misconduct complaint against him, Plaintiff's Motion To Amend his erroneous outcome claim should be granted.

2. Title IX Selective Enforcement Claim

For a Title IX selective enforcement claim to survive a motion to dismiss, "a plaintiff must allege that a school treated similarly situated members of the opposite sex – that is, members of the opposite sex facing comparable disciplinary charges – differently and plead[ ] specific facts that support a minimal plausible inference of . . . discrimination." *Columbia Univ.*, 551 F. Supp. 3d at 465. This Court found that Plaintiff did not adequately allege that he and Jane Roe were similarly situated, because Plaintiff "faced a formal gender-based misconduct complaint made by Jane Roe . . . [but] d[id] not allege that Jane Roe similarly faced a formal gender-based misconduct complaint from him." (*See* ECF 188, MTD Order at 17.) This Court also

reasoned that Plaintiff faced formal complaints from multiple students while Jane Roe did not. (*See id*.)

Plaintiff argues that the PAC adds allegations demonstrating that he and Jane Roe were similarly situated; Plaintiff now alleges that he and Jane Roe made formal sexual misconduct complaints against each other stemming from events that occurred on the same night at the same party. (*See* ECF 202, Pl.'s Mot. To Am. at 4.) Plaintiff further alleges that he reported Jane Roe's alleged misconduct to numerous mandatory reporters at Columbia, and Jane Roe both reported Plaintiff's alleged misconduct to a mandatory reporter and filed an official complaint with Columbia's GBM Office, Title IX Office, and Student Conduct Office. (*See id*.)

Plaintiff has not cured the deficiencies in his original complaint that led this Court to dismiss his selective enforcement claim. The PAC does not allege that he made an official complaint with the GBM Office, nor does it allege that Jane Roe faced misconduct complaints from multiple students. (*See* ECF 203, PAC ¶¶ 599-600, 1387-402.) While Plaintiff now alleges that he reported misconduct by Jane Roe to several mandatory reporters at Columbia, simply stating that he "formally" reported Jane Roe's alleged misconduct to mandatory reporters does not make him similarly situated to someone who made an official complaint. *See Doe v. Brandeis Univ.*, No. 20-CV-12162 (AK), 2023 WL 1822785, at *13 (D. Mass. Feb. 8, 2023) (holding that the circumstances of the plaintiff and a Jane Roe were not similar where the plaintiff reported being sexually assaulted to a mandatory reporter and Jane Doe filed an official complaint with the university's Office of Equal Opportunity); *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 757-58 (E.D. Mo. 2020) (holding that a male plaintiff was not similarly situated to

a female student where the male plaintiff told mandatory reporters that the female assaulted him but the female student filed an official charge against him).

Accordingly, I respectfully recommend that Plaintiff's Motion To Amend his selective enforcement claim should be DENIED.

3. Title IX Retaliation Claim

Title IX "broadly prohibits a funding recipient from subjecting any person to discrimination on the basis of sex," since "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Under Title IX, to state a retaliation claim, a plaintiff must first allege "a prima facie case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 495 (S.D.N.Y. 2023) (quoting *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)). Further, "a plaintiff must show that a reasonable person would have found the challenged action materially adverse, which means it well might have dissuaded a reasonable person from making or supporting a complaint." *Yeshiva Univ*., 703 F. Supp 3d at 495.

The PAC adds a Title IX Retaliation claim. (*See* ECF 203, PAC ¶¶ 1424-69.) Plaintiff alleges that Columbia took adverse actions and retaliated against him because of "his participation in Columbia's GBM proceeding and his assertion of rights within that proceeding," his "intent to re-enroll in classes at the conclusion of [his] GBM suspension," and his "opposition to Columbia's GBM proceedings." (*Id.* ¶¶ 1437, 1444, 1456.) Plaintiff appears to equate his

participation in and complaints about Defendant's GBM proceedings with engaging in protected activity to protest gender discrimination. (*See, e.g.*, *id.* ¶ 1453 ("[E]mployment restrictions were imposed . . . in immediate temporal proximity to John Doe's exhaustion of his appellate rights as a GBM respondent making plain that they were a response to his participation in and contestation of the GBM proceeding rather than a legitimate consequence of it."); *id.* ¶ 1456 ("The Scholarship Committee's explicit reliance on Columbia's findings . . . establishes that the revocation [of Plaintiff's scholarship] was a direct consequence of his participation in and opposition to Columbia's GBM proceedings.").)

Plaintiff's argument rests on a false equivalence. There is a difference between defending oneself against charges of gender-based misconduct in a proceeding and complaining about gender discrimination. *See, e.g.,* Report and Recommendation on Motion To Dismiss at 44-45, *Khodakhah v. Montefiore Med. Acad. Health Sys., Inc*., No. 24-CV-0839 (LAK) (RFT); 2025 WL 2653667 (S.D.N.Y. Sept. 16, 2025) (adopting the report and recommendation in full); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 756, 760 (M.D. Tenn. 2019) (concluding that a plaintiff who was solely "defending himself against [a student's] sexual misconduct charges during . . . [a] Title IX investigation" rather than "actively complaining" of discrimination did not engage in protected activity), *case dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir. Sept. 18, 2019); *Doe v. Bd. of Trs. of N. Ill. Univ.*, No. 17-CV-7991, 2024 WL 4346627, at *9 (N.D. Ill. Sept. 30, 2024) ("Plaintiff's retaliation claim fail[ed] because he did not engage in a protected activity by merely defending himself against Roe's sexual assault allegation."); *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (holding that "[n]o part of Title IX

designates participation in a sexual harassment investigation on the side of the accused as protected activity").

In his reply, Plaintiff argues that his Title IX retaliation claim "does not rest solely on his role as a respondent in Columbia's GBM proceeding" and that the PAC "alleges that Plaintiff engaged in protected activity by formally complaining about sex discrimination – specifically, by formally reporting Jane Roe's sexual harassment of Plaintiff to Columbia's mandatory reporters, and by raising sex-based bias in Columbia's investigative process throughout his GBM proceeding." (ECF 224, Pl.'s Amend Reply at 4.) But the PAC does not allege that any of Plaintiff's allegedly protected activity had any causal connection to retaliatory, adverse school-related actions by Columbia. (*See* ECF 203, PAC ¶¶ 1461-66.) Rather, Plaintiff attributes Columbia's alleged retaliatory acts to his participation in the GBM process, as opposed to his complaints about gender-based discrimination. (*See id.*) The lack of any alleged causal connection between Columbia's adverse actions against Plaintiff his complaints of sex discrimination is fatal to his retaliation claim.

Accordingly, I respectfully recommend that Plaintiff's Motion To Amend to add a Title IX retaliation claim should be DENIED.

4. ADA Claim

To state an ADA claim on a failure to accommodate theory, as relevant here, a plaintiff must allege that the "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) [the defendant is] covered by the statute [and] had notice of [the plaintiff's] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the [work] at issue; and (4) [the] defendant has refused to make such accommodations." *Medina*, 2026 WL

1309177, at *3 (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F. 3d 113, 118 (2d Cir. 2004)), *report and recommendation adopted*, 2026 WL 1300102 (S.D.N.Y. May 5, 2026). For a plaintiff to sufficiently plead that he is a person with a disability under the meaning of the ADA, the plaintiff must allege that he "(1) has a physical or mental impairment that substantially limits his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Tew v. Town of Stony Point*, No. 22-CV-6148 (KMK), 2023 WL 6146651, at *8 (S.D.N.Y. Sept. 20, 2023).

In dismissing the ADA claim in the original complaint, the Court reasoned that (1) Plaintiff had "not pled more than a conclusory allegation that he is a qualified individual with a disability within the meaning of the ADA," and (2) Plaintiff did not allege "whether and how his disability necessitated accommodations for his misconduct hearing, and whether the accommodations he sought were reasonable." (ECF 188, MTD Order at 17-18.) Plaintiff argues that in the PAC, he "now specifically identifies his qualifying disability – Attention Deficit Hyperactivity Disorder ('ADHD') and Post-Traumatic Stress Disorder ('PTSD')" and addresses the deficiencies in the Complaint identified by the Court. (ECF 202, Pl.'s Mot. To Am. at 5.)

The PAC, however, still falls short. With regard to Plaintiff's ADHD, the PAC alleges that Plaintiff was diagnosed with ADHD, which is a qualifying disability that "substantially limits his ability to process large amounts of written information in a timely and efficient manner" and "causes him to suffer difficulty sustaining attention, difficulty with following through on work assignments, difficulty organizing tasks and activities, and avoidance and dislike of tasks requiring sustained attention." (ECF 203, PAC ¶¶ 751-57.) *See also H.P. v. Monticello Cent. Sch. Dist.*, No. 24-CV-8655 (KMK), 2026 WL 265942, at *5 (holding that the plaintiff was a "qualified

individual with a disability" where his ADHD substantially limited "his focus, visual processing, and his peer interactions and connections" as well as his "concentrati[on] . . . and communicati[on]").[7]

Plaintiff also explains how his ADHD made accommodations necessary at the misconduct hearing. (*See* ECF 203, PAC ¶¶ 753-57, 767-71.) Plaintiff alleges that he sought a 45-day extension to respond to the GBM Office's Investigation Report, which was more than 1,000 pages, because he needed extra time to review the report due to his disability. (*See* ECF 203, PAC ¶¶ 768-71.) Plaintiff implies that this accommodation request was reasonable, because Columbia regularly gave him extensions to complete his academic coursework to accommodate his ADHD. (*See id*. ¶¶ 758-76.)

The PAC founders on Plaintiff's assertion that ODS denied his reasonable accommodation request because the GBM Office objected. (*See id.* ¶¶ 774-81.) Communications from ODS and GBM Office to Plaintiff – which should be considered in connection with Plaintiff's Motion To Amend because the communications are integral to the PAC and Plaintiff had notice of the communications, *see supra* Part IV.B – reflect that Plaintiff was granted a 24-day extension (for a total of 45 days to complete his review of Columbia's factual summary and to write a response) and received an additional 11-day extension. (*See* ECF 219-1, July 7, 2023 ODS Email; ECF 219-2, July 10, 2023 GBM Office Email.) Plaintiff asserts that the communications "do not support Columbia's theory" and instead reflect "material factual disputes" that preclude dismissal of his ADA failure to accommodate claim (ECF 224,

---

[7] Plaintiff does not address his PTSD, other than to allege that he was diagnosed. (*See* ECF 203, PAC ¶¶ 751, 1472.) He does not specify if or how it impacts him.

Pl.'s Amend Reply at 5), which I construe as an argument that the Court may not, on a motion to dismiss, rely on extrinsic documents to disprove the allegations in the operative complaint.

Because the emails are integral to the PAC and Plaintiff necessarily relied on them in his drafting, *see supra* Part IV.B, the Court may consider them on a motion to dismiss; and because Plaintiff's new allegations are directly contradicted by the emails, those allegations would be insufficient to defeat a motion to dismiss. *See Roth v. Jennings,* 489 F. 3d 499, 505 (2d Cir. 2007) (concluding that the defendants' public statements in documents referred to in the complaint could not be contradicted by the plaintiff's unsupported allegations to the contrary); *Poindexter v. EMI Rec. Grp. Inc.*, No. 11-CV-0559 (LTS) (JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (explaining that "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true" and dismissing a claim based on the language of a contract that was the basis of the plaintiff's claim but that was not attached to the amended complaint); *Bristol-Myers Squibb Secs. Litig.,* 312 F. Supp. 2d 549, 569 (S.D.N.Y. 2004) (rejecting allegations by the plaintiff that were shown to be "demonstrably false" by documents integral to the complaint); *Matusovsky v. Merrill Lynch,* 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (stating that if a plaintiff's allegations are contradicted by a document that may be considered on a motion to dismiss, the allegations are insufficient to defeat the motion, and dismissing a claim based on the terms of a general release discussed in the complaint).

Accordingly, I respectfully recommend that Plaintiff's Motion To Amend his ADA claim be DENIED.

5. Title VI Deliberate Indifference Claim

"[I]n the educational setting, a [university] is liable for intentional discrimination when it has been deliberately indifferent to teacher or peer harassment of a student." *Zeno v. Pine Plains Cent. Sch Dist.*, 702 F. 3d 655, 664-65 (2d Cir. 2012). To sufficiently plead a claim under Title VI of deliberate indifference by a university, a plaintiff must allege that (i) the university "exercises substantial control over both the harasser and the context in which the known harassment occurs," (ii) the harassment is "severe, pervasive, and objectively offensive," (iii) the university has actual knowledge of the harassment, and (iv) the university was deliberately indifferent to the harassment." *Id*. at 665-66. A university's actions are deliberately indifferent only if "they were clearly unreasonable in light of the known circumstances." *Id*. at 666.

The relevant new allegations in the PAC are that Mack Roe engaged in:

> an eight-month sustained course of racially targeted conduct . . . to coerce Plaintiff into abandoning his defense of false sexual misconduct charges based on his race, including repeated statements that Plaintiff would be excessively punished because he was Black, that Plaintiff had no chance as a Black man, that Plaintiff should falsely confess because he was Black, and that Plaintiff's decision to contest the charges was stupid because he was Black.

(ECF 202, Pl.'s Mot. To Amend.) The PAC further alleges that "Columbia had actual knowledge of the racial harassment through . . . specific documented reports, each of which was made to a named Columbia administrator with authority to address it." (ECF 203, PAC ¶¶ 1493-95.)

Plaintiff has not cured the deficiencies this Court identified in the original complaint; he still "does not allege harassment that was sufficiently severe, pervasive, and objectively offensive." (ECF 188, MTD Order at 19.) The PAC contains new allegations that Mack Roe subjected him to "severe, pervasive, and racially discriminatory harassment over a period of

more than eight months" by telling Plaintiff that (i) he "would face excessive punishment . . . because [Plaintiff] was black," (ii) Plaintiff should confess to Jane Roe's allegations against him because he was Black, and (iii) Plaintiff's refusal to confess "was stupid because [Plaintiff] was black." (ECF 203, PAC ¶¶ 1488-90.) However, courts in this Circuit have found that allegations of more severe racial harassment spanning longer periods were not sufficiently severe or pervasive to plead a deliberate indifference claim. *See T.W.E. Ellingworth v. Jordan Elbridge Cent. Sch. Dist.*, No. 25-CV-1243 (GTS) (MJK), 2026 WL 1194735, at *7, *10 (N.D.N.Y. May 1, 2026) (holding that "students making comments about [the plaintiff's] race, making offensive noises or gestures meant to reference his race in a disparaging manner, . . . and on a few occasions calling him an offensive racial slur" were not sufficiently severe); *Ellis v. Univ. of Rochester*, No. 19-CV-6380 (CJS), 2024 WL 493504, at *40 (W.D.N.Y. Feb. 8, 2024) (holding that professors subjecting the plaintiff to racially motivated insults "between six-and-nine" times over the course of three years was not sufficiently severe or perverse).

Accordingly, I respectfully recommend that Your Honor should DENY Plaintiff's Motion To Amend his Title VI claim for deliberate indifference.

6. NYCHRL Claim

Having concluded that Plaintiff has failed to sufficiently allege any of his federal claims, I respectfully recommend that Your Honor should decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claim. (*See* ECF 188, MTD Order at 20.) *See also Brzak v. United Nations*, 597 F. 3d 107, 113-14 (2d Cir. 2010) (explaining that, when "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well").

## CONCLUSION

For the foregoing reasons, Defendant's Motion To Seal (**ECF 217**) is **GRANTED** and Plaintiff's Motion To Exclude (**ECF 220**) is **DENIED**. The Clerk of Court is respectfully requested to seal the exhibits at **ECF 219-1** and **ECF 219-2**.

I respectfully recommend that Your Honor **DENY** Plaintiff's Motion To Amend (**ECF 202**) as to all claims on the basis of futility.

The Clerk of Court is respectfully requested to terminate **ECF 217** and **ECF 220** and to strike **ECF 240**.

Dated: September 8, 2026
New York, NY

SO ORDERED and RESPECTFULLY SUBMITTED,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Ho.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 145 (1985).