**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOHN DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COLUMBIA UNIVERSITY,**<br><br>**Defendant.** | **No 1:25-cv-02132 (DEH) (RFT)** |

**PLAINTIFF JOHN DOE'S WRITTEN OBJECTIONS, PURSUANT TO 28 U.S.C. § 636(B)(1)AND RULE 72(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE TO MAGISTRATE JUDGE TARNOFSKY'S AUGUST 28, 2026 REPORT AND RECOMMENDATION (ECF 240) ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT (ECF 202)**

Plaintiff John Doe, proceeding *pro se,* timely and respectfully, submits these Written Objections [1] to Magistrate Judge Tarnofsky's September 8, 2026 Corrected Report and Recommendation (R&R) on Plaintiff's Motion for Leave to Amend the Complaint (ECF 202) pursuant to 28 U.S.C. § 636(B)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

## I. PRELIMINARY STATEMENT

Plaintiff John Doe respectfully objects to the Report and Recommendation because it recommends denying leave to amend despite the PAC's new, particularized allegations supporting Plaintiff's proposed Title IX erroneous-outcome, Title IX selective-enforcement, Title IX retaliation, ADA failure-to-accommodate, Title VI deliberate-indifference, and NYCHRL claims. Plaintiff respectfully requests de novo review of the challenged portions of the R&R, adoption

[1] Plaintiff's objections are grounded in the R&R (ECF 240), Plaintiff's Motion to Amend the Complaint (ECF 202), Judge Ho's Opinion and Order on the original complaint (ECF 188), Judge Ho's Opinion and Order on Plaintiff's [196] Motion for Reconsideration (ECF 288) and binding 2nd Cir. Precedent e.g, *Doe v. Columbia University,* 831 F. 3d 46 (2d Cir. 2016),

only of the R&R's conclusion that Plaintiff sufficiently alleged sex-specific public pressure on Columbia, rejection of the R&R's futility recommendations, and leave to file the Proposed Amended Complaint.

1. Plaintiff objects to the R&R's conclusion that Plaintiff's Proposed Title IX erroneous outcome claim, Title IX selective enforcement claim, Title IX retaliation claim, ADA failure-to-accommodate claim, and Title VI deliberate indifference claim are "futile" and "would not withstand a motion to dismiss".

2. The R&R misapplies *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), the Rule 12(b)(6) pleading framework, the Rule 15 futility standard, and the *Foman* and *Pangburn* factors by misreading well-pled allegations in the PAC, relying on a prior disputed conclusion, failing to accept Plaintiff's allegations as true, and drawing inferences in Columbia's favor.

3. The R&R declines to address Plaintiff's allegation that Columbia's senior Title IX investigator Jamie Kleidman indicated to Plaintiff that "Plaintiff ha[d] no rights under Title IX."

4. The R&R *correctly* held, that "Plaintiff has sufficiently alleged that Columbia faced public pressure to find male students responsible for sexual misconduct" (R&R at 19), and Plaintiff respectfully requests that the Court adopt this portion of the R&R holding that Plaintiff has sufficiently alleged that Columbia faced public pressure to find male students responsible for sexual misconduct — a factually supported and well-reasoned holding that the Court should adopt.

5. These objections focus on five errors that warrant de novo review: the R&R atomizes Plaintiff's procedural-irregularity allegations instead of considering them collectively; draws factual inferences in Columbia's favor at the pleading stage; overlooks or minimizes allegations bearing directly on bias, credibility, and notice; treats disputed extrinsic materials as dispositive; and recommends declining supplemental jurisdiction only because it would dismiss all federal claims.

## II. SPECIFIC OBJECTIONS[5]

Pursuant to Fed. R. Civ. P. 72(b)(2), Plaintiff raises the following specific objections, and challenges the following portions of the Report and Recommendation.

**Plaintiff's Proposed Title IX Erroneous Outcome Claim**

### A. Judge Tarnofsky's R&R was incorrect in finding that Plaintiff failed to cure any deficiencies in his Title IX Erroneous Outcome Claim identified by the Court in it's March 23, 2026 Dismissal Order.

6. Contrary to R&R's conclusion, Plaintiff has cured the deficiencies identified by this Court's March 23, 2026 Opinion and Dismissal Order; *see* Plaintiff's Motion to Amend and Proposed Amended Complaint (ECF 202). Accordingly, Plaintiff respectfully objects to these portions of the R&R.

7. The PAC cures those deficiencies by adding specific factual allegations about procedural irregularities, credibility evidence, Columbia's knowledge, comparator treatment, protected activity, the requested disability accommodation, and the duration and context of the alleged racial harassment.

8. Plaintiff specifically objects to the R&R's finding that "the PAC fails to sufficiently allege *any* procedural irregularities in Columbia's response to the sexual misconduct allegations against Plaintiff" (R&R at 16). The R&R reaches this erroneous conclusion by incorrectly addressing each alleged procedural irregularity in isolation— rather than *collectively,* and apart from— as opposed to *in conjunction with* Plaintiff's well-pled allegations of public pressure and a motive to discriminate on the basis of gender.

---

[5] Objections to a Report and Recommendation issued by a United States Magistrate Judge on a dispositive motion are reviewed *de novo United States v. Romano,* 794 F.3d 317, 340 (2d Cir. 2015) because a Motion to Amend a Complaint is a dispositive motion *see Briggs v. Cnty. of Monroe*, 215 F. Supp. 3d 213, 215 (W.D.N.Y. 2016) (collecting cases) contemplating the denial of a motion to amend based on futility as a dispositive decision).

9. The Second Circuit has *expressly* recognized that "procedural irregularity alone" may suggest bias and that, where clear procedural irregularities are alleged, "even minimal evidence of sex-based pressure on the university is sufficient" to permit a plausible inference that the bias was on account of sex *Vengalattore v. Cornell Univ.,* 36 F.4th 87, 107 (2d Cir. 2022) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 & n.48 (2d Cir. 2019)).

10. In other words, even though the R&R *correctly* concludes in the R&R at 19 that "Plaintiff has sufficiently alleged that Columbia faced public pressure to find male students responsible for sexual misconduct" the R&R *incorrectly* weighs Plaintiff's well-pled allegations of procedural irregularities against Columbia's competing characterizations.

11. As the Second Circuit emphasized in *Vengalattore v. Cornell Univ.,* that "[Our] decisions in [*Doe v. Columbia University,* 831 F. 3d 46 (2d Cir. 2016) and *Menaker v. Hofstra Univ*., 935 F. 3d 20, 31, 34 (2d Cir. 2019)] make clear that where a complaint claiming gender discrimination in violation of Title IX or Title VII alleges (a) that the university "fail[ed] to act in accordance with [u]niversity procedures designed to protect accused students," (b) that the university "fail[ed] to seek out potential witnesses [whom the accused] had identified as sources of information favorable to [the accused]," (c) that the defendant university had been criticized for not seriously addressing complaints by female students of sexual misconduct by males, and (d) that the university made findings against the accused male that were "incorrect and contrary to the weight of the evidence," we have found it "plausible that the university was motivated to 'favor the accusing female over the accused male' in order to demonstrate its commitment to protecting female students from male sexual assailants." *Vengalattore v. Cornell Univ.,* 36 F.4th 87, 106 (2d Cir. 2022) (Quoting *Menaker*, 935 F.3d at 31-32 and *Doe v. Columbia*, 831 F.3d at 57 ( internal quotation marks omitted).

***

12. Accordingly, the R&R errs in its conclusion that a plausible inference of gender bias cannot be drawn from the PAC's alleged procedural irregularities in Plaintiff's disciplinary proceeding when viewed collectively, and *in conjunction* with the public pressure that Columbia faced to find Plaintiff responsible for sexual misconduct.

### B. The R&R Fails to Analyze the Alleged Procedural Irregularities[6] *Collectively* and Draws Inferences in *Columbia's* Favor

13. The R&R dedicates four (4) full pages to an incorrect analytical framework and incorrectly weighs Plaintiff's well-pled allegations of procedural irregularities against Columbia's competing characterizations and *post hoc* rationalizations and purported justifications of the alleged procedural irregularities. (see R&R 12-16)

14. The R&R's approach is inconsistent with the pleading-stage analysis required for Title IX erroneous-outcome claims. At this stage, the alleged procedural irregularities must be viewed collectively, not one by one, and in conjunction with the well-pled allegations of public pressure supporting an inference of sex-based motive. The relevant inquiry is not whether each alleged departure, omission, procedural deviation, error, irregularity, or instance of disparate treatment independently establishes discriminatory intent. The inquiry is whether the alleged irregularities, considered together and with all reasonable inferences drawn in Plaintiff's favor,

[6] Plaintiff respectfully declines to address each alleged procedural irregularity in the PAC individually because doing so would replicate the same analytical error underlying the R&R—isolating each alleged irregularity from the others and asking whether each, standing alone, independently establishes gender bias. Plaintiff's objection is to that framework itself. The relevant inquiry is whether the procedural irregularities alleged in the PAC, accepted as true, viewed collectively, and considered in conjunction with the sex-specific public pressure that the R&R found sufficiently alleged, plausibly support the minimal inference of gender bias required at the pleading stage. Plaintiff therefore respectfully rejects the R&R's invitation to atomize the PAC's allegations and respectfully submits that the Court should evaluate the alleged irregularities as a whole and draw all reasonable inferences in Plaintiff's favor.

plausibly support the minimal inference that gender bias affected the outcome of Columbia's disciplinary process.

15. Here, like the plaintiffs in *Doe v. Columbia*, *Menaker*, and *Vengalattore*, the PAC is not futile with respect to the procedural-irregularity component because it alleges a plethora of one-directional procedural irregularities that consistently disadvantaged Plaintiff and advantaged the female complainant.

16. In light of the R&R's conclusion that Plaintiff sufficiently alleged that Columbia faced public pressure to find male students responsible for sexual misconduct, the R&R should not have rejected the plausible inference that the alleged one-directional procedural irregularities, together with the ultimate responsibility finding, were affected by gender bias when viewed collectively and in conjunction with that public pressure.

17. Moreover, The R&R does not conclude that Columbia was merely subject to generalized criticism concerning sexual misconduct; it rejects that notion, and concludes that Plaintiff plausibly alleged pressure specifically "to find male students responsible for sexual misconduct." Thus, at the pleading stage, the alleged pattern of procedural decisions consistently operating to Plaintiff's detriment and the female student's benefit cannot be analytically divorced from the very sex-specific institutional pressure the R&R found sufficiently alleged.

18. The question is *not* whether Columbia can offer an innocent or competing explanation for each individual irregularity, nor was it ever, but whether the alleged procedurally irregular pattern viewed as a whole and together with the adequately pleaded pressure, permits a plausible inference of gender bias. It does.

19. Plaintiff respectfully submits that to conclude that a plausible inference cannot be drawn defies common sense and is inconsistent with the reasonable inferences required at the pleading stage. If Columbia was plausibly under sex-specific pressure to find male students

responsible for sexual misconduct, as the R&R concluded, then it is also plausible that the alleged one-directional procedural irregularities in Plaintiff's proceeding were affected by that same pressure.

20. If Columbia University was *plausibly* under pressure to discriminate against Plaintiff on the basis of his gender, as the R&R concludes, it can be plausibly inferred that the plethora of one-directional procedural irregularities alleged by Plaintiff during his proceeding, were plausibly motivated by gender-bias as well.

21. The R&R improperly draws inferences in Columbia's favor. Plaintiff respectfully requests that the Court draw reasonable inferences in Plaintiff's favor at this stage and decline to adopt the identified portions of the R&R.

### C. The R&R Wrongly Ignores Plaintiff's Allegation in the PAC that Columbia's Title IX Investigator Told Plaintiff that Plaintiff "Had no Right Under Title IX"

22. The PAC alleges that during Plaintiff's disciplinary proceeding, Columbia's Lead Title IX Investigator on Plaintiff's case told Plaintiff that "Plaintiff had no rights under Title IX" PAC ¶ 1, 850-859. The R&R wrongly ignores this well-pled allegation.

23. This well-pled allegation is highly relevant to Plaintiff's Title IX erroneous outcome claim because "allegations [such as] statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias." (emphasis added) *Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994) (explaining that alleged statements reflecting bias by members of the tribunal may suffice to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias).

24. The R&R's failure to address this allegation is significant because the alleged statement bears directly on whether the disciplinary adjudication was affected by bias. Plaintiff

therefore objects to the R&R's refusal to consider this well-pled allegation within its Title IX erroneous-outcome analysis.

25. Whether this statement and the other alleged irregularities ultimately establish gender bias is a question for the jury. The R&R improperly demands that answer now. Futility asks whether Plaintiff's inference is plausible—not whether Plaintiff can ultimately prove it at trial.

**D. The R&R Adopts an Argument Proffered by Columbia That the Second Circuit Has Already Rejected**

26. The R&R incorrectly adopts Columbia's argument that the alleged plethora of procedural irregularities pleaded in the PAC do not support an inference of sex discrimination. The R&R Opines:

> "Plaintiff argues that the PAC adds "specific, named, policy-grounded irregularities, each tied to an express [provision of the GBM Policies]." (ECF 202, Pl.'s Mot. To Am. at 3.) However…. the additional alleged irregularities would be insufficient to allow the PAC to survive a motion to dismiss." (R&R at 12) "Accordingly, the PAC fails to sufficiently allege any procedural irregularities in Columbia's response to the sexual misconduct allegations against Plaintiff" (R&R at 16)

27. Columbia made this argument to the Second Circuit Court of Appeals in *Doe v. Columbia Univ*., 831 F.3d 46, 57 (2d Cir. 2016), which the Court rejected, holding that "This reasoning fails to recognize the court's obligation to draw reasonable inferences *in favor of* the sufficiency of the complaint." Id. There, the male student plaintiff/appellant argued that the District Court erred by failing to draw the inference that alleged one-directional procedural irregularities that disadvantaged him, and the ultimate decision to find him responsible for sexual misconduct *when combined with* public pressure to discriminate against male students on the basis of gender in university-led sexual misconduct complaints was *plausibly* motivated by gender-bias. The Second Circuit *emphatically* agreed, holding that "*Iqbal* does not require that the inference of

discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct. It is sufficient if the *inference* of discriminatory intent is *plausible*."

28. Because the R&R has concluded that Plaintiff has sufficiently alleged that Columbia faced public pressure to find male students responsible for sexual misconduct, and because it can be plausibly inferred that the plethora of one-directional procedural irregularities alleged by Plaintiff during his proceeding, when viewed collectively, and in conjunction with the public pressure on Columbia, Plaintiff respectfully objects to these specific portions of the R&R. The Court should decline to adopt this portion of the R&R and find that Plaintiff has alleged procedural irregularities sufficient to state a Title IX Erroneous Outcome Claim.

**E. The R&R Erroneously Relies on an Erroneous Conclusion Reached by <u>This Court in This Court's Original Dismissal Order</u>**

29. The R&R relies on an erroneous conclusion reached by this Court in this Court's March 23, 2026 original Dismissal Opinion and Order (ECF 188) to reject Plaintiff's Claim of procedural irregularity with respect to Mack Roe's procedurally irregular participation in Plaintiff's disciplinary proceeding. The R&R opined:

> Plaintiff argues that Mack Roe's involvement in Plaintiff's misconduct proceedings violated the "GBM Policy expressly prohibit[ing] witness participation in hearings." (Id.) But Your Honor already ruled that Mack Roe's participation in Plaintiff's misconduct hearing was not irregular, because Mack Roe was a respondent. (See ECF 188, MTD Order at 15.) Plaintiff references new allegations in the PAC, but most such allegations are irrelevant to whether Mack Roe's participation violated GBM Policies. (See ECF 203, PAC ¶¶ 997-1020, 1275-82, 1303.) The only new allegation pertinent to this issue is that the GBM Policies do not allow for the consolidation of GBM complaints, meaning that Mack Roe's misconduct proceeding should not have been consolidated with Plaintiff's. (See ECF 202, Pl.'s Mot. To Am. at 3.) This allegation is contradicted by the GBM Policies, which state: "The University may consolidate Title IX Formal Complaints against more than one Respondent, or by more than one Complainant. . . where the allegations arise out of the same facts or circumstances." (ECF 42-1, GBM Policies at 46.)3 Plaintiff's "unsupported, conclusory assertion . . . cannot render [his] claim plausible."

30. The R&R incorrectly relies on this Court's erroneous March 23, 2026 conclusion (ECF 188) that Columbia's extraneous and inapplicable Interim Title IX Policy's "consolidation

provision" attached as an exhibit to Columbia's Motion to Dismiss the Complaint defeated Plaintiff's well-pled allegation that Mack Roe's participation as an adverse witness in Plaintiff's disciplinary proceeding violated Columbia's Gender-based Misconduct Policy and Procedures (GBMPP) that governed Plaintiff's proceeding, and could not be accepted as true by this Court or considered a clear procedural irregularity.

31. On April 6, 2026 (ECF 196), Plaintiff timely filed a Motion for Reconsideration of this portion of the Court's Opinion and Order. Subsequently, this Court denied Plaintiff's Motion for Reconsideration but expressly "[a]ssum[ed] arguendo Plaintiff [was] correct that the Court should not have considered Columbia's Interim Title IX Policy," while analyzing Plaintiff's well-pled allegations of procedural irregularity (ECF 228 at 2,3). This Court concluded that the Original Complaint "[did] not allege or point to anything in the GBM Policies or Procedures…that prohibits such consolidation of proceedings" (ECF 228 3-4) and thus "reconsideration was not warranted".

32. However, the PAC cures the deficiencies identified by the Court on this specific issue. The PAC points to page 60 of Columbia's Gender-based Misconduct Policy, which, in the plainly explicitly, and unambiguously, that "Witnesses are not involved in the hearing process" *see* PAC ¶1,000.

33. Additionally, the PAC alleges additional facts bringing clarity as to Mack Roe's *actual* role during Plaintiff's proceeding. The PAC alleges that Mack Roe was *not,* merely present to respond to Plaintiff's allegations that Mack Roe *repeatedly* racially harassed and coerced Plaintiff, and threatened to kill Plaintiff in retaliation for Plaintiff maintaining his innocence and refusing to admit to Jane Roe's allegations against Plaintiff, but rather, Mack was permitted to be present to serve as a witness adverse to Plaintiff and in favor of Jane Roe in connection with Jane Roe's sexual misconduct allegations against Plaintiff, to which allegations Mack Roe was never a party *see* PAC ¶997-1017.

**F. The R&R's Categorical Conclusion That the PAC Fails to Allege "Any" Procedural Irregularities Is Contradicted by the R&R's Own Language Contained in its Analysis**

34. Plaintiff specifically objects to the R&R's categorical conclusion that "the PAC fails to sufficiently allege any procedural irregularities in Columbia's response to the sexual misconduct allegations against Plaintiff." (R&R at 16.) That conclusion is contradicted by the R&R's own analysis.

35. In addressing Plaintiff's well-pled allegations concerning the composition of the appellate panel, the R&R expressly acknowledges that the panel composition "may" have been procedurally irregular, stating: "Even if the appellate panel composition was irregular, this type of minor procedural deviation would not support an inference of gender bias."(R&R at 14) Thus, the R&R does not actually conclude that no procedural irregularity occurred; rather, it assumes that an irregularity occurred and then weighs the significance of that irregularity in isolation before characterizing it as "minor."

36. Whether Plaintiff has plausibly alleged a procedural irregularity and whether that irregularity, considered together with Plaintiff's remaining well-pled allegations, supports a plausible inference of gender bias are different inquiries analytically. The R&R improperly collapses those inquiries. Moreover, whether an admitted or plausibly alleged departure was "minor" is not appropriately resolved against Plaintiff at the pleading stage where the Court must draw reasonable inferences in Plaintiff's favor.

37. This error is particularly consequential because the R&R separately concludes that Plaintiff sufficiently alleged that Columbia faced public pressure specifically "to find male students responsible for sexual misconduct." (R&R at 19.) The question therefore is not whether the irregular appellate panel, standing alone, establishes discriminatory intent, but whether that alleged irregularity, together with the numerous other one-directional irregularities pleaded in the

PAC and the sex-specific public pressure found sufficiently alleged by the R&R, plausibly contributes to the minimal inference of gender bias. Plaintiff respectfully submits that it does.

### G. The R&R Improperly Treats Issues Never Expressly Decided by This Court as Having Been "Implicitly Rejected"

38. Plaintiff specifically objects to the R&R's conclusion concerning the composition of Plaintiff's appellate panel because the R&R acknowledges that this Court "did not specifically address this argument," but nevertheless concludes that "it seems evident that Your Honor implicitly rejected this argument." (R&R at 14.)

39. Plaintiff objects because an argument that this Court did not specifically address cannot properly be transformed into an adverse determination against Plaintiff merely because this Court previously dismissed Plaintiff's erroneous-outcome claim on other grounds. The R&R's inference that this Court "implicitly rejected" an argument it admittedly "did not specifically address" is itself an inference drawn against Plaintiff which is improper.

40. The R&R's own alternative analysis further demonstrates the problem because it proceeds to acknowledge that "the appellate panel composition [may have been] irregular," but nevertheless independently characterizes that irregularity as "minor." (R&R at 14.) Plaintiff respectfully objects to both conclusions and requests that the Court review this issue de novo under the Rule 12(b)(6) standard applicable to futility.

### H. The R&R Improperly Resolves Factual Inferences Concerning Dean Alonso's Undisclosed Relationship With Jane Roe Against Plaintiff

41. Plaintiff specifically objects to the R&R's conclusion that the PAC "fails adequately to plead that [Dean Alonso's] relationship [with Jane Roe] was sufficiently close to have created a conflict." (R&R at 13.)

42. The R&R acknowledges that the PAC alleges that Dean Alonso "advised Jane Roe on how to proceed" during the GBM proceedings, "discussed the events in question," "offered to

support Jane Roe," and "developed a personal relationship with Jane Roe." (R&R at 13.) Yet rather than accepting those well-pled allegations as true and drawing the reasonable inference in Plaintiff's favor that an undisclosed advisory and personal relationship between Jane Roe and a member of the panel adjudicating Plaintiff's appeal could constitute an actual or potential conflict, the R&R concludes that Plaintiff failed to establish that the relationship was "sufficiently close."

43. In support of its contention, the R&R cites *Feibleman v. Trustees of Columbia Univ. in City of N.Y.,* No. 19-CV-4327 (VEC), 2020 WL 882429, at *7 n.11 (S.D.N.Y. 2020) namely for its holding that the alleged personal relationship between a member of the adjudicatory panel and the complainant *there,* standing alone "did not give rise to an inference of gender bias" (R&R at 13-14 n. 5). However, *Feibleman* went on to hold that Columbia's failure to disclose an actual or *potential* conflict of interest stemming from the personal relationship violated Columbia's Gender-based Misconduct Policy and Procedures which required (a) Columbia to disclose all actual and *potential* conflicts of interests and (b) that Columbia "provide a fair and impartial process." and was sufficient to state a Breach of Contract claim.

44. Indeed, if Columbia's failure to disclose all actual and *potential* conflicts of interest is sufficient to state a Breach of Contract claim, then surely the same would be sufficient for Plaintiff to allege the same as a *clear* procedural irregularity. Afterall, a "procedural irregularity" in the context of a Title IX Erroneous Outcome Claim is a failure by a school to follow its own official policy or rules governing the proceeding.

45. Here, Plaintiff has opted to plead Columbia's failure to disclose all actual and *potential* conflicts of interest as a clear procedural irregularity under a Title IX erroneous outcome theory of liability rather than a Breach of Contract theory. Regardless, the underlying procedural departure is the same: Columbia failed to comply with its own policy requiring disclosure of all actual and potential conflicts of interest *Feibleman* therefore does not support the R&R's

conclusion that Plaintiff failed to allege a procedural irregularity; if anything, *Feibleman* demonstrates that the alleged nondisclosure of an actual or potential conflict implicates Columbia's own promised procedures.

46. The R&R's own recitation of Columbia's policy further demonstrates the error. The R&R acknowledges that Columbia's conflict-of-interest provision expressly identifies an "advisor" relationship as one of the relationships potentially giving rise to a conflict, while simultaneously acknowledging that the PAC alleges Dean Alonso "advised Jane Roe on how to proceed" during the very GBM proceeding in which he later sat in judgment of Plaintiff's appeal.

47. The R&R nevertheless resolves against Plaintiff the factual question whether that alleged advisory relationship was sufficiently close to constitute an actual or potential conflict. At the pleading stage, that conclusion has it backwards. Plaintiff was not required to prove that Dean Alonso ultimately met some undefined degree of relational closeness; Plaintiff was required to plausibly allege facts bringing the relationship within the ambit of Columbia's own conflict policy. The R&R's own description of the PAC and the policy demonstrates that Plaintiff has done precisely that.

48. The R&R does not explain *how* Plaintiff, at the pleading stage and before depositions and document discovery concerning the nature and extent of Dean Alonso's relationship with Jane Roe, was supposed to establish that the relationship was "sufficiently close." That is not a pleading determination; it is a factual determination concerning the nature, extent, duration, and significance of an undisclosed relationship.

49. Plaintiff has alleged the facts presently available to him: Dean Alonso advised Jane Roe concerning how to proceed, discussed the underlying events with her, offered her support, developed a personal relationship with her, failed to disclose that relationship, and thereafter participated in adjudicating Plaintiff's appeal. Whether discovery ultimately proves that

relationship "sufficiently close" to constitute an actual or potential conflict of interests is a question for another day. It cannot properly be answered against Plaintiff while determining whether amendment would be futile.

50. Plaintiff does not contend that Dean Alonso's personal relationship with Jane Roe, *standing alone*, independently establishes gender bias. Plaintiff contends that Columbia's alleged failure to disclose that relationship constitutes one of numerous procedural irregularities that must be considered collectively and in conjunction with the sex-specific public pressure that the R&R has already found sufficiently alleged.

51. Plaintiff is not required at the pleading stage to prove the ultimate degree of closeness between Dean Alonso and Jane Roe. The PAC need only plead sufficient facts to make the alleged conflict and resulting inference plausible.

52. At minimum, competing interpretations concerning the nature and significance of that relationship present factual questions that cannot properly be resolved against Plaintiff on a Rule 12(b)(6) futility analysis.

### I. The R&R Misrepresents the PAC's Allegations Concerning Jane Roe's The Subpoenaed Texts Messages and Their Significance and Columbia's Actual Knowledge of Coordination Between Jane Roe and Mack Roe and Jane Roe's Bearing on Jane Roe's Lack of Credibility

53. Plaintiff objects to the R&R's analysis of Plaintiff's allegation that Investigator Jamie Kleidman reached an unsupportable finding that there was "no evidence of collusion" between Jane Roe and Mack Roe.

54. The R&R acknowledges Plaintiff's allegation that subpoenaed communications produced in this action directly contradict Investigator Kleidman's finding of no evidence of collusion or coordination. (R&R at 15-16.) The R&R nevertheless concludes that the subsequently obtained evidence cannot support an allegation of procedural impropriety absent an allegation that

Columbia knew of the collusion or that contemporaneous evidence substantially weighed against Jane Roe and Mack Roe's credibility.

55. Critically, however, Plaintiff *does* allege that Columbia, through Investigator Kleidman, had contemporaneous knowledge of the coordination; *see* PAC ¶¶ 494. The R&R even recognizes Plaintiff's argument that "Columbia had actual knowledge of the collusion because Kleidman was copied on an email chain concerning coordination by Jane Roe and Mack Roe," but rejects that allegation because the PAC also alleges that Kleidman "was later removed from the e-mail chain." (R&R at 16.)

56. The R&R's reasoning does not follow from the PAC's allegations. The allegation that Investigator Kleidman was *subsequently* removed from an email chain does not establish that she did not receive, observe, or acquire knowledge from communications transmitted before her removal. Being removed from a chain at a later point does not erase communications previously received or knowledge previously acquired.

57. To the extent competing inferences may be drawn concerning what Investigator Kleidman knew and when she knew it, the Rule 12(b)(6) framework requires the reasonable inference to be drawn in *Plaintiff's* favor not Columbia's. The R&R improperly draws the inference most favorable to Columbia—that because Kleidman was subsequently removed from the chain, she necessarily lacked contemporaneous knowledge of coordination—and then uses that inference to reject Plaintiff's well-pled allegation.

### J. The R&R Fails to Recognize the Significance of Jane Roe's Subpoenaed Text Message Communications with Mack Roe, and Ignores Plaintiff's Proposed Allegations Related Thereto.

58. Plaintiff objects to the R&R's failure to recognize the significance of Jane Roe's subpoenaed text message communications with Mack Roe and the R&R's decision to ignore Plaintiff's well-pled proposed allegations related thereto.

59. In the original Dismissal Order, the Court opined:

> "Plaintiff alleges that the determinations that Jane Roe and Mack Roe were credible and that he was not credible were erroneous, but this is a conclusory disagreement with substantive factual determinations" (Dismissal Order at 16).

60. The subpoenaed text messages directly address the Court's concern. They establish, and the PAC alleges, that Jane Roe coordinated with Mack Roe and made false statements to Columbia in connection with her sexual-misconduct allegations against John Doe—allegations Columbia does not appear to dispute in its briefing.

61. Additionally, the subpoenaed text messages establish that Columbia had *actual knowledge* of Jane Roe's coordination with Mack Roe, and Jane Roe's false statements to Columbia in connection with her sexual misconduct allegations against John Doe, because Columbia's Title IX Investigator Jamie Kleidman was copied on an email Chain with Jane Roe discussing the coordination with Mack Roe *before* being *subsequently* removed from the email chain just as the PAC alleges in granular detail see PAC ¶¶ 486-517.

62. The PAC alleges (a) that Jane Roe was not credible and (b) that Columbia had actual knowledge that Jane Roe was not credible, but nonetheless found Jane Roe credible despite their actual knowledge that she was not, and then rested its finding of responsibility against John Doe on Jane Roe's credibility. Plaintiff alleges that this was a *clear* procedural irregularity indicative of gender bias and resulting in an erroneous outcome.

63. And while the Court originally found that Plaintiff's allegations in this regard were "a conclusory disagreement with substantive factual determinations" the subpoenaed text messages — that were not available to Plaintiff at the time of the Court's Dismissal Order —and Plaintiff's proposed amended allegations related thereto cure the deficiency the Court identified.

64. This is particularly significant because Plaintiff does not merely allege that subsequently discovered evidence happens to conflict with Columbia's conclusions that there was

no collusion between Jane Roe and Mack Roe during Plaintiff's proceedings. Rather, Plaintiff alleges that the investigator responsible for assessing the evidence, conducting the credibility assessments of the parties, and recommending discipline against Plaintiff had contemporaneous knowledge bearing directly upon coordination and Jane Roe's credibility, and nevertheless affirmatively concluded that there was no evidence of collusion or coordination and that Jane Roe did not make any false statements to Columbia in connection with Plaintiff's disciplinary proceeding. And Plaintiff bases his contentions on the text messages subpoenaed in this action. Whether those allegations can be proven to the jury is a question for a later stage; it cannot properly be resolved against Plaintiff on a futility analysis.

65. Plaintiff's newly pleaded factual allegations concerning Jane Roe's credibility, coordination with Mack Roe, alleged false statements, and Columbia's alleged contemporaneous knowledge thereof—accepted as true and with reasonable inferences drawn in Plaintiff's favor—plausibly cast articulable doubt on the accuracy of the outcome of Plaintiff's disciplinary proceeding that, according to Columbia, depended upon Jane Roe's credibility.

66. Indeed, if Columbia found Jane Roe credible and relied upon her credibility in finding Plaintiff responsible while possessing information demonstrating that Jane Roe had coordinated with Mack Roe in the proceeding and made false statements concerning matters material to that proceeding, it is at least *plausible* that Columbia's credibility determination—and an outcome dependent upon that determination—was erroneous.

67. Columbia's alleged failure during Plaintiff's disciplinary proceeding to account for evidence bearing on Jane Roe's credibility, coordination with Mack Roe, and alleged false statements does not defeat Plaintiff's claim at the pleading stage.

68. Accordingly, the Court should decline to adopt this portion of the R&R because " . "A defendant institution is not shielded from liability for discrimination practiced by an employee

endowed by the institution with supervisory authority or institutional influence in recommending and thus influencing the adverse action by a non-biased decision-maker" *Doe v. Columbia Univ.,* 831 F.3d 46, 58–59 (2d Cir. 2016) (vacating District Court's dismissal of Title IX erroneous outcome claim and rejecting Columbia's argument that it cannot be held liable for alleged gender-biased conduct of its Title IX investigator)

**K. The R&R Repeatedly Resolves the Significance of Well-Pled Facts <u>Rather Than Their Plausibility</u>**

69. The R&R does not recommend denial of amendment because the PAC independently fails to plead articulable doubt as to the accuracy of the outcome. Rather, its recommendation rests on its erroneous conclusion that the PAC fails to sufficiently allege procedural irregularities supporting the inference of gender bias. Indeed, after finding Plaintiff's allegations of sex-specific public pressure sufficient, the R&R expressly concludes that if this Court finds the procedural-irregularity allegations sufficient, "Plaintiff's Motion To Amend his erroneous outcome claim should be granted."

70. The R&R's analytical problem identified in Plaintiff's preceding objections, cannot be ignored. The R&R does not determine whether Plaintiff's pleaded facts accepted as true are plausible; it determines what those facts ultimately mean, minimizes their significance, selects among competing factual inferences, considers each resulting irregularity separately from the remainder of the PAC, and draws improper inferences in Columbia's favor at every turn.

71. Thus, the R&R assumes that the appellate-panel composition may have been "irregular" but characterizes the deviation as "minor"; acknowledges extensive allegations concerning Dean Alonso's advisory and personal relationship with Jane Roe but determines that the relationship was not sufficiently close; and acknowledges Plaintiff's allegation concerning Investigator Kleidman's contemporaneous exposure to communications concerning coordination but draws an inference from her subsequent removal from the email chain in Columbia's favor.

72. These are precisely the types of competing factual interpretations that should not be resolved against Plaintiff when determining whether the PAC "would withstand a motion to dismiss." The PAC need not establish that Plaintiff's inference of discriminatory intent is the most plausible explanation for Columbia's conduct. As the Second Circuit held in *Doe v. Columbia University*, "[i]t is sufficient if the inference of discriminatory intent is plausible." 831 F.3d 46, 57 (2d Cir. 2016).

73. When Plaintiff's well-pled allegations are accepted as true, reasonable inferences are drawn in Plaintiff's favor, the alleged irregularities are considered collectively rather than atomized, and those irregularities are considered together with the R&R's own conclusion that Plaintiff sufficiently alleged that Columbia faced public pressure "to find male students responsible for sexual misconduct," the PAC comfortably crosses the pleading-stage threshold.

74. The question before the Court is not whether Plaintiff has persuaded the Court that Columbia ultimately violated Title IX under a Title IX erroneous outcome theory of liability. The question is whether the PAC cures the specific pleading deficiencies identified in the March 23 Order. It does.

75. Plaintiff therefore respectfully requests that the Court decline to adopt the R&R's conclusion that the PAC fails to sufficiently allege procedural irregularities and, upon de novo review, conclude that Plaintiff's proposed Title IX erroneous-outcome claim is not futile.

**Plaintiff's Proposed Title IX Selective Enforcement Outcome Claim**

76. Plaintiff Specifically Objects to the R&R's Recommendation That Plaintiff's Title IX Selective Enforcement Claim is Futile.

77. Plaintiff objects to the R&R's conclusion that Plaintiff "has not cured the deficiencies in his original complaint" with respect to his Title IX selective enforcement claim. (R&R at 20.) Contrary to the R&R's conclusion, the PAC does exactly what Plaintiff was granted

leave to do: it adds particularized factual allegations addressing the precise deficiency identified by this Court in its March 23, 2026 Dismissal Order *See* PAC ¶¶ 1385 -1402.

### L. The R&R Improperly Resolves Against Plaintiff Whether Plaintiff's Reports to Columbia's Mandatory Reporters Constituted a Formal <u>Report of Sexual Misconduct.</u>

78. This Court originally dismissed Plaintiff's selective enforcement claim because, although Plaintiff alleged that both he and Jane Roe "were reported to have committed sexual misconduct violations against each other," the original Complaint did not adequately allege that "Jane Roe similarly faced a formal gender-based misconduct complaint from him." (Dismissal Order at 17.) The Court concluded that this distinction rendered Plaintiff and Jane Roe materially differently situated.

79. Plaintiff's PAC squarely addresses that deficiency *See* PAC ¶¶ 1385 -1402. As the R&R itself acknowledges, the PAC now alleges that Plaintiff and Jane Roe made sexual-misconduct reports against each other arising from events occurring on the same night, at the same party**,** and that Plaintiff reported Jane Roe's alleged sexual misconduct to numerous Columbia mandatory reporters**.** (R&R at 19–20.)

80. The R&R nevertheless concludes that Plaintiff has not cured the deficiency because Plaintiff did not subsequently file an "official complaint with the GBM Office." (R&R at 20.) Respectfully, that conclusion simply substitutes the R&R's characterization of Plaintiff's report for the well-pled allegations of the PAC. Plaintiff alleges that he formally reported sexual misconduct to Columbia officials whom Columbia itself designated as mandatory reporters.

81. Whether, under Columbia's governing mandatory reporting policies, Plaintiff's report to those mandatory reporters constituted a formal report triggering Columbia's obligations is not properly resolved against Plaintiff merely because Columbia subsequently failed to open a separate GBM investigation.

82. Indeed, the R&R's reasoning makes Columbia's alleged disparate treatment self-validating. Plaintiff alleges that he reported sexual misconduct by Jane Roe through Columbia's mandatory-reporting structure and Columbia did not subject Jane Roe to the investigative process to which Plaintiff was subjected. The R&R then relies upon the *absence of that resulting investigation* to conclude that Jane Roe was not similarly situated to Plaintiff. Put differently: Columbia's alleged failure to process Plaintiff's report against Jane Roe becomes the very reason Plaintiff cannot challenge Columbia's failure to process Plaintiff's report against Jane Roe. That reasoning is circular in the extreme and cannot resolve the comparator inquiry at the pleading stage.

83. Accordingly, Plaintiff respectfully objects to this portion of the R&R, requests that the Court reject it, and asks the Court to find that Plaintiff's proposed Title IX selective-enforcement claim is not futile because the PAC alleges facts sufficient to state such a claim.

**Plaintiff's Proposed Title IX Retaliation Claim**

84. Plaintiff specifically objects to the R&R's recommendation that Plaintiff's Motion to Amend his Title IX retaliation claim be denied. The R&R acknowledges Plaintiff's contention that the PAC alleges protected activity consisting of Plaintiff "formally complaining about sex discrimination"—including formally reporting Jane Roe's sexual harassment to Columbia's mandatory reporters and raising sex-based bias throughout Columbia's investigative process—but nevertheless concludes that the PAC fails to connect that protected activity to Columbia's subsequent adverse actions. (R&R at 23.)

85. The R&R draws an artificial distinction between Plaintiff's protected complaints of sex discrimination and Plaintiff's "participation," "contestation," and "opposition" to the GBM proceeding. Plaintiff's contestation of the GBM proceeding was not limited to defending himself against the underlying charges. The PAC specifically alleges that Plaintiff formally reported Jane

Roe's sexual harassment to Columbia's investigators on multiple occasions, *see* PAC ¶¶1391–96, raised objections concerning Columbia's allegedly sex-biased administration of the proceeding, and repeatedly asserted rights he alleged were protected by Title IX. Plaintiff's protected opposition occurred *through* his contestation of the GBM proceeding; the two are not mutually exclusive categories of conduct.

86. The R&R therefore reads the PAC too narrowly when it concludes that Plaintiff attributes Columbia's adverse actions merely to his participation in the GBM process "as opposed to his complaints about gender-based discrimination." (R&R at 23.) The PAC alleges that Plaintiff's employment restrictions were imposed immediately after he exhausted the appellate process through which he had repeatedly complained of Columbia's discriminatory treatment of Plaintiff.

87. Plaintiff further alleges that Columbia subsequently relied upon the very GBM findings Plaintiff had continuously challenged in revoking his scholarship and stripping Plaintiff's rights to appeal under Columbia's Gender-based Misconduct Policy and imposing additional adverse consequences. *See* PAC ¶¶1452–56. At the pleading stage, those allegations plausibly permit the inference that Plaintiff's protected complaints of gender-discrimination and the adverse actions were causally connected.

88. Plaintiff does not contend that merely defending oneself against sexual-misconduct allegations constitutes protected activity. Plaintiff alleges considerably more. Plaintiff formally complained of sexual harassment, and coercion at the hands of Jane Roe, raised sex-based objections during the GBM process, and thereafter suffered adverse actions tied directly to the proceeding through which those objections were made. The R&R impropery resolves competing inference against Plaintiff in determining futility.

89. Plaintiff therefore respectfully objects to the R&R's recommendation that amendment of his Title IX retaliation claim would be futile and requests that this Court decline to adopt that portion of the R&R.

**Plaintiff's Proposed ADA Claim**[8]

90. Plaintiff specifically objects to the R&R's conclusion and recommendation that Plaintiff's Proposed ADA claim is futile. Plaintiff further specifically objects to the R&R's conclusion that Columbia's extrinsic exhibits attached to its brief in opposition to Plaintiff's Motion to Amend the Complaint, can be "properly" considered by the Court, and that the extrinsic exhibits "contradict" Plaintiff's factual allegations related to Plaintiff's proposed ADA claim.

91. The R&R recognizes that the PAC identifies Plaintiff's ADHD as a qualifying disability, alleges substantial limitations affecting Plaintiff's ability to process large amounts of written information, explains why an accommodation was necessary, and alleges that Plaintiff requested a 45-day disability accommodation to review and respond to Columbia's more than 1,000-page Factual Summary and evidence file. The R&R nevertheless concludes that the claim "founders" because extrinsic emails submitted by Columbia in conjunction with its opposition to Plaintiff's Motion to Amend the Complaint (ECF 218, 219 purportedly establish that Plaintiff "was granted a 45-day extension and received an additional 11 days." (R&R at 25.)

**M. The R&R's conclusion rests upon a disputed factual premise and conflates time Plaintiff received because of an extension granted to another participating party with the disability accommodation Plaintiff actually requested and received.**

92. Respectfully, that conclusion rests upon a disputed factual premise and conflates time Plaintiff received because of an extension granted to another participating party with the

[8] Plaintiff respectfully acknowledges that Section Heading AAA of the PAC at 139 and PAC ¶ 767 and ¶1476 contain immaterial scrivener's error in dates. The reference to "March 1, 2023" in the heading of Section AAA should read "July 7, 2023," and the reference to "March 1, 2023" in PAC ¶ 767 and ¶1476 and should read "June 15, 2023."

disability accommodation Plaintiff actually requested and received. The PAC alleges that Plaintiff requested a 45-day disability accommodation; that Columbia's ODS determined that accommodation was reasonable; that the GBM Office objected to providing it; and that Columbia ultimately denied the requested accommodation. *See* PAC ¶¶ 768–81. Those allegations must be accepted as true at the pleading stage unless properly contradicted by a document the Court may properly consider.

### N. The R&R Improperly Converts an Unrelated Scheduling Extension Into an ADA Accommodation That Columbia Expressly Denied

93. Columbia's selected emails cannot properly defeat those allegations. On June 15, 2023, Plaintiff made his first request for a disability-related extension. Five minutes later, GBMO informed Plaintiff that the July 20 deadline resulted from another participating party's request, not Plaintiff's disability-accommodation request. GBMO subsequently met with Plaintiff concerning his accommodation request and, on June 28, expressly denied Plaintiff's request for a 45-day disability accommodation, stating instead that the already-existing July 20 deadline was "sufficient." Plaintiff thereafter met with ODS and continued to request the 45-day disability accommodation. Thus, the July 20 deadline existed independently of Plaintiff's disability-accommodation request and cannot be transformed retroactively into the accommodation Plaintiff requested.

### O. Columbia's Columbia's Verified Discovery Response Undermines the Factual Premise on Which the R&R's ADA Recommendation Relies

94. Most significantly, Columbia's own November 14, 2025 verified Supplemental Response to Plaintiff's Interrogatory No. 8 expressly characterizes the accommodation Columbia provided as "a time accommodation of 11 additional days" rather than the "45 additional days Plaintiff requested." That admission is irreconcilable with the R&R's factual premise that Plaintiff received a 45-day disability accommodation *plus* eleven additional days. The accommodation

Columbia itself says it provided was eleven additional days. The question presented by the PAC is therefore whether Columbia's provision of eleven days, after allegedly determining through ODS that Plaintiff's requested 45-day accommodation was reasonable, constituted a failure to reasonably accommodate Plaintiff's disability.

### P. The R&R Improperly Considers Materials Extrinsic to the PAC, and Improperly Resolves a Material Factual Dispute Against Plaintiff to <u>Find Plaintiff's ADA Claim Futile</u>

95. The R&R could not resolve that question against Plaintiff by recharacterizing unrelated scheduling time as part of Plaintiff's disability accommodation. Plaintiff specifically disputed Columbia's characterization of those emails before the R&R issued. The R&R nevertheless accepted Columbia's characterization and used it to conclude that Plaintiff's contrary allegations were "directly contradicted." That is precisely the type of competing factual inference that cannot be resolved against Plaintiff in determining futility.

96. Moreover, Plaintiff's pending Motion for Reconsideration of the September 8, 2026 Corrected Order squarely challenges the antecedent ruling that permitted Columbia's Exhibits A-B to be considered at all. Plaintiff has demonstrated therein that the selected emails were not documents upon whose "terms and effect" Plaintiff necessarily relied in framing the PAC, but instead fragments of a materially larger documentary record. Plaintiff further demonstrated that, when restored to their complete chronology, Columbia's selected emails do not contradict the PAC—they corroborate Plaintiff's allegation that his requested 45-day disability accommodation was denied and that Columbia ultimately provided only eleven additional days as a disability accommodation.

97. Accordingly, the ADA recommendation cannot stand on the R&R's stated rationale. If Columbia's extrinsic exhibits should not have been considered, the PAC's well-pleaded allegations control. And even if those exhibits may properly be considered, they do not

conclusively establish the factual proposition upon which the R&R's futility determination depends. At most, they create a factual dispute concerning what accommodation Plaintiff requested, what accommodation Columbia provided, and whether the additional time Plaintiff received for reasons unrelated to his disability satisfied Columbia's obligations under the ADA. Those questions belong on a developed evidentiary record—not in a futility determination on a motion to amend.

98. Plaintiff therefore respectfully requests that the Court sustain Plaintiff's objection, decline to adopt the R&R's recommendation that amendment of Plaintiff's ADA failure-to-accommodate claim would be futile, and permit the ADA claim to proceed.

Plaintiff's Proposed Title VI Deliberate Indifference Claim

99. Plaintiff specifically objects to the R&R's recommendation that Plaintiff's Motion to Amend his Title VI deliberate-indifference claim be denied as futile.

**Q. The R&R Improperly Resolves the Context-Dependent Question of Severity Against Plaintiff at the Pleading Stage**

100. The R&R acknowledges that the PAC now alleges an eight-month sustained course of racially targeted conduct designed to coerce Plaintiff into abandoning his defense of sexual-misconduct charges because of his race, including repeated statements that Plaintiff would be excessively punished because he was Black, had "no chance as a Black man," should falsely confess because he was Black, and was "stupid" to contest the charges because he was Black. The R&R further acknowledges that Plaintiff alleges Columbia had actual knowledge of this conduct through specific documented reports made to named Columbia administrators with authority to address it. (R&R at 27.)

101. The R&R nevertheless concludes that these allegations are insufficient because other district courts have found different allegations of racial harassment insufficiently severe or pervasive. But the Title VI inquiry is not whether another plaintiff somewhere else endured

conduct that a court considered "more severe." The question is whether the conduct **actually** alleged here, viewed cumulatively and in its particular context**,** plausibly constitutes severe, pervasive, and objectively offensive racial harassment.

102. More importantly, the PAC does not merely allege sporadic racial insults or isolated offensive comments. Plaintiff alleges a sustained eight-month campaign in which Mack Roe repeatedly weaponized Plaintiff's race in an effort to coerce Plaintiff into surrendering his defense in an active Columbia sexual-misconduct proceeding: *you will be excessively punished because you are Black; you have no chance as a Black man; confess because you are Black; continuing to defend yourself is stupid because you are Black.* Those allegations concern not merely offensive speech, but the repeated use of Plaintiff's race as an alleged instrument of coercion directed at Plaintiff's ability to defend himself in a disciplinary proceeding carrying serious educational consequences. That context matters.

### R. The R&R Improperly Disaggregates the Alleged Racial Harassment From Its Duration, Purpose, and Effect

103. Severity cannot properly be determined by counting racial slurs and comparing that number to the number alleged in another case. The PAC alleges duration, repetition, racial targeting, coercive purpose, and a direct connection to an ongoing disciplinary proceeding**.** The R&R acknowledges those allegations, but then reduces them to three categories of statements and compares them to the number and character of racial remarks alleged in *Ellingworth* and *Ellis*. In doing so, the R&R strips the alleged harassment of the very context that gives the conduct its pleaded severity.

104. Plaintiff is not required at the pleading stage to establish that his racial harassment was worse than the harassment suffered by plaintiffs in other cases. Plaintiff must plausibly allege that *his* harassment crossed Title VI's threshold. Whether an eight-month campaign repeatedly invoking Plaintiff's race to pressure him to falsely confess and abandon his defense was ultimately

sufficiently severe and pervasive is inherently dependent upon the circumstances surrounding that conduct. Plaintiff respectfully submits that the PAC alleges more than enough factual matter to permit that question to proceed beyond the pleadings.

### S. The PAC Directly Addresses the Deficiencies Identified in the Original Dismissal Order

105. The original Complaint was dismissed because this Court concluded that Plaintiff had not sufficiently alleged severe, pervasive, and objectively offensive harassment. The PAC now alleges the duration of the conduct, its repeated nature, its expressly racial content, its coercive purpose, the disciplinary context in which it occurred, Columbia's actual knowledge through specific reports to identified administrators, and Columbia's alleged failure to take corrective action. Indeed, the R&R itself recognizes these as "new allegations."

106. Furthermore, Plaintiff alleges in the PAC that Plaintiff endured not only verbal racially discriminatory harassment from Mack Roe, but that Plaintiff also endured a physical attack and death threats from Mack Roe in addition *See* PAC ¶¶ 214, 629, 729, 735, 736. *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) held that allegations of physical attacks, threats, and implied threats in conjunction with alleged verbal discriminatory harassment, suffices to state the "severe, pervasive, and objectively offensive" component of the claim at the pleading stage if the other components sufficiently pled. Accordingly, whether Plaintiff's allegations ultimately satisfy Title VI after discovery is a merits question, and declaring them insufficient as a matter of law at the pleading stage is improper.

107. Plaintiff therefore objects to the R&R's recommendation that amendment of his Title VI deliberate-indifference claim would be futile and respectfully requests that this Court decline to adopt that recommendation and permit Plaintiff's Title VI claim to proceed.

***

**<u>Plaintiff's State Law NYCHRL Claim</u>**

**T. Plaintiff Objects to the R&R's Recommendation That The Court <u>Decline Supplemental Jurisdiction Over Plaintiff's NYCHRL Claim</u>**

108. Plaintiff specifically objects to the R&R's recommendation that the Court decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claim. That recommendation rests entirely upon the R&R's predicate conclusion that "Plaintiff has failed to sufficiently allege any of his federal claims." (R&R at 28.) Plaintiff therefore respectfully requests that, upon permitting any federal claim to proceed, the Court likewise decline to adopt the R&R's recommendation regarding supplemental jurisdiction and permit Plaintiff's NYCHRL claim to proceed alongside Plaintiff's surviving federal claims.

## III. CONCLUSION

For the foregoing reasons, this Honorable Court should (a) decline to adopt Judge Tarnofsky's September 8, 2026 R&R in its entirety and review the R&R *de novo* insofar as it recommends denying Plaintiff leave to amend as to all of Plaintiff's claims on the basis of futility (b) grant Plaintiff leave to file the Proposed Amended Complaint as the First Amended Complaint, pursuant to *Foman v. Davis*, 371 U.S. 178, 182 (1962), and (c) exercise supplemental jurisdiction over Plaintiff's NYCHRL claim.

**Dated: September 22, 2026**
**New York, New York**

**Respectfully Submitted,**
**JOHN DOE**

**By:** ______________________________

**John Doe**
**PO Box #250050**
**New York, New York 10025**
**(917) 450-9050**
**johndoe.casemail@gmail.com**
**Plaintiff, Pro Se**

## CERTIFICATE OF COMPLIANCE

Plaintiff John Doe hereby certifies, pursuant to Local Civil Rule 7.1(c), that the foregoing Objections are compliant with the Rule, as it was prepared by Plaintiff on a computer using Microsoft Word, and according to the software, contains 8,709 words excluding the case caption and signature blocks contained in the filing.

**Dated: September 22, 2026**
**New York, New York**

**Respectfully Submitted,**
**JOHN DOE**



**By:** ______________________________

**John Doe**
**PO Box #250050**
**New York, New York 10025**
**(917) 450-9050**
**johndoe.casemail@gmail.com**
**Plaintiff, Pro Se**